# EXHIBIT 1

**FORM 1.997. CIVIL COVER SHEET**

The civil cover sheet and the information contained in it neither replace nor supplement the filing and service of pleadings or other documents as required by law. This form must be filed by the plaintiff or petitioner with the Clerk of Court for the purpose of reporting uniform data pursuant to section 25.075, Florida Statutes. (See instructions for completion.)

I. **CASE STYLE**

IN THE CIRCUIT/COUNTY COURT OF THE <u>NINTH</u> JUDICIAL CIRCUIT,
IN AND FOR <u>ORANGE</u> COUNTY, FLORIDA

<u>Jennifer Smith</u>
Plaintiff

vs.

Case # _____

Judge _____

<u>FLORIDA AGRICULTURAL and MECHANICAL UNIVERSITY BOT</u>
Defendant

II. **AMOUNT OF CLAIM**

Please indicate the estimated amount of the claim, rounded to the nearest dollar. The estimated amount of the claim is requested for data collection and clerical processing purposes only. The amount of the claim shall not be used for any other purpose.

☐ $8,000 or less
☐ $8,001 - $30,000
☐ $30,001- $50,000
☐ $50,001- $75,000
☐ $75,001 - $100,000
☒ over $100,000.00

III. **TYPE OF CASE** (If the case fits more than one type of case, select the most definitive category.) If the most descriptive label is a subcategory (is indented under a broader category), place an x on both the main category and subcategory lines.

- 1 -

**CIRCUIT CIVIL**

☐ Condominium
☐ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence—other
       ☐ Business governance
       ☐ Business torts
       ☐ Environmental/Toxic tort
       ☐ Third party indemnification
       ☐ Construction defect
       ☐ Mass tort
       ☐ Negligent security
       ☐ Nursing home negligence
       ☐ Premises liability—commercial
       ☐ Premises liability—residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
       ☐ Commercial foreclosure
       ☐ Homestead residential foreclosure
       ☐ Non-homestead residential foreclosure
       ☐ Other real property actions

☐ Professional malpractice
       ☐ Malpractice—business
       ☐ Malpractice—medical
       ☐ Malpractice—other professional
☒ Other
       ☐ Antitrust/Trade regulation
       ☐ Business transactions
       ☐ Constitutional challenge—statute or ordinance
       ☐ Constitutional challenge—proposed amendment
       ☐ Corporate trusts
       ☒ Discrimination—employment or other
       ☐ Insurance claims
       ☐ Intellectual property
       ☐ Libel/Slander
       ☐ Shareholder derivative action
       ☐ Securities litigation
       ☐ Trade secrets
       ☐ Trust litigation

**COUNTY CIVIL**

☐ Small Claims up to $8,000
☐ Civil
☐ Real property/Mortgage foreclosure

☐ Replevins
☐ Evictions
    ☐ Residential Evictions
    ☐ Non-residential Evictions
☐ Other civil (non-monetary)

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

**IV.    REMEDIES SOUGHT** (check all that apply):
☒ Monetary;
☒ Nonmonetary declaratory or injunctive relief;
☐ Punitive

**V.    NUMBER OF CAUSES OF ACTION:** [   ]
(Specify)

   2

**VI.    IS THIS CASE A CLASS ACTION LAWSUIT?**
    ☐ yes
    ☒ no

**VII.    HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
    ☒ no
    ☐ yes If "yes," list all related cases by name, case number, and court.

**VIII.    IS JURY TRIAL DEMANDED IN COMPLAINT?**
    ☒ yes
    ☐ no

**IX.    DOES THIS CASE INVOLVE ALLEGATIONS OF SEXUAL ABUSE?**
    ☐ yes
    ☒ no

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief, and that I have read and will comply with the requirements of Florida Rule of Judicial Administration 2.425.

Signature: <u>s/ Jennifer Smith</u>           Fla. Bar # <u>964514</u>
      Attorney or party                     (Bar # if attorney)

<u>Jennifer Smith</u>           <u>10/17/2023</u>
  (type or print name)            Date

# EXHIBIT 2

**IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT**
**IN AND FOR ORANGE COUNTY, FLORIDA**
**CIRCUIT CIVIL**

JENNIFER SMITH,

     Plaintiff,

v.                                        CASE NO.:

FLORIDA AGRICULTURAL & MECHANICAL
UNIVERSITY BOARD OF TRUSTEES,

     Defendant.

_____/

## COMPLAINT

Plaintiff, Professor Jennifer Smith, sues Defendant, Florida Agricultural & Mechanical University Board of Trustees, and states:

### JURISDICTION AND VENUE

1. This is an action for damages in excess of $50,000.00.

2. Venue lies in Orange County because the cause of action accrued in Orange County, and Defendant conducts business and employes individuals within Orange County.

### ADMINISTRATIVE PREREQUISITES

3. All conditions precedent to bringing this action have occurred.

### PARTIES

4. Plaintiff, Jennifer Smith (hereinafter "Professor Smith" or "Plaintiff"), is a female citizen of the United States and a resident of Orange County, Florida, and has so resided at the times material hereto.

5. Defendant, Florida Agricultural & Mechanical University Board of Trustees. (hereinafter "FAMU," "FAMUBOT," or "Defendant"), is a state university in the Florida university system.

6. Defendant operates FAMU which is headquartered in Tallahassee, Florida, and the FAMU College of Law (where the Professor Smith works), which is located in Orlando, Florida.

## **GENERAL ALLEGATIONS**

7. Professor Smith began working for the Defendant in May 2004, with an official start date of August 8, 2004.

8. Professor Smith performed the duties of a law professor and was subject to the direction and control of Defendant.

9. Professor Smith is a tenured full professor and has been since 2016.

10. On August 16, 2013, then Dean Pernell, Professor Smith's immediate supervisor, evaluated her as excellent in teaching, scholarship and service for the 2012-13 academic year.

11. In May 2014 for year 2013-14, then Dean Pernell evaluated Professor Smith as excellent in teaching, scholarship and service for the 2013-14 academic year.

12. Law faculty were not re-evaluated again for nearly a decade until Professor Smith reported that to BOT board members at a meeting with the faculty at the College of Law.

13. In 2015 after Professor Smith sued for equal pay, Defendant recognized there was gender inequity of up to $20k in its law faculty salaries in "*An Analysis of Instructional Faculty Salary Equity in the Florida Agricultural and Mechanical University College of Law*," prepared by the Florida A&M University Office of Institutional Research (August 2015), which found that for tenured full professors:

2

a) Average and median salaries for instructional faculty in the college were computed by gender and rank. As Table 2 shows, for the 2014-15 academic year the average and median salaries for male College of Law instructional faculty exceeded those of female instructional faculty at both the Professor and Associate Professor ranks. The average salary for males holding the rank of Professor exceeded the average for females at the same rank by $17,691. (P. 3)

b) The model estimated that on average, when controlling for other factors male faculty in the College of Law at the rank of Professor earned $20,199 more than their female colleagues. (P. 10)

c) Focusing exclusively on College of Law faculty at the Professor rank, the results from Model 2 suggest that in general female faculty at the Professor rank in the FAMU of College earned less than their male counterparts. (P. 13)

14. Defendant employs a similar position of tenured full professor at the College of Law, held by Ewanrinareto "Areto" Imoukhuede (Comparator), a male professor, hired on August 9, 2021.

15. Professor Smith and Comparator performed and perform substantially equal work in terms of skill, effort, and responsibility, under similar working conditions.

16. Despite performing substantially equal work, Professor Smith is paid nearly $25k less than Comparator for performing the same or similar job duties.

17. The Comparator's pay is also about $25k greater than the "lockstep" model that Defendant put in place in the 2016 salary adjustments.

18. The increased pay that Comparator received and receives has not been based on superior skill, education, or experience or any other legitimate factor.

19. On May 9, 2022, Professor Smith wrote the president of the University, Dr. Larry Robinson, about the disparity in pay between her and Comparator.

20. On June 28, 2022, Professor Smith filed an informal gender equity complaint with

Defendant's Equal Opportunity Program ("EOP").

21. On September 22, 2022, Defendant's EEO department sent its investigative report to Professor Smith, denying any pay inequities without any rationale for paying Comparator more than Professor Smith.

22. On October 18, 2022, Professor Smith filed a Charge of Discrimination with the EEOC under the Equal Pay Act.

23. October 20, 2022, at precisely 10:30 am, Professor Smith reported a violation of the Code of Conduct to Associate Dean of Students Reginald Green via text message, pertaining to an incident involving an unidentified female student, later identified as MW.

24. Professor Smith alleged that MW displayed deliberate, aggressive, and confrontational behavior, specifically described as "so rude" and "aggressively rude," by barging into a class session in which she was not enrolled, fully aware that the classroom was being used by Professor Smith, as evidenced by a crowd of over 40 students gathered in the hallway, respectfully awaiting the conclusion of the ongoing class.

25. The incident unfolded when MW entered the classroom through the back door and declared that her professor (M. Reyes ("Reyes")) told her that she needed to sit down to get ready for the next class starting at 10:30am.

26. After being instructed to leave by Professor Smith, MW, now very irate, positioned herself outside the front door of the classroom, awaiting an opportunity to re-confront Professor Smith about Professor Smith using the classroom that Professor Smith had reserved a few weeks earlier for a make-up class. Professor Smith had never encountered MW before this occurrence at the law school and had no idea who this unhinged person was.

27. Sometime later, Professor Smith learned from another professor, Patricia Broussard, how

4

remorseful and ashamed MW was said to be, specifically because MW was clerking for the firm where Professor Smith had been a partner, so on December 18, 2022, Professor Smith sent MW the following email to give MW peace about her employment opportunities:

> Hi. I am the professor who you met accidentally in the hallway several weeks ago (late Oct) when I was doing makeup exams in the classroom on the second floor.  I was a partner with H&K where you will work this summer. I am proud of you and would not do anything to interfere with a student's career. I wish you the best, and if I can ever help you in any way, please reach out.
>
> Best,
>
> Prof. Smith

MW did not respond. Professor Smith believed the issue was resolved because nearly 60 days had passed since the incident until Professor Smith received emails from Defendant's Compliance department on January 26, 2023.

28. To Professor Smith's surprise, and merely 16 days after she submitted her rebuttal to the EEOC concerning Defendant's position statement on equal pay, Professor Smith learned the issue was not resolved.

29. Nearly 100 days after Professor Smith initially reported the MW incident, on January 26, 2023, Defendant contacted Professor Smith to begin an investigation into the MW incident. But even more surprising, Defendant's investigation made Professor Smith the target, even though Defendant had assured Professor Smith it would look into the incident based on her text to Associate Dean Green, and then to her further surprise, Defendant informed Professor Smith on January 26, 2023 that the outcome of the investigation could be her termination. This was the first time that Professor Smith learned that a complaint had ever been filed against her by MW, including the severity of MW's allegations and the blatant

5

and obvious falsities contained therein.

30. Defendant then carried on a clearly unwarranted investigation from January 26, 2023 until June 5, 2023, ultimately finding all of MW's allegations to be absolutely meritless.

31. MW was the admitted instigator who, on both occasions on the day of the incident, purposefully confronted Professor Smith then MW falsely claimed that she was in fear of her safety with over 40 students in the hallway after MW's repeated voluntary and intentional confrontations with Professor Smith, who had no idea who this person was.

32. On February 15, 2023, Reyes sent an email providing great insight into MW's deliberate disruption of Professor Smith's class on October 20, 2022. In the email, Reyes stated that MW entered Professor Smith's class that day to "remind [Professor Smith] that [Reyes] was about to start class in the classroom where [Professor Smith was] conducting one-on-one sessions with students from [her] civil procedure course. [Professor Smith was] not supposed to be in that classroom where [Reyes] was going to start class in a few minutes. [Professor Smith was] assigned to teach civil procedure in the classroom next door, yet [she] chose to remain in the classroom where [Reys] was due to start teaching evidence to disrupt [Reyes'] class, which [Professor Smith] did." Clearly, MW knew Professor Smith was in the classroom; MW deliberately disrupted [Professor Smith's] class; and MW was the admitted instigator both times she ambushed Professor Smith on October 20, 2022. Professor Smith was in her classroom next door to teach civil procedure at 10:30am, and thus could not have disrupted Reyes' class, which started at 10:30am. Furthermore, Reyes was late to class that day.

33. The investigation was conducted with undue and unreasonable delay, and extended over 130 days from January 26, 2023 to June 5, 2023 to cause needless stress to Professor Smith.

34. Defendant failed to request or preserve key surveillance video evidence, delayed

6

requesting the surveillance video for 104 days (from October 20, 2022 to January 31, 2023) to destroy key evidence that would have immediately exonerated Professor Smith, failed to follow its own Code of Conduct, failed to investigate Professor Smith's complaint against the student, and intentionally disregarded evidence supporting Professor Smith's allegations of deliberate disruptive conduct by MW.

35. Following the investigation, Defendant then falsely accused Professor Smith of retaliation to discredit Professor Smith's legitimate complaints against MW and protect Defendant from potential liability. Then, Defendant recommended the re-imposition of an additional unspecified penalty in its report emailed to Professor Smith on June 5, 2023 ("Report") after Defendant had already instructed the deans to speak with Professor Smith about potential retaliation in March 2023, which had been done, thus duplicating the penalty for the same alleged retaliation.

36. Defendant failed to maintain the confidentiality of the investigation, thereby exposing Professor Smith's protected activity or the details of her complaint to other employees, then falsely alleged another employee (the professor who MW said instructed her to interrupt the class) had filed a complaint against Professor Smith because of Defendant's breach of confidentiality.

37. On June 12, 2023, Professor Smith sent a memorandum addressed to Rica Calhoun (Compliance), Denise Wallace (General Counsel) and Craig Reed (BOT) herein incorporated by reference about the retaliatory actions of the Defendant, and demanded: 1) immediate rescission of the Report, 2) removal of the Report from her file, 3) an immediate investigation of the Code of Conduct violations she initially reported on October 20, 2022 (the date of the incident) against MW, and 4) an investigation into Compliance for its failure to follow its own guidelines, for the reasons herein. Professor Smith never received

a response from the Defendant regarding her memorandum nor any of her demands.

38. On April 30, 2023 and June 13, 2023, Professor Smith supplemented her EEOC complaint with retaliation claims to the EEOC.

39. Professor Smith received a notice of right to sue letter from the EEOC on July 25, 2023.

40. The EPA, 29 U.S.C. § 206 et seq., prohibits employers from paying employees of one sex less than employees of the opposite sex for equal work on jobs requiring equal skill, effort, and responsibility, under similar working conditions.

41. Defendant violated the EPA by paying Professor Smith less than Comparator for performing substantially equal work.

42. After Professor Smith raised concerns about the pay disparity and expressed her intention to exercise her rights under the EPA, Defendant engaged in retaliatory actions against Professor Smith.

43. Defendant's retaliation against Professor Smith includes the adverse employment actions as described above.

44. Defendant's retaliatory actions against Professor Smith were motivated by Plaintiff's exercise of her rights under the EPA, in violation of 29 U.S.C. § 215(a)(3).

45. On October 12, 2023, Defendant notified Professor Smith that she received "a three (3%) percent performance-based increase," which was the highest increase that any employee could receive.

**COUNT I**
**DISCRIMINATION IN COMPENSATION**
**EQUAL PAY ACT OF 1963, AS INCORPORATED INTO**
**THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 206, et seq.**

46. The Plaintiff realleges paragraphs 1 through 45.

47. Plaintiff belongs to a protected class; she is female.

48. Plaintiff's job functions as a tenured full professor at FAMU have been of equal skill, effort, and responsibility to the job functions of the Comparator and were performed under the same or similar working conditions.

49. During all relevant periods, Plaintiff received wages lower than the Comparator while performing the same or substantially more work than the Comparator.

50. Plaintiff is qualified for and entitled to wages equal to or higher than her Comparator's wages performing the same or substantially more work than the Comparator.

51. Defendant violated the Equal Pay Act (EPA), and Plaintiff is entitled to damages and equitable relief, including attorney's fees and costs.

**COUNT II**
**RETALIATION**
**EQUAL PAY ACT OF 1963, AS INCORPORATED INTO**
**THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 215(a)(3)**

52. The Plaintiff realleges paragraphs 1 through 45.

53. Defendant's retaliatory actions against Plaintiff, as alleged herein, constitute a violation of the EPA, 29 U.S.C. § 215(a)(3).

54. The retaliation described herein was based on Plaintiff's exercise of rights protected by law to resist and oppose gender discrimination and harassment and to participate in actions calculated to redress grievances.

55. As a result of Defendant's retaliatory actions in violation of the EPA, Plaintiff has suffered and is entitled to damages and equitable relief, including attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

a)  An order declaring that Defendant has violated the Equal Pay Act, including retaliation provisions;

b)  An order removing any negative references to the October 20, 2022 incident from Professor Smith's employment file;

c)  An award of unpaid wages and other compensation due to Plaintiff as a result of Defendant's violation of the EPA, including interest;

d)  Judgment against Defendant and for Plaintiff awarding compensatory damages on all Counts for the Defendant's violations of law enumerated herein;

e)  Judgment against Defendant and for Plaintiff equalizing her salary with her male counterpart, permanently enjoining Defendant from future violations of law enumerated herein and remedying all benefits of which Plaintiff has been unlawfully deprived w enumerated herein;

f)  An award of liquidated damages in an amount equal to the unpaid wages and compensation due to Plaintiff;

g)  Prejudgment interest;

h)  An award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b); and

i)  Any other relief, including equitable relief, this Court deems just and proper.

**Jury Demand**

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Jennifer Smith*
Jennifer Smith
Florida Bar No. 964514

Law Office of Jennifer Smith
13506 Summerport Village Pkwy.
Suite 108
Windermere, FL 34786
407-455-0712
407-442-3023 (facsimile)
jensmithesq@aol.com

11

# EXHIBIT 3

IN THE COUNTY/CIRCUIT COURT OF
THE NINTH JUDICIAL CIRCUIT, IN
AND FOR ORANGE AND OSCEOLA
COUNTY, FLORIDA

IN RE: CIVIL CASE MANAGEMENT
    PLAN AND ORDER

_____/

**STANDING CASE MANAGEMENT PLAN/ORDER**
**(Streamlined Track)**

      **PURSUANT TO** *In re: Comprehensive COVID-19 Emergency Measures for Florida Trial Courts*, **Fla. Admin. Order No.** AOSC20-23 (Amendment 12)[1] **(April 13, 2021)**, and Ninth Judicial Circuit Court Administrative Order No. 2021-04-01 (collectively the "Case Management Administrative Orders"), this case is before the Court for case management. Based on the case type of the initial filing in this case, the Case Management Administrative Orders, and pursuant to Rule 2.545, Fla. R. Gen. Prac. & Jud. Admin., the Court hereby establishes a case management plan. It is hereby

      **ORDERED** that:

      1.    **COMPLIANCE WITH THIS CASE MANAGEMENT PLAN/ORDER:** The parties shall strictly comply with the terms of this Case Management Plan/Order, unless otherwise ordered by the Court. FAILURE TO COMPLY WITH ALL REQUIREMENTS OF THIS ORDER WILL RESULT IN THE IMPOSITION OF SANCTIONS. If the parties believe that an alternate plan is required or more appropriate, then the parties shall meet, confer and agree on a plan that complies with the time standards set forth in Rule 2.250, Fla. R. Gen. Prac. & Jud. Admin. The parties may submit an agreed upon plan to the division judge for consideration, or set the matter for a case management conference.

      2.    **ADDITIONAL NINTH CIRCUIT AND DIVISION SPECIFIC GUIDELINES:** All counsel and unrepresented parties shall familiarize themselves and comply with the requirements of the following: (i) **Amended Administrative Order Establishing the Ninth Judicial Circuit Court Circuit Civil Court Guidelines** (AO 2012-03-01); (ii) **Amended Administrative Order Establishing the Ninth Judicial Circuit Courtroom Decorum Policy** (AO 2003-07-02); (iii) **Amended Administrative Order Establishing the Ninth Judicial Circuit Court County Civil Court Guidelines, Orange County (AO 2017-04-01)** and (iv) any division-specific guidelines that may be applicable.

_____
[1] Administrative Order No. AOSC20-23 terminated at 12:01 a.m. on June 21, 2021 and was replaced by Administrative Order No. AOSC21-17.

3.     **MODIFICATION OF THIS ORDER:** The parties may not, individually or by agreement, alter or extend the deadlines in this Order, or waive any of the provisions of this Order. The provisions of this Order may be modified only upon motion/stipulation and Court order in accordance with applicable law.

4.     **SERVICE OF THIS ORDER WITH INITIAL PROCESS:** Pursuant to the Case Management Orders, the Plaintiff shall file a copy of this Order in the case. Any party serving an initial pleading (complaint, third-party complaint, etc.) in this case shall serve a copy of this Order together with initial service of process.

**CASE MANAGEMENT PLAN – STREAMLINED TRACK**

*Note: All dates are to be calculated from the date of filing of the initial complaint unless otherwise noted.*

| | |
|---|---|
| Deadline for Service of Process: | 120 days |
| Deadline for Service of Process extended if not accomplished within 120 days: | 150 days, failing same, all unserved defendants are dismissed without prejudice |
| Deadline for Leave to Add Parties and Amend Pleadings: | Motions must be set for hearing and heard within 60 days from service on the last defendant, or deemed abandoned and denied |
| Motions to Dismiss, Motions for More Definite Statement, Motions to Strike and any objections to the pleadings: | Must be set for hearing and heard within 45 days from filing of the motion/objection, or deemed abandoned and denied. Non-movant shall timely submit a proposed order in the event the motion/objection is deemed abandoned and denied |
| Deadline for Completion of Fact and Expert Discovery: | 275 days (additional disclosure and discovery deadlines will be established by the Uniform Order Setting Pre-Trial and Trial in the case) |
| Pre-trial Motions, including Dispositive and *Daubert* Motions | Must be filed no later than 15 days after completion of discovery and heard no later than 7 days prior to the pre-trial conference, or deemed abandoned and denied |
| Mediation/Alternative Dispute Resolution | Within 30 days after completion of the depositions of all parties, counsel shall meet and confer regarding whether an early mediation would be productive to resolution of certain issues or the entire case. A final mediation shall occur no later than 30 days after completion of all discovery |

| Approximate Pre-Trial Conference: | 11 months<br>*Actual Date to be set by Trial Order* |
|---|---|
| Approximate Trial Date: | 12 months<br>*Actual date to be set by Trial Order* |

5. **NOTICES FOR TRIAL:** Within ten (10) days of the case being at issue as defined by Rule 1.440, Fla. R. Civ. P., the Plaintiff shall confer with opposing counsel/party regarding the anticipated length of trial and file a Notice for Trial. The Plaintiff shall forward a copy of the Notice for Trial to the Judicial Assistant at the Division email address noted on the Ninth Circuit website.

6. **DISCOVERY:** All counsel and unrepresented parties shall familiarize themselves with the current edition of the Florida Handbook on Civil Discovery Practice and seek to resolve discovery issues without court intervention whenever possible.

7. *SETTLEMENT: The case will not be removed from the docket until all documents necessary for closure of the case are filed with the Clerk and notification has been provided to the judicial assistant. A notice of settlement is not sufficient to remove the case from the trial docket.*

   **DONE AND ORDERED** in Orange/Osceola County, Florida.


_____
Chief Judge


**If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact the ADA Coordinator in your county at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days. If you are hearing or voice impaired, call 711.**

**ORANGE COUNTY: Human Resources, Orange County Courthouse, 425 N. Orange Avenue, Suite 510, Orlando, Florida, (407) 836-2303**

**OSCEOLA COUNTY: Court Administration, Osceola County Courthouse, 2 Courthouse Square, Suite 6300, Kissimmee, Florida, (407) 742-2417**

REV 04/29/2021

# EXHIBIT 4

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

Case No.: 2023-CA-016035-O

Division: Civil

Jennifer Smith

Petitioner,

and

FLORIDA AGRICULTURAL & MECHANICAL UNIVERSITY BOARD OF TRUSTEES

Respondent.

# SUMMONS:
## ORDEN DE COMPARECENCIA:
## CITATION:

TO/PARA/A: (name of party to be served), FLORIDA AGRICULTURAL & MECHANICAL UNIVERSITY BOARD OF TRUSTEES,
{address (including city and state)/location for service} 1601 S. Martin Luther King Jr. Blvd., 400 Lee Hall, Tallahassee, FL 32307,

# IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint/petition with the clerk of this circuit court.
A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case.
If you do not file your written response on time, you may lose the case, and your wages, money, and property may be taken thereafter without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).
If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also serve a copy of your written response on the party serving this summons at:
{Name and address of party serving summons} Jennifer Smith, 13506 Summerport Village Pkwy, Ste 108, Windermere, FL 34786

If the party serving summons has designated email address(es) for service or is represented by an attorney, you may designate email address(es) for service by or on you. Service must be in accordance with Florida Rule of Judicial Administration 2.516.
Copies of all court documents in this case, including orders, are available at the Clerk of the Circuit

Court's office. You may review these documents, upon request.
You must keep the Clerk of the Circuit Court's office notified of your current address. (You may file Designation of Current Mailing and Email Address).

# IMPORTANTE

Usted ha sido demandado legalmente, Tiene veinte (20) dias, contados a Partir del recibo de esta notificacion, para contestar la demanda adjunto, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo  rotegera; si usted desea que el tribunal considere su defensa, debe
presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales, Si lo desea, puede usted consultar a un abogado immediatament. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparencen en la guia telefonica. Si desa responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante al tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demanadante).

{Name and address of party serving summons}     Jennifer Smith, 13506 Summerport Village Pkwy, Ste 108, Windermere, FL 34786

# IMPORTANT

Des poursuites judiciaries ont ete enterprises contre ous. Vous avez 20 jours consecutifts a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre response ecrite, avec mentin du numero de dossier ci-dessus et du nom des paties nommees isi, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposez pas votre response ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur de Tribunal. Il y a d'autres obligations juridiques et vous pouvez reqerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).
Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

{Name and address of party serving summons}     Jennifer Smith, 13506 Summerport Village Pkwy, Ste 108, Windermere, FL 34786

THE STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE: You are commanded to serve this summons and a copy of the complaint in this lawsuit on the above-named person.

October 30, 2023

TIFFANY M. RUSSELL
CLERK OF THE CIRCUIT COURT

By: _____ *St Green*

Deputy Clerk

**Civil Division**
**425 N. Orange Avenue**
**Room 350**
**Orlando, Florida 32801**

# EXHIBIT 5

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA
CIRCUIT CIVIL

JENNIFER SMITH,

     Plaintiff,

v.
                                          CASE NO.: 2023-CA-016035-O

FLORIDA AGRICULTURAL & MECHANICAL
UNIVERSITY BOARD OF TRUSTEES,

     Defendant.

_____/

## PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF

Plaintiff Jennifer Smith (hereinafter "Professor Smith"), moves this court for an emergency temporary restraining order and states as follows:

1.     Professor Smith has filed a lawsuit for injunctive relief and damages resulting from a violation of and retaliation under the Equal Pay Act, breach of her employment contract, and violation of her procedural due process. She requests that this Court require Defendant to maintain the *status quo* regarding her employment as a tenured professor in accordance with the Faculty Handbook and Florida A&M University Regulations (FAMU Regulations) and order that the parties engage in expedited discovery to determine whether there is any cause for her termination.

2.     On October 17, 2023, Professor Smith filed an equal pay complaint in this Court. When Defendant became aware of the complaint in mid-November 2023, it began the process to terminate her tenured employment with manufactured "just cause" that was pretext for retaliation.

3.     Pursuant to FAMU Regulations, Professor Smith was entitled to and did have a hearing

on her proposed termination on January 11, 2024, before a three-person panel chosen by Defendant. Each panel member was an attorney. In its report dated January 12, 2024, the panel found no just cause to terminate Professor Smith and recommended that Defendant rescind its notice of termination to Professor Smith. The panel's report stated:

> The Panel that was chosen to facilitate the January 11, 2024 conference, convened on behalf of Jennifer M. Smith, consisted of university employees Andrea Nelson, Bryan F. Smith, and Patricia West. The Panel convened to determine whether or not it would make a recommendation to affirm the university's "Notice of Intent to Dismiss from Employment". **After careful and thorough deliberation, the Panel unanimously recommends the "Notice of Intent to Dismiss from Employment" be rescinded as this Panel does not find the employee's "re-filing" of what was believed to be a previously filed complaint to be an act of retaliation.** (Emphasis added.)

4.      According to FAMU Regulation 10.120(4): "If the University determines after the conference that it will proceed with the proposed disciplinary action, the employee shall be notified within five workdays prior to the date the action is effective."

5.      According to FAMU Regulation 10.120(1), Defendant shall give written notice to the employee of the proposed action. According to Regulation 10.120(2): "The notice shall include the following information: (a) The effective date of the University's proposed final action."

6.      The date of the proposed final action in Defendant's written notice was listed as January 19, 2024.

7.      Notwithstanding Professor Smith emailing the Defendant on January 18, 2024, to ask about Defendant's decision, Defendant ignored Professor Smith until January 19, 2024, at 6:45 pm.

8.      Defendant then apologized for the delay and said that the "letter should be available next week."

9.      Defendant failed to notify Plaintiff by January 18, 2024, and thus, Defendant waived its ability to terminate Professor Smith, who believed the notice was withdrawn due to the University's

2

inaction as indicated by the FAMU Regulation.

10.     In the late afternoon of January 23, 2024, Defendant emailed Professor Smith to indicate that it was moving forward with her termination even though the panel recommended Defendant not do so.  By FAMU Regulations, notice has to be given by certified mail or personal delivery.

11.     Contrary to the FAMU Regulations and because Defendant missed its notification deadline of January 18, 2024, Defendant changed the effective date of Professor Smith's termination from January 19, 2024, to January 30, 2024, even though FAMU Regulations indicate the effective termination date must have been indicated in the December 5, 2023, notice.

12.     Defendant provided appeal procedures to Professor Smith.

13.     Professor Smith prevailed in the hearing and thus believes any appeal to Defendant will be futile because Defendant failed to accept the recommendation of the hearing panel comprised of three disinterested lawyers chosen by Defendant.

14.     FAMU Regulations provide that Defendant can appoint each and every decisionmaker in every step of the FAMU appeal process.

15.     Thus, there is no reason to believe Defendant will accept the recommendation of any decisionmaker that recommends rescission of the notice to terminate moving forward.

16.     As a result of the unlawful conduct on the part of Defendant, Professor Smith will suffer immediate and irreparable injury, and loss and damage of a substantial nature if preliminary injunctive relief is not granted as more fully set forth in the Verified Amended Complaint and Memorandum of Law attached hereto.

17.     Defendant will not suffer any prejudice by being required to maintain the *status quo* through the issuance of a preliminary injunctive order.

Accordingly, Plaintiff hereby requests the Court schedule a hearing on her Motion for a Temporary Restraining Order and Preliminary Injunctive Relief so all the parties can be heard on this

3

matter.

Respectfully submitted,

*/s/ Jennifer Smith*
Jennifer Smith
Florida Bar No. 964514
Law Office of Jennifer Smith
13506 Summerport Village Pkwy.
Suite 108
Windermere, FL 34786
407-455-0712
407-442-3023 (facsimile)
jensmithesq@aol.com

4

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA
CIRCUIT CIVIL

JENNIFER SMITH,

     Plaintiff,

v.                                            CASE NO.: 2023-CA-016035-O

FLORIDA AGRICULTURAL & MECHANICAL
UNIVERSITY BOARD OF TRUSTEES,

     Defendant.

_____/

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF

Plaintiff, Jennifer Smith (hereinafter "Professor Smith"), respectfully moves for entry of an emergency temporary restraining order on notice pursuant to Rule 1.610, Florida Rule of Civil Procedure against Defendant Florida Agricultural & Mechanical University Board of Trustees. In support, Professor Smith states as follows:

### I.    Overview and Factual Background

1.    Jennifer Smith is a tenured, full professor at the Florida A&M University College of Law.

2.    She has been a faculty member since August 2004.

3.    Prior to joining the FAMU College of Law ("COL"), Professor Smith began as an employment and commercial law associate and was later elevated to partner in the D.C. and Miami offices of an international law firm.

4.    While there, she developed a strong and laudable reputation in the legal community as

a practitioner from her travels with the firm's managing partner and her service as department chair of the South Florida Health Law Group.

5.    The COL Faculty Handbook specifically explains:

> [t]enure in the University: A faculty employee who has been granted tenure by the BOT shall have the status of permanent member of the faculty and be on the continuing employment of the University until he/she: resigns, retires, dies, is dismissed for just cause or is discontinued pursuant to layoff provisions.

(COL Faculty Handbook, p. 61-62, Amended Complaint, Ex. 9).

6.    Pursuant to the COL Faculty Handbook, Defendant recognizes tenure as "continuous employment." Defendant's actions over the years have reflected the same.

7.    Professor Smith and Defendant also entered into signed agreements annually concerning the specific compensation package for the corresponding year. The same has occurred for the present academic year 2023-2024. (Smith 2023-24 Contract, Amended Complaint, Ex. 3)

8.    From 2012 to 2021, Professor Smith litigated against Defendant for equal pay. Her litigation has resulted in (1) significant individual pay increases for women faculty ranging up to $23,000, (2) elimination of the gender pay gap between male and female associate deans that previously amounted to a $20,000 difference, and (3) otherwise overdue promotions for women faculty.

9.    Defendant completed a salary analysis study in 2015 that confirmed Defendant underpaid women faculty.

10.    To remedy or normalize the differences in pay, Defendant created a salary structure in 2016 that it intended to follow moving forward.

11.    In August 2021, Defendant hired a male faculty member, Ewanrinareto "Areto" Imoukhuede (Comparator), ten years junior to Professor Smith, well outside of the 2016 salary structure at a salary nearly $25,000 more than Professor Smith.

12.    On May 9, 2022, Professor Smith wrote Defendant's president, Dr. Larry Robinson, about

the disparity in pay between her and Comparator. Robinson referred her to the FAMU Equal Opportunity Program (EOP).

13. On June 28, 2022, Professor Smith filed a gender equity complaint with Defendant's EOP.

14. On September 22, 2022, Defendant's EOP department sent its investigative report to Professor Smith, denying any pay inequities without any rationale for paying Comparator more than Professor Smith.

15. On October 18, 2022, Professor Smith filed a Charge of Discrimination with the EEOC under the Equal Pay Act.

16. On October 20, 2022, a student (MW) intentionally disrupted Professor Smith's class and then waited for Professor Smith to exit the classroom to re-confront Professor Smith in violation of the Student Code of Conduct (Student Handbook, p. 122, Amended Complaint, Ex. 10).

17. Professor Smith was unaware of the student's identity, so she immediately sent a text to Associate Dean Green with a description of the student for identification purposes.[1]

18. Associate Dean Green responded at 8:46 pm that same evening of the incident: "Jen, I will try and identify the student tomorrow. Please feel free to send me an email detailing the interaction. Thanks for the notification. Sincerely, Reginald Green."

19. Pursuant to FAMU Code of Conduct 1.019 (18b), Associate Dean Green was "responsible for reporting complaints received to the Office of Compliance and Ethics [("Compliance")], either directly or through the University's Compliance and Ethics Hotline." (Amended Complaint, Ex.6, Notice to Terminate)

20. Green never reported Professor Smith's complaint to Compliance directly or through the hotline.

21. Pursuant to Defendant's Law Student Handbook and its Faculty Handbook, both of which

---

[1] The visible identification of the student was incorrect because the student is a Black woman.

conflict with the FAMU Code of Conduct, Green was also required to investigate the incident himself as "Conduct Officer." (Student Handbook, pp. 116-122, Amended Complaint, Ex. 10; Faculty Handbook, p. 34, Amended Complaint, Ex.9).

22.   Green failed to investigate Smith's complaint as well.

23.   On October 27, 2022, MW filed a complaint against Professor Smith for the interaction on October 20, 2022, but Defendant did not relay that to Professor Smith.

24.   None of Defendant's employees did anything with Professor Smith's complaint or the student complaint for nearly 100 days, until two weeks after Professor Smith filed her rebuttal to Defendant's position statement. Professor Smith pointed out in her rebuttal that Defendant admitted that she was underpaid, which is in violation of the Equal Pay Act.

25.   After allowing nearly 100 days to pass, Defendant's Compliance department was suddenly investigating the student complaint as high importance, and advised Professor Smith that the result of the investigation could be her termination.

26.   During this investigation, which began on January 26, 2023, Professor Smith learned that Associate Dean Green did not follow proper procedures with the complaint she filed on October 20, 2022.

27.   Professor Smith also learned in January 2023 that the unidentified student, a Black woman, had also filed a complaint against Professor Smith a week later on October 27, 2022.

28.   Professor Smith also learned that Defendant did not preserve video evidence that should have existed and would have vindicated Professor Smith; Defendant did not request such evidence until some three months after the incident, and by then the evidence no longer existed, according to Defendant.

29.   On February 1, 2022, Professor Smith emailed Associate Dean Green:

4

Hey...you never did anything about this **complaint** and now I'm being investigated when the student should be, and [Professor] Reyes is all over this. What came of this? **Compliance said you did not follow procedures.** [emphasis added]

Associate Dean Green responded:

The process was to meet with the student and discuss the misconduct allegation. Before I could meet the student, she had already filed her complaint which raised EOP issues. As a result, since the matter involved a faculty member, she sent her complaint to [Associate Dean] Cooper. To my knowledge afterward a determination was made to send the matter to EOP. **We could not conduct two separate investigations without interfering with the other.** An EOP investigation supersedes a conduct allegation. [emphasis added] (Amended Complaint, Ex.5)

But Defendant had not begun investigating neither Professor Smith's complaint nor the student complaint.

30. Because Professor Smith was informed her complaint was improperly filed by Associate Dean Green and reached neither Compliance's hotline nor was personally investigated by him, she re-filed her October 20, 2022, complaint on March 9, 2023, with Compliance's hotline, which is where Green was supposed to have sent it.

31. Compliance immediately deleted Professor Smith's properly filed complaint of the October 20, 2022 incident from the hotline, and Compliance sent the law deans a memorandum to scold Professor Smith for purported retaliation for her conduct.

32. To cover themselves, Compliance and Associate Dean Green coordinated their responses to indicate they did not consider Professor Smith's October 20, 2022, complaint to be an actual complaint in order to transform the complaint she filed on March 9, 2023, into the first "formal" complaint she filed against the student. Because Compliance and Green purported to consider Professor Smith's March 9, 2023, submission to be her first "formal" complaint, Compliance wrongly determined Professor Smith's resubmission of the October 20, 2022, complaint constituted retaliation notwithstanding Associate Dean Green's email. Had Associate Deen Green forwarded Professor

5

Smith's original complaint to Compliance, it would have been a "formal" complaint.

33.    Through Defendant's clearly unwarranted investigation from January 26, 2023, until June 5, 2023, it determined all of MW's allegations were absolutely meritless.

34.    On June 5, 2023, Professor Smith received an email from Compliance:

> Professor Smith, Attached is FAMU-2022-11-117 Investigative Report, addressing allegations of employee misconduct regarding you. The Office of Compliance and Ethics (OCE) concluded that allegation 1 related to disruptive conduct is UNSUBSTANTIATED and allegation 2 related to retaliation is UNSUBSTANTIATED. However, an additional finding of retaliation related to your subsequent actions is SUBSTANTIATED.

35.    The June 5, 2023, email indicates that the investigation concluded.

36.    On June 12, 2023, Professor Smith responded to Compliance's June 5, 2023, Report. Amended Complaint, Ex.11) She did not receive a response.

37.    Although Professor Smith believed the student investigation was concluded with the June 5, 2023, Report, Compliance prepared a Supplemental "Secret" Report on July 6, 2023, and never provided it to Professor Smith. In fact, the Report shows several people were copied but not Professor Smith. This was drafted the Compliance director, Rica Calhoun, Esq., in retaliation for Professor Smith's June 12, 2023, memorandum, detailing the clear bias, negligence and incompetence of Compliance's June 5, 2023, Report and investigation.

38.    Professor Smith saw Defendant's July 6, 2023, Supplemental Report for the first time on December 5, 2023, in the Notice to Terminate. (Amended Complaint, Ex. 6)

39.    This Supplemental Report included copies of descriptive emails/texts Professor Smith provided to Defendant on February 9, 2023 – near the start of the investigation.

40.    In the Supplemental report, the emails/texts were described as "gossip" but never retaliation; and they could not be retaliation as they were filed before any protected conduct or known protected conduct and were not adverse employment actions.

6

41.     Professor Smith did not receive any communications from Defendant regarding the MW student matter after June 7, 2023, when Compliance emailed Professor Smith to confirm receipt of information she sent to Compliance via email on June 5, 2023.

42.     On October 5, 2023, Professor Smith wrote a memorandum to Compliance and the General Counsel about MW's concerning behavior regarding the settled matter that occurred a year before.

43.     Professor Smith indicated continuing concerns about her personal safety with a student who seemed completely engrossed with Professor Smith for the entire year and that she believed she was obligated to report MW's conduct to the Florida Bar, but Professor Smith never reported the student's conduct.

44.     Drafting a memorandum and querying the responsibility to report disruptive student conduct to the Florida Bar is not retaliation.

45.     The University never responded to Professor Smith's memorandum dated October 5, 2023.

46.     On November 13, 2023, another COL professor, Reyes, notified Defendant of Professor Smith's unserved complaint in Reyes's own federal court filing entitled "Plaintiff's Response to Defendant's Motion to Dismiss with Prejudice Plaintiff's Second Amended Complaint, Or in the Alternative, Motion to Strike." *See Reyes v. FAMU BOT*, 6:22-cv-1525-WWB-DCI, 2023 WL 9283741, ECF No. 36 at 12 (M.D. Fla. 2022). Defendant, through that filing, learned Professor Smith had filed a state court complaint for equal pay and retaliation.

47.     Within a few weeks, the Defendant sent Professor Smith a Notice to Terminate on December 5, 2023.

48.     The Defendant's conduct is blatant retaliation because the proposed discipline for Professor Smith's alleged misconduct based on a closed investigation is extreme, University

regulations provide many other lesser options than termination, and none of her conduct the University points to can be considered an adverse action or retaliation against MW.

49.    Professor Smith received a notice of termination ostensibly for retaliation by 1) re-filing her complaint against a student in the proper channels, 2) sending descriptive texts/emails to another faculty member and former student about the October 20, 2022, incident and provided to the University on February 9, 2023 in the investigation and 3) sending an October 5, 2023, memorandum to Defendant indicating her safety concern about MW who, for a year, seemed overly preoccupied with Professor Smith, who had never seen the student before the day of the incident in October 20, 2022. (Amended Complaint, Ex. 6)

50.    According to FAMU Regulation 10.205, "The employee may be dismissed during the term of the employment contract for just cause, regardless of tenure status where it appears to the President or President's designee that an **employee's actions adversely affect the functioning of the University or jeopardize the safety or welfare of the employee, other employees or students.**" [Emphasis added]

51.    The Notice indicated appeal procedures available to Professor Smith and that the effective date of her termination would be January 19, 2024, if Defendant did not rescind the Notice of Termination.

52.    Professor Smith timely notified Defendant that she wanted to have a hearing, which took place on ZOOM on January 11, 2024, before three (3) panel members chosen by Defendant. The panel members were all lawyers: Bryan Smith, Associate VP for Student Affairs; Andrea Nelson, School of Business and Industry; and Patricia West, FAMU Developmental Research School. After the hearing, the panel produced a report dated January 12, 2024.

53.    The panel's report on January 12, 2024, unanimously recommended that Defendant rescind its intent to terminate and stated the following:

8

Pursuant to Florida Agricultural and Mechanical University ("FAMU") Board of Trustees Regulation 10.120, university employee, Jennifer M. Smith, duly requested a conference to hear employee's response to a "Notice of Intent to Dismiss from Employment" letter, dated December 5, 2023, that was tendered to the employee.

FAMU Regulation 10.120 (3)(a) reads as follows, "The purpose of the conference shall be to hear the employee's response to the charges in order to protect the employee from erroneous or arbitrary adverse action; to afford the University an opportunity to reevaluate its position after reviewing the information presented by the employee, and to thereafter make a recommendation to affirm or alter the disciplinary action as may be warranted."

The Panel that was chosen to facilitate the January 11, 2024 conference, convened on behalf of Jennifer M. Smith, consisted of university employees Andrea Nelson, Bryan F. Smith, and Patricia West. The Panel convened to determine whether or not it would make a recommendation to affirm the university's "Notice of Intent to Dismiss from Employment". **After careful and thorough deliberation, the Panel unanimously recommends the "Notice of Intent to Dismiss from Employment" be rescinded as this Panel does not find the employee's "re-filing" of what was believed to be a previously filed complaint to be an act of retaliation** [emphasis added]. (Amended Complaint, Ex. 7)

54.   Of note, the panel/lawyers only addressed the allegation of the re-filing of the complaint because the other two allegations (texts/emails predating the student complaint or her knowledge of it, and the October 5, 2023, memorandum about her personal safety concerns) clearly cannot satisfy any definition of retaliation.

55.   According to Regulation 10.120(3): "After the conference is conducted, the employee **shall be notified**, by the President or President's designee of the University's decision (emphasis added)." (Amended Complaint, Ex., 6)

56.   According to Regulation 10.120(4): "If the University determines after the conference that it will proceed with the proposed disciplinary action, the employee **shall be notified within five workdays prior to the date the action is effective** (emphasis added)." (Amended Complaint, Ex. 6)

57.   According to Regulation 10.120(1), Defendant shall give written notice to the employee

of the proposed action. According to Regulation 10.120(2): "The notice shall include the following information: (a) **The effective date of the University's proposed final action** (emphasis added)." (Amended Complaint, Ex. 6)

58.  The effective date of the proposed final action contained in Defendant's written notice to Professor Smith was listed as January 19, 2024. (Amended Complaint, Ex. 6)

59.  Defendant did not notify Professor Smith by January 18, 2024, of its intent to proceed with her termination.

60.  Given Defendant's inaction and refusal to timely respond to her email dated January 18, 2024, Professor Smith believed the Notice to Terminate had been withdrawn, waiving its ability to terminate her via the reasons listed in the December 5, 2023 Notice to Terminate.

61.  On January 23, 2024, at 4:56 p.m., Professor Smith received an email with notice of Defendant's intent to terminate her that stated:

> After reviewing all documentation and considering the totality of circumstances related to this matter, the University's decision to dismiss you from employment remains in effect. Pursuant to Florida A&M University Board of Trustees (University) Regulation 10.205, you are hereby notified that your current employment with the University will end at the close of business on Tuesday, January 30, 2024. You will remain on Administrative Leave with Pay until this date. In the interim, please refrain from reporting to work or visiting the area(s) related to your current work assignments unless otherwise notified by this Office. The reason for this employment action has been outlined in the "Notice of Intent to Dismiss from Employment" delivered to you on December 5, 2023.   (Amended Complaint, Ex. 7)

62.  To circumvent the notification timeframe outlined in FAMU Regulations, which Defendant missed, Defendant changed the effective date of the proposed termination from January 19, 2024 (as indicated in the December 5, 2023 notice) to January 30, 2024 (the 10.120(4) notification).

63.  Defendant then outlined the procedures that Professor Smith should follow to appeal, again, Defendant's decision.

64.     Because Defendant has rejected the neutral predetermination hearing panel's recommendation to rescind the Notice to Terminate, Professor Smith is convinced it would be futile for her to proceed with any additional appeal process facilitated by Defendant when she prevailed in the January 11, 2024, hearing.

65.     Defendant's decision to disregard the predetermination hearing panel's recommendation demonstrates clear bias and lack of due process.

66.     Professor Smith is clearly harmed by the bias Defendant has shown because Plaintiff will insurmountably suffer in a number of ways described below.

67.     "Tenure" is a special academic credential recognized in higher education in general and by the University as a right to "continuous employment. Professor Smith's position as a tenured full professor is not only her vocation but her avocation – one that cannot be measured in damages, as courts have found. (Smith Declaration, Ex. 1 attached hereto)

68.     In this motion, Professor Smith seeks an order temporarily enjoining Defendant from its action of termination to become effective on January 30, 2024 at close of business, most importantly from the irreparable harm that would result to her as a tenured professor of law. Also, because Defendant failed to follow its own rules or basic precepts of due process in standing by its flawed decision of dismissal. This is an egregious abuse of the law to manufacture a pre-determined outcome to terminate Professor Smith. Emergency relief is necessary within twenty-four hours of the filing of this motion to maintain the status quo and to prevent Defendant from proceeding with termination.

## II.     Legal Standard

Generally, "a temporary mandatory injunction is proper where irreparable harm will otherwise result, the party has a clear legal right thereto, and such party has no adequate remedy at law." *Wilson v. Sandstrom*, 317 So.2d 732, 736 (Fla. 1975). A temporary injunction may be granted if the movant establishes (1) a likelihood of irreparable harm; (2) unavailability of an adequate legal remedy; (3) a

substantial likelihood of succeeding on the merits; and (4) considerations of the public interest support the entry of the injunction. *Miami-Dade Cnty. v. Fernandez*, 905 So.2d 213, 215 (Fla. 3d DCA 2005). As more fully set forth below and in the Complaint, the facts of this case satisfy all four elements for this Court to preserve the status quo and grant the temporary injunction.

### III.   Argument

"[T]he purpose of a temporary injunction is to preserve the status quo until full relief can be granted." *Int'l Vill. Ass'n v. Schaaffee*, 786 So.2d 656, 658 (Fla. 4th DCA 2001). A temporary injunction is neither an adjudication, nor a decision on the merits. *See City of Miami Beach v. State ex rel. Taylor*, 49 So.2d 538, 538 (Fla. 1950) (determining the lower court's issuance of a temporary restraining order was not an abuse of discretion because the lower court's order did not purport to "decide any material points in controversy, but only to preserve the status quo pending the litigation").

### A.   Professor Smith Will Be Irreparably Harmed If This Injunction Is Not Granted Because There is No Adequate Remedy at Law.

A party moving for temporary injunction "must show [] immediate and irreparable injury, loss or damage will result" if the temporary injunction is not issued. *Grand Condo. Ass'n, Inc. v. Cohn*, 970 So.2d 365, 366 (Fla. 3d DCA 2007); *see also Travelers Ins. Co. v. Conley*, 637 So. 2d 373, 375 (Fla. 5th DCA 1994) (finding a request for a temporary injunction to be adequate when it was alleged and supported that the threatened action would result in irreparable injury). The Second District Court of Appeals has explained "irreparable harm" means an injury that must be of a "peculiar nature so that compensation in money cannot atone for it." *First Nat'l Bank in St. Petersburg v. Ferris*, 156 So.2d 421, 423 (Fla. 2d DCA 1963).

Additionally, the Florida Supreme Court has quoted the U.S. Supreme Court's observation that "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *See Gainesville Woman Care, LLC v. State*, 210 So.3d 1243, 1263 (Fla. 2017)

("[B]oth the federal courts and Florida district courts of appeal have presumed irreparable harm when certain fundamental rights are violated." (internal citations and quotations omitted)).

### TROs Granted for Tenured Faculty

A New Jersey case is instructive in this regard, *see Amer. Ass'n of Coll. Professors v. Bloomfield Coll.*, 322 A.2d 846 (C.H. Div. 1974), *affirmed* 346 A.2d 615 (App. Div. 1975). In *Amer. Ass'n of Coll. Professors,* that court was faced with deciding whether certain previously terminated professors were entitled to "continuous employment" under the terms of the college's policies on employment and tenure. *Id.* at 847. The appellate court affirmed the trial court's order of specific performance returning the terminated professors to their teaching positions. *See* 346 A.2d at 618. Concerning the question of money damages in lieu of specific performance, the New Jersey Appellate Court held:

> In view of the uncertainty in admeasuring damages because of the indefinite duration of the contract, and the importance of the status of Plaintiffs in the milieu of the college teaching profession, it is evident that the remedy of damages at law would not be complete or adequate. See opinion below, 129 N.J. supra 273 et seq., 322 A.2d 846; *Fleischer v. James Drugstores*, 1 N.J. 138, 62 A.2d 383 (1948); *Mantell v. Int'l Plastic Harmonica Corp.*, 141 N.J. Eq. 379, 55 A.2d 250 (5th ed. 1941). Section 1401.

*Id.*

More recently, a South Carolina state court granted a TRO for tenured faculty who the court found were terminated for retaliation. The court found irreparable harm "is related to the concept of tenure, and to the impossibility of calculating its loss; and also to the fact that Plaintiff's vocation as a professor of law is not easily replicable." (South Carolina Order, *Zisk v. The Charleston School of Law*, page 5, Ex. 2).

Such is the case with Professor Smith. Money damages cannot compensate her for loss of continuous employment. Nor can money damages compensate her for aspirational or reputational damages and losses that she will otherwise suffer if she is terminated for manufactured cause. There is

no prejudice to the Defendant to maintain Professor Smith's employment until her case is heard before a court. Professor Smith will be threatened with the loss of her stellar, unblemished 20-year academic career if her employment is terminated and tenure status unilaterally and unjustly taken. Professor Smith will be unable to obtain comparable or replicable employment in the area, and given Defendant's timing, she would be unable to obtain employment in virtually any area for this academic term. Moreover, the stigma of this false, just-cause termination will effectively prevent Professor Smith from ever teaching law again.

Courts in Florida have not hesitated to enjoin actions of employers when they threaten harm or loss of the employee's professional practice and career. In those cases, temporary or preliminary relief is warranted. In *Spunberg v. Columbia/JFK Medical Center*, the trial court concluded the plaintiffs, two physicians, would suffer irreparable harm if an injunction was not granted thereby allowing them to retain their privileges at a hospital until the merits of their underlying action could be adjudicated. No. 97-8937 AH, 1997 WL 868607, at *1-3 (Fla. 15th Jud. Cir. Ct. Dec. 23, 1997). The court found that the physicians would suffer loss of professional prestige, patient relations and doctor referrals, which are not quantifiable with money damages. And that the relief is in the public interest because it will prevent the ouster of competent doctors at a health care facility and that there would be no harm to the hospital if the injunction were granted but substantial and irreparable harm to the physicians if the injunction were not granted. This seems to be the norm where physicians are in good standing. However, injunctions were denied in two other cases because the doctors failed to maintain competency and were not in good standing. *See e.g., Shands at Lake Shore, Inc. v. Ferrero*, 898 So. 2d 1037, 1039 (Fla. 1st DCA 2005) (finding that trial court's granting of the injunction must be reversed because the plain wording of the hospital's bylaws contradicted the physician's claim that he is entitled to staff privileges under the hospital bylaws even though he did not maintain continuous insurance coverage); *Genchi v. Lower Fla. Keys Hosp. Dist.*, 45 So. 3d 915, 917 (Fla. 3d DCA 2010) (finding

14

that the prerequisites for the issuance of a temporary injunction were not established because trial court found that physician's hospital privileges were not renewed because he failed to become board-certified within seven years as required).

Accordingly, Professor Smith will suffer irreparable harm if she is terminated and loses her tenure, and there is no adequate remedy at law. Money damages are inadequate and impossible to calculate. Courts have long held that where damages are hard to calculate, such as loss of business goodwill or reputation, there is no adequate remedy at law. *See, e.g., Hatfield v. AutoNation, Inc.,* 939 So. 2d 155 (Fla. 4th DCA 2006). Such is the case here. (See Smith Declaration, Ex. 1).

**B.  There is a Substantial Likelihood of Success on the Face of the Amended Verified Complaint.**

Substantial likelihood of success on the merits is shown if good reasons for anticipating that result are demonstrated. *City of Jacksonville v. Naegele Outdoor Adver. Co.,* 634 So. 2d 750, 753 (Fla. 1st DCA 1994). A pleading must demonstrate "a prima facie, clear legal right to the relief requested." *Colonial Bank, N.A. v. Taylor Morrison Servs., Inc.,* 10 So. 3d 653, 656 (Fla. 5th DCA 2009). "The primary purpose of entering a temporary injunction is to preserve the status quo pending the final outcome of a cause." *NRD Inv., Inc. v. Velazquez,* 976 So. 2d 1, 4 (Fla. 3d DCA 2007) (citations and quotations omitted). "The status quo which will be preserved by a preliminary injunction is the last, actual, peaceable, uncontested condition which preceded the pending controversy." *Id.*; *Michele Pommier Models, Inc. v. Diel,* 886 So. 2d 993 (Fla. 3d DCA 2004) ("purpose of a temporary or preliminary injunction is not to resolve disputes, but rather to prevent irreparable harm by maintaining status quo until a final hearing can occur when full relief may be given.").

<u>Retaliation</u>

Professor Smith is likely to succeed on her retaliation claim in several respects. The FAMU Regulations do not define "retaliation." "The anti-retaliation provision of the Equal Pay Act, as

incorporated into the FLSA, makes it unlawful for an employer to discharge or otherwise retaliate against an employee for filing a complaint or instituting proceedings related to the FLSA." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1314 (11th Cir. 2018) (citing 29 U.S.C. § 215(a)(3)). To prevail on a retaliation claim under the Equal Pay Act, a plaintiff must prove that "(1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1342–43 (11th Cir. 2000). A plaintiff may carry her burden of establishing pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997).

For purposes of this motion, Professor Smith engaged in protected activity when she filed a lawsuit to vindicate her EOP allegations. *See Orange Cnty. v. McLean*, 308 So. 3d 1058, 1063 (Fla. 5th DCA 2020) (finding that a plaintiff engaged in protected activity by filing a lawsuit for racial discrimination and satisfied his prima facie case of retaliation under the Florida Civil Rights Act); *Simpson v. State of Alabama Dep't of Hum. Res.*, 501 F. App'x 951, 954 (11th Cir. 2012). Plaintiff will suffer an adverse employment action if she terminated on January 30, 2024. *See, e.g., Andrews v. Direct Mail Exp., Inc.*, 1 So. 3d 1192, 1194 (Fla. 5th DCA 2009) (finding that termination constitutes an adverse employment action). There is a strong causal connection between Professor Smith's protected activity and Defendant's decision to terminate her in many ways. First, temporal proximity reflects a connection because only 22 days had passed between Defendant learning of Professor Smith's state complaint and Defendant's decision to terminate her. *Shotz v. City of Plantation*, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003). Second, there is no intervening event or action taken by Professor Smith to break the causal connection demonstrated by the 22-day window. Third, Defendant's refusal to follow its well-established guidelines demonstrates its retaliatory motive. *See Brown v. Am. Honda Motor Co.*,

939 F.2d 946, 951 (11th Cir. 1991) ("Oftentimes, departures from well-established guidelines are indicative of attempts to conceal a discriminatory motive through the use of ad hoc criteria which allow the defendant to cloak a discriminatory intent in ostensibly neutral rationales.").

Moreover, the Court should alternatively find that Defendant engaged in a chain of adverse actions against Professor Smith starting after her initial EOP complaint to President Robinson. *See Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1457 (11th Cir. 1998) (finding a plaintiff satisfied her prima facie case by presenting evidence that Wal–Mart knew of her EEOC charge—she testified that she informed her Wal–Mart managers on February 10, 1995 that she had filed an EEOC charge of discrimination the day before—and that the series of adverse employment actions commenced almost immediately after management learned she had filed the charge.).

Having satisfied her prima facie case, Professor Smith has established any reason proffered by Defendant is pretext. Defendant will argue the termination is based on "just cause." Such a position is illogical, unlawful, fraudulent, and unsupported any evidence because the preponderance of the evidence shows Professor Smith never took an action against the student. Defendant's manufactured cause for her termination is pretext because none of the three things that Defendant has accused Professor Smith of qualifies as retaliation: 1) the October 5, 2023, memorandum, 2) the descriptive texts/emails, or 3) the proper re-filing of her original complaint. The October 5, 2023, letter involved NO action taken – it was a call for help from the University about the safety of Professor Smith from a student who seemed unhinged and unbalanced and unusually preoccupied with Professor Smith. The "descriptive" texts/emails were made to another faculty and former student gathering an understanding of the student incident made from October 21-24, 2022, on the day of the student incident, and before any complaint or other protected activity was taken by the student. Only one was made on November 1, 2022, but Professor Smith was not even aware a complaint had been filed against her by the student until late January 2023. The proper re-filing of Professor Smith's original complaint on the Compliance

Hotline because the University administration failed to file it properly cannot be considered retaliation either.

More importantly, on January 11, 2024, there was a hearing/conference that took place before a three (3) person panel on ZOOM. The panel's report on January 12, 2024, recommended that Defendant rescind its Notice to Terminate and stated that Professor Smith had not retaliated against MW and thus she did not violate any University policies. The report only addressed the re-filing of the original complaint because they were clear that the other two instances could not qualify as retaliation under any legal standard. Notwithstanding the panel's recommendation to rescind the notice to terminate, Defendant indicated to Professor Smith that it intends to move forward with her termination – and this intention was made well after the FAMU Regulations indicate it must have been done. This is all egregious where the allegations fail to meet the definition of retaliation by any standard. Professor Smith is likely to prevail on her retaliation claim because she has satisfied her prima facie case, overcome any reason to be proffered by Defendant, and she has demonstrated the inconsistencies and contradictions sufficient to satisfy her burden at the pretext stage as contemplated in *Combs*, 106 F.3d at 1538.

<u>Lack of Due Process</u>

Professor Smith is likely to succeed on her due process claim. The Florida and U.S. Constitutions require "fair procedures and an impartial decisionmaker before infringing on a person's interest in life, liberty, or property." *McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994). "When bringing a section 1983 claim alleging a denial of procedural due process, three elements must be shown: (1) a deprivation of a constitutionally-protected [] property interest; (2) state action; and (3) constitutionally-inadequate process." Bradsheer v. Fla. Dep't of Highway Safety & Motor Vehicles, 20 So. 3d 915, 918 (Fla. 1st DCA 2009). A "tenured employee is entitled to oral or written notice of the charges against [her], an explanation of the employer's evidence, and an opportunity to present [her]

18

side of the story" before a state or state agency may terminate an employee. *See McKinney*, 20 F.3d at 1561. Specifically, "[p]rofessors dismissed from an office held under tenure provisions have been held to have a 'property' interest in the continued receipt of benefits." *See Johnson v. Sch. Bd. of Palm Beach Cnty.*, 403 So. 2d 520, 526 (Fla. 1st DCA 1981).

Here, Professor Smith has a property interest in her employment as a tenured law professor. Additionally, Defendant is an extension of the state, so state action is also satisfied. One case is truly instructive regarding the final element of inadequate process, and that case is *Spiegel v. University of South Florida*, 555 So.2d 428 (Fla 2d DCA 1989). In Spiegel, the court held that "[a] written contract with an explicit tenure provision clearly is evidence of a formal understanding that supports a teacher's claim of entitlement to continued employment unless sufficient 'cause' is shown." 555 So.2d at 429 (citing *Perry v. Sindermann*, 408 U.S. 593, 601 (1972)). The court further found that "USF's attempt to terminate [Spiegel] as department chairman is so fatally defective that it is of no force or effect." *Spiegel*, 555 So.2d at 429. Such is a similar case for Professor Smith. While Professor Smith was granted an opportunity to be heard and by an impartial panel, Defendant's ultimate decisionmaker was biased. The panel found Professor Smith completely without blame and recommended that the Defendant rescind the Notice of Termination. The Defendant, without reason, is refusing and suggesting Professor Smith re-appeal. That means the alleged procedural due process was not fair at all and Defendant predetermined that it would uphold its decision to terminate Professor Smith even if the panel found otherwise – which the panel did. Furthermore, the Defendant missed the deadline to notify Professor Smith that she was going to be terminated nonetheless, so Defendant in violation of the FAMU Regulations reset the termination date to avoid not complying with the notice requirements. Like *Spiegel*, the Defendant's procedural process is so fatally defective it should also have no force or effect and Professor Smith, like *Spiegel*, should be immediately reinstated.

The Defendant will likely argue Professor Smith has had the ability to appeal the decision

19

through a separate complaint process likely to drag out six months. The law does not support that. In *State Dept. of Health and Rehabilitative Services v. Artis*, 345 So.2d 1109, 1112 (Fla. 4th DCA 1977), the court stated: "where pursuit of an administrative remedy would be of no avail, there is no adequate remedy provided, and one is not required to follow that avenue for relief." *See also Southern Bell Telephone and Telegraph Co. v. Mobile America Corp., Inc.*, 291 So.2d 199 (Fla.1974).

<u>Breach of Contract</u>

Professor Smith is likely to succeed on her breach of contract claim. To prevail on a breach of contract claim under Florida law, plaintiff must show: (1) the existence of a contract, (2) a breach of contract, and (3) damages resulting from the breach. Abbott Lab'ys, Inc. v. Gen. Elec. Cap., 765 So. 2d 737, 740 (Fla. 5th DCA 2000).

Here, Professor Smith has an employment contract and tenure (continuous employment) with Defendant. In addition, the FAMU Regulations provide guidelines for the Defendant to follow with regard to termination of tenured faculty. The Defendant has breached the contractual relationship with Professor Smith by violating its own regulations (10.205, 10.204, 10.120 and others) to carry out its malicious investigation against Professor Smith and by creating manufactured subterfuge for the intended termination of Professor Smith, who is one of the most highly productive at the COL. (Smith Employment Contract, Amended Complaint, Ex. 8). As shown above, the breach is also based on alleged retaliation that cannot meet the very basic legal definition of retaliation.

"Where a party seeks to avoid a contractual obligation by reason of the happening of an event or condition stipulated in a contract, the burden of establishing the condition rests upon the party asserting it." 3A Corbin, Contracts, Section 749 (1960). Thus, the burden is on the Defendant to prove that Professor's Smith's reasons for her termination are *bona fide*. Defendant absolutely cannot prove that because, as the panel of three lawyers found, the three allegations against Professor Smith are not retaliation. Therefore, Professor Smith is likely to prevail on her breach of contract claim.

<u>First Amendment</u>

Professor Smith is likely to succeed on her first amendment claim. For preliminary relief, a plaintiff must show that it is "only likely or probable" that (1) her speech was made as a citizen and likely implicated "a matter of public concern," (2) her First Amendment interests outweigh the City's interest in regulating her speech to promote "the efficiency of the public services it performs through its employees." *See Moss v. City of Pembroke Pines*, 782 F.3d 613, 618 (11th Cir. 2015). An employee's petition relates to a matter of public concern if the content, form, and context of the petition, as revealed by the whole record, reveals as much. *See Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 398 (2011). "The forum in which a petition is lodged will be relevant to the determination whether the petition relates to a matter of public concern." *Id.* Moreover, when a plaintiff's petition interferes with government operations and a balancing against of the government and plaintiff's interest favors the employer, the employee's First Amendment claim will fail even though the petition is on a matter of public concern. *Id.*

Here, Professor Smith filed her complaint on October 17, 2023, to a public forum – Florida State Court. Her petition and the speech therein concerned matters of public concern because it involved alleged equal pay violations. *See generally Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791, 820 (11th Cir. 2022) (Lagoa, J., concurring) (explaining that women's rights are issues of general public concern – Title IX context); *Foretich v. Cap. Cities/ABC, Inc.*, 37 F.3d 1541, 1555 (4th Cir. 1994) (recognizing women's rights as an issue of public concern). Professor Smith's state action also sought a declaration that Defendants violated the EPA, which as a matter of public policy would open the door to other women at the College of Law to investigate their own salaries. When Defendant became aware of the complaint 22 days later, Defendant then unlawfully interfered with Professor Smith's freedom of speech and petition because Defendant has retaliated against her by noticing her for termination for engaging in this speech/petition.

21

Additionally, Professor Smith's First Amendment interests outweigh the University's interest because Professor Smith has not taken any action to publicize or otherwise bring unnecessary attention to her filing, nor can it be stated that Smith's petition is interfering with College of Law or University operations. Professor Smith has been removed from campus and has not engaged in or otherwise been able to perform her duties as a professor, so she could not interfere with operations at the College of Law or University. Rather, silencing Professor Smith's concern would render a chilling blow to women across the country with regard to salary equity. *See Oakes Farms Food & Distribution Servs., LLC v. Sch. Dist. of Lee Cnty., Fla.*, 541 F. Supp. 3d 1334, 1343 (M.D. Fla. 2021) (finding that termination would cause a chilling effect on speech). Lastly, "[t]he balance of equities tips in favor of [a] plaintiff's interest in preventing infringement of their First Amendment rights." *Complete Angler, LLC v. City of Clearwater, Fla.*, 607 F. Supp. 2d 1326, 1335 (M.D. Fla. 2009).

## C. Public Interest Will Be Served.

The public interest is served by allowing women the opportunity to pursue equal pay without fear of reprisal because that contributes to a more equitable and inclusive society, fosters economic growth, and upholds fundamental principles of fairness and human rights. By addressing gender-based wage discrimination, the EPA helps create a more just and prosperous society for all. Allowing Professor Smith to be penalized for pursuing equal pay is illegal and contrary to the purposes of the Act. Granting injunctive relief would protect Professor Smith while she pursues her equal pay claims, which is the purpose of the Act. Public interest will be served by enjoining Defendant's bad faith attempt to smear and destroy Professor Smith. Accordingly, the temporary injunction will serve the public interest by preventing and enjoining Defendant from continuing to violate the Act and frustrate the purposes of the Act.

22

**Bond should be waived.**

Florida Rule 1.610 provides that "no temporary injunction shall be entered unless a bond is given by the movant in an amount the court deems proper, conditioned for the payment of costs and damages sustained by the adverse party if the adverse party is wrongfully enjoined." However, the rule also provides that "No bond shall be required for issuance of a temporary injunction issued solely to prevent physical injury or abuse of a natural person." Neither the Florida Supreme Court nor has the Fifth DCA declared what constitutes "physical injury or abuse" sufficient to exempt a litigant from the bond requirement. In 1999, the Fifth DCA discussed the possibility that a trial court's waiver of the bond requirement may be sufficient where the injunction expressly states bond was waived solely to prevent mental anguish established by the movant. *See Image Data, L.L.C. v. Sullivan*, 739 So. 2d 725, 727 n.5 (Fla. 5th DCA 1999). Since then however long established that "the lack of a bond does not invalidate the injunction as Appellants claim." *See Housman v. Housman,* 370 So. 3d 1006, 1009 (Fla. 5th DCA 2023); *Graham v. Battey*, 347 So. 3d 515, 522 (Fla. 5th DCA 2022); Ralicki v. 998 SW 144 Ct. Rd, LLC, 254 So. 3d 1155, 1157 (Fla. 5th DCA 2018).

Here, Professor Smith alleges she faces insurmountable losses professionally and personally and that her First Amendment rights have been abridged. Her loss of First Amendment rights, even for a second, constitutes catastrophic injury-in-fact. Additionally, Professor Smith suffers and will suffer insurmountable mental anguish if she is required to post a bond because there is no guarantee Defendants will continue to employ her and she will have to choose use money she would otherwise use for her father's daily care to afford a bond. Therefore, Professor Smith respectfully asks this Court to use its discretion to waive imposition of a bond based solely on the mental anguish and mental harm it will cause. Defendant will not suffer any damages by the Court's grant of injunctive relief.

23

## Conclusion

As discussed above, Professor Smith will be irreparably harmed by the loss of tenure; she is unable to obtain comparable employment because of this unfair, abrupt decision by Defendant; and money damages are insufficient to compensate for the loss of tenure status and loss of the ability to continue as a leading faculty member at the COL.

Professor Smith's contributions to the FAMU COL cannot be quantified. Her hard-earned status as a tenured professor must be protected not only because of the unquantifiable harm that loss of tenure will mean to her as an individual but also because of the loss to be suffered by the institution, its other faculty and students, and the community as a whole. Accordingly, "the remedy of damages at law would not be complete or adequate" and Professor Smith is entitled to injunctive relief reinstating her tenured position. *AAUP v. Bloomfield Coll.*, 346 A.2d 615, 618 (1975); (South Carolina Order, *Zisk v. The Charleston School of Law*, Ex. 2) (*See also* Smith Declaration, Ex. 1).

Maintaining the status quo of Professor Smith's tenured position is the only fair option. Money damages cannot suffice to compensate Professor Smith's loss, not only of her hard-won tenure status, but of her only opportunity to engage in her chosen profession without displacing her family. Equity favors an order for injunctive relief because it protects against not only Professor Smith's loss but also the loss to the school of Professor Smith's mentorship, loyalty, leadership and the "continuity in the ranks of the faculty," which have been recognized as "indispensable to the success of an educational institution in fulfilling its obligations to its students and to society."[2]

---

[2]   *Pomona College v. The Superior Court of Los Angeles County*, 45 Cal. App. 4th 1716, 1725 (1996); *see Smith v. Univ. of N. Carolina*, 632 F.2d 316, 345 (4th Cir. 1980) ("[T]enure is a privilege, an honor, a distinctive honor, which is not to be accorded to all … professors. It is a very high recognition of merit [and] the ultimate reward for … academic excellence.") (quoting *Johnson v. Univ. of Pittsburg*, 435 F. Supp. 1328, 1353 (W.D. Pa. 1977)).

Plaintiff respectfully requests this Honorable Court to grant the above motion and grant any other relief this Court deems just and proper.

*/s/ Jennifer Smith*
Jennifer Smith
Florida Bar No. 964514
Law Office of Jennifer Smith
13506 Summerport Village Pkwy.
Suite 108
Windermere, FL 34786
407-455-0712
407-442-3023 (facsimile)
jensmithesq@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic mail delivery only to D. Denise Wallace, Vice President and General Counsel, Florida A&M University, Suite 304, Foote Hilyer Administration Center, Tallahassee, Florida 32307, (850) 599-3591(P), (850) 561-2862(F) at denise.wallace@famu.edu on this _____ day of January, 2024.

*/s/ Jennifer Smith*
Jennifer Smith
Florida Bar No. 964514
Law Office of Jennifer Smith
13506 Summerport Village Pkwy.
Suite 108
Windermere, FL 34786
407-455-0712
407-442-3023 (facsimile)
jensmithesq@aol.com

25

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL
CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA
CIRCUIT CIVIL

JENNIFER SMITH,

    Plaintiff,

                                           CASE NO.:
                                           2023-CA-016035-O

FLORIDA AGRICULTURAL &
MECHANICAL UNIVERSITY
BOARD OF TRUSTEES,

    Defendant.

_____/

## DECLARATION OF JENNIFER SMITH

I, Jennifer Smith, being over the age of eighteen, make this declaration on personal knowledge of the following facts:

In 2004, I took a significant pay cut and left a secure place of employment after ten years at a big law firm to do something I thought would love, teaching. But not only would I be teaching, but I would be near the foundation of the start of a law school with a mission that resonated with me – to teach students from underserved communities. Although my formal start date at Florida A&M University College of Law was August 2004, I started in May 2004 without pay to create the student clinics at the law school. The then-dean rewarded my efforts with a monetary grant several months later. Teaching at FAMU COL allowed me to feel that I was continuing my "pro bono" efforts in helping the students and helping the students help the community in service in the clinics. I love teaching the students at the FAMU COL.

### Teaching and Student Mentorship

Having ascended to partnership at the law firm, I knew that I could work hard and earn



PLAINTIFF'S
EXHIBIT

tenure. I have always been one of the most published of the COL faculty and one of the most advanced in learning new courses to teach our students. I have been proactive in integrating in the law school curriculum cutting-edge course topics that respond to emerging global and societal issues.

Significantly, I have proposed and taught several new courses that are billion-dollar industry courses or at the forefront of the legal landscape in law or society, such as Fashion Law; Marijuana Law & Policy; Intersectionality: Racism, Sexism, Classism, Colorism, Spiritualism & the Law; International Arbitration; Sneaker Law; and Comparative Analysis of Global Marijuana Laws, which have been well-received by students. These courses not only add to our curriculum's diversity but also place our institution at the forefront of emerging legal education trends.

I have also proposed and been working on the creation of Historic Preservation Law and a Survey of Electives Seminar, which would allow students an introduction to various niche areas of the law, such as Wine Law, Historic Preservation Law, Fashion Law, Marijuana Law, Natural Gas Law, International Business Arbitration, in one class.  These innovative courses not only garner student interest but also position our law school as a forward-thinking institution. These courses not only enrich our curriculum but also foster a more diverse and inclusive learning environment. Personally, ensuring our students have access to a cutting-edge legal education also keeps me actively engaged in new learning subjects.

Beyond classroom teaching, I am deeply committed to mentoring students, offering guidance in academic pursuits, career choices, and professional development. This mentorship extends to supervising independent studies and guiding students in their research projects, discussing career opportunities, and connecting students with local lawyers in their areas of interest.

2

Scholarship

My scholarly contributions are a testament to my commitment to advancing legal scholarship and continue to contribute significantly to the field of law. This year, I was excited about the forthcoming publication of my book, WORTH THE FIGHT: ADVANCING THE CAUSE OF EQUAL PAY. Additionally, my law review article, *AI-Powered Educational Equity: Leveraging ChatGPT for Inclusive Legal Education*, reflects my dedication to addressing contemporary legal challenges and promoting inclusive education. This article has already been accepted for publication in the Touro Law Journal of Race, Gender and Ethnicity for Winter 2024.

My recent publications include a new edition of A STUDENT ELECTRONIC DISCOVERY PRIMER AN ESSENTIAL COMPANION FOR CIVIL PROCEDURE COURSES, SECOND ED. (2023), which has been updated to reflect the latest developments in electronic discovery, including artificial intelligence. It serves as an essential guide for students navigating this increasingly important area of law. This is a companion book that I have used in my Civil Procedure (1L) class since the first edition in 2016.

In addition, *Colorism, Shades of Freedom* (S. Cal. Rev. L. & Soc. Just., Vol. 32) was published in 2023. In this law review article, I delve into the legal implications of colorism within the United States justice system, highlighting an often-overlooked aspect of racial and social justice. This article also includes a student essay within it to allow students to place significant writing credits on their resumes. Also, *Historically Black Colleges & Universities: A Model for American Education* (14 Fla. A&M U. L. Rev. 103) was published in 2021 and is a comprehensive law review article on HBCUs and Black history. I began this piece in 2016 and promised it to the FAMU Law Review when it was seeking articles for its journal. This piece reflects on the role of HBCUs in shaping American education, underscoring their significance and offering insights for

3

educational reform.

Over the five-year span of the article's development, several students assisted me with the research, but one student was particularly helpful, and he is recognized as a co-author on the article to allow him to develop his book of scholarship. My work on petitions for certiorari to the United States Supreme Court drafted in 2018 and 2021, and a federal appellate brief drafted in 2019, not only reflects my engagement with pressing legal issues but also demonstrates my commitment to influencing national legal discourse. These writings involved civil rights (Section 1981 as well as an area of Civil Procedure that the federal courts are grappling with) and equal pay issues (Equal Pay Act). Issues like these enhance my teaching in Civil Procedure and other courses, as well as bring the University one step closer to racial and gender equality.

My legal scholarship stands as a beacon of influence and authority. My research and thought-provoking insights have not only captured the attention of peers but have also resonated profoundly within the highest echelons of the judicial system. My work has been cited by an array of prestigious courts, including state supreme and federal appellate and district courts, a testament to the practical impact and relevance of my scholarship. These citations are a clear indicator of the weight and significance my contributions hold in shaping legal discourse and practice. Furthermore, the recognition from fellow scholars and authoritative legal treatises underscores the depth, originality, and rigor of my work. My scholarship not only enriches the academic community but also actively informs and guides judicial reasoning, shaping the contours of legal precedent and policy.

## Service

My service to the community through diverse yet interconnected activities reflects a commitment to leveraging my professional skills and personal passion for the betterment of

society. These roles have allowed me to make significant contributions in areas of democratic participation, legal advocacy, educational development, and community empowerment, resulting in recognition as a "Community Star" from the African American Women's History Month Project, Inc. in 2020. I remain dedicated to continuing these efforts, aiming to make a lasting and positive impact on our COL, University and broader community.

I also created and funded (co-sponsoring with another COL professor) a $500 law review scholarship to encourage student engagement in research and publication of student scholarship. In addition, I donated $10,000 to the University in 2019 for a student emergency fund, but because the University/COL seemed not to be able to figure out how to advance these "emergency" funds to students, the money was given to another HBCU.

Legal Battles

**Equal Pay**

While leading in faculty publications, teaching excellence and service, I was also engaged in a decade-long battle against the University for equal pay. I have not only carved a path as a formidable law professor but also emerged as a trailblazer for gender equity in the legal profession. This relentless pursuit of justice transcended personal struggle, molding me into a professor who embodies resilience, integrity, and an unwavering commitment to fairness. In the classroom, these experiences have translated into a more nuanced and empathetic approach to teaching. My ability to interweave real-world legal battles with academic rigor has not only captivated students but also instilled in them a profound understanding of the law's transformative power.

By sharing my own public experiences of confronting systemic disparities, I hope to have illuminated the path for future lawyers, equipping them with the courage and moral compass to challenge injustices. Furthermore, my fight for equality has had a resounding impact on my

development as a legal educator. It has deepened my engagement with issues of social justice, workplace equity, and the complexities of legal advocacy. My teachings are now imbued with a richness and authenticity that only comes from lived experience, fostering an environment where critical thinking and social consciousness are not just encouraged but are deemed essential.

As a mentor, I have become an inspiring figure, whose journey resonates profoundly with students, particularly those who face or witness inequities. I have transformed the classroom into a crucible where the next generation of lawyers are not only educated but also galvanized to become agents of change. Significantly, my fight for equal pay has also contributed substantially to advancing gender equity in the law. My battle, which echoes the struggles of many women in academia and beyond, has raised critical awareness about gender-based pay disparities and systemic biases in the legal field.

My ultimate victory resulted in 1) individual salary increases for women up to $23,000, 2) closing the $20,000 pay gap between men and women holding the title of "associate dean" and 3) obtaining overdue promotions for women faculty is not just a personal triumph but a landmark achievement in the ongoing struggle for gender equality. Notwithstanding the equal pay battle, I have continued to be one of the few leaders in scholarship productivity and teaching excellence at the COL. That said, the battle for gender equality continues as the gender pay inequities remain fresh.

**FMLA**

In addition to the equal pay battles, I was compelled to file an FMLA (Family and Medical Leave Act) complaint against the University while on FMLA leave in the fall of 2021 because Dean Keller, Associate Dean Cooper, and the University general counsel were reassigning me on my return from a law professor from FMLA to work in the University general counsel's office,

6

specifically under the supervision of the University general counsel to perform legal tasks, and threatening my employment for failure to comply. This was in stark violation of FMLA provisions. The Department of Labor found the University in violation and required it to return leave hours to me, and this has yet to be confirmed as done.

<u>Performance</u>

Notwithstanding my legal battles with Defendant and its negative, retaliatory responses to me in return, I have continued to stand as a model of excellence for the University, the law school and the students.

My evaluations from the deans – only 3 in ten years even though the Faculty Handbook required evaluations annually – have been superior on a scale of 1-5 with 5 the highest.[1]

| Dean | Pernell  2012-13 | Pernell 2013-14 | Keller 2021-22[2] |
|---|---|---|---|
| Teaching Effectiveness | 5.0 | 5.0 | No rating but comments: "You are an active and engaged teacher and scholar." |
| Research | 5.0 | 4.8 | 4.8 |
| Service | 4.6 | 5.0 | 5.0 |
| Other Univ. Duties | 5.0 | 5.0 | 5.0 |

Similarly, my student evaluations have overall been superior. Some of the sample comments from the last few years in my courses are below.

**Civil Procedure (79 students-1Ls):** "Demands excellence from her students. Fair professor. She provides each student with the same opportunity as others. Professor Smith is the most hands on professor at FAMU, which helps us better understand the material and how it applies or does not apply in the legal field. Professor Smith is very intelligent and knows how to teach."

**Comparative Analysis of Global Marijuana Laws, Stetson Law School in the Hague, Netherlands:** "Professor Smith was phenomenal. Prof. Smith did a great job of providing material

---

[1]     The evaluations for all faculty ended in 2014 when I filed a gender pay lawsuit, and the evaluations revealed that my male comparator was being paid more than I was, but he was not performing at the same high level of excellence as I was in teaching, scholarship, or service.

[2]     Based on the standard universal meanings of 1-5 rating.

that was not biased and presented both perspectives for and against. Great professor in an area of law that is newer and constantly changing. This class was <u>great</u>."

**Remedies (12 students -2Ls/3Ls):** "One of, if not the best professor I have taken at FAMU Law. She asks a lot of us as students, I think this was the only class we actually were required to read the whole textbook. She assigned us an additional oral argument and memo assignment. Professor Smith was very helpful and creative in the ways that she taught this class. Her methods will indefinitely stick with me as I pursue my path in the law field. She was always willing to help students understand the material, but made sure that they understood that in order to be successful in her class, students must also do their part and come prepared. She holds her students to a high standard and I believe that is what helps them be successful."

**Fashion Law (9 students -2Ls/3Ls):** "Professor Jennifer Smith was very professional, engaging, knowledgeable on the subject area of Fashion Law and very helpful and informative with insight on writing upper-level writing papers and Seminar papers."

**Health Care Law (14 students -2Ls/3Ls):** "Truly enjoyed Professor Smith's course on Health Care Law. I now have a well-rounded understanding of HCL and I look forward to working in the Health Care Law field. I know what I have learned in class will help me in practice. Overall great professor & the course definitely was a good survey course for health care law."

**Civil Procedure (60 students -1Ls):** "Great class, well organized. Great Professor! Blessing to FAMU COLLEGE OF LAW. I have never in my collegiate experience had a professor like Jennifer Smith. She has to be tough because civil procedure is tough, she is very particular because courts will be particular. Professor Smith truly wants the best for her students and will do whatever it takes (zooms, office hours, emails) to ensure that students understand any misconceptions. I will never forget her and I will always remember what she taught me."

**Marijuana Law & Policy (16 students -2Ls/3Ls):** "The material in this course was very interesting! The controversial material made class discussions very engaging. The professor was knowledgeable and offered legals tips that we can use outside of the class. I feel like a better writer after taking this course."

**Civil Procedure (15 students, evening program-1Ls):** "Professor Smith was phenomenal. Her teaching method is highly engaging, and she does a great job communicating the various nuances of the material covered as it relates to the class examination, bar examination, and in practice. She also makes the class fun. I will look to take as many classes with Professor Smith as possible in the future. Being a part time student that works a demanding full time job, Professor Smith's skill at teaching and ability to make the class time enjoyable makes going through the grind a lot easier to deal with. This course was reading-heavy for sure! Professor Smith gave helpful examples and would go over any questions we had thoroughly to ensure our understanding."

My student evaluations estimated average score on the "overall rating of instructor" is

below.

| Student Evaluations |
|---|
| 4.31 |

Sadly, because of my excellence at my job as a law professor and my love for it, the only way to finally get rid of me would have to be a manufactured charge of misconduct to circumvent my tenure security. I have dealt with much in the way of nonsense at the COL, but my love for teaching and the unique mission of the law school allowed me to enjoy my job there, nonetheless. There is no money that can compensate me for my love of teaching or repair my professional reputation or resume.

As a tenured law professor at the COL, my work is not simply what I do – it is who I am. It is my contribution to the social order of this community and my source of great satisfaction, fulfillment, and accomplishment. I am the sole caretaker of my elderly father, who I cannot relocate because of his medical condition. Despite the heavy responsibility of caring for my father, teaching and serving the students at the COL allows me to do something that I love every single day. Terminating me for a manufactured "cause" that is pretext for retaliation would destroy my reputation, nullify my scholarship, breach my employment contract, penalize me for exercising my right to equal pay and the right to petition, and likely prevent me from ever teaching again.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE INFORMATION AND BELIEF.**

___1/29/24___
Date

___Jennifer Smith___
Jennifer Smith

9

STATE OF SOUTH CAROLINA        )        IN THE COURT OF COMMON PLEAS

COUNTY OF CHARLESTON           )        FOR THE NINTH JUDICIAL CIRCUIT

                               )
NANCY L. ZISK,                 )        Case No.: 2015-CP-10-03661
                               )
        Plaintiff,             )
                               )
    vs.                        )
                               )
THE CHARLESTON SCHOOL          )        ORDER GRANTING PRELIMINARY
OF LAW, LLC; and GEORGE C.     )        INJUNCTION
KOSKO and ROBERT S. CARR,      )
both in their individual capacities, )
                               )
        Defendants.            )
                               )
_____)

This matter came before me for hearing on July 29, 2015, on the motion of

Plaintiff Nancy L. Zisk for a preliminary injunction. Professor Zisk appeared with her

attorney, Capers G. Barr, III of the Charleston Bar. The Defendants appeared through

their counsel, Caroline W. Cleveland and Bob J. Conley. The parties submitted, and the

Court reviewed and considered, all filings including, but not limited to, Plaintiff's verified

Complaint, several affidavits, numerous documents, and the parties' respective legal

memorandum. After reading the briefs of the parties and hearing their oral arguments,

and having taken the matter under advisement, the Court informed the parties of its

decision to order the preliminary injunction. A second hearing was held before me on

August 3, 2015 to consider the matter of bond. The same parties and attorneys appeared

before me on August 3, 2015, and argued their positions about bond.

For the reasons and on the grounds hereafter found, the Court orders that the

Charleston School of Law, LLC (hereinafter referred to as the "Charleston School of

1





PLAINTIFF'S EXHIBIT 2

Law") is preliminarily and temporarily enjoined and restrained from terminating or non-renewing the tenure and employment of Nancy L. Zisk as full professor of law at Charleston School of Law, pending a hearing on the merits of this case.

**Findings of Fact.**

Based on the review of the facts in the record, including the verified complaint and affidavits, the Court makes the following findings of fact:

1.   Nancy L. Zisk was a practicing employment lawyer and adjunct professor of law in Washington, D.C. when, in 2004, she agreed to become one of the founding professors of law at the then-beginning Charleston School of Law. She was initially engaged as a "tenure track" professor of law, and Professor Zisk and her family relocated to Charleston.

2.   The Charleston School of Law was a successful academic venture.

3.   "Tenure" is an accepted academic status recognized at Charleston School of Law, whereby faculty members, after successful completion of probationary service, are granted a status of "continuous employment", with annual agreements that articulate the financial terms of their continued employment for each succeeding year.

4.   The status of tenure at Charleston School of Law is awarded following a process that is described in the Faculty Handbook, and which includes evaluation in the areas of teaching competence, service to the school and community, scholarship, and collegiality. In each annual signed agreement between Professor Zisk and Charleston School of Law, the terms of the Faculty Handbook are incorporated.

5.   Professor Zisk was awarded tenure in 2009. In 2011 she was named as a "full professor of law." The criteria for promotion to full professor of law are rigorous.

6.      Professor Zisk served as Associate Dean for Academic Affairs from 2006 through 2008, and she has annually taught courses in torts, equity and equitable remedies and employment discrimination.

7.      At Charleston School of Law the Faculty Handbook provides that tenure may be terminated for "serious cause, financial exigency, or the discontinuance of a program of instruction not mandated by financial exigency." No further definition is given of "financial exigency", nor is a process or standard described in the Faculty Handbook for terminating a tenured professor on that ground.

8.      On August 7, 2014 the Defendants proposed to the Charleston School of Law faculty to add a new Section 8.3 to the Faculty Handbook, which proposed to provide that the Board of Directors could declare "financial exigency" in their discretion and could terminate tenured faculty on 15 days notice. Plaintiff and other tenured faculty members objected to the proposed amendment, asserting that it would constitute elimination of tenure. On August 12, 2014 the Dean of the School informed faculty that the proposed amendment had been withdrawn. Thereafter, Plaintiff and the Defendant Charleston School of Law signed their annual agreement for the academic year 2014-2015.

9.      Plaintiff openly opposed a pending transaction between the Defendant Charleston School of Law, the Defendants Kosko and Carr, and an outside party, Infilaw, for the sale of the law school. On May 15, 2015 Plaintiff signed a public letter opposing the transaction. A year earlier, on May 16 and May 19, 2014 she had appeared and had spoken at public hearings in opposition to the transaction.

10.     On May 22, 2015 Plaintiff received a memorandum from the "active LLC members", who are the Defendants Kosko and Carr, informing her that she was terminated because of a financial exigency that had been declared five months earlier, in December 2014. She was informed that her termination was "based on her high salary". Six other tenured law professors received the same memorandum of termination.

11.     Although the Defendants offered to Plaintiff an opportunity to appeal, when she requested documents to support their claim of financial exigency, and to describe the criteria by which she was selected for termination, her request was denied. No documents were produced by the Defendants.

12.     Plaintiff nevertheless pursued her appeal in writing. Her appeal was denied. Thereafter the within lawsuit was filed.

## Conclusions of Law.

The purpose of a preliminary injunction is "to preserve the status quo ante and to prevent irreparable harm to the party requesting it. *Compton v. South Carolina Department of Corrections,* 392 S.C. 361, 366 (2011). The party requesting the preliminary injunction must both allege facts sufficient to state a cause of action for an injunction and demonstrate that relief is reasonably needed to preserve the parties' rights during litigation. *Id.* Thus the party seeking a preliminary injunction must establish "that without such relief she will suffer irreparable harm, that she has a likelihood of success on the merits, and that there is no adequate remedy at law". *Poynter Investments, Inc. vs. Century Builders of Piedmont, Inc.,* 387 S.C.583, 586-87, 694 S.E.2d 15, 17 (2010).

4

## Discussion.

A.   <u>Irreparable harm</u>.   The Court concludes that Plaintiff will suffer irreparable harm if preliminary injunctive relief is not granted. The irreparable harm, here, is related to the concept of tenure, and to the impossibility of calculating its loss; and also to the fact that Plaintiff's vocation as a professor of law is not easily replicable.

The Charleston School of Law Faculty Handbook adopts tenure as a status of "continuous employment", but the Handbook does not define "financial exigency", nor does it describe a procedure or standards for termination of a tenured faculty member because of financial exigency. Although no South Carolina decisions have discussed academic tenure or termination of tenure for financial exigency, other courts have discussed those concepts. The Court finds those decisions to be persuasive.

In the case of *Krotkoff v. Goucher College*, 585 F.2d 675, 682 (4th Cir. 1978) the Fourth Circuit Court of Appeals decided a case involving the dismissal of a tenured professor at a private college in Maryland because of financial exigency. The case is instructive because of its discussion about the academic status of tenure, and the extent to which the "national academic community's understanding of tenure" may inform the interpretation of a contract between a private university and a tenured professor. In *Krotkoff* the contract contained no provision for termination of the professor because of financial exigency. The Fourth Circuit Court of Appeals adopted a "national academic community standard", citing a decision from the District of Columbia Court of Appeals:

> "The *Krotkoff-Goucher* contract must be interpreted consistently with the understanding of the academic community about tenure and financial exigency. Although Judge McGowen

5

addressed a different factual situation in *Greene vs. Howard University, 134 U.S.App.D.C. 81, 88, 412 F.2d. 1128, 1135 (1969)*, his comments are appropriate here: 'Contracts are written, and are to be read, by reference to the norms of conduct and expectations founded upon them. This is especially true of contracts in and among a community of scholars, which is what a university is. The readings of the market place are not invariably apt in this non-commercial context.' " 585 F.2d at 680.

Citing a decision from the New Jersey Court of Appeals, the *Krotkoff* Court further held:

"Courts have properly emphasized that dismissals of tenured professors for financial reasons must be demonstrably bona fide. Otherwise, college administrators could use financial exigency to subvert academic freedom. The leading case on this aspect of tenure is *American Association of College Professors vs. Bloomfield College, 129 N.J. Super. 249, 322 A.2d 846 (C.H. Div. 1974), affirmed, 136 N.J. Super. 442, 346 A.2d 615 (app. Div. 1975)*. There, the court concluded that Bloomfield College used its genuine financial difficulties as a subterfuge to achieve its goal of abolishing tenure at the institution. Since Bloomfield acted in bad faith, the court ordered it to reinstate the tenured teachers that it had dismissed." *Kratkoff, supra* 585 F.2d at 681.

In the *Bloomfield College* case, the New Jersey Appeals Court affirmed a Trial Court Order of specific performance, returning the terminated professor to his teaching position. As for the college's argument that money damages could be awarded in lieu of restoration, the *Bloomfield* court said:

"In view of the uncertainty in admeasuring damages because of the indefinite duration of the contract, and the importance of the status of Plaintiffs in the milieu of the college teaching

6



profession, it is evident that the remedy of damages at law would not be complete or adequate. See opinion below, 129 N.J. supra 273 et. seq., 322 A.2d 846; *Fleischer vs. James Drugstores, 1 N.J. 138, 62 A.2d 383 (1948); Mantell vs. International Plastic Harmonica Corp., 141 N.J. Eq. 379, 55 A.2d 250 (1947);* Pomeroy's Equity Jurisprudence (5th Edition 1941), Section 1401." 346 A.2d at 618.

In the same sense, money damages for Professor Zisk's loss of tenure cannot be reasonably calculated. I further conclude that the Court of Appeal's decisions in the cases of *Levine vs. Spartanburg Regional Services District, Inc.,* 367 S.C. 458, 626 S.E.2d 38 (Ct.App. 2005) and *Peek vs. Spartanburg Regional Health Care System,* 367 S.C. 450, 626 S.E.2d 34 (Ct.App. 2005) are supportive. In those cases the Plaintiffs were anesthesiologists who were threatened with loss of their hospital admissions privileges; losses that were not easily calculable, nor replicable. In the same sense, here, Professor Zisk's threatened loss of a tenured, full professorship of law is neither calculable nor replicable.

B.     The likelihood of success on the merits.

A Plaintiff is not required to prove an absolute legal right when seeking a preliminary injunction, but must present a reasonable question as to the existence of such right. When a court is requested to issue a temporary injunction it may consider the merits of a case to the extent necessary to determine whether a temporary injunction is appropriate. Once a *prima facie* showing has been made entitling the Plaintiff to injunctive relief, a temporary injunction will be granted without regard to the ultimate determination of the case on the merits. *AJG Holdings, LLC, et. al. vs. Dunn,* 382 S.C. 43, 674 S.E.2d 505 (Ct.App. 2009); *Helsel vs. City of North Myrtle Beach,* 307 S.C. 29,

7

413 S.E.2d 824 (S.Ct. 1992), *citing Columbia Broadcasting System, Inc. vs. Custom Recording Co., Inc.,* 258 S.C. 465, 471-72, 189 S.E.2d 305, 308(1972).

The burden is on the Defendant Charleston School of Law to prove the requisite "financial exigency". "Where a party seeks to avoid a contract obligation by reason of the happening of an event or condition stipulated in a contract, the burden of establishing the occurrence of the condition rests upon the party asserting it." *AAUP vs. Bloomfield College, supra,* 346 A.2d. at 615. In accord, *Begnal vs. North Idaho College,* 538 F.2d 243, 249 (9th Cir. 1976); *Pace vs. Hymas,* 726 P.2d 693, 697-98 (Idaho 1986). See also *Martin vs. Southern Railway,* 240 S.C. 460, 126 S.E.2d 365; *Smith vs. Ashmore,* 184 S.C. 316, 192 S.E.2d 565 (1937); and *Griswald vs. Texas Co.,* 163 S.C.156, 161 S.E. 409 (1931).

Simply stated, Plaintiff's causes of action for breach of contract are based on, *inter alia,* the allegations that the claimed financial exigency was not "demonstrably *bona fide*", and neither were the reasons for her termination "demonstrably *bona fide"*. The factual allegations of the verified Complaint form the basis for the Court's *prima facie* findings set forth above. Together, they state the requisite *prima facie* showing of Plaintiff's case for breach of contract, from which a "likelihood of success on the merits" may be concluded.

C.    <u>Inadequate remedy at law.</u>

I have previously concluded that irreparable harm will result without the granting of preliminary injunction, and that the calculation of money damages for loss of a contract of continuous employment is not reasonably accomplished, thereby also concluding that Plaintiff has no adequate remedy at law.

8



In addition to those conclusions, the aspirational loss to this particular Plaintiff, as made out in her affidavit, cannot be ignored. In light of these conclusions, injunctive relief must be granted.

     D.    <u>Bond.</u>

As for the matter of bond, Rule 65(c) of the South Carolina Rules of Civil Procedure requires that the granting of a preliminary injunction be secured by the posting of a reasonable bond. In the case of a preliminary injunction, the purpose of bond is to cover only damages before a permanent injunction is issued; and only those damages that are directly attributable to the injunction itself. *Chambron vs. Lost Colony Home Owner's Association,* 317 S.C. 43, 451 S.E.2d. 410 (Ct.App. 1994); *Hyler vs. Wheeler,* 240 S.C. 386, 126 S.E.2d. 173 (1962).

Defendants submitted two affidavits as to financial matters. However, the only specific financial amount entered into the record of this case is stated in the annual contract between Plaintiff and the Defendant Charleston School of Law, wherein her annual salary for academic year 2014-2015 was agreed to be $129,388.02. Anticipating that it could be as long as 24 months before a final resolution of this case can be decided, I find and conclude that a bond in the sum of $500,000.00 is appropriate in this case.

<u>Conclusion.</u>

Professor Zisk is entitled to a preliminary injunction. As concluded above, she is likely to succeed on her breach of contract claims and would incur irreparable harm if the Charleston School of Law is not immediately enjoined from terminating her employment and her tenure; that is to say "non-renewing" it.

It is therefore,

9



ORDERED that the Defendant Charleston School of Law is preliminarily and temporarily prohibited, restrained, and enjoined from terminating or "non-renewing" the employment of Plaintiff Nancy L. Zisk as a tenured full professor at law at the Charleston School of Law, and her employment is hereby reinstated until this matter can be heard on its full merits; and it is further,

ORDERED, that this preliminary injunction is effective upon the posting of a bond of $500,000.00 by Plaintiff, with good and sufficient sureties; and it is further,

ORDERED, if Plaintiff does not post the required bond on or before the tenth day following entry of this Order, Defendant Charleston School of Law is not required to assign her to teach any course(s) during the fall 2015 semester, to avoid disruption of student schedules and assigned course instructors, even though Defendant is required to fully reinstate Plaintiff's employment and tenure, as noted above; and it is further,

ORDERED, if Plaintiff does not post the required bond on or before August 31, 2015, this Order is void.

IT IS SO ORDERED.

R. Markley Dennis, Jr.
Presiding Judge

Charleston, South Carolina
August 10, 2015

RMOD/10

10

# EXHIBIT 6

Jennifer Smith, Esq.
Law Office of Jennifer Smith
13506 Summerport Village Pkwy.
Suite 108
Windermere, FL 34786
407-455-0712
407-442-3023 (facsimile)
jensmithesq@aol.com


January 29, 2024


34orange@ninthcircuit.org
The Honorable Heather Pinder Rodriquez
c/o Ms. Diana Rico
Ninth Judicial Circuit – Orange County
Circuit Civil Division 34
425 N. Orange Avenue
Orlando, Florida 32801

Dear Judge Rodriquez:

Enclosed please find Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunctive Relief, along with a Memorandum plus two attachments, an Amended Complaint plus 11 attachments, and a proposed order.

Thank you for your review of this emergency matter.

Sincerely,

Jennifer Smith

cc: Denise Wallace, Esq., opposing counsel

# EXHIBIT 7

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT, IN AND
FOR ORANGE COUNTY, FLORIDA

**JENNIFER SMITH**

      **Plaintiff(s),**

**vs.**

                              **CASE NO.: 2023-CA-016035-O**
                              **DIVISION NO.: 34**

**FLORIDA AGRICULTURAL
AND MECHANICAL
UNIVERSITY BOARD OF
TRUSTEES**

      **Defendant(s).**

_____/

## ORDER ON PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF

THIS CAUSE, came before the court in chambers for review on Plaintiff's Emergency

Motion for Temporary Restraining Order and Preliminary Injunctive Relief filed on January 29,

2024 (the "Motion") and received by the court on January 30, 2024, and the court having

reviewed the Motion and the court file and being otherwise duly advised hereby FINDS as

follows:

      1.      In the Motion, Plaintiff seeks a temporary injunction without a bond to stay her

termination, effective on January 30, 2024, as a tenured professor.

      2.      Unfortunately, by the time the Motion was received by the court, the terminative

was arguable effective.

      3.      Pursuant to Florida Rule of Civil Procedure 1.610(1)(a), a "temporary injunction

may be granted only if . . . it appears from the specific facts shown by affidavit or verified

pleading that immediate and irreparable injury, loss, or damage will result to the movant before

the adverse party can be heard in opposition."

4.      The rule further requires that a temporary injunction may not be granted until a bond is given. The instant case does not fall within the exception to this requirement.

5.      "A temporary injunction without notice is an extraordinary remedy that should be granted sparingly." *State v. Beeler*, 530 So.2d 932, 933 (Fla. 1988); *see also Unified Farm Workers of America*, AFL-CIO v. Quincy Corp. (Fla. 1st DCA 1996).

Based on the foregoing, it is ORDERED that the Motion is DENIED.

**DONE and ORDERED** in chambers in Orange County, Florida on the date set forth in the electronic signature below.

01/31/2024 15:58:03
2023-CA-01035-O

eSigned by Heather Pinder Rodriguez 01/31/2024 15:58:03 CH8Y56Fx

Heather Pinder Rodriguez
Circuit Judge

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing was filed with the Clerk of the Court this 31st day of January, 2024 by using the Florida Courts E-Filing Portal System. Accordingly, a copy of the foregoing is being served on this day to all attorney(s)/interested parties identified on the ePortal Electronic Service List, via transmission of Notices of Electronic Filing generated by the ePortal System.

If there are parties not receiving service through the Florida Courts efiling Portal, counsel will serve a copy of the order via U.S. Mail to the non-efiling parties and file a certificate of service in the court file no later than three days from the date of this order.

JENNIFER SMITH, 13506 Summerport Village Pkwy, Suite 108, Windermere, FL 34786

FLORIDA AGRICULTURAL AND MECHANICAL UNIVERSITY BOARD OF TRUSTEES, 1601 S. Martin Luther King Jr. Blvd., 400 Lee Hall, Tallahassee, FL 32307

01/31/2024 15:58:58
2023-CA-01035-O

eSigned by Diana Rico 01/31/2024 15:58:58 IvycsGES

Diana Rico, Judicial Assistant

# EXHIBIT 8

Case 6:24-cv-00457-PGB-RMN   Document 1-6   Filed 03/04/24   Page 81 of 105 PageID 249

**IN THE CIRCUIT COURT OF THE NINTH JUDICIAL
CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA
CIRCUIT CIVIL**

JENNIFER SMITH,

     Plaintiff,

v.

                                           CASE   NO.:   2023-CA-016035-O

FLORIDA AGRICULTURAL &
MECHANICAL UNIVERSITY BOARD OF
TRUSTEES,

     Defendant.

_____/

## NOTICE OF APPEAL

NOTICE IS HEREBY GIVEN THAT Plaintiff, PROFESSOR JENNIFER SMITH, appeals to the Fifth District Court of Appeals, the order of this Court denying Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunctive Relief dated January 31, 2024, (see conformed copy attached as Exhibit A, in accordance with Florida Rules of Appellate Procedure Rule 9.110(d)(2024)). The nature of this order is a non-final order denying an injunction, and this District Court has jurisdiction over this cause pursuant to Rule 9.130(a)(3)(B), Florida Rules of Appellate Procedure (2024).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via electronic mail delivery only to D. Denise Wallace, Vice President and General Counsel, Florida A&M University, Suite 304, Foote Hilyer Administration Center, Tallahassee, Florida 32307, (850) 599-3591(P), (850) 561-2862(F) at denise.wallace@famu.edu on this 1st day of February 2024.

/s/ Jennifer Smith
Jennifer Smith
Florida Bar No. 964514
Law Office of Jennifer Smith
13506 Summerport Village Pkwy.
Suite 108
Windermere, FL 34786
407-455-0712
407-442-3023 (facsimile)
jensmithesq@aol.com

Exh. A (Circuit Court Order on Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction)

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT, IN AND
FOR ORANGE COUNTY, FLORIDA

JENNIFER SMITH

      Plaintiff(s),

vs.

CASE NO.: 2023-CA-016035-O
DIVISION NO.: 34

FLORIDA AGRICULTURAL
AND MECHANICAL
UNIVERSITY BOARD OF
TRUSTEES

      Defendant(s).

_____/



PLAINTIFF'S
EXHIBIT
A

## ORDER ON PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF

THIS CAUSE, came before the court in chambers for review on Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunctive Relief filed on January 29, 2024 (the "Motion") and received by the court on January 30, 2024, and the court having reviewed the Motion and the court file and being otherwise duly advised hereby FINDS as follows:

1.    In the Motion, Plaintiff seeks a temporary injunction without a bond to stay her termination, effective on January 30, 2024, as a tenured professor.

2.    Unfortunately, by the time the Motion was received by the court, the terminative was arguable effective.

3.    Pursuant to Florida Rule of Civil Procedure 1.610(1)(a), a "temporary injunction may be granted only if . . . it appears from the specific facts shown by affidavit or verified pleading that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."

4.      The rule further requires that a temporary injunction may not be granted until a bond is given. The instant case does not fall within the exception to this requirement.

5.      "A temporary injunction without notice is an extraordinary remedy that should be granted sparingly." *State v. Beeler*, 530 So.2d 932, 933 (Fla. 1988); *see also Unified Farm Workers of America*, AFL-CIO v. Quincy Corp. (Fla. 1st DCA 1996).

Based on the foregoing, it is ORDERED that the Motion is DENIED.

**DONE and ORDERED** in chambers in Orange County, Florida on the date set forth in the electronic signature below.

01/31/2024 15:58:03
2023-CA-010035-O
eSigned by Heather Pinder Rodriguez  01/31/2024 15:58:03 CH8Y56Fx

Heather Pinder Rodriguez
Circuit Judge

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the foregoing was filed with the Clerk of the Court this 31st day of January, 2024 by using the Florida Courts E-Filing Portal System. Accordingly, a copy of the foregoing is being served on this day to all attorney(s)/interested parties identified on the ePortal Electronic Service List, via transmission of Notices of Electronic Filing generated by the ePortal System.

If there are parties not receiving service through the Florida Courts efiling Portal, counsel will serve a copy of the order via U.S. Mail to the non-efiling parties and file a certificate of service in the court file no later than three days from the date of this order.

JENNIFER SMITH, 13506 Summerport Village Pkwy, Suite 108, Windermere, FL 34786

FLORIDA AGRICULTURAL AND MECHANICAL UNIVERSITY BOARD OF TRUSTEES, 1601 S. Martin Luther King Jr. Blvd., 400 Lee Hall, Tallahassee, FL 32307

01/31/2024 15:55:58
2023-CA-010035-O
eSigned by Diana Rico 01/31/2024 15:58:58 IvycsGES

Diana Rico, Judicial Assistant

# EXHIBIT 9

# RETURN OF SERVICE

Court Stamp Here

| | |
|---|---|
| **Court** <br> IN THE CIRCUIT COURT OF THE 9TH JUDICIAL CIRCUIT <br> IN AND FOR ORANGE COUNTY, FLORIDA | |
| **Plaintiff** <br> JENNIFER SMITH | **Case #** <br> 2023-CA-016035-O |
| **Defendant** <br> FLORIDA AGRICULTURAL & MECHANICAL UNIVERSITY BOARD OF TRUSTEES | **Hearing Date** |
| **Person to be Served** <br> Florida A&M University Board of Trustees | **Came to Hand Date/Time** <br> 2/01/2024    8:15 AM |
| **Manner of Service** <br> Corporate | **Service Date/Time** <br> 2/02/2024    12:49 PM |
| **Documents** <br> SUMMONS;FIRST AMENDED COMPLAINT | **Service Fee** <br> $38.12 |

On **2/02/2024** at:
**1601 S. Martin Luther King Jr Blvd, 400 Lee Hall, Tallahassee, FL 32307** I served **Florida A&M University Board of Trustees** by:

Leaving **1** copy(ies) of this process with **James Bond**, a person authorized to accept service and informed that person of the contents thereof, with the date and hour of service endorsed thereon by me.

THE DESCRIPTION OF THE PERSON WITH WHOM THE COPY OF THIS PROCESS WAS LEFT IS AS FOLLOWS:
**I delivered the documents to James Bond who identified themselves as the person authorized to accept with identity confirmed by subject stating their name. The individual accepted service with direct delivery. The individual appeared to be a bald black male contact 45-55 years of age, 5'8"-5'10" tall and weighing 180-200 lbs**

Notary not required pursuant to F.S. 92.525(2).

I am over 18 years of age, not a party to nor interested in this case and I have the proper authority in the jurisdiction where I effected service, pursuant to Florida Statute Chapter 48. Per 28 U.S.C. § 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| | | |
|---|---|---|
| _(signature)_ | 065 | 2/2/2024 |
| James Kady | Process Server ID | Date Executed |



Delivered on 02/02/2024 at 12:49 PM By James Kady Reg. # 065 Ex. 03/31/2024
Case 6:24-cv-00457-PGB-RMN Document 1-6 Filed 03/04/24 Page 88 of 105 PageID 256

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT,
IN AND FOR ORANGE COUNTY, FLORIDA

Case No.: 2023-CA-016035-O

Division: Civil

Jennifer Smith

Petitioner,

and

FLORIDA AGRICULTURAL & MECHANICAL UNIVERSITY BOARD OF TRUSTEES

Respondent.

# SUMMONS:
## ORDEN DE COMPARECENCIA:
## CITATION:

TO/PARA/A: (name of party to be served), FLORIDA AGRICULTURAL & MECHANICAL UNIVERSITY BOARD OF TRUSTEES,
{address (including city and state)/location for service} 1601 S. Martin Luther King Jr. Blvd., 400 Lee Hall, Tallahassee, FL32307,

# IMPORTANT

A lawsuit has been filed against you. You have 20 calendar days after this summons is served on you to file a written response to the attached complaint/petition with the clerk of this circuit court.
A phone call will not protect you. Your written response, including the case number given above and the names of the parties, must be filed if you want the Court to hear your side of the case.
If you do not file your written response on time, you may lose the case, and your wages, money, and property may be taken thereafter without further warning from the Court. There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may call an attorney referral service or a legal aid office (listed in the phone book).
If you choose to file a written response yourself, at the same time you file your written response to the Court, you must also serve a copy of your written response on the party serving this summons at:
{Name and address of party serving summons} Jennifer Smith, 13506 Summerport Village Pkwy, Ste 108, Windermere, FL 34786

If the party serving summons has designated email address(es) for service or is represented by an attorney, you may designate email address(es) for service by or on you. Service must be in accordance with Florida Rule of Judicial Administration 2.516.
Copies of all court documents in this case, including orders, are available at the Clerk of the Circuit

Court's office. You may review these documents, upon request.
You must keep the Clerk of the Circuit Court's office notified of your current address. (You may file Designation of Current Mailing and Email Address).

# IMPORTANTE

Usted ha sido demandado legalmente, Tiene veinte (20) dias, contados a Partir del recibo de esta notificacion, para contestar la demanda adjunto, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo  rotegera; si usted desea que el tribunal considere su defensa, debe
presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales, Si lo desea, puede usted consultar a un abogado immediatament. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparencen en la guia telefonica. Si desa responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante al tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demanadante).

{Name and address of party serving summons}     Jennifer Smith, 13506 Summerport Village Pkwy, Ste 108, Windermere, FL 34786

# IMPORTANT

Des poursuites judiciaries ont ete enterprises contre ous. Vous avez 20 jours consecutifts a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre response ecrite, avec mentin du numero de dossier ci-dessus et du nom des paties nommees isi, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposez pas votre response ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur de Tribunal. Il y a d'autres obligations juridiques et vous pouvez reqerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).
Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

{Name and address of party serving summons}     Jennifer Smith, 13506 Summerport Village Pkwy, Ste 108, Windermere, FL 34786

THE STATE OF FLORIDA

TO EACH SHERIFF OF THE STATE: You are commanded to serve this summons and a copy of the complaint in this lawsuit on the above-named person.

October 30, 2023

TIFFANY M. RUSSELL
CLERK OF THE CIRCUIT COURT

By: _____ *St Green*

Deputy Clerk

**Civil Division**
**425 N. Orange Avenue**
**Room 350**
**Orlando, Florida 32801**

# EXHIBIT 10

**IN THE CIRCUIT COURT OF THE NINTH JUDICIAL
CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA
CIRCUIT CIVIL**

JENNIFER SMITH,

      Plaintiff,

                                                 CASE NO.: 2023-CA-016035-O

FLORIDA AGRICULTURAL &
MECHANICAL UNIVERSITY BOARD OF
TRUSTEES,

      Defendant.

_____/

## MOTION FOR CLERK'S DEFAULT

      Plaintiff Jennifer Smith moves this Court for entry of a Default against Defendant Florida

Agricultural & Mechanical University Board of Trustees for its failure to appear, answer, or file

any pleadings in this cause as required by the Rules of Civil Procedure and for grounds states:

      Defendant has failed to file or serve any papers in the above cause upon

Petitioner/Respondent prior to the filing of the above Motion for Default.

      **WHEREFORE**, the undersigned moves the Court for entry of a Default.

I certify that a copy of the foregoing has been furnished via first class U.S. mail to:
FAMU Board of Trustees, 1601 S. Martin Luther King Jr Blvd, 400 Lee Hall, Tallahassee, FL
32307 on February 26, 2024.

                                      */s/ Jennifer Smith*
                                Jennifer Smith (FBN 964514)
                                Law Office of Jennifer Smith
                  13506 Summerport Village Pkwy., Suite 108
                            Windermere, FL 34786
                                  407-455-0712
                              jensmithesq@aol.com

**IN THE CIRCUIT COURT OF THE NINTH JUDICIAL
CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA
CIRCUIT CIVIL**

JENNIFER SMITH,

    Plaintiff,

                                        CASE NO.: 2023-CA-016035-O

FLORIDA AGRICULTURAL &
MECHANICAL UNIVERSITY BOARD OF
TRUSTEES,

    Defendant.

_____/

## DEFAULT

    A DEFAULT IS ENTERED IN THIS ACTION FOR THE FAILURE OF DEFENDANT
FLORIDA AGRICULTURAL & MECHANICAL UNIVERSITY BOARD OF TRUSTEES TO
SERVE OR FILE A RESPONSE OR ANY PAPER AS REQUIRED BY LAW.

DATED: _____

                                            TIFFANY M. RUSSELL
                                          CLERK OF THE CIRCUIT COURT

                                By: _____
                                               Deputy Clerk

                                          **Civil Division**
                                        **425 N. Orange Avenue**
                                        **Room 350**
                                        **Orlando, Florida 32801**

I certify that a copy of the foregoing has been furnished via first class U.S. mail to: FAMU Board
of Trustees, 1601 S. Martin Luther King Jr Blvd, 400 Lee Hall, Tallahassee, FL 32307 on
_____.

# EXHIBIT 11

**IN THE CIRCUIT COURT OF THE NINTH JUDICIAL
CIRCUIT IN AND FOR ORANGE COUNTY, FLORIDA
CIRCUIT CIVIL**

JENNIFER SMITH,

     Plaintiff,

                                            CASE NO.: 2023-CA-016035-O

FLORIDA AGRICULTURAL &
MECHANICAL UNIVERSITY BOARD OF
TRUSTEES,

     Defendant.

_____/

## DEFAULT

     A DEFAULT IS ENTERED IN THIS ACTION FOR THE FAILURE OF DEFENDANT
FLORIDA AGRICULTURAL & MECHANICAL UNIVERSITY BOARD OF TRUSTEES TO
SERVE OR FILE A RESPONSE OR ANY PAPER AS REQUIRED BY LAW.

DATED: ___FEBRUARY 26, 2024___



**Tiffany Moore Russell**
CLERK OF COURT

*/S/Rosa Aviles*
DEPUTY CLERK

**Civil Division
425 N. Orange Avenue
Room 350
Orlando, Florida 32801**

I certify that a copy of the foregoing has been furnished via first class U.S. mail to: FAMU Board
of Trustees, 1601 S. Martin Luther King Jr Blvd, 400 Lee Hall, Tallahassee, FL 32307 on
_____.

# EXHIBIT 12

Filing # 193152475 E-Filed 03/01/2024 05:23:29 PM

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA

JENNIFER SMITH,

        Plaintiff,                               CASE NO.:  2023-CA-016035-O

v.

FLORIDA AGRICULTURAL & MECHANICAL
UNIVERSITY BOARD OF TRUSTEES,

        Defendant.

_____/

**NOTICE OF APPEARANCE ON BEHALF OF DEFENDANT
AND DESIGNATION OF E-MAIL ADDRESSES**

The law firm of GrayRobinson, P.A., Richard E. Mitchell, Esq., and Julie M. Zolty, Esq., hereby file this Notice of Appearance as Counsel on behalf of Defendant, and pursuant to Rule 2.516, Florida Rules of Judicial Administration and Rule 3.030, Florida Rules of Civil Procedure, hereby designate the following e-mail addresses:

Primary:       rick.mitchell@gray-robinson.com
Secondary:   maryann.hamby@gray-robinson.com

Primary:       julie.zolty@gray-robinson.com
                  chantal.mccoy@gray-robinson.com

Respectfully submitted this 1st day of March, 2024.

                        /s/ ***Richard E. Mitchell***_____
                        Richard E. Mitchell, Esq.
                        Florida Bar No.: 0168092
                        rick.mitchell@gray-robinson.com
                        maryann.hamby@gray-robinson.com
                        Julie M. Zolty, Esq.
                        Florida Bar No.: 1036454
                        julie.zolty@gray-robinson.com
                        chantal.mccoy@gray-robinson.com
                        GRAYROBINSON, P.A.
                        301 East Pine Street, Suite 1400
                        Post Office Box 3068 (32802-3068)

Orlando, Florida 32801
(407) 843-8880 Telephone
(407) 244-5690 Facsimile
*Counsel for Defendant*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 1st day of March, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all registered users.

/s/ ***Richard E. Mitchell***
Richard E. Mitchell, Esq.
GrayRobinson, P.A.

# EXHIBIT 13

**IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA**

JENNIFER SMITH,                                    Case No. 2023-CA-016035-O
                                                   Division: 34
       Plaintiff,

v.

FLORIDA AGRICULTURAL &
MECHANICAL UNIVERSITY
BOARD OF TRUSTEES,

       Defendant.

_____/

### DEFENDANT'S MOTION TO SET ASIDE CLERK'S DEFAULT

Defendant, FLORIDA AGRICULTURAL & MECHANICAL UNIVERSITY BOARD OF TRUSTEES ("FAMU"), pursuant to Rules 1.140(a)(2)(A) and 1.500(d), *Florida Rules of Civil Procedure*, respectfully requests this Honorable Court to render an Order setting aside the Clerk's Default in this action, and states in support:

1.      On October 17, 2023, Plaintiff, Jennifer Smith ("Plaintiff") filed a Complaint for claims related to her employment with FAMU, under the Equal Pay Act of 1963.

2.      On October 31, 2023, the Clerk electronically issued a summons to be served on FAMU.

3.      On January 29, 2024, Plaintiff filed her Amended Complaint, adding claims for breach of contract, first amendment retaliation, violation of procedural due process under 42 U.S.C. § 1983, and requesting preliminary and permanent injunctive relief. Plaintiff did not obtain an Alias Summons for service of her Amended Complaint.

4.      On February 2, 2024, a process server attempted to serve[1] FAMU a copy of the Summons and Amended Complaint.

5.      On February 26, 2024, Plaintiff filed a motion for default against FAMU, which was entered by the Clerk on the same day, based on FAMU's failure to file a response within 20 days.

6.      However, FAMU is statutorily defined as a State University, which is an agency of the State of Florida.  Fla. Stat. §§ 1000.21(8)(c), 1001.75(d).

7.      Pursuant to Florida Rule of Civil Procedure 1.140(a)(2)(A), ". . . an agency of the state . . . must serve an answer to the complaint or crossclaim, or a reply to a counterclaim, within *40 days after service*". (Emphasis added).

8.      Accordingly, FAMU, has at least 40 days—or until March 13, 2024—to respond to Plaintiff's Amended Complaint.

9.      Further, Florida public policy strongly favors the resolution of lawsuits on the merits and not on procedural technicalities. *North Short Hospital, Inc. v. Barber*, 143 So. 2d 849 (Fla. 1962); *Dawkins, Inc. v. Huff*, 836 So. 2d 1062, 1064 (Fla. 5th DCA 2003). Trial courts should therefore liberally exercise discretion to set aside defaults, resolving all reasonable doubts in favor of the defaulting party. *Barber*, 143 So. 2d at 852–53; *Venero v. Balbuena*, 652 So. 2d 1271, 1272 (Fla. 3d DCA 1995) ("In the court's utilization of its discretion, all reasonable doubt is to be resolved in favor of granting relief from default judgments so that matters may be tried on the merits.").

---

[1] FAMU disputes that service of process was properly effectuated. Pursuant to Section 1001.72, service on a state university can be made on the Chair of the Board of Trustees or in the absence of the chair, on the corporate secretary or designee. *See* Fla. Stat. § 1001.72(1). Neither the Chair or her designee were served with the Summons and Amended Complaint in this case. Accordingly, FAMU reserves all rights and defenses regarding insufficient service of process and does not concede that service was ever properly effectuated in this case.

10.     This Court may set aside defaults for mistakes, inadvertence, surprise, and excusable neglect, and upon a showing a meritorious defense, and acting promptly to set aside the clerk's default. Fla. R. Civ. P. 1.500(d); *Dorisca v. DeSantis*, Case No. 2023-CA-014478-O (Fla. 9th Cir. Ct. Sept. 21, 2023) (vacating a Clerk's default improperly entered for failure to respond after 20 days where the defendant had 40 days to respond to the complaint under Rule 1.140(a)(2)).

11.     Accordingly, the Court should set aside the Clerk's Default pursuant to Florida Rule of Civil Procedure 1.140(a)(2).

**WHEREFORE**, Defendant, FAMU, respectfully request the Court to render an Order setting aside the Clerk's default entered against it on February 26, 2024, and granting any and all further relief deemed just and proper.

Respectfully submitted on March 4, 2024.

/s/ ***Richard E. Mitchell***
Richard E. Mitchell, Esq.
Florida Bar No.: 0168092
rick.mitchell@gray-robinson.com
maryann.hamby@gray-robinson.com
Julie M. Zolty, Esq.
Florida Bar No.: 1036454
julie.zolty@gray-robinson.com
chantal.mccoy@gray-robinson.com
GRAYROBINSON, P.A.
301 East Pine Street, Suite 1400
Post Office Box 3068 (32802-3068)
Orlando, Florida 32801
(407) 843-8880 Telephone
(407) 244-5690 Facsimile
*Counsel for Defendant FAMU*

3

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on March 4, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all registered users.

/s/*Richard E. Mitchell*_____

Richard E. Mitchell, Esq.
GrayRobinson, P.A.

# EXHIBIT 14

Florida Sixth District Court of Appeal Docket

Case Docket

Case Number: 6D24-233

Non-Final Civil Other Notice from Orange County

PROFESSOR JENNIFER SMITH vs. FLORIDA AGRICULTURAL & MECHANICAL UNIVERSITY BOARD OF TRUSTEES

Lower Tribunal Case(s):2023-CA-016035-O

3/4/2024 5:12:14 PM

| Date Docketed | Description | Filed By | Notes |
|---|---|---|---|
| 02/02/2024 | Notice of Appeal Filed | Jennifer Smith, Esq. 964514 | WITH ORDER |
| 02/26/2024 | Emergency Motion | Jennifer Smith, Esq. 964514 | EMERGENCY MOTION TO EXPEDITE APPEAL & ORAL ARGUMENT |
| 02/28/2024 | Acknowledgment Letter 1 | | |
| 02/28/2024 | fee - civil; pro se | | This appeal has been filed without a filing fee required by section 35.22(2)(a), Florida Statutes. Appellant shall forward the required $300.00 filing fee or, if applicable, a certificate or order from the lower tribunal finding appellant insolvent pursuant to section 57.081 or 57.085, Florida Statutes, as applicable, within forty days from the date of this order. If this court does not receive either of the above within the prescribed time, this appeal may be subject to dismissal without further notice. |
| 02/28/2024 | nonfinal appeal order for initial brief | | This proceeding is a nonfinal appeal, or an appeal of a specified final order, governed by Florida Rule of Appellate Procedure 9.130. The initial brief and appendix shall be served within twenty days of the date of this order. The appellee(s) shall serve the answer brief(s) within thirty days of service of the initial brief. |
| 03/04/2024 | MISCELLANEOUS ORDER | | In light of the February 28, 2024, order to pay the filing fees in this case, this court will not take further review action on the pending emergency motion to expedite appeal and oral argument until such time as the pending fees in this appeal are resolved. |
| 03/04/2024 | Case Filing Fee Paid through Portal | | |