# MEMORANDUM

To: Dr. Reginal Perry, Associate Provost
CC: Cecil Howard, Esq., Associate Provost (College of Law)
From: Jennifer Smith, Professor of Law
Re: Response to Notice of Termination
Date: January 8, 2024



PLAINTIFF'S EXHIBIT

2

I am submitting this document in response to the notice I received from the University on December 5, 2023, which indicated its intention to terminate my employment effective January 19, 2024.

## I.  SUMMARY OF THE ARGUMENT

The University states its rationale for the notice of termination as the following:

> The reason for this employment action is the substantiated finding of retaliation documented in the FAMU Division of Audit and Compliance Investigative Report 2022-11-117, dated June 5, 2023, and Supplemental Report 2022-11-117, dated July 6, 2023, which are attached and incorporated in this Notice of Intent to Dismiss from Employment ("Notice"). Subsequent to the referenced reports, you continued to engage in behavior which you were advised was retaliatory, as evidenced by your memo dated October 5, 2023, also attached and incorporated in this Notice.

The University thus claims I retaliated in three (3) instances:

1) Re-filing of my original complaint that I filed on the day of the incident on October 20, 2022, again in March 2023 on the Compliance portal because Compliance informed me that Associate Dean Green failed to follow University Code of Conduct and forward my complaint to Compliance in October 2022. Re-filing properly cannot be retaliation because the initial complaint was filed before the student had filed a complaint.

2) Sending texts/emails right after the incident to another faculty and former student to try to learn who the student was who disrupted my class because I had never seen her; and which texts/emails were described by Compliance in its July 2023 report as "gossip." These texts/emails were sent before the student filed her complaint against me and almost three months before I learned the student even filed a complaint against me, so that clearly cannot be retaliation. Actions taken before protected conduct cannot be retaliation nor can "gossip" emails/texts. Furthermore, this July 2023 memo was never sent to Professor Smith.

3) Sending a memo in October 2023 to Compliance and the GC detailing my safety concerns about a student who seemed unusually preoccupied with me and my reporting responsibilities to The Florida Bar, but never reporting anything to The Florida Bar.

Inaction cannot be retaliation. Further, the October 2023 memo was not close in temporal proximity to the October 2022 incident a year earlier.

University Code of Conduct 1.019 (18) provision on retaliation states: "Members of the University community are prohibited from engaging in retaliation against another for reporting compliance or ethics related concerns or participating in an investigation due to such reports. Findings of retaliation are independent of the underlying claim of violation and will result in disciplinary action, up to and including termination." *See* Attachment 1.

The EEOC defines retaliation as: "Retaliation occurs when an employer takes a materially adverse action because an applicant or employee asserts rights protected by the EEO laws." Thus, retaliation requires an adverse action after some protected conduct. Additionally, for an act to constitute retaliation, the state of Florida requires close temporal proximity between the adverse action and the protected activity. The University proposes to terminate me for an alleged adverse action in October 2023 for protected conduct a year earlier in October 2022—52 weeks is not close temporal proximity in Florida and cannot be considered retaliation. *See Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1336 (11th Cir. 1999) (finding seven weeks is sufficiently close temporal proximity).

In my response, I advance six (6) points:

1) Resubmitting my complaint from October 20, 2022, to the Office of Compliance and Ethics (Compliance) in March 2023 against student Michelle Wanamaker (MW) was a necessary action because, according to Compliance, Associate Dean Reginald Green did not adhere to the University's own reporting requirements. Code of Conduct 1.019 (18b) mandates that "Managers/Supervisors are responsible for reporting complaints to the Office of Compliance and Ethics, either directly or through the University's Compliance and Ethics Hotline." Further, The Student Handbook states it is a violation of the Student Code of Conduct for a student to disrupt a class. *See* Attachment 2 at 125. In the event of a violation, the Associate Dean for Student Services and Administration (Associate Dean Reginald Green) is the Conduct Officer who then investigates the incident. *Id.* at 119-121. Associate Dean Green did nothing. Accordingly, I re-filed my October 20, 2022, complaint that I texted to Associate Dean Green on the day of the incident because my complaint had not been properly filed with Compliance or investigated by Associate Dean Green. Therefore, this resubmission of the initial cannot be construed as retaliation. The resubmission was an act of compliance and adherence to the proper procedural channels in response to the failure of the University personnel to adhere to University regulations. Furthermore, Compliance and Associate Dean Green contradicted each as to what process was to happen after I filed a complaint against the student. I was then faulted for the contradictions in the process—which were actions the University was supposed to take and did not.

2) I did not receive the Supplemental Report dated July 6, 2023, prepared by the Compliance department and submitted to President Larry Robinson and others, including the head of the University Equal Opportunity Program (EOP) Office where

I had filed my equal pay complaint several months before. I was under the impression that the MW matter had been concluded following the issuance of the Compliance department's memorandum on June 5, 2023, especially because I submitted a response on June 12, 2023, that the University ignored. Consequently, this July 6 Report, which revisited emails and texts that I previously submitted to the University in February 2023 well before its June 5, 2023, Report and about three months before I was even aware that MW had filed a complaint against me, cannot be considered retaliation or a valid ground for the University's decision to terminate me.  Further, the emails/texts were descriptive fact-finding because I did not know who the student was who disrupted my class, and none of the emails/texts were adverse actions or retaliation against a student.

3) On October 5, 2023, I sent a memorandum to Rica Calhoun in the Compliance department and General Counsel (GC) Denise Wallace.  The memorandum detailed my ongoing concerns. These concerns centered around my personal safety and the persistent unusual behavior exhibited by MW towards me, especially because before the October 2022 incident, I had no prior relationship or experience with this student. It's important to clarify that this memorandum was not an act of retaliation nor was it an action taken against MW; rather, it was a communication expressing legitimate safety and behavioral concerns. Contrary to the Notice to Terminate, I was never advised that writing a memorandum to the University was retaliation as defined by the EEOC or prohibited by any University policy.

4) It is my understanding that the University's outside counsel informed the University about a state court complaint I filed (but not yet formally served) against the University on October 17, 2023. This information about my complaint surfaced in a document related to a different case: it was mentioned on page 12 of a response document submitted by COL faculty member Maritza Reyes in her case filed on November 13, 2023 (case number 6:22-cv-1525-WWB-DCI). Shortly thereafter, the University opted for the drastic measure of noticing its intent to dismiss me and relying on a previously resolved issue involving MW as justification.

5) The timeline demonstrates a pattern of unlawful retaliation by the University responding to my protected actions. The incident involving MW occurred on October 20, 2022, but the University took almost 100 days to initiate an investigation and did not attempt to secure video evidence from the location. Both actions reveal the University's failure to follow its own procedures and codes of conduct. Then, just two weeks after I submitted my response to the EEOC regarding my complaint about unequal pay, on January 26, 2023, the University prioritized investigating the October 20, 2022 incident. This investigation, which eventually concluded that MW's claims were unfounded, extended over nearly five months, from January 26, 2023, to June 5, 2023. Despite this resolution, when the University knew of my lawsuit filing in state court in October 2023, the University revisited the MW incident as a pretext to dismiss me.

6) COL faculty comparators demonstrate real egregious acts of misconduct that did not result in termination.

Smith Statement re Intent to Dismiss
January 8, 2024

## II.    FACTUAL BACKGROUND

***Prof. Smith reported a student for a Code of Conduct Violation.***

On October 6, 2022, I reserved classroom 253 with Juliana Martinez and Associate Dean Green for that day and the next two Thursdays to make up for hurricane days via email.

On Thursday, October 20, 2022, I reported a Code of Conduct violation to Associate Dean of Students Reginald Green via text at exactly 10:30 am. The complaint was against MW, a 2L law student, whom I accused of being "so rude" and "aggressively rude" towards me. This incident occurred while I was teaching a class (oral mid-terms) in a classroom reserved on October 6, 2022, through Dean Green's office for hurricane make-up classes. Upon receiving the text, Dean Green promptly went to the location of the incident but found that I was teaching my next class that starts at 10:30am, and MW was under the instruction of Professor Maritza Reyes in the class next door.

Later that evening on October 20, 2022, at 8:46 pm, Dean Green emailed me acknowledging my complaint, assuring me that he would identify the student involved, requesting any additional details I could provide, and expressing gratitude for notifying him. I did not receive any further communication from Dean Green. Consequently, I visited his office on November 1, 2022 (memorialized by emails with Green's secretary), only to discover that he was on vacation, and his secretary promised that he would reach out to me. However, Dean Green did not reach out to me, and classes concluded less than two weeks later.

University students were discussing the incident amongst themselves. On October 31, 2022, Professor Patricia Broussard informed me that the student involved in the incident was MW, who happened to be interning at the same firm where I was a partner. Professor Broussard mentioned that she had been searching for MW in relation to the Women's Law Group. Professor Broussard shared her conversation with a student/friend of MW's, and that MW was feeling unwell and experiencing remorse, shame, and embarrassment for her behavior towards me during the incident on October 20, 2022. Professor Broussard also shared with me that MW was not aware that I was a partner at the firm where MW was interning.

Then again, in December 2022, Professor Broussard informed me of an incident that occurred in the ladies' restroom. While in a restroom stall, Professor Broussard overheard a discussion among a few students expressing concern for MW and how badly she felt due to her own conduct in relation to the incident. MW appeared to be particularly concerned because of my association with the law firm where MW interned. After this incident, there was not much further discussion about it. I mentioned to Professor Broussard that I contemplated sending MW an email to reassure her that I had no intention of disrupting a student's career, although I acknowledged she and I may have reporting obligations to The Florida Bar about the incident. Professor Broussard suggested that sending MW an email would be a positive gesture, providing her with peace of mind and demonstrating how professionals handle such situations. Professor Broussard maintained regular contact with MW, who never mentioned the incident to Professor Broussard.

On December 18, 2023, Professor Smith sent the following email to MW:

> Hi. I am the professor who you met accidentally in the hallway several weeks ago (late Oct) when I was doing makeup exams in the classroom on the second floor. I was a partner with H&K where you will work this summer. I am proud of you and would not do anything to interfere with a student's career. I wish you the best, and if I can ever help you in any way, please reach out.
>
> Best,
>
> Prof. Smith

MW did not respond.

### *FAMU contacted Prof. Smith to investigate the incident involving MW.*

I believed the issue with MW was resolved until I received emails from Ms. Baker on January 26, 2023, and January 27, 2023, requesting an interview on the October 20, 2022, incident. The first time I received any notice that I was ever the subject of an investigation regarding this incident was January 27, 2023, and with more details on February 1, 2023. I learned that a complaint had been filed against me on October 27, 2022, which was nearly 100 days earlier. I learned from Associate Dean Green that the Dean's office made the unilateral decision to escalate the student complaint without ever speaking to me. Accordingly, I was never informed about a student complaint, about the escalation of the student complaint orchestrated by the Dean's office, that the complaint I filed a week before MW's was going to be ignored.

The retaliation is by MW, who filed her complaint because she learned I was the professor who worked at the firm for nearly 11 years and was a partner. MW was scared of the ramifications if I reported the issue to the firm.

On February 1, 2022, I emailed Associate Dean Green:

> Hey...you never did anything about this complaint and now I'm being investigated when the student should be, and [Professor] Reyes is all over this. What came of this? Compliance said you did not follow procedures.

Associate Dean Green responded:

> The process was to meet with the student and discuss the misconduct allegation. Before I could meet the student, she had already filed her complaint which raised EOP issues. As a result, since the matter involved a faculty member, she sent her complaint to [Associate Dean] Cooper. To my knowledge afterward a determination was made to send the matter to EOP. We could not conduct two separate investigations without interfering with the other. An EOP investigation supersedes a conduct allegation.

5

Smith Statement re Intent to Dismiss
January 8, 2024

*See* Attachment 3. In an attempt to protect themselves, both the University and Associate Dean Green are now asserting that my October 20, 2022, complaint against MW, which I communicated via text to Dean Green, was not actually a complaint. This stance directly contradicts the previous position taken by both the University and Associate Dean Green. Furthermore, Compliance and Associate Dean Green contradicted each other as to how the October 20, 2022, incident was to even be investigated. Compliance indicated that University policy required Associate Dean Green to report the matter to Compliance, and Associate Dean Green indicated that he was to meet with the student – neither University policy was followed.

On February 15, 2023, Professor Reyes sent an email to the deans and me that shed light on the October 20, 2022, incident. The email stated:

> Last semester (fall 2022), you harassed a student in my evidence course after the student **reminded** you that I was about to start class in the classroom where you were conducting one-on-one sessions with students from your civil procedure course. You were not supposed to be in that classroom when the student **reminded** you that I was going to start class in a few minutes. You were assigned to teach civil procedure in the classroom next door, yet you chose to remain in the classroom where I was due to start teaching evidence to disrupt my class, which you did. You engaged in unprofessional, rude, and harassing behavior in full view of the students in your civil procedure course and my evidence course who were waiting in the hallway (emphasis added).

This email confirms that MW intended to disrupt my class. Because of this email, I wrote Associate Deans Cooper and Green about the incident on February 28, 2023, and neither responded.

On February 16, 2023, I sent a memorandum to Ms. Baker, providing details about MW's intention to disrupt my class and requested an investigation into MW's intentional and hostile conduct towards me. Additionally, I highlighted my concerns about Professor Reyes, believing Prof. Reyes to be a "danger to me and other faculty at this law school."

Just four days later, on February 20, 2023, I received an email from Ms. L. Scott of the Equal Opportunity Program (EOP) where I had filed my equal pay complaint months before, notifying me that Professor Reyes had filed a complaint against me. This incident revealed a breach of confidentiality, as it became apparent that EOP and Compliance were divulging information to Prof. Reyes and engaging in what appeared to be "selective investigations." It was clear that they were willing to investigate complaints made against me but failed to address the complaints I had lodged. Further, Compliance is a division that has the ability to punish or retaliate against faculty and EOP is where faculty lodge discrimination complaints. Clearly, there was an inappropriate association with the two in my case.

On February 28, 2023, I emailed General Counsel Denise Wallace about Prof. Reyes because I was increasingly concerned about her behavior and my safety. I was one of several Black women

Smith Statement re Intent to Dismiss
January 8, 2024

Reyes continued to harass at the law school, notwithstanding I recommended her hire knowing she had a problematic history at the firm where we worked at the same time. Ms. Wallace never responded.

***Prof. Smith resubmitted her October 2022 complaint via Compliance's online portal.***

Then, on March 9, 2023, I re-reported my concerns about MW. However, this time I used Compliance's online form instead of contacting Associate Dean Green who failed to forward my initial complaint to Compliance in October 2022. Unfortunately, immediately after submitting my complaint, Compliance disabled the link that allowed complainants to follow up on investigations, effectively dismissing my complaint without proper consideration.

On March 10, 2023, Ms. Baker emailed the following to me:

> The Office of Complainace [sic] and Ethics (OCE) recieved [sic] your complaint filed on yesterday. Please note that FAMU-2022-11-117 has already been assigned for this incident and you were given the opportunity to interview and provide statements. As previously stated, your statement and account of the incident will be included in 2022-11-117 report.

I believe I have reporting obligations to The Florida Bar and students do as well.[1] Accordingly, I responded:

> There is a difference in being the one who brings a charge and is the subject of a charge. So, these are not the same. The student needs to understand she was also the subject of an investigation, and I am not sure she will.

I resubmitted my October 20, 2022 complaint because if students fail to report such actions to The Florida Bar, it may result in the Bar considering the students to have provided false information, potentially leading to delays in obtaining their Bar card. I was not retaliating, but ensuring that MW's bar application was not held up for failing to report the school incident.

***FAMU "reprimanded" Prof. Smith for alleged retaliation.***

On March 13, 2023, I was summoned to the law deans' office, where I was subjected to what was allegedly supposed to be a "reprimand" or "warning" regarding potential retaliation against MW because I re-filed my complaint on March 9, 2023. During this meeting, Dean Keller and Associate Dean Cooper presented a memorandum from Compliance alleging I potentially engaged in

---

[1] Applicants for admission to the Florida bar must truthfully answer question 9a. on the Application, which states: "Have you ever been accused of a violation of an honor code or student conduct code, warned, placed on academic, scholastic or disciplinary probation, suspended, requested or advised to discontinue your studies, dropped, expelled or requested to resign or otherwise subjected to discipline by any college, law school or other post-secondary institution? If yes, provide a complete statement of the circumstances surrounding each such occurrence, including the name and address of the institution and the date thereof."

7

retaliation. Dean Keller indicated she did not know much about the investigation, and Associate Dean Cooper said even fewer words. In response to these allegations, I promptly prepared a memorandum and outlined how my decision to re-file the complaint against MW does not constitute an act of retaliation.

## III.   ARGUMENT

The University's response to my initial complaint in October 2022, my re-submitted complaint in March 2023, and its subsequent communications with me all illustrate the University has failed to follow its own policies in a manner that gives rise to an inference of retaliation for my protected activity for equal pay. As illustrated above, the University learned of my state court litigation against the University in November 2023. Shortly thereafter, the University began to thread bits and pieces of the MW investigation that had ended in June 2023 to re-frame my conduct in this past year regarding MW as retaliation and a basis to terminate me.

In addition to the facts above, I provide the following to further illustrate the University's failure to follow its policies and how the rationale outlined in its intent to dismiss me is pretextual.

***Associate Dean Green's assertions illustrated shifting rationales to cover his failure to follow University policy.***

Associate Dean Green asserted that a Compliance complaint could not be investigated concurrently with my complaint; yet, neither were investigated for nearly 100 days. This assertion stands as an admission that my initial complaint was considered a complaint by the University and Associate Dean Green. Associate Dean Green's stance shifted, and he later asserted that he never regarded my text message complaint as a "complaint" at all. These contradictions raise concerns about the consistency and fairness of the University's approach to handling complaints (and particularly my complaints). According to the COL Faculty Handbook, page 34: "Faculty allegations of student misconduct not covered by the Student Code of Conduct should be referred to the Associate Dean for Student Services and Administration [Associate Dean Green]." *See* Attachment 4. This does not specify the manner in which a complaint must be reported to Associate Dean Green. Regardless, Associate Dean Green acknowledged receipt of my complaint against MW via email and sent assurances he would investigate the incident. Moreover, the June 5, 2023, report indicates that I filed an "additional" complaint, which implies the existence of an initial complaint filed in October. It cannot be both. This confirms that Associate Dean Green recognized the initial complaint I filed October 2022.

***FAMU failed to promptly and thoroughly investigate Prof. Smith's complaint and to update Prof. Smith on the status of the investigation.***

The University waited 98 days to initiate the investigation into the incident that occurred on October 20, 2022. This delay is compounded by the failure to preserve the video evidence. Hallway videos were not requested in October 2022 or on November 15, 2022, when MW submitted the eyewitness statements from students present during the interaction. The University waited three (3) months to request the video, which by then was unavailable. Moreover, I have no knowledge as to whether the students who submitted statements provided in support of MW were actual

Smith Statement re Intent to Dismiss
January 8, 2024

witnesses of the incident. The video potentially would have shown the students who were in the hallway during the incident.

On April 28, 2023, approximately 90 days after the initiation of the investigation in January 2023 and nearly 180 days after the incident took place, I reached out to the investigator via email to inquire about the progress of the investigation. The investigator replied: "The investigation is still ongoing. You will be notified once the report has been completed." According to University Code of Conduct 1.019 (17):

> Investigation. Preliminary Review and Investigation. University offices tasked with investigation take every reported concern seriously. All concerns will be assessed through intake to determine the appropriate course of action. If an investigation is warranted, such initial investigation will be completed within a reasonable timeframe. If an investigation takes more than 30 business days from the date of intake, the principal investigator will notify both parties to the complaint of such need.

*See* Attachment 1. The investigation began on January 26, 2023, and I was not notified that the investigation needed more than 30 days. Again, the University violated its own procedures.

### *FAMU'S June 5, 2023 Report failed to investigate or acknowledge MW's disruptive conduct.*

The June 5, 2023 Report fails to mention MW's intentional disruption of my class by her conduct in October 2022. The Report omits the fact that MW instigated both interactions with me on October 20, 2022. To ensure the accuracy and comprehensiveness of the Report, it is imperative that the Report acknowledge MW's intentional interruption of my class. Failing to address this significant fact undermines the validity of the findings and calls into question the integrity of the entire investigative process.

### *FAMU failed to take any action after it issued its June 5, 2023 investigative report.*

FAMU's June 5, 2023 Report recommended that Dean Keller and Provost Allyson Watson "take any corrective actions deemed appropriate." Neither took any action against me after the Report. The Report also recommended additional training for faculty and students in civil discourse and professionalism. Finally, the Report recommended whether "additional processes need to be implemented to address internal complaints to the law school and the transfer of complaints to investigative University offices" because the University personnel failed to properly report/transfer Professor Smith's complaint to Compliance or investigate it according to COL policies. To contrive a basis to terminate me, the University is now trying to take action nearly six months later on my conduct that cannot even be considered retaliation. This is all pretext for retaliation against me.

### *FAMU failed to issue its July 6, 2023 supplemental investigative report to Prof. Smith.*

On June 5, 2023, I received an email from Compliance:

Smith Statement re Intent to Dismiss
January 8, 2024

> Professor Smith, Attached is FAMU-2022-11-117 Investigative Report, addressing allegations of employee misconduct regarding you. The Office of Compliance and Ethics (OCE) concluded that allegation 1 related to disruptive conduct is UNSUBSTANTIATED and allegation 2 related to retaliation is UNSUBSTANTIATED. However, an additional finding of retaliation related to your subsequent actions is SUBSTANTIATED.

This email indicates that the investigation concluded. However, Compliance prepared a Supplemental Report on July 6, 2023, and never provided it to me. Such an action suggests that the investigation was not complete and was still ongoing. The first time I saw the July 6, 2023 Supplemental Report was on December 5, 2023, when the provost sent it to me as support for its Notice Intent to Dismiss from Employment.

***FAMU failed to take any action after it issued its July 6, 2023 supplemental report.***

The Supplemental Report revisited the emails/texts that I made soon after the October 20, 2022 incident and had submitted to Compliance on February 9, 2023. The Report does not consider these emails/texts "retaliatory" and describes them as "gossip." The Report's recommendation was for Dean Keller to take any action deemed appropriate. Dean Keller nor any other University employee contacted me about this July Report, informed me about the Report, or tried to take any action against me because of the Report. Then, nearly five months later on December 5, 2023, the University's position is that I can be terminated for "gossip" emails/texts. This is ludicrous and pretext for retaliation against me.

***FAMU failed to acknowledge Prof. Smith's response to the June 5, 2023 Report and alleged her October 5, 2023 Memorandum detailing her safety concerns as retaliation after the University learned in November 2023 of Professor Smith's filing of her state court complaint for equal pay.***

On June 12, 2023, I responded to Compliance's June 5, 2023 Report. *See* Attachment 5. I did not receive any communications from the University regarding the MW matter after June 7, 2023, when Compliance emailed me to confirm receipt of information I sent via email on June 5, 2023. Accordingly, approximately four months later and after the summer term, I wrote a memorandum to Compliance and the GC about MW's concerning behavior regarding the settled matter that occurred a year before. I indicated concerns about my personal safety and that I believed I was obligated to report MW's conduct to The Florida Bar; I never did.

The University never responded to my October 5, 2023 memorandum and now claims that this memorandum constituted conduct that "continued to engage in behavior which [I] was advised was retaliatory, as evidenced by [my] memo dated October 5, 2023." This assertion is unfounded. Drafting a memorandum and querying my responsibility to report disruptive student conduct to The Florida bar is not retaliation. This memorandum was not even an issue with the University until it found my state court complaint alleging the University's baseless MW investigation was retaliation for my equal pay activity mentioned in Reyes' federal court memorandum she filed on November 13, 2023. Similarly, the University began the decision-making process to consider my

termination only after it knew about my complaint against the University in Florida state court. The University's conduct gives rise to blatant retaliation because the proposed discipline for my alleged misconduct based on a closed investigation is extreme, the University regulations provide many other lesser options than termination, and none of my conduct the University points to can be considered an adverse action or retaliation against MW.

***FAMU's decision to potentially terminate Prof. Smith for the alleged misconduct is inconsistent with its adverse employment actions and discipline for truly egregious employee misconduct.***

There are known instances of serious misconduct with other faculty members at the COL. From faculty sleeping with a subordinate in the COL Clinic and missing 12 days of classes, and another faculty blatantly lying about a staff member by accusing her of intentionally bumping into the faculty member where the COL video showed the staff member clearly walked around the faculty member and never bumped into her. However, none of these faculty members were disciplined for clear misconduct at the COL. None of those faculty, however, were pursuing their civil rights against the University.

## IV. CONCLUSION

Notwithstanding my protracted and successful battles for equal pay, I remain one of the most productive and scholarly faculty members at the COL. In just this past year, I have accomplished the publication of both a second edition of a law textbook and a scholarly article in a law review. I was recently recognized as an outstanding woman in Central Florida through the African American Women's History Month Project, Inc., and selected from hundreds of lawyers and academics to serve on the National Conference of Bar Examiners committee, which revised the bar exam.

For the entire 2023 calendar year, I have been under a threat of termination from the University, causing me extreme stress. I find myself at a loss as to how I could have prevented the MW incident from occurring or even extending for nearly a year. Everything I did was "by the book." For the past twenty years, I have consistently adhered to the University's rules, guidelines, and procedures with strict diligence.

As a professor, I reserved the classroom, as required weeks before the incident. Even if that were not the case, students are instructed not to enter classrooms without a professor for their personal study purposes, and certainly when the classrooms are already occupied by professors. Moreover, if a student accidentally walks into a classroom, the appropriate response should be to apologize for the intrusion and swiftly exit the premises. There should never have been a prolonged argument with a student in the midst of another student's examination. Additionally, I should not have had to encounter the student as I was leaving the classroom. The student had no reason to position herself at the doorway, prepared for a second confrontation as I exited. The classroom has two exits, so MW could have waited to enter at the "back" door, which is the door she used for her first intrusion.

When I reported the incident of being confronted by an aggressive student, Associate Dean Green assured me that it would be promptly addressed. I assumed that the University was handling the

Smith Statement re Intent to Dismiss
January 8, 2024

matter and would contact me if necessary. However, I had no knowledge that I was the subject of an investigation until nearly 100 days later.

Throughout my 30-year career as a lawyer, I have never been accused of any employee misconduct. The evidence at hand illustrates that the allegations against me are unfounded, false, and pretextual for retaliation against me.

The University's delay in taking action until evidence was destroyed and witness memories became distorted further strengthens my assertion of retaliation. Accordingly, this potential termination is retaliation by the University for my ongoing pursuit of equal pay.

For the above reasons, I respectfully request the University determine that I have not violated any University Regulations, rescind the University's Notice of Intent to Dismiss from Employment and related documents from my personnel file, and reinstate all of my duties.