| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| COUNTY OF CHARLESTON | ) | FOR THE NINTH JUDICIAL CIRCUIT |
| NANCY L. ZISK, | ) | Case No.: 2015-CP-10-03661 |
| Plaintiff, | ) | |
| vs. | ) | |
| THE CHARLESTON SCHOOL OF LAW, LLC; and GEORGE C. KOSKO and ROBERT S. CARR, both in their individual capacities, | ) | ORDER GRANTING PRELIMINARY INJUNCTION |
| Defendants. | ) | |

This matter came before me for hearing on July 29, 2015, on the motion of Plaintiff Nancy L. Zisk for a preliminary injunction. Professor Zisk appeared with her attorney, Capers G. Barr, III of the Charleston Bar. The Defendants appeared through their counsel, Caroline W. Cleveland and Bob J. Conley. The parties submitted, and the Court reviewed and considered, all filings including, but not limited to, Plaintiff's verified Complaint, several affidavits, numerous documents, and the parties' respective legal memorandum. After reading the briefs of the parties and hearing their oral arguments, and having taken the matter under advisement, the Court informed the parties of its decision to order the preliminary injunction. A second hearing was held before me on August 3, 2015 to consider the matter of bond. The same parties and attorneys appeared before me on August 3, 2015, and argued their positions about bond.

For the reasons and on the grounds hereafter found, the Court orders that the Charleston School of Law, LLC (hereinafter referred to as the "Charleston School of



1



PLAINTIFF'S EXHIBIT 5

Law") is preliminarily and temporarily enjoined and restrained from terminating or non-renewing the tenure and employment of Nancy L. Zisk as full professor of law at Charleston School of Law, pending a hearing on the merits of this case.

**Findings of Fact.**

Based on the review of the facts in the record, including the verified complaint and affidavits, the Court makes the following findings of fact:

1. Nancy L. Zisk was a practicing employment lawyer and adjunct professor of law in Washington, D.C. when, in 2004, she agreed to become one of the founding professors of law at the then-beginning Charleston School of Law. She was initially engaged as a "tenure track" professor of law, and Professor Zisk and her family relocated to Charleston.

2. The Charleston School of Law was a successful academic venture.

3. "Tenure" is an accepted academic status recognized at Charleston School of Law, whereby faculty members, after successful completion of probationary service, are granted a status of "continuous employment", with annual agreements that articulate the financial terms of their continued employment for each succeeding year.

4. The status of tenure at Charleston School of Law is awarded following a process that is described in the Faculty Handbook, and which includes evaluation in the areas of teaching competence, service to the school and community, scholarship, and collegiality. In each annual signed agreement between Professor Zisk and Charleston School of Law, the terms of the Faculty Handbook are incorporated.

5. Professor Zisk was awarded tenure in 2009. In 2011 she was named as a "full professor of law." The criteria for promotion to full professor of law are rigorous.

6. Professor Zisk served as Associate Dean for Academic Affairs from 2006 through 2008, and she has annually taught courses in torts, equity and equitable remedies and employment discrimination.

7. At Charleston School of Law the Faculty Handbook provides that tenure may be terminated for "serious cause, financial exigency, or the discontinuance of a program of instruction not mandated by financial exigency." No further definition is given of "financial exigency", nor is a process or standard described in the Faculty Handbook for terminating a tenured professor on that ground.

8. On August 7, 2014 the Defendants proposed to the Charleston School of Law faculty to add a new Section 8.3 to the Faculty Handbook, which proposed to provide that the Board of Directors could declare "financial exigency" in their discretion and could terminate tenured faculty on 15 days notice. Plaintiff and other tenured faculty members objected to the proposed amendment, asserting that it would constitute elimination of tenure. On August 12, 2014 the Dean of the School informed faculty that the proposed amendment had been withdrawn. Thereafter, Plaintiff and the Defendant Charleston School of Law signed their annual agreement for the academic year 2014-2015.

9. Plaintiff openly opposed a pending transaction between the Defendant Charleston School of Law, the Defendants Kosko and Carr, and an outside party, Infilaw, for the sale of the law school. On May 15, 2015 Plaintiff signed a public letter opposing the transaction. A year earlier, on May 16 and May 19, 2014 she had appeared and had spoken at public hearings in opposition to the transaction.

3



10. On May 22, 2015 Plaintiff received a memorandum from the "active LLC members", who are the Defendants Kosko and Carr, informing her that she was terminated because of a financial exigency that had been declared five months earlier, in December 2014. She was informed that her termination was "based on her high salary". Six other tenured law professors received the same memorandum of termination.

11. Although the Defendants offered to Plaintiff an opportunity to appeal, when she requested documents to support their claim of financial exigency, and to describe the criteria by which she was selected for termination, her request was denied. No documents were produced by the Defendants.

12. Plaintiff nevertheless pursued her appeal in writing. Her appeal was denied. Thereafter the within lawsuit was filed.

### Conclusions of Law.

The purpose of a preliminary injunction is "to preserve the status quo ante and to prevent irreparable harm to the party requesting it. *Compton v. South Carolina Department of Corrections*, 392 S.C. 361, 366 (2011). The party requesting the preliminary injunction must both allege facts sufficient to state a cause of action for an injunction and demonstrate that relief is reasonably needed to preserve the parties' rights during litigation. *Id.* Thus the party seeking a preliminary injunction must establish "that without such relief she will suffer irreparable harm, that she has a likelihood of success on the merits, and that there is no adequate remedy at law". *Poynter Investments, Inc. vs. Century Builders of Piedmont, Inc.*, 387S.C.583, 586-87, 694 S.E.2d 15, 17 (2010).

4

## Discussion.

A. <u>Irreparable harm</u>. The Court concludes that Plaintiff will suffer irreparable harm if preliminary injunctive relief is not granted. The irreparable harm, here, is related to the concept of tenure, and to the impossibility of calculating its loss; and also to the fact that Plaintiff's vocation as a professor of law is not easily replicable.

The Charleston School of Law Faculty Handbook adopts tenure as a status of "continuous employment", but the Handbook does not define "financial exigency", nor does it describe a procedure or standards for termination of a tenured faculty member because of financial exigency. Although no South Carolina decisions have discussed academic tenure or termination of tenure for financial exigency, other courts have discussed those concepts. The Court finds those decisions to be persuasive.

In the case of *Krotkoff v. Goucher College*, 585 F.2d 675, 682 (4th Cir. 1978) the Fourth Circuit Court of Appeals decided a case involving the dismissal of a tenured professor at a private college in Maryland because of financial exigency. The case is instructive because of its discussion about the academic status of tenure, and the extent to which the "national academic community's understanding of tenure" may inform the interpretation of a contract between a private university and a tenured professor. In *Krotkoff* the contract contained no provision for termination of the professor because of financial exigency. The Fourth Circuit Court of Appeals adopted a "national academic community standard", citing a decision from the District of Columbia Court of Appeals:

> "The *Krotkoff-Goucher* contract must be interpreted consistently with the understanding of the academic community about tenure and financial exigency. Although Judge McGowen

5

addressed a different factual situation in *Greene vs. Howard University*, 134 U.S.App.D.C. 81, 88, 412 F.2d. 1128, 1135 (1969), his comments are appropriate here: 'Contracts are written, and are to be read, by reference to the norms of conduct and expectations founded upon them. This is especially true of contracts in and among a community of scholars, which is what a university is. The readings of the market place are not invariably apt in this non-commercial context.' " 585 F.2d at 680.

Citing a decision from the New Jersey Court of Appeals, the *Krotkoff* Court further held:

"Courts have properly emphasized that dismissals of tenured professors for financial reasons must be demonstrably bona fide. Otherwise, college administrators could use financial exigency to subvert academic freedom. The leading case on this aspect of tenure is *American Association of College Professors vs. Bloomfield College*, 129 N.J. Super. 249, 322 A.2d 846 (C.H. Div. 1974), affirmed, 136 N.J. Super. 442, 346 A.2d 615 (app. Div. 1975). There, the court concluded that Bloomfield College used its genuine financial difficulties as a subterfuge to achieve its goal of abolishing tenure at the institution. Since Bloomfield acted in bad faith, the court ordered it to reinstate the tenured teachers that it had dismissed." *Kratkoff, supra* 585 F.2d at 681.

In the *Bloomfield College* case, the New Jersey Appeals Court affirmed a Trial Court Order of specific performance, returning the terminated professor to his teaching position. As for the college's argument that money damages could be awarded in lieu of restoration, the *Bloomfield* court said:

"In view of the uncertainty in admeasuring damages because of the indefinite duration of the contract, and the importance of the status of Plaintiffs in the milieu of the college teaching

6



> profession, it is evident that the remedy of damages at law would not be complete or adequate. See opinion below, 129 N.J. supra 273 et. seq., 322 A.2d 846; *Fleischer vs. James Drugstores*, 1 N.J. 138, 62 A.2d 383 (1948); *Mantell vs. International Plastic Harmonica Corp.*, 141 N.J. Eq. 379, 55 A.2d 250 (1947); Pomeroy's Equity Jurisprudence (5th Edition 1941), Section 1401." 346 A.2d at 618.

In the same sense, money damages for Professor Zisk's loss of tenure cannot be reasonably calculated. I further conclude that the Court of Appeal's decisions in the cases of *Levine vs. Spartanburg Regional Services District, Inc.*, 367 S.C. 458, 626 S.E.2d 38 (Ct.App. 2005) and *Peek vs. Spartanburg Regional Health Care System*, 367 S.C. 450, 626 S.E.2d 34 (Ct.App. 2005) are supportive. In those cases the Plaintiffs were anesthesiologists who were threatened with loss of their hospital admissions privileges; losses that were not easily calculable, nor replicable. In the same sense, here, Professor Zisk's threatened loss of a tenured, full professorship of law is neither calculable nor replicable.

B.   <u>The likelihood of success on the merits</u>.

A Plaintiff is not required to prove an absolute legal right when seeking a preliminary injunction, but must present a reasonable question as to the existence of such right. When a court is requested to issue a temporary injunction it may consider the merits of a case to the extent necessary to determine whether a temporary injunction is appropriate. Once a *prima facie* showing has been made entitling the Plaintiff to injunctive relief, a temporary injunction will be granted without regard to the ultimate determination of the case on the merits. *AJG Holdings, LLC, et. al. vs. Dunn*, 382 S.C. 43, 674 S.E.2d 505 (Ct.App. 2009); *Helsel vs. City of North Myrtle Beach*, 307 S.C. 29,

7

413 S.E.2d 824 (S.Ct. 1992), citing *Columbia Broadcasting System, Inc. vs. Custom Recording Co., Inc.*, 258 S.C. 465, 471-72, 189 S.E.2d 305, 308(1972).

The burden is on the Defendant Charleston School of Law to prove the requisite "financial exigency". "Where a party seeks to avoid a contract obligation by reason of the happening of an event or condition stipulated in a contract, the burden of establishing the occurrence of the condition rests upon the party asserting it." *AAUP vs. Bloomfield College, supra*, 346 A.2d. at 615. In accord, *Begnal vs. North Idaho College*, 538 F.2d 243, 249 (9th Cir. 1976); *Pace vs. Hymas*, 726 P.2d 693, 697-98 (Idaho 1986). See also *Martin vs. Southern Railway*, 240 S.C. 460, 126 S.E.2d 365; *Smith vs. Ashmore*, 184 S.C. 316, 192 S.E.2d 565 (1937); and *Griswald vs. Texas Co.*, 163 S.C.156, 161 S.E. 409 (1931).

Simply stated, Plaintiff's causes of action for breach of contract are based on, *inter alia*, the allegations that the claimed financial exigency was not "demonstrably *bona fide*", and neither were the reasons for her termination "demonstrably *bona fide*". The factual allegations of the verified Complaint form the basis for the Court's *prima facie* findings set forth above. Together, they state the requisite *prima facie* showing of Plaintiff's case for breach of contract, from which a "likelihood of success on the merits" may be concluded.

C. <u>Inadequate remedy at law</u>.

I have previously concluded that irreparable harm will result without the granting of preliminary injunction, and that the calculation of money damages for loss of a contract of continuous employment is not reasonably accomplished, thereby also concluding that Plaintiff has no adequate remedy at law.

8



In addition to those conclusions, the aspirational loss to this particular Plaintiff, as made out in her affidavit, cannot be ignored. In light of these conclusions, injunctive relief must be granted.

D.   Bond.

As for the matter of bond, Rule 65(c) of the South Carolina Rules of Civil Procedure requires that the granting of a preliminary injunction be secured by the posting of a reasonable bond. In the case of a preliminary injunction, the purpose of bond is to cover only damages before a permanent injunction is issued; and only those damages that are directly attributable to the injunction itself. *Chambron vs. Lost Colony Home Owner's Association*, 317 S.C. 43, 451 S.E.2d. 410 (Ct.App. 1994); *Hyler vs. Wheeler*, 240 S.C. 386, 126 S.E.2d. 173 (1962).

Defendants submitted two affidavits as to financial matters. However, the only specific financial amount entered into the record of this case is stated in the annual contract between Plaintiff and the Defendant Charleston School of Law, wherein her annual salary for academic year 2014-2015 was agreed to be $129,388.02. Anticipating that it could be as long as 24 months before a final resolution of this case can be decided, I find and conclude that a bond in the sum of $500,000.00 is appropriate in this case.

Conclusion.

Professor Zisk is entitled to a preliminary injunction. As concluded above, she is likely to succeed on her breach of contract claims and would incur irreparable harm if the Charleston School of Law is not immediately enjoined from terminating her employment and her tenure; that is to say "non-renewing" it.

It is therefore,

9



ORDERED that the Defendant Charleston School of Law is preliminarily and temporarily prohibited, restrained, and enjoined from terminating or "non-renewing" the employment of Plaintiff Nancy L. Zisk as a tenured full professor at law at the Charleston School of Law, and her employment is hereby reinstated until this matter can be heard on its full merits; and it is further,

ORDERED, that this preliminary injunction is effective upon the posting of a bond of $500,000.00 by Plaintiff, with good and sufficient sureties; and it is further,

ORDERED, if Plaintiff does not post the required bond on or before the tenth day following entry of this Order, Defendant Charleston School of Law is not required to assign her to teach any course(s) during the fall 2015 semester, to avoid disruption of student schedules and assigned course instructors, even though Defendant is required to fully reinstate Plaintiff's employment and tenure, as noted above; and it is further,

ORDERED, if Plaintiff does not post the required bond on or before August 31, 2015, this Order is void.

IT IS SO ORDERED.

R. Markley Dennis, Jr.
Presiding Judge

Charleston, South Carolina
August 10, 2015