Case 6:24-cv-00457-PGB-RMN Document 17-7 Filed 03/13/24 Page 1 of 8 PageID 438

Smith v. Florida A & M University Board of Trustees, 831 Fed.Appx. 434 (2020)
2020 Fair Empl.Prac.Cas. (BNA) 388,785, 384 Ed. Law Rep. 743

831 Fed.Appx. 434
This case was not selected for
publication in West's Federal Reporter.
See Fed. Rule of Appellate Procedure 32.1 generally
governing citation of judicial decisions issued on or after
Jan. 1, 2007. See also U.S. Ct. of App. 11th Cir. Rule 36-2.
United States Court of Appeals, Eleventh Circuit.

Jennifer SMITH, Plaintiff-Appellant,

v.

FLORIDA A & M UNIVERSITY BOARD
OF TRUSTEES, Defendant-Appellee.

No. 19-12560
|
Non-Argument Calendar
|
(October 8, 2020)

**Synopsis**
**Background:** Female law professor sued public university in state court, alleging violations of the Equal Pay Act, Title VII, the Florida Civil Rights Act (FCRA), and retaliation. After removal, professor and university filed cross-motions for summary judgment. The United States District Court for the Northern District of Florida, No. 4:18-cv-00409-RH-CAS, granted summary judgment to university and denied professor's motion to reconsider. Professor appealed.

**Holdings:** The Court of Appeals held that:

[1] professor failed to establish a prima facie case of Equal Pay Act violation based on pay disparity between herself and male colleague;

[2] professor's bald allegation that public university treated her adversely based on sex in violation of Title VII and FCRA was not supported by the evidence; and

[3] university's failure to adjust law professor's salary to $138,000 did not constitute an adverse action in retaliation for her protected activity.

Affirmed.

See also 687 Fed.Appx. 888.

## Defendant's Exhibit 7

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

West Headnotes (3)

[1]  **Labor and Employment** ⬥ Disparity in pay
**Res Judicata** ⬥ Discrimination

Female law professor failed to establish prima facie case of Equal Pay Act violation based on pay disparity between herself and male colleague in her second lawsuit against public university; professor's argument that the pay disparity between herself and male colleague at the time of her first lawsuit was discriminatory on the basis of sex was barred by collateral estoppel, and subsequent one-time pay adjustments made by university were applied evenhandedly to both men and women, did not affect professor's male colleague, and did not consider sex as a factor. Fair Labor Standards Act of 1938 § 6, 29 U.S.C.A. § 206(d)(1).

4 Cases that cite this headnote

[2]  **Civil Rights** ⬥ Compensation; comparable worth

Female law professor's bald allegation that public university treated her adversely based on sex in violation of Title VII and Florida Civil Rights Act (FCRA) by not applying its alleged new salary formula to her was not supported by the evidence, and thus professor failed to state a prima facie case of discrimination; although professor was paid less than male colleague, she received a nearly $10,000 increase as party of university's one-time salary adjustment, an amount greater than any other associate professor and which resulted in a salary that was $5,000 greater than any other associate professor similarly affected by the adjustment, her male colleague was not given a salary adjustment, and his higher salary was not based on sex, as determined in earlier lawsuit brought by professor. Civil Rights Act of 1964 § 703, 42 U.S.C.A. § 2000e-2(a)(1); Fla. Stat. Ann. § 760.10(1)(a).

Case 6:24-cv-00457-PGB-RMN Document 17-7 Filed 03/13/24 Page 2 of 8 PageID 439

Smith v. Florida A & M University Board of Trustees, 831 Fed.Appx. 434 (2020)
2020 Fair Empl.Prac.Cas. (BNA) 388,785, 384 Ed. Law Rep. 743

[3]  **Civil Rights** ⚷ Public Employment

**Education** ⚷ Law school faculty

**Public Employment** ⚷ Exercise of Rights; Retaliation

Public university's failure to adjust law professor's salary to $138,000 did not constitute an adverse action in retaliation for the protected activity of professor's lawsuit against university alleging violations of the Equal Pay Act, Title VII, and the Florida Civil Rights Act (FCRA); $138,000 figure was merely a suggestion included in one of 10 drafts of a proposed one-time adjustment to faculty salaries, there was no evidence that the proposal for $138,000 was discarded for an improper reason, and draft of proposed adjustments did not entitle professor to a specific salary. Fair Labor Standards Act of 1938 § 15, 29 U.S.C.A. § 215(a)(3); Civil Rights Act of 1964 § 704, 42 U.S.C.A. § 2000e-3(a); Fla. Stat. Ann. § 760.10(7).

4 Cases that cite this headnote

**Attorneys and Law Firms**

*435 Stephen Michael Smith, Law Offices of Stephen M. Smith, New Orleans, LA, Jennifer M. Smith, Law Office of Jennifer Smith, Windermere, FL, for Plaintiff - Appellant

Maria A. Santoro, Dennis Jackson Martin & Fontela, PA, Tallahassee, FL, Teresa Cooper Ward, Teresa Cooper Ward, Attorney at Law, Tallahassee, FL, for Defendant - Appellee

Appeal from the United States District Court for the Northern District of Florida, D.C. Docket No. 4:18-cv-00409-RH-CAS

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR, and BRANCH, Circuit Judges.

**Opinion**

PER CURIAM:

Jennifer Smith, a law professor, appeals the district court's grant of summary judgment in favor of her employer, the Board of Trustees at the Florida Agricultural and Mechanical University ("FAMU"), on her claims of gender discrimination in pay and retaliation under the Equal Pay Act,[1] Title VII,[2] and the Florida Civil Rights Act ("FCRA").[3] This lawsuit is Smith's second one against FAMU for gender discrimination in pay. She brought the first one in 2014 based on her original salary. Smith's claims here, however, center on salary adjustments made by FAMU which applied generally to law professors and occurred *after* the verdict in Smith's first (and unsuccessful) lawsuit. On appeal, Smith asserts that the district court erred by applying collateral estoppel and granting summary judgment on each of her claims. After a full review of the record, we affirm.

I. Background

A. Smith's First Lawsuit

Smith was hired to work in FAMU's law school in 2004. In 2014, she filed a lawsuit against FAMU alleging that the school discriminated against female law professors by paying them less than comparable male law professors. At that time, Smith was an associate law professor with tenure. On July 22, 2015, after a trial, a jury found that, although Smith was paid less than several comparator male law professors, sex was not a motivating factor in the determination of Smith's original salary when she began in 2004 ("*Smith I*"). After judgment was entered on the verdict, Smith filed two motions for a new trial and a motion to set aside the judgments.

In August 2015, about two weeks after judgment was entered on the verdict, and unbeknownst to Smith at the time, FAMU finalized an internal pay-inequity study which concluded that, on average, female law professors were paid less than male law professors at FAMU Law. Not long after that, in early 2016, FAMU's law *436 school applied a one-time "salary adjustment" to about one third of the law school faculty. The one-time salary adjustment increased Smith's salary by roughly $10,000. FAMU also made four other changes to faculty salaries that were applied generally. Learning of the pay-inequity study, Smith then filed a motion to set aside the judgment, arguing that the school's one-time salary adjustment demonstrated that FAMU had thereby "been caught" committing "fraud on the court regarding [Smith's] salary inequity case." The district court denied Smith's motion to set aside the judgment. Smith appealed the jury verdict in FAMU's favor and the denials of her post-verdict motions to this Court. *Smith v. Fla. Agric. & Mech. Univ. Bd. of Trs.*, 687

**Defendant's Exhibit 7**

Case 6:24-cv-00457-PGB-RMN   Document 17-7   Filed 03/13/24   Page 3 of 8 PageID 440

Smith v. Florida A & M University Board of Trustees, 831 Fed.Appx. 434 (2020)
2020 Fair Empl.Prac.Cas. (BNA) 388,785, 384 Ed. Law Rep. 743

F. App'x. 888 (11th Cir. 2017) (per curiam). After considering both the 2015 pay-inequity study and FAMU's 2016 one-time salary adjustment, we affirmed, reasoning that

> FAMU's pay-inequity study was based entirely on publicly available data that Professor Smith drew upon in her presentation to the jury. Indeed, she persuaded the jury that she was paid less than comparable male professors. Nor are the remedial measures taken to correct the pay difference a confession that they were the product of gender bias.

Smith, 687 F. App'x. at 889.

### B. FAMU's Salary Changes

Because the changes to FAMU faculty salaries since *Smith I* mentioned above are relevant to this appeal, we pause to explain them in greater detail. The changes fell into one of five categories. First, as referenced above, the FAMU law school made a one-time salary adjustment in 2016 which brought all tenured full professors up to at least $140,000 and all tenured associate professors to at least $120,000. But the adjustment was not widespread: it affected only a dozen of FAMU's roughly 36 faculty members. Further, the adjustment applied with equal force to both males and females. According to one of the deans in charge of making the salary adjustment, changes were based exclusively on "rank, tenure status," and "length of time"—not "qualitative factors" such as "reputation, ... teaching effectiveness, or any other type of subjective criteria that might go into hiring somebody." Second, FAMU gave a university-wide 1% cost-of-living raise to all professors. Third, all FAMU law school professors who did not receive a promotion or other pay increase between January 1 and June 16, 2016 received a 1% lump-sum bonus. Fourth, associate professors who were promoted to full professor before 2017 received a standard salary increase of 9 percent.[4] Fifth, routine changes to professor salaries reflected the addition or removal of administrative duties or a shift between a 9-month and 12-month schedule.

Pursuant to FAMU's salary changes, Smith received a one-time salary adjustment from $115,278.63 to $125,000, putting her salary above the $120,000 mark for associate professors; a 1% cost-of-living raise; and, upon her subsequent promotion to full professor, a 9% pay increase.[5] She did not, however, receive a 1% lump sum bonus, as she had received a pay increase during the one-time adjustment. And she was not affected by routine administrative or shift changes. Smith's annual salary by the end of 2016 was $136,250.

Regarding the one-time salary adjustment in 2016, two more things are noteworthy. **\*437** First, there was an earlier draft of this proposal. On August 22, 2016, before the salary adjustments were finalized, the interim dean emailed FAMU officials with a draft of proposed salary adjustments in which Smith's salary was recommended to be increased to $138,000. This figure was very close to the actual salary of the highest paid male associate professor, Jeffrey Brown, who at that time was paid $138,330 and was not subject to the one-time salary adjustment. An associate dean of the law school who was closely involved in crafting that recommendation testified in his deposition that he (and other law school administrators with whom he had collaborated) had at first proposed the $138,000 figure in part because he was attempting at that time to bring all tenured associate professor salaries "a little closer" to Brown's salary. FAMU ultimately decided against raising all tenured associate professor salaries closer to Brown and instead chose to consider his salary as an "outlier." Accordingly, the 2016 one-time adjustment to Smith's salary as a tenured associate professor was instead set at $125,000, which was $5,000 greater than all other tenured associate professors other than Brown. The associate dean testified that Smith received $5,000 more than the other tenured associate professors in part because she had been tenured for a greater length of time, and because of "other factors."

The second noteworthy aspect of the 2016 one-time salary adjustment is FAMU's stated purpose in making it. One of the deans tasked with crafting the adjustment testified that correcting "gender disparity" simply "wasn't the project." In other words, he explained, "[he] didn't begin from the proposition that there was gender disparity." Rather, the adjustment was intended to address "[c]ompensation inequities," the "most obvious" of which was "salary inversion," that is, "when faculty of lower rank and tenure status earn more than faculty with higher rank and tenure status." Salary inversion at the law school "resulted from the State's inability to provide regular cost of living raises to present or current faculty, combined with new faculty

**Defendant's Exhibit 7**

Case 6:24-cv-00457-PGB-RMN   Document 17-7   Filed 03/13/24   Page 4 of 8 PageID 441

**Smith v. Florida A & M University Board of Trustees, 831 Fed.Appx. 434 (2020)**
2020 Fair Empl.Prac.Cas. (BNA) 388,785, 384 Ed. Law Rep. 743

hiring under the economic conditions prevailing on the date of new hiring." And although "[t]here are high end 'outliers' in each category" of rank and tenure status, the one-time salary adjustment "does not attempt to make the level of compensation paid to outliers the norm." Along these lines, the one-time salary adjustment "does not adopt a prohibition against inversion," but rather, "[i]t merely implements a restart" for those salaries that had been affected by inversion in the past. That is to say, "[s]alary inversion may reoccur."

### C. Smith's 2016 EOP Complaint

In December 2016, Smith filed a complaint with FAMU's Office of Equal Opportunity Programs ("EOP"), alleging sex-based discrimination and retaliation in violation of FAMU regulations because the law school contemplated but declined to increase her salary to $138,000 during the 2016 one-time salary adjustment. She specifically alleged that FAMU had made the 2016 one-time adjustment "because [FAMU] found pay inequality based upon gender in its August 2015 [pay-inequity] study." She further claimed that she was suffering from sex discrimination based upon a salary differential between herself and Brown.

The EOP issued a report the ("2017 EOP Report") denying Smith's claims. Therein, the EOP refuted Smith's suggestion that the 2015 pay-inequity study concluded that all pay inequities were based upon gender, stating that "gender was not the sole or primary factor for any disparities in the August 2015 [pay-inequity] study." The EOP further found that there **\*438** is no evidence that any then-existing disparity between Brown's and Smith's salaries was "due to a discriminatory factor." The EOP reached this conclusion in part because

> Brown was offered a higher salary upon hire in 2009 than complainant was earning at the time. Brown had earned tenure at Northern Illinois University College of Law at the Associate Professor rank. He also had taught for 13 years in the United States, Bulgaria, Macedonia and the Russian Federation prior to coming to FAMU.

In other words, Brown "was paid upon hire according to his outstanding credentials at the time." By comparison, Smith "had limited teaching experience. She had served as a Faculty Lecturer for two weeks at Federal Publications and as a Faculty Instructor for a semester at the Center for Career Education (The George Washington University)." Thus, Smith's allegations were "unsubstantiated."

### D. Smith's Second Lawsuit

In July 2018, Smith filed the instant action against FAMU in Florida state court, and FAMU removed the case to federal court. She claimed that FAMU violated the Equal Pay Act because her current salary was lower than that of other full professor comparators who are male. Smith also claimed that FAMU violated Title VII and the FCRA because "actions" taken by FAMU with regard to pay discriminated against her on the basis of sex. Lastly, she claimed that FAMU retaliated against her "for her 2014 lawsuit" in violation of the Equal Pay Act, Title VII, and the FCRA because she "was negatively treated with regard to the salary increases." The parties eventually filed cross-motions for summary judgment.

The district court granted summary judgment to FAMU. The court first concluded that the *Smith I* judgment, which was entered on July 22, 2015, collaterally estops Smith from asserting that her pay as of that date resulted from sex discrimination. The court then denied Smith's Equal Pay Act, Title VII, and FCRA discrimination claims. In doing so, the court concluded that any current disparity between Smith and her alleged comparators predated the *Smith I* verdict or is explained by completely objective, nondiscriminatory factors. The district court also concluded that FAMU's decision to not raise Smith's salary to match "outliers" such as Brown was consistent with the way it treated other professors of like tenure and rank. Lastly, the district court denied Smith's retaliation claims because there was no affirmative evidence of retaliation in FAMU's post-*Smith I* changes to Smith's pay, but rather, Smith's one-time adjustment to $125,000 could even be said to be "more generous" than the salary adjustments of some others. After being denied a motion to reconsider, Smith timely appealed.

### II. Standards of Review

We review a district court's grant of a motion for summary judgment *de novo*. *Smith v. Haynes P.C.*, 940 F.3d 635, 642 (11th Cir. 2019). We construe the evidence in the light most favorable to the non-moving party, and we will affirm if we

**Defendant's Exhibit 7**

Case 6:24-cv-00457-PGB-RMN Document 17-7 Filed 03/13/24 Page 5 of 8 PageID 442

**Smith v. Florida A & M University Board of Trustees, 831 Fed.Appx. 434 (2020)**
2020 Fair Empl.Prac.Cas. (BNA) 388,785, 384 Ed. Law Rep. 743

find no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263–64 (11th Cir. 2010).

We review the district court's decision to apply collateral estoppel *de novo* and its findings of fact supporting its determination on issue preclusion for clear error. *Quinn v. Monroe Cty.*, 330 F.3d 1320, 1328 (11th Cir. 2003). We may conclude that a district court's factual finding is clearly **\*439** erroneous when we possess the definite and firm conviction that a mistake has been committed. *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1275 (11th Cir. 2010).

### III. Discussion

#### A. Equal Pay Act Discrimination Claim

**[1]** Smith contends that the district court erred by granting summary judgment to FAMU on her Equal Pay Act claim because the pay disparity in *Smith I* was not carried forward, but rather, FAMU "reset" its salary formula through the 2016 one-time salary adjustment. And under FAMU's "new" salary formula, she avers, she should be but is not being paid the same as Professor Brown. We disagree. Even though FAMU's 2016 one-time adjustment "reset" *some* of its faculty member's salaries, the current pay disparity between Smith and Brown is clearly attributable to the preexisting and benign disparity between them from *Smith I*.

An employee establishes a *prima facie* case under the Equal Pay Act by showing that the employer paid differing wages to employees of opposite sexes for "equal work on jobs ... which require[ ] equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1); *see Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077–78 (11th Cir. 2003). Once the employee has established a *prima facie* case, the employer may avoid liability by proving by a preponderance of the evidence that the payments were made pursuant to:

> (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1) (emphasis in original). "The burden to prove these affirmative defenses is heavy and must demonstrate that 'the factor of sex provided *no basis* for the wage differential.' " *Steger*, 318 F.3d at 1078 (quoting *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir.1995)). The employee may then rebut the employer's defense by putting forth evidence demonstrating that the employer's alternative bases for the pay disparity were pretextual or offered as a post-event justification for a sex-based differential. *Id.* A district court's factual finding that an employer has demonstrated that sex provided no basis for the pay disparity is reviewed for clear error. *Id.*

Smith cannot establish a *prima facie* case of pay discrimination under the Equal Pay Act. Because Smith is collaterally estopped from asserting that the pay disparity between herself and Brown at the time of the *Smith I* verdict was discriminatory on the basis of sex,[6] she may establish a *prima facie* case of discrimination in the **\*440** instant case only upon showing that the current disparity was not simply carried forward. She cannot meet this burden. FAMU has made no changes to Brown's or Smith's salary that would suggest that the current disparity between them is based on sex in any way. The 2016 one-time salary adjustment affected only a third of FAMU's faculty members—but not Brown's. And no evidence supports the notion that sex in any way contributed to that adjustment. Rather, the adjustment applied evenhandedly to both men *and* women. And the unequivocal testimony from those who engineered the one-time adjustment was that sex was never considered as a factor. Accordingly, we hold that Smith's Equal Pay Act claim fails.[7]

#### B. Title VII & FCRA Discrimination Claims

**[2]** Smith also cannot establish a *prima facie* case of sex-based discrimination under Title VII and the FCRA. On appeal, Smith contends that FAMU discriminated against her on the basis of sex by neglecting to apply its "new salary formula" to her during the 2016 one-time salary adjustment in order to bring her salary to $138,000.[8] We disagree.

**Defendant's Exhibit 7**

Case 6:24-cv-00457-PGB-RMN Document 17-7 Filed 03/13/24 Page 6 of 8 PageID 443

**Smith v. Florida A & M University Board of Trustees, 831 Fed.Appx. 434 (2020)**
2020 Fair Empl.Prac.Cas. (BNA) 388,785, 384 Ed. Law Rep. 743

Title VII prohibits employers from discriminating "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e-2(a)(1). The FCRA makes it unlawful for employers to discriminate on the basis of sex. Fla. Stat. § 760.10(1)(a). [9] We review discrimination claims under Title VII and the FCRA that involve circumstantial evidence under the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Johnson v. Miami-Dade Cty.*, 948 F.3d 1318, 1325 (11th Cir. 2020) (citing *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387, 1389–90 (11th Cir. 1998)). To establish a *prima facie* case under that framework, a plaintiff must show that she was a qualified member of a protected class and subjected to an "adverse employment action" in contrast to similarly situated employees outside of the protected class. *Butler v. Ala. Dept. of Transp.*, 536 F.3d 1209, 1215 (11th Cir. 2008). To demonstrate an adverse employment action, "an employee **\*441** must show a serious and material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232 (11th Cir.2001). Importantly, "the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.*

Here, Smith has not met her burden to show that FAMU committed any materially adverse employment action against her since *Smith I*, and therefore she cannot establish a *prima facie* case of sex-based discrimination. Smith's bald allegation that FAMU did not apply its "new salary formula" to her during the 2016 one-time salary adjustment ignores the evidence. Smith received a nearly $10,000 increase—which resulted in a final salary that was $5,000 greater than any other associate professor who had similarly been affected by the adjustment. Smith's assertion that her salary should have been raised to $138,000 to match Brown falls flat because Brown was not affected by the one-time adjustment. No other associate professor—male or female—received a salary increase to match Brown's. And because the *Smith I* jury determined that the disparity between Brown and Smith's salaries at that time was not based on sex, FAMU was under no obligation to raise her salary to match his. Thus, as compared to every other associate professor who was affected by the one-time adjustment, Smith was not treated adversely. We therefore conclude that Smith's Title VII and FCRA claims necessarily fail.

### C. Retaliation Claims

 **[3]**  Smith maintains that the district court erred by finding that FAMU did not retaliate against her for litigating her case in *Smith I*. She contends that FAMU retaliated against her by neglecting to adjust her salary to the $138,000 initially considered by FAMU before it finalized the amounts for the 2016 one-time salary adjustment because such amount would have more closely approximated Brown's $138,330 salary. As with her discrimination claims, we disagree that this decision by FAMU constitutes a materially adverse action.

The Equal Pay Act provides that it is unlawful to "discriminate against any employee because such employee has filed any complaint." 29 U.S.C. § 215(a)(3). Likewise, Title VII and the FCRA also prohibit employers from retaliating against an employee because she has "opposed any ... unlawful employment practice." 42 U.S.C. § 2000e-3(a); Fla. Stat. § 760.10(7). Smith may establish her *prima facie* case of retaliation under all three statutes by proving (1) that she engaged in statutorily protected activity, (2) that she suffered a materially adverse action, and (3) that the adverse action was causally related to the protected activity. *See Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1314 n.9 (11th Cir. 2018) (Equal Pay Act); *Jefferson v. Sewon America, Inc.*, 891 F.3d 911, 924 (11th Cir. 2018) (Title VII); *Alvarez*, 610 F.3d at 1268, 1271 (FCRA). "[I]n the context of a Title VII retaliation claim, a materially adverse action 'means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.' " *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)). Note that this is a "more liberal view of what constitutes an adverse employment action" than in the discrimination context. *Id.*; *see also id.* at n.14. We have recognized that "employer actions that 'deprived [the employee] of compensation which he otherwise would have earned clearly constitute adverse employment actions **\*442** for purposes of Title VII [retaliation].' " *Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002) (alteration in original) (quoting *Bass v. Bd. of Cty. Comm'rs*, 256 F.3d 1095, 1118 (11th Cir. 2001)). Such deprivations can include denials of pay raises to which an employee is entitled. *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000), *overruled on other grounds by White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345.

# Defendant's Exhibit 7

Case 6:24-cv-00457-PGB-RMN   Document 17-7   Filed 03/13/24   Page 7 of 8 PageID 444

Smith v. Florida A & M University Board of Trustees, 831 Fed.Appx. 434 (2020)
2020 Fair Empl.Prac.Cas. (BNA) 388,785, 384 Ed. Law Rep. 743

Here, it is undisputed that Smith's involvement in her 2016 case constituted "protected activity." But like her discrimination claims, Smith cannot show that she suffered an adverse action as a result of that protected activity. The record is void of any evidence that she was entitled to receive the same salary as Brown after the jury in *Smith I* concluded that the salary discrepancy between them was not motivated by gender discrimination. Smith makes much of one of the proposed drafts of the 2016 one-time adjustment which would have put her at the $138,000 mark. But, as the district court noted at the hearing on the motion for summary judgment, this figure was merely a "suggestion" in the midst of a lengthy process and was ultimately discarded. FAMU cycled through over ten drafts of proposed changes to faculty salaries. To say that any one of those drafts entitled Smith to a specific salary would be absurd. *See Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000) (stating plainly that the federal courts "do not sit as a super-personnel department that re-examines an entity's business decisions." (quoting *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991))). Further, there is no evidence that FAMU discarded the proposal for $138,000 for an improper reason. Smith therefore fails to show she suffered an adverse action and thus cannot make a *prima facie* case of retaliation.

IV. Conclusion

Accordingly, we **AFFIRM** the district court's grant of summary judgment. We also **DENY** Smith's motion to supplement the record.

**All Citations**

831 Fed.Appx. 434, 2020 Fair Empl.Prac.Cas. (BNA) 388,785, 384 Ed. Law Rep. 743

**Footnotes**

| | |
|---|---|
| 1 | 29 U.S.C. § 206(d)(1). |
| 2 | 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a). |
| 3 | Fla. Stat. §§ 760.01(b) and 760.10. |
| 4 | Under a later union contract, the full-professor salary-promotion increase was set at 15 percent for those promoted in 2017 or after. |
| 5 | Smith was promoted to full professor effective August 8, 2016. |
| 6 | Collateral estoppel, often referred to as issue preclusion, "precludes the relitigation of an issue that has already been litigated and resolved in a prior proceeding." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1359 (11th Cir. 1998) (emphasis added). This type of preclusion differs from that imposed by the doctrine of *res judicata*, which bars the relitigation of entire claims. *Id. at 1359*. Here, the district court did not find, as Smith asserts it did, that her entire "gender pay claim was collaterally barred." Rather, the district court appropriately applied collateral estoppel to preclude her from challenging a specific factual issue decided by the jury in her 2014 trial: whether FAMU's disparate payment of salaries that occurred before the trial was motivated by gender discrimination. The district court nevertheless made clear that Smith was permitted to litigate the issue of whether any new action taken by FAMU after the resolution of *Smith I* was discriminatory. |
| 7 | Smith relies heavily upon *Board of Regents of University of Nebraska v. Dawes*, 522 F.2d 380 (8th Cir. 1975), to challenge the 2016 salary adjustment. *Dawes* is inapposite because there the university explicitly set out to overhaul its salary system by making adjustments based on sex. 522 F.2d at 381. Here, the evidence |

**Defendant's Exhibit 7**

Case 6:24-cv-00457-PGB-RMN   Document 17-7   Filed 03/13/24   Page 8 of 8 PageID 445

**Smith v. Florida A & M University Board of Trustees, 831 Fed.Appx. 434 (2020)**
2020 Fair Empl.Prac.Cas. (BNA) 388,785, 384 Ed. Law Rep. 743

clearly shows that sex played no part in FAMU's 2016 one-time salary adjustment, or in any other change to faculty salaries since the verdict in *Smith I*.

8   Smith also contends that the 2017 EOP Report's statement that "gender was not the sole or primary factor for any disparities in the August 2015 study" is dispositive proof that FAMU discriminated against her on the basis of sex in violation of Title VII and the FCRA by paying her less than comparator Brown. This argument fails to appreciate the force of collateral estoppel. The 2015 pay-inequity study examined the exact same data the jury used to conclude that Smith's pay disparity was not based on gender. *See Smith*, 687 F. App'x at 889 ("FAMU's [pay-inequity] study was based entirely on publicly available data that Professor Smith drew upon in her presentation to the jury. Indeed, she persuaded the jury that she was paid less than comparable male professors."). Thus, regardless of how the EOP office characterized the 2015 pay-inequity study, that study simply cannot overcome the jury's finding in *Smith I* that any pay differential between Brown and Smith at that time was not based on sex.

9   Florida's unlawful employment practices statute makes it unlawful for an employer to "discriminate against any individual with respect to compensation ... because of such individual's ... sex." Fla. Stat. § 760.10(1)(a).

---

End of Document                                             © 2024 Thomson Reuters. No claim to original U.S. Government Works.

**Defendant's Exhibit 7**