UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JENNIFER SMITH,

    Plaintiff,

                                        CASE NO: 6:24-cv-00457-PGB-RMN

**FLORIDA AGRICULTURAL &
MECHANICAL UNIVERSITY
BOARD OF TRUSTEES,**

    **Defendant.**
_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION
TO QUASH SERVICE OF PROCESS, SET ASIDE CLERK'S DEFAULT
AND RENEWED MOTION FOR ENLARGEMENT OF TIME**

    Plaintiff, Jennifer Smith ("Professor Smith"), hereby submits this Response in Opposition to Defendant's Motion to Quash Service of Process, Set Aside Clerk's Default and Renewed Motion for Enlargement of Time ("Defendant's Omnibus Motion"). In support, Professor Smith states as follows:

    **I.    PRELIMINARY INFORMATION**

    Defendant's Omnibus Motion should be denied because of what it does not state as well as what it does state. The linchpin of the case is: *What did James Vaughan, who claims to have received service of the Amended Complaint and Summons on February 2, 2024, do with those documents?* Neither Vaughan's

1

declaration (Doc. 22-1) nor Denise Wallace's declarations (Docs. 22-2 and 29-1) states what was done with the service documents because that fact will likely sink the Defendant's Omnibus Motion and contradict the Defendant's position on service of process.

A close examination of the following facts belies Defendant's assertion and current stance in this litigation:

1. On November 13, 2023, FAMU law professor Maritza Reyes filed "Plaintiff's Response to [FAMU'S] Motion to Dismiss with Prejudice Plaintiff's Second Amended Complaint, or in the Alternative, Motion to Strike," in an entirely different federal case, No. 6:22-cv-1525-WWB-DCI (M.D. Fla. 2022) ECF 36, which notified Defendant through its external legal counsel, Gray Robinson, P.A., that Professor Smith had initiated legal action against FAMU. (Doc. 1-1, p. 14)

2. Twenty-two days later, Defendant sent a notice of termination to Professor Smith for alleged retaliation against a student on December 5, 2023.[1] (Doc. 1-1, p. 14)

3. On January 8, 2023, Professor Smith argued her termination was onset by Reyes' filing and therefore retaliatory in a memorandum submitted to the Provost's office (working alongside the General Counsel's office in Professor

---

[1] A committee of three lawyers, appointed by the Provost's office, recommended to the Provost to retract the Notice of Termination after finding no evidence of retaliation. (Doc. 1-4, p. 3)

Smith's employment matter) (Doc. 1-3, pp. 18-20)[2] in advance of Professor Smith's predetermination conference on January 11, 2024. (Doc. 6-2, p. 3 ¶ 4). Professor Smith argued the same at the January 11, 2024 conference, where Coates sat in on the hearing on ZOOM.

4. On January 29, 2024, Professor Smith amended her state court complaint and contemporaneously moved for a temporary injunction by emailing her amended complaint and temporary injunction with attachments to Defendant's General Counsel, D. Denise Wallace (Denise Wallace) at email: denise.wallace@famu.edu, which is the same email on all the emails to Professor Smith (*see, e.g*., Ex. 1) and the one listed on The Florida Bar website (Ex. 2). None of the emails bounced back.

5. On January 31, 2024, the state court judge denied Professor Smith's motion. On February 1, 2024, Professor Smith filed a notice of appeal.

6. From January 29, 2024 to February 1, 2024, numerous emails were sent between Judge Rodriguez's judicial assistant and Professor Smith, with Denise Wallace being copied by email. (Doc. 6-3) Even the Defendant's Omnibus Motion acknowledges that "Plaintiff emailed and sent documents via regular mail to General Counsel regarding her *ex parte* communications with the Orange County Circuit

---

[2] Kentayvia Coates, Esq. listed on the copy list is an employment attorney in the Defendant's Office of the General Counsel.

Court." These numerous emails began January 29, 2024. Noteworthy, Defendant refused U.S. mail from Professor Smith to Wallace at the address listed on her emails as if there was a concerted effort to ignore correspondence from Professor Smith. (Exs. 3, 9)

7. By declaration dated March 18, 2024, Defendant's General Counsel, Denise Wallace, stated under penalty of perjury that "[t]his lawsuit was first brought to my attention via an email I received on February 29, 2024, from another professor at the College of Law, a true and accurate copy of which is attached as Exhibit 3 …." (Doc. 22-2, ¶ 9) Wallace's declaration has since been amended to remove any reference to when Professor Smith's "lawsuit was first brought to [her] attention."

8. Wallace's amended declaration now states, under penalty of perjury, that "[t]he alleged service of process and default entered in this lawsuit was brought to my attention via an email I received on February 29, 2024 from another professor at the College of Law[.]" (Doc 29-1) The email referenced in the declaration makes no mention of service of process. (Doc 29-1)

9. James Vaughan, who acknowledges receiving service on February 2, 2024, but now declares he was not authorized to receive service, never indicates in his declaration what he did with the service documents (Doc. 22-1), and Wallace never states that in either of her declarations. (Doc. 22-2, 29-1).

4

10. Interestingly, the same manner in which Professor Smith served Defendant in 2018 is the same manner she served Defendant in 2024 – same address and person with same job title. (Ex. 4, Ex. 5)

11. Wallace then doubles down on her assertion by stating, "Upon learning of the alleged service of process and the default of this lawsuit, I promptly engaged outside counsel, who, the very next day, March 1, 2024, filed a Notice of Appearance[.]" (Doc. 29-1)

Neither Defendant's motion nor its declarations establish what Vaughan did with the service documents nor does Wallace indicate when she knew of the lawsuit. For the reasons discussed herein, Professor Smith believes the Defendant's Omnibus Motion should be denied.

## II. ARGUMENT

Defendant's Omnibus Motion seeks to (1) quash service of process, (2) set aside the state court clerk's default, and (3) renew its motion for extension of time. Professor Smith addresses each point in turn.

### A. Service of Process was Proper.

Service of process was proper because (1) the return of service is facially valid/regular (2) corporate service is authorized under Florida Statute § 1001.72; and

(3) James Vaughan acted as Defendant's designee.[3] In removal cases, "a federal court may consider the sufficiency of process after removal and does so by looking to the state law governing process." *Usatorres v. Marina Mercante Nicaraguenses, S.A.*, 768 F.2d 1285, 1286 (11th Cir. 1985). Chapter 48 of Florida's statutes governs service of process. Section 48.21 specifically requires that a return of service must note: "(1) the date and time that the pleading comes to hand or is received by the process server, (2) the date and time that process is served, (3) the manner of service, and (4) the name of the person served and, if the person is served in a representative capacity, the position occupied by the person." *See Koster v. Sullivan*, 160 So.3d 385, 389 (Fla. 2015) (citation omitted). "When service of process is challenged, the party on whose behalf it is made must bear the burden of establishing its validity." *Aetna Bus. Credit, Inc. v. Universal Decor & Interior Design, Inc.,* 635 F.2d 434, 435 (5th Cir. 1981). The burden is therefore on Professor Smith to show "return of service is, under section 48.21, facially valid or regular on its face." *Koster*, 160 So.3d at 389. Defendant's understanding of the law on service is incorrect.[4]

---

[3] Professor Smith submits that Defendant has attempted to obscure the issues in its Omnibus Motion by wasting considerable time addressing waiver of jurisdiction, when it is the party who removed this case to federal court. Any argument on waiver is moot and should not be addressed unless this Court finds this action was untimely removed.

[4] In its motion, Defendant cites *George Fischer, Ltd. v. Plastiline, Inc.*, 379 So.2d 697 (Fla. 2d DCA 1980)." *Robles-Martinez v. Diaz, Reus & Targ, LLP*, 88 So.3d 177, 181 (Fla. 3d DCA., 2011), but there was no substituted service in this case. (Doc. 22, p. 7)

6

      **1.**      **The Return of Service is Facially Valid.**

Both Vaughan and Wallace admit that Vaughan received Plaintiff's Summons and Amended Complaint on February 2, 2024 (Docs. 22-1, 29-1), but Defendant argues the return of service is facially invalid because (1) it names "James Bond" instead of "James Vaughan" as the recipient of service, and there is no such employee named "James Bond"; (2) it is improper substitute service under Florida law; (3) it fails to list Mr. Bond's position; (4) Mr. Bond is not authorized to accept service, and the documents were not explained to him; (5) it is an improper service method as corporate service is not authorized for a university defendant; and (6) the President was not served in accordance with Florida Statute § 48.111(2). In desperation, Defendant challenges the **entire** proof of service by an experienced and respected process server in hopes that something will stick. All these excuses for quashing service are without merit as explained below.

The Florida Supreme Court has explained "[a] return of service that is regular on its face must include the statutory factors contained in section 48.21." *Koster*, 160 20.3d at 389. "If the return is regular on its face, then the service of process is presumed to be valid and the party challenging service has the burden of overcoming that presumption by clear and convincing evidence." *Id.* Post-*Koster*, a Second DCA panel explained that a return of service with a pseudonym in lieu of a person's name constitutes a facially defect to the return of service. *See Gibson v. Star Collision &*

7

*Towing, LLC*, No. 2D23-1332, 2024 WL 1121649, at *2 (Fla. 2d DCA Mar. 15, 2024) ("We note that in support of its conclusion, the court relied on several cases which found the return of service facially invalid due to the failure to include the name of the individual served."). However, a scrivener's error to a person's actual name goes "toward the veracity of the information in the return of service," so that challenge is an attack on the validity of service itself, rather than the facial validity of the return of service. *Id.* at *2-3 ("Unlike those cases, however, the return of service in the instant case names the person served. While Star Collision may challenge the validity of service based on an added "t" or the description of the individual served, those arguments go toward the veracity of the information in the return of service and should be raised once the burden has shifted.").

Here, Professor Smith filed the initial return of service ("ROS") on February 10, 2024, and it is proper for the following reasons. (Ex. 5) First, the ROS noted each of the statutorily required elements: (1) on February 1, 2024, James Kady obtained the documents to be served in hand at 8:15 am, (2) on February 2, 2024, process was served at 12:49 pm, (3) process was served via corporate service, and (4) James Bond,[5] identified [himself] as the person authorized to accept [service]."[6] Therefore,

---

[5] As the process server's declaration indicates, there is no error in who was served as James Vaughan acknowledges receiving the amended complaint and summons.
[6] The initial return of service twice noted the recipient was "a person authorized to accept service" so Professor Smith argues that is sufficient to state his position as the Board's authorized representative. See also footnote 6 below.

8

the ROS is facially regular/valid and the burden now shifts to the Defendant. *See Koster*, 160 So.3d at 389.

Second, Defendant relies on a misreading of *Gonzalez v. Totalbank*, 472 So.2d 861 (Fla 3d DCA 1985) (Doc. 22, p. 5). Defendant has misread *Gonzalez* as declaring a general rule that "[a] failure to properly record the name of the recipient on the return invalidates service." (Doc. 22, p. 5) This is not the rule pronounced in *Gonzalez*, and the Florida Supreme Court disapproved *Gonzalez* to the extent that it held that Section 48.21 somehow requires the specificity of Section 48.031. *See Koster*, 160 So.3d at 391. Moreover, the *Koster* Court used the facts from a 5th DCA case to explain that a return of service is facially invalid only if the elements are missing, such as when the date listed on the return happens before a summons issues. *Id.* at 389 (citing "*Re–Emp't Servs., Ltd. v. Nat'l Loan Acquisitions Co.,* 969 So.2d 467, 472 (Fla. 5th DCA 2007) (concluding that a return of service was "defective on its face because it not only failed to accurately note the date and time the process came to hand, but also it actually stated that it came to hand before the summonses were even issued.").") This implicit holding was recognized by the Second DCA in *Gibson*, when that panel distinguished cases with "Jane Doe" and "John Doe" listed as a service recipient's name from cases where a name is spelled incorrectly. *See* 2024 WL 1121649, at *2-3. Therefore, any challenge to spelling goes to validity of

9

service itself rather than facial regularity of the return of service itself, *see Gibson*, 2024 WL 1121649, at *2-3.

Lastly, to the extent defendant challenges spelling of "Bond" in lieu of "Vaughan" that argument fails because it is a phonetic homophone (sounds alike but is spelled differently), and the Court should accept Kady's declaration and amended return of service ("Amended ROS"), (Ex. 6).[7] Kady's Amended ROS recounts his encounter with Vaughan and explains that the encounter was more than just an "in passing" situation as Defendant and its counsel have argued. (Ex. 6, ¶¶ 9, 10) Kady clearly outlines his strict adherence to OGC Advisory 11-01, yet the Defendant has disregarded its own regulation with regard to Vaughan. OGC Advisory 11-01 is titled as "Protocol for Assisting Outside Law Enforcement Agencies Conducting Investigations" and it provides in part that:

> Process servers requesting to present University personnel with subpoenas, warrants or court documents involving official University business must be directed to the appropriate person or department pursuant to OGC Advisory 13-01. When notified, the DPS or the OGC will assist, as appropriate, by escorting or making appropriate contact with the necessary individuals on campus to ensure a non-disruptive process for the investigating outside agency.

(Ex. 7)  OGC Advisory 13-01 is titled "Subpoenas, Summons, Court Orders, and Other Written Requests for Information." OGC 13-01 explains:

---

[7] Florida Statute § 48.21 provides that "the return is amendable to state the facts ... at any time on application to the court from which the process issued. On amendment, service is as effective as if the return had originally stated the omitted facts."

10

> For lawsuits filed against the FAMU Board of Trustees or FAMU, service must be upon the Chair of the Board of Trustees at 1601 S. Martin Luther King Jr. Blvd., 400 Lee Hall, Tallahassee, FL 32307, telephone number (850) 599-3225. In the absence of the Chair of the Board of Trustees, process is to be served on the President of the University at 1601 S. Martin Luther King Jr. Blvd., 400 Lee Hall, Tallahassee, FL 32307, telephone number (850) 599-3225. In the absence of the President, service must be upon an attorney in the OGC at 1601 S. Martin Luther King Jr. Blvd., 300 Lee Hall, Tallahassee, FL 32307, telephone number (850) 599-3591.

(Ex. 8)

Kady followed OGC Advisories 11-01 and 13-01 when he appeared at the University's campus on February 2, 2024. (Ex. 6 at ¶ 4) The University employees did as well, initially. Kady first "spoke with a female on the first floor." He indicated that he was a process server who needed to serve a summons and complaint on the University. *Id.* Pursuant to University Regulation 11-01, the female employee told Kady that she could not accept the documents and directed him upstairs where someone should be able to accept the documents. *Id.* After traveling upstairs, Kady was greeted by Vaughan, where service properly occurred. Kady then explained his detailed interactions with Vaughan. (*Id.* at ¶ ¶ 5-11) Vaughan properly accepted service as authorized representative of the University's Board of Trustees. But now, Vaughan says he, himself, did not comply with University Regulations and accepted service even though he was not authorized to do so under OGC 11-01.

Oddly, neither Vaughan's declaration, (Doc. 22-1), nor Wallace's declarations (Docs. 22-2, 29-1), indicate what Vaughan did with the documents he

11

received on February 2, 2024 – that is the most troubling aspect of this service issue and arguably the key to this case.[8] The only legitimate reason for Defendant to hide that critical fact is because it would reveal that Defendant has no viable excuse for challenging service – it was proper service. Vaughan surely provided those documents to the President or General counsel's office, and now they feign ignorance before this Court. Defendant had the Summons and Amended Complaint no later than February 2, 2024, and Wallace's declarations that she was unaware of the service of process until February 29, 2024 is unsupported by any reasonable factual basis on this record, including for all the other reasons cited above.

It is also worth noting that Kady has served process in this state for over thirty years and he is a knowledgeable, experienced process server with the respect of this Court.[9] Any other challenges to the ROS, and now, the Amended ROS are directed at the veracity of this service itself rather than the validity of the return of service, so Professor Smith argues a hearing must be had to test the veracity of Vaughan's statements in his declaration. *See Gibson*, 2024 WL 1121649, at *2-3.

---

[8] As the Court is aware, *Sciarretta v. Lincoln Nat. Life Ins. Co.*, 778 F.3d 1205, 1213 (11th Cir. 2015), allows for *sua sponte* action when counsel prepares a witness to have convenient knowledge of helpful information and no knowledge of anything else. Professor Smith respectfully draws the Court's attention to the parallels between Gray Robinson & Sniffen Law's conduct and the conduct of counsel in that case.

[9] See *Perez v. Margaritas V&P, Inc.,* No. 6:22-CV-1133-RBD-EJK, 2023 WL 3320084, at *2 (M.D. Fla. May 8, 2023) (Judge Kidd ordered that "James Kady is hereby appointed and authorized to effect service of process on Regions Bank, consistent with all applicable rules and laws concerning the service of a writ of garnishment upon a garnishee.").

12

Accordingly, Professor Smith asks this Court to (1) accept her application to submit Kady's declaration and return of service and (2) deem service proper, or, in the alternative (3) compel Kady and Vaughan to submit to this Court's examination to find service was proper.

### 2. Corporate Service is Proper under Florida Statute 1001.72

Defendant also argues "[t]he University is not a corporation but rather an agency of the State of Florida, governed by a board of trustees," so corporate service was improper. (Doc. 22, pp. 5-6) This argument is without merit and is clearly a nonstarter because it ignores Florida Statute § 1001.72 (1), which provides that:

> Each board of trustees shall be a public body corporate by the name of "The (name of university) Board of Trustees," with all the powers of a body corporate, including the power to adopt a corporate seal, to contract and be contracted with, to sue and be sued, to plead and be impleaded in all courts of law or equity, and to give and receive donations. In all suits against a board of trustees, service of process shall be made on the chair of the board of trustees or, in the absence of the chair, on the corporate secretary or designee.

Additionally, it is Defendant's usual practice to allow assistants to accept service documents in the care of the President of the University or Chair of the Board of Trustees. (Ex. 4) Accordingly, Defendant's corporation and substitute service arguments are meritless as a matter of law.

### 3. James Vaughan Represented Himself as Defendant's Designee

Defendant argues "Vaughan is not, in fact, authorized to receive legal process and did not represent to the server that he was." (Doc 22, p. 6; Doc 22-1) Defendant further argues that service of process had to be made on the President or the Chair of the Board of Trustees to be proper. This argument is meritless because Florida law states otherwise. As stated above, Florida Statute § 1001.72 states that "[i]n all suits against a board of trustees, service of process shall be made on the chair of the board of trustees or, in the absence of the chair, on the **corporate secretary or designee**." (emphasis added).

Here, Kady asked Vaughan to confirm that Vaughan was authorized to accept service and Vaughan confirmed same. (Ex. 6 at ¶ 9) This fact alone distinguishes this case from the Deutsche Bank situation presented in *Shannon v. Deutsche Bank National Trust Company*, 2021 WL 4129163, at *5 (M.D. Fla. 2021), which was cited by Defendant (Doc. 22, p. 8). In *Shannon*, the plaintiff filed a return of service that indicated a building security officer told the process server that service could be made on the bank by serving a third-party corporation, CT Corporation. *Id. Shannon* is factually distinguishable because Vaughan is neither a third-party nor a stranger to the President or Chair of the University. In fact, Vaughan is Administrative Assistant to the Office of the President. (Doc. 22-1) Therefore, it is clear Vaughan represented that he was in fact authorized to accept service and any attempt to argue

otherwise is simply bad faith and unethical lawyering. Furthermore, Defendant has previously accepted service via Ms. Henry, who was also Administrative Assistant to the Office of the President. (Ex. 4) It is inconceivable for Defendant to now argue that Administrative Assistant to the Office of the President cannot accept service with no evidence of a change in policy.

### B. Defendant has Defaulted in the Federal Action so Clerk's Default is Appropriate

Professor Smith respectfully asks this Court to direct the Clerk to enter a default against the Defendant because it has failed to demonstrate any reason for its failure to file a response within seven days of removal. Instead, Defendant misstates the law and conceals keys facts. Pursuant to Federal Rule of Civil Procedure 55 and Local Rule 1.10(b), a party must move for clerk's default within twenty-eight days of the non-moving party's "failure to plead or otherwise defend." It was not until the Court issued its Order on March 15, 2024, that the Defendant began to actively engage in defending this case. As detailed in the subsequent section, this inaction justifies the Clerk's entry of default.

### C. No Extension of Time is Warranted

Federal Rule of Civil Procedure 6(b) provides that "the court, may, for good cause, extend the time on motion made after the time has expired if the party failed

15

to act because of excusable neglect." FED. R. CIV. P. 6(b)(1)(B).[10] "[W]hether a party's neglect of a deadline may be excused is an equitable decision turning on 'all relevant circumstances surrounding the party's omission.'" *Cheney v. Anchor Glass Container Corp.*, 71 F.3d 848, 850 (11th Cir. 1996) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 394 (1993)). The factors that a court must weigh include: "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* Post-*Cheyney*, this Circuit has found, after weighing the *Pioneer* factors, that "excusable neglect" may be shown when the plaintiff suffers no prejudice, defendant did not act in bad faith, and the reason for the delay was counsel's erroneous assumption that its previous appearances had been filed in the tag along cases and that it was receiving all ECF filings as well as local counsel's failure to notify Plaintiffs' Connecticut counsel that they had received the motion by mail. *See Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1355–57 (11th Cir. 2009). But that is not the situation at bar.

Indeed, "as a matter of law, an attorney's misunderstanding of the plain language of a rule cannot constitute excusable neglect such that a party is relieved

---

[10] *See also, Omni Healthcare Inc. v. N. Brevard Cnty. Hosp. Dist.*, No. 6:22-cv-696, 2024 WL 711066, at *1 (M.D. Fla. Feb. 21, 2024).

of the consequences of failing to comply with a statutory deadline." *Silas v. Sheriff of Broward Cnty., Fla.,* 55 F.4th 872, 877 (11th Cir. 2022) (internal quotations and citations omitted). Additionally, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable neglect.'" *See id* (citation omitted).

Here, Defendant argues it has shown excusable neglect because (1) any delay was beyond its control, (2) this case presents complexities, and (3) ambiguity as to the validity of the state court default. (Doc. 22, pp. 13-16) Defendant's reasons do not pass this Circuit's muster for excusable neglect because Defendant's failure was not (1) a simple miscommunication between counsel, *see Cheyney*, 71 F.3d at 850; (2) an inadvertent failure to file an appearance across a string of cases, *see Connecticut State Dental*, 591 F.3d at 1357; or (3) malpractice of one attorney, *see Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 399 (5th Cir. 1981)(reversing a trial court's denial of a motion to set aside a default judgment when the default was prompted by counsel informing their clients that no action was necessary in the matter, withdrawing from representation without notifying the clients or getting approval from the court, failing to appear at trial, and failing to notify the clients of the trial.). Instead, Defendant's conduct is insufficient to establish excusable neglect. *See Advanced Estimating System, Inc. v. Riney*, 130 F.3d 996, 998 (11th Cir. 1997) ("Today, we follow the other circuits and hold, as a matter of law, that an attorney's

misunderstanding of the plain language of a rule cannot constitute excusable neglect such that a party is relieved of the consequences of failing to comply with a statutory deadline. Nothing in *Pioneer* indicates otherwise, and we believe that the law in this area remains as it was before *Pioneer.*"); *Silas,* 55 F.4th at 877; *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1255 (11th Cir. 2007) (affirming a district court's finding that a lawyer claiming that "filings related to costs and fees tolled" a deadline did not constitute excusable neglect).

Additionally, Defendant's "complexity" argument fails for a reason similar to the one seen in *Shire Dev., LLC v. Mylan Pharms., Inc.,* No. 8:12-CV-1190-T-36AEP, 2018 WL 6311472, at *3 (M.D. Fla. Nov. 9, 2018), *report and recommendation adopted,* No. 8:12-CV-1190-T-36AEP, 2018 WL 6304868 (M.D. Fla. Dec. 3, 2018), the Magistrate Judge rejected the defendant's contention that there was uncertainty regarding the procedural posture of the case, and the District Judge thereafter adopted part of the Report and Recommendation, and specifically noted, "Although somewhat unusual, nothing about this case's procedural history left any doubt regarding the Defendants' deadline to file the Motion for Taxation of Costs." 2018 WL 6304868, at *1. Applying *Shire* here, the Federal Rules specifically provide that a responsive paper is due seven days from removal. Despite claims of uncertainty, which were unfounded, the Defendant cites a case it recently discovered: *Shannon v. Deutsche Bank National Trust Company*, 2021 WL

18

4129163, at *5 (M.D. Fla. 2021). The *Shannon* case definitively states that a defendant transferring a case from state to federal court must immediately submit a motion compliant with federal court rules to dismiss any default judgment made in state court. Additionally, if the federal court's authority to hear the case is clear, the defendant is also expected to submit the appropriate legal response. Therefore, the Defendant's counsel could have used the precedent set by *Shannon* to address any claimed confusion regarding their obligations after transferring the case to federal court.

Finally, the remaining *Pioneer* factors weigh in favor of Professor Smith because she has litigated this case above board since this case began. Concerning the danger of prejudice to Professor Smith, it is quite evident, Professor Smith's prejudice and damage to her reputation continues each day that she is not in the classroom and remains without access to perform her academic functions. In addition, Professor Smith must encounter emotional distress from the ongoing legal battle, financial strain due to legal costs and lost wages, and the impact on her professional relationships and opportunities. The protracted nature of the case could hinder her career advancement. Also, the delay gives Defendant more and more time to continue to damage Professor Smith's reputation even further, which it has done.[11]

---

[11] Defendant removed Professor Smith from the FAMU website on March 20, 2024 – two days after declaring nothing has changed since this Court denied Professor Smith's TRO. (Doc. 23, p.2)

19

Concerning the length of the delay and its potential impact on the judicial proceedings, this factor also weighs in favor of Professor Smith. Professor Smith has demonstrated above (timing, statements and omissions, and dishonesty) how Defendant and its counsel have operated in bad faith and have intentionally multiplied and prolonged this case. *Cf. Connecticut State Dental*, 591 F.3d at1357.

Accordingly, Professor Smith respectfully asks that this Court deny Defendant's Omnibus Motion and grant any further relief this Court deems fair and proper, including exercising its authority *sua sponte* to safeguard the foundational principles of our legal system.

Dated: March 28, 2024

**LOCAL RULE 3.01(g) CERTIFICATION AND CERT. OF SERVICE**

I hereby certify that, on March 26, 2024, I conferred with the defendant. Defendant opposes the relief requested herein.  I further certify that on this 28th day of March 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all registered users.

Respectfully submitted,

*/s/ Jennifer Smith*
Jennifer Smith
Florida Bar No. 964514 (*pro se*)
Law Office of Jennifer Smith
13506 Summerport Village Pkwy.
Ste 108
Windermere, FL 34786
407-455-0712
jensmithesq@aol.com