# DENNIS, JACKSON, MARTIN & FONTELA, P.A.

PROFESSIONAL ASSOCIATION
ATTORNEYS AND COUNSELORS AT LAW

Craig A. Dennis *
Rogelio J. Fontela
William T. Jackson
Jessica E. Keeler
William Peter Martin ‡
C. Todd Owen
Tiffany Rohan-Williams
Maria A. Santoro *

*Of Counsel*
Teresa C. Ward

‡ Board Certified as a Civil Trial Lawyer by the Bar
* Certified as a Circuit Mediator by the Supreme Court of Florida

Cathy E. McMullian
Firm Administrator

Robin B. Campbell
Jessica H. Gallmon
Nikki W. Garrett, FRP
Jennifer C. Kjellerup, ACP, FRP
Julia Lunt
Jessica N. Mauer
Hester H. Pennington
Dina Sadeq
Karen Weimer
Legal Assistants

**TALLAHASSEE**
1591 SUMMIT LAKE DRIVE, SUITE 200
TALLAHASSEE, FLORIDA 32317
(850) 422-3345
FAX (850) 422-1325

**JACKSONVILLE**
1300 RIVERPLACE BOULEVARD, SUITE 101
JACKSONVILLE, FL 32256
(904) 683-6686
FAX (904) 619-1369

**REPLY TO TALLAHASSEE**

December 12, 2022

VIA Email: Kelly.Collins.McMurry@eeoc.gov

Kelly Collins-McMurry
Federal Investigator
U.S. Equal Employment Opportunity Commission
Miami District Office
100 S.E. 2nd St., Suite 1500
Miami, Florida 33131

RE: Jennifer Smith v. Florida A&M University College of Law
    EEOC Charge No.: 510-2023-00072

Ms. Collins-McMurry:

On behalf of the University, enclosed is the Position Statement and supporting documents regarding the above referenced Charge filed by Jennifer Smith. The Position Statement has been uploaded to the EEOC portal.

Should you have any questions, please do not hesitate to contact my office.

Very truly yours,

Maria A. Santoro

MAS/mjl
Enclosures

Jennifer Smith v. Florida A&M University
EEOC Charge No.: 510-2023-00072

**Position Statement**

The undersigned counsel for the Florida Agricultural and Mechanical University Board of Trustees ("University"), submits this letter and accompanying documents as the position statement to the above-referenced employment charge of discrimination ("Charge").

The current position statement is provided to the Equal Employment Opportunity Commission ("Commission") solely for the investigation of the instant charge and with the understanding that this matter will remain confidential and will not be disclosed for any other purpose, except as provided for by law.

Further, this position statement is not intended to raise all legal theories and/or defenses which the University may ultimately raise in this matter. The University also reserves the right to alter, amend or supplement this statement if new or additional information is alleged or discovered or for other reasons.

1. **Respondent - Florida Agricultural & Mechanical University**

Pursuant to Article IX, Section 7(d), of the Florida Constitution, and the Florida Board of Governors Regulation 1.001, Florida Agricultural and Mechanical University Board of Trustees is a public body corporate and constitutionally created to oversee an institution of higher education and learning.

The University serves approximately 10,000 students and is dedicated to their academic progress as well as the advancement of knowledge, resolution of complex issues and productive empowerment of citizens and communities throughout the nation and world. As the public employer, the University employs approximately 2,329 full-time employees, who are primarily located on its main campus in Tallahassee.

2. **Position Summary**

The University, having independently investigated the allegations of the Charging Party, Jennifer Smith ("Smith") internally, wholly denies that Smith has been subjected to any unlawful employment practice based upon her gender, and further denies that she was denied equal pay based on her sex.

Case 6:24-cv-00457-PGB-RMN   Document 37-8   Filed 04/01/24   Page 3 of 8 PageID 992

Jennifer Smith v. Florida A&M University
EEOC Charge No.: 510-2023-00072
University's Position Statement
Page **2** of **7**

Accordingly, the Commission should issue a no cause determination in this matter.

### 3. Facts Summary

Smith was hired in 2004 at the College of Law as a non-tenured earning Visiting Assistant Professor. Smith's Offer/Appointment Letter and her first contract of employment showing her rank and salary is attached as [Exhibit 1]. Her initial salary was $100,000 for a nine-month teaching contract. *Id.*

Professor Smith subsequently claimed that her negotiated position upon hire was associate professor and not assistant professor. That is not supported by the records maintained at the University, attached [Exhibit 2]. Although the evidence did not support Smith's claim[1] and after much discourse, the University reclassified[2] Smith as an Associate Professor at her initial salary.[3] Her "promotion" did not carry with it the raise in salary that would have occurred had the University's promotion process been used. Smith did not go through the proper procedure for the promotion. Further, Smith did not assert that her negotiated salary was incorrect. Accordingly, the University did not adjust her negotiated salary as Smith did not follow University procedure.[4] As a result, though she has received all percentage increases to which she has been entitled, and all lump sums to which she has been entitled, Smith's salary has lagged behind other professors at the University.

Prior to Smith filing the lawsuits referred to in this position statement, Smith filed an internal complaint with the Office of Equal Opportunity Programs. The investigation revealed that Smith's salary inequity complaint (based on sex) was unsubstantiated, refer to [Exhibit 3].

---

[1] Smith based her claim that she was hired as an "associate" professor because of a clerical error which listed her as an associate and not an "assistant" professor. However, Smith's title and rank in all previous communications with FAMU had her rank as "assistant" professor,

[2] Professor Smith did not go through the established promotional process but instead was reclassified based on her claims and the clerical error.

[3] University ranking is as follows: Assistant Professor, Associate Professor, and Full Professor. In addition, there is tenure earning and tenured. Faculty Handbook pp. 40-44.
See, http://www.famu.edu/facultysenate/Faculty%20Handbook%20%20-%20%20Spring%202008.pdf. An instructor does not fall within the scholarly ranks of professors.

[4] Generally, when a tenured-earning faculty member is promoted through the promotion/tenure process, a salary increase is associated with the granting of the promotion. However, since Smith claimed she was hired as an associate, and she did not subject herself to the promotion process, a salary increase did not occur as her salary remained based on her negotiations.

Smith sued the University in 2014 in federal court, and the jury determined that Smith suffered no discrimination when she was hired in 2004, and that her salary was behind others at the University for other reasons:

> Professor Jennifer Smith sued her employer, Florida A&M University ("FAMU"), alleging pay inequity, sex discrimination, and retaliation. She claimed that FAMU discriminated against its female law professors by paying them less than comparable male law professors and retaliated against her when she voiced opposition. The district court denied summary judgment, and the case went to trial. The jury found FAMU not liable on any of Professor Smith's claims. While the jury found that Professor Smith was paid less than comparable male professors, it was persuaded that the difference was for reasons other than her sex.

*Smith v. Florida Agric. & Mech. Univ. Bd. of Trustees*, 687 Fed. Appx. 888 (11th Cir. 2017). [Exhibit 4].

In 2016, Smith filed another EEOC charge, and another lawsuit against the University, which resulted in another judgment in favor of the University and another appeal affirming that judgment:

> Jennifer Smith, a law professor, appeals the district court's grant of summary judgment in favor of her employer, the Board of Trustees at the Florida Agricultural and Mechanical University ("FAMU"), on her claims of gender discrimination in pay and retaliation under the Equal Pay Act,1 Title VII,2 and the Florida Civil Rights Act ("FCRA").3 This lawsuit is Smith's second one against FAMU for gender discrimination in pay. She brought the first one in 2014 based on her original salary. Smith's claims here, however, center on salary adjustments made by FAMU which applied generally to law professors and occurred after the verdict in Smith's first (and unsuccessful) lawsuit. On appeal, Smith asserts that the district court erred by applying collateral estoppel and granting summary judgment on each of her claims. After a full review of the record, we affirm.

*Smith v. Florida A & M Univ. Bd. of Trustees*, 831 Fed. Appx. 434, 435 (11th Cir. 2020), cert. denied sub nom. *Smith v. Florida Agric. & Mech. Univ. Bd. of Trustees*, 209 L. Ed. 2d 752 (2021). [Exhibit 5].

The University attaches these cases, Exhibits 4 & 5, to this Position Statement for the convenience of the Commission.

Smith now claims another comparator, but the result is the same. This issue has been litigated by two trial courts, two appeal courts, and the result has been affirmed that Smith was not discriminated based on sex. Smith was promoted to associate professor over a dozen years ago summarily by way of paperwork. As a result, she did not receive the pay raise that the promotion process would have afforded her, and her salary has remained proportionate ever since. Smith reached out to the Interim Provost at the time and argued that her contract was incorrect because she was hired as an associate professor. The Interim Provost signed the change, thinking it had been a mistake. [Exhibit 6]. As a Visiting/Assistant professor, Smith was limited in the number of academic years she could stay without promotion. Ergo, Smith was more concerned at that time about her ability to stay employed at FAMU. There was also the possibility that if she went through the promotion process, she would not have been supported by her colleagues or the Dean at the law school.

4. **Legal Analysis**

    a. **The Equal Pay Act**

"An employee establishes a prima facie case under the Equal Pay Act by showing that the employer paid differing wages to employees of opposite sexes for 'equal work on jobs ... which require[ ] equal skill, effort, and responsibility, and which are performed under similar working conditions.' 29 U.S.C. § 206(d)(1); see Steger v. Gen. Elec. Co., 318 F.3d 1066, 1077–78 (11th Cir. 2003)." *Smith v. Florida A & M Univ. Bd. of Trustees*, 831 Fed. Appx. 434, 439 (11th Cir. 2020), cert. denied sub nom. *Smith v. Florida Agric. & Mech. Univ. Bd. of Trustees*, 209 L. Ed. 2d 752 (2021)

A burden-shifting framework is applied to analyze EPA claims. *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 590 (11th Cir. 1994).

Once the employee has established a prima facie case, the employer may avoid liability by proving by a preponderance of the evidence that the payments were made pursuant to:

(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee. 29 U.S.C. § 206(d)(1) (emphasis in original). "The burden to prove these affirmative defenses is heavy and must demonstrate that 'the factor of sex provided no basis for the wage differential.'" *Steger*, 318 F.3d at 1078 (quoting *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir.1995).

*Smith v. Florida A & M Univ. Bd. of Trustees*, 831 Fed. Appx. 434, 439 (11th Cir. 2020), cert. denied sub nom. *Smith v. Florida Agric. & Mech. Univ. Bd. of Trustees*, 209 L. Ed. 2d 752 (2021).

"The burden to prove these affirmative defenses is heavy and must demonstrate that 'the factor of sex provided no basis for the wage differential.'"

*Smith v. Florida A & M Univ. Bd. of Trustees*, 831 Fed. Appx. 434, 439 (11th Cir. 2020), cert. denied sub nom. *Smith v. Florida Agric. & Mech. Univ. Bd. of Trustees*, 209 L. Ed. 2d 752 (2021).

"The employee may then rebut the employer's defense by putting forth evidence demonstrating that the employer's alternative bases for the pay disparity were pretextual or offered as a post-event justification for a sex-based differential." *Id.*

Applying the law to these facts, it is clear that Smith has produced nothing to show she actually performs the same work. Smith and Areto Imoukhuede are filling completely different needs for the University. Thus, while Smith alleges that she is paid less than the newly hired comparator professor she rests her assumption on that she and the new professor perform substantially similar jobs. This is an issue of fact that Smith carries the burden in order to show a prima facie case. *Equal Employment*

Case 6:24-cv-00457-PGB-RMN   Document 37-8   Filed 04/01/24   Page 7 of 8 PageID 996

Jennifer Smith v. Florida A&M University
EEOC Charge No.: 510-2023-00072
University's Position Statement
Page **6** of **7**

*Opportunity Comm'n v. Univ. of Miami*, 19-23131-CIV, 2021 WL 4459683, at *9 (S.D. Fla. Sept. 29, 2021).

In fact, they do not perform substantially similar jobs. Areto Imoukhuede is a Constitutional Law specialist. His CV shows a concentration in that area. [Exhibit 7 – CV]. The College of Law requires 6 hours of Constitutional Law of its students. The net effect is that there are 9 hours of Constitutional Law being taught every semester. The faculty of the College of Law interviewed three candidates to fill the additional need for a professor to teach Constitutional Law. The faculty only approved one candidate, Areto Imoukhuede. [Exhibit 8]. The College of Law has other professors already teaching Constitutional Law. Smith does not teach Constitutional Law and her publication and service history are not concentrated in that area. [Exhibit 9]. Thus, Smith has not provided facts to support her allegations and so her prima facie case fails.

Even assuming a prima facie case, which is not conceded, the University may dispel it by articulating "any factor other than sex" for the disparity. The "factors other than sex" for the pay disparity are, in short: A) that Smith was not promoted to associate professor through regular channels, leaving her continuing salary lower, and B) that the University needed a Constitutional Law professor because of the workload in that area. Imoukhuede has concentrated his efforts in a specialty – Constitutional Law. His salary is in line with the other professors teaching and specializing in that area. These are not contrived reasons and the decision to offer that salary to Imoukhuede had nothing to do with his gender. The University "may consider factors such as the "'unique characteristics of the job; ... an individual's experience, training, or ability; or ... special exigent circumstances connected with the business.'" [citation omitted]. *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1078 (11th Cir. 2003). The unique characteristics of the job and the new professor's unique specialty were the legitimate reasons for his salary offer.

### 5. Conclusion

Based on the evidence and documentation provided in this Position Statement, the University shows that it did not discriminate against Professor Smith by hiring Areto Imoukhuede at a higher salary than Smith's. Smith's lack of going through proper procedures for a promotion limited her salary for the future. The University needed a Constitutional Law professor to teach its required curriculum and therefore Smith and the new male professor are not performing substantially similar jobs. Further,

the University offers legitimate business reasons in that the College of Law faculty interviewed three candidates and approved only one, while the need for a specialized professor was immediate.

The University would request that this Commission terminate its investigation as to the charge with findings that the University has complied with all applicable laws and that it is within the Commission's jurisdiction to investigate and make a determination of no cause and the dismissal of this charge.

### 6. Exhibits

| | |
|---|---|
| 1 | 07/29/2004 Offer Letter and 08/02/2004 Employment Contract |
| 2 | Smith employment status at University 2008 |
| 3 | EOP investigation and report 2012 |
| 4 | Smith v FAMU 2017 case – written opinion |
| 5 | Smith v FAMU 202 case – written opinion |
| 6 | Smith Promotion to Associate paperwork approved only by Interim Provost Austin |
| 7 | Areto Imoukhuede CV |
| 8 | Excerpts Faculty handbook and Faculty meeting Feb 17, 2021, approving only Professor Imoukhuede for hire |
| 9 | Course schedules 2021-2022 |