IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA
CIRCUIT CIVIL

JENNIFER SMITH,

    Plaintiff,

v.      CASE NO.:

FLORIDA AGRICULTURAL & MECHANICAL
UNIVERSITY BOARD OF TRUSTEES,

    Defendant.

_____/

## COMPLAINT

Plaintiff, Professor Jennifer Smith, sues Defendant, Florida Agricultural & Mechanical University Board of Trustees, and states:

### JURISDICTION AND VENUE

1. This is an action for damages in excess of $50,000.00.

2. Venue lies in Orange County because the cause of action accrued in Orange County, and Defendant conducts business and employs individuals within Orange County.

### ADMINISTRATIVE PREREQUISITES

3. All conditions precedent to bringing this action have occurred.

### PARTIES

4. Plaintiff, Jennifer Smith (hereinafter "Professor Smith" or "Plaintiff"), is a female citizen of the United States and a resident of Orange County, Florida, and has so resided at the times material hereto.

5. Defendant, Florida Agricultural & Mechanical University Board of Trustees. (hereinafter "FAMU," "FAMUBOT," or "Defendant"), is a state university in the Florida university system.

6. Defendant operates FAMU which is headquartered in Tallahassee, Florida, and the FAMU College of Law (where the Professor Smith works), which is located in Orlando, Florida.

## GENERAL ALLEGATIONS

7. Professor Smith began working for the Defendant in May 2004, with an official start date of August 8, 2004.

8. Professor Smith performed the duties of a law professor and was subject to the direction and control of Defendant.

9. Professor Smith is a tenured full professor and has been since 2016.

10. On August 16, 2013, then Dean Pernell, Professor Smith's immediate supervisor, evaluated her as excellent in teaching, scholarship and service for the 2012-13 academic year.

11. In May 2014 for year 2013-14, then Dean Pernell evaluated Professor Smith as excellent in teaching, scholarship and service for the 2013-14 academic year.

12. Law faculty were not re-evaluated again for nearly a decade until Professor Smith reported that to BOT board members at a meeting with the faculty at the College of Law.

13. In 2015 after Professor Smith sued for equal pay, Defendant recognized there was gender inequity of up to $20k in its law faculty salaries in "*An Analysis of Instructional Faculty Salary Equity in the Florida Agricultural and Mechanical University College of Law*," prepared by the Florida A&M University Office of Institutional Research (August 2015), which found that for tenured full professors:

2

    a) Average and median salaries for instructional faculty in the college were computed by gender and rank. As Table 2 shows, for the 2014-15 academic year the average and median salaries for male College of Law instructional faculty exceeded those of female instructional faculty at both the Professor and Associate Professor ranks. The average salary for males holding the rank of Professor exceeded the average for females at the same rank by $17,691. (P. 3)

    b) The model estimated that on average, when controlling for other factors male faculty in the College of Law at the rank of Professor earned $20,199 more than their female colleagues. (P. 10)

    c) Focusing exclusively on College of Law faculty at the Professor rank, the results from Model 2 suggest that in general female faculty at the Professor rank in the FAMU of College earned less than their male counterparts. (P. 13)

14. Defendant employs a similar position of tenured full professor at the College of Law, held by Ewanrinareto "Areto" Imoukhuede (Comparator), a male professor, hired on August 9, 2021.

15. Professor Smith and Comparator performed and perform substantially equal work in terms of skill, effort, and responsibility, under similar working conditions.

16. Despite performing substantially equal work, Professor Smith is paid nearly $25k less than Comparator for performing the same or similar job duties.

17. The Comparator's pay is also about $25k greater than the "lockstep" model that Defendant put in place in the 2016 salary adjustments.

18. The increased pay that Comparator received and receives has not been based on superior skill, education, or experience or any other legitimate factor.

19. On May 9, 2022, Professor Smith wrote the president of the University, Dr. Larry Robinson, about the disparity in pay between her and Comparator.

20. On June 28, 2022, Professor Smith filed an informal gender equity complaint with

Defendant's Equal Opportunity Program ("EOP").

21. On September 22, 2022, Defendant's EEO department sent its investigative report to Professor Smith, denying any pay inequities without any rationale for paying Comparator more than Professor Smith.

22. On October 18, 2022, Professor Smith filed a Charge of Discrimination with the EEOC under the Equal Pay Act.

23. October 20, 2022, at precisely 10:30 am, Professor Smith reported a violation of the Code of Conduct to Associate Dean of Students Reginald Green via text message, pertaining to an incident involving an unidentified female student, later identified as MW.

24. Professor Smith alleged that MW displayed deliberate, aggressive, and confrontational behavior, specifically described as "so rude" and "aggressively rude," by barging into a class session in which she was not enrolled, fully aware that the classroom was being used by Professor Smith, as evidenced by a crowd of over 40 students gathered in the hallway, respectfully awaiting the conclusion of the ongoing class.

25. The incident unfolded when MW entered the classroom through the back door and declared that her professor (M. Reyes ("Reyes")) told her that she needed to sit down to get ready for the next class starting at 10:30am.

26. After being instructed to leave by Professor Smith, MW, now very irate, positioned herself outside the front door of the classroom, awaiting an opportunity to re-confront Professor Smith about Professor Smith using the classroom that Professor Smith had reserved a few weeks earlier for a make-up class. Professor Smith had never encountered MW before this occurrence at the law school and had no idea who this unhinged person was.

27. Sometime later, Professor Smith learned from another professor, Patricia Broussard, how

4

remorseful and ashamed MW was said to be, specifically because MW was clerking for the firm where Professor Smith had been a partner, so on December 18, 2022, Professor Smith sent MW the following email to give MW peace about her employment opportunities:

> Hi. I am the professor who you met accidentally in the hallway several weeks ago (late Oct) when I was doing makeup exams in the classroom on the second floor. I was a partner with H&K where you will work this summer. I am proud of you and would not do anything to interfere with a student's career. I wish you the best, and if I can ever help you in any way, please reach out.
>
> Best,
>
> Prof. Smith

MW did not respond. Professor Smith believed the issue was resolved because nearly 60 days had passed since the incident until Professor Smith received emails from Defendant's Compliance department on January 26, 2023.

28. To Professor Smith's surprise, and merely 16 days after she submitted her rebuttal to the EEOC concerning Defendant's position statement on equal pay, Professor Smith learned the issue was not resolved.

29. Nearly 100 days after Professor Smith initially reported the MW incident, on January 26, 2023, Defendant contacted Professor Smith to begin an investigation into the MW incident. But even more surprising, Defendant's investigation made Professor Smith the target, even though Defendant had assured Professor Smith it would look into the incident based on her text to Associate Dean Green, and then to her further surprise, Defendant informed Professor Smith on January 26, 2023 that the outcome of the investigation could be her termination. This was the first time that Professor Smith learned that a complaint had ever been filed against her by MW, including the severity of MW's allegations and the blatant

5

and obvious falsities contained therein.

30. Defendant then carried on a clearly unwarranted investigation from January 26, 2023 until June 5, 2023, ultimately finding all of MW's allegations to be absolutely meritless.

31. MW was the admitted instigator who, on both occasions on the day of the incident, purposefully confronted Professor Smith then MW falsely claimed that she was in fear of her safety with over 40 students in the hallway after MW's repeated voluntary and intentional confrontations with Professor Smith, who had no idea who this person was.

32. On February 15, 2023, Reyes sent an email providing great insight into MW's deliberate disruption of Professor Smith's class on October 20, 2022. In the email, Reyes stated that MW entered Professor Smith's class that day to "remind [Professor Smith] that [Reyes] was about to start class in the classroom where [Professor Smith was] conducting one-on-one sessions with students from [her] civil procedure course. [Professor Smith was] not supposed to be in that classroom where [Reyes] was going to start class in a few minutes. [Professor Smith was] assigned to teach civil procedure in the classroom next door, yet [she] chose to remain in the classroom where [Reys] was due to start teaching evidence to disrupt [Reyes'] class, which [Professor Smith] did." Clearly, MW knew Professor Smith was in the classroom; MW deliberately disrupted [Professor Smith's] class; and MW was the admitted instigator both times she ambushed Professor Smith on October 20, 2022. Professor Smith was in her classroom next door to teach civil procedure at 10:30am, and thus could not have disrupted Reyes' class, which started at 10:30am. Furthermore, Reyes was late to class that day.

33. The investigation was conducted with undue and unreasonable delay, and extended over 130 days from January 26, 2023 to June 5, 2023 to cause needless stress to Professor Smith.

34. Defendant failed to request or preserve key surveillance video evidence, delayed

6

requesting the surveillance video for 104 days (from October 20, 2022 to January 31, 2023) to destroy key evidence that would have immediately exonerated Professor Smith, failed to follow its own Code of Conduct, failed to investigate Professor Smith's complaint against the student, and intentionally disregarded evidence supporting Professor Smith's allegations of deliberate disruptive conduct by MW.

35. Following the investigation, Defendant then falsely accused Professor Smith of retaliation to discredit Professor Smith's legitimate complaints against MW and protect Defendant from potential liability. Then, Defendant recommended the re-imposition of an additional unspecified penalty in its report emailed to Professor Smith on June 5, 2023 ("Report") after Defendant had already instructed the deans to speak with Professor Smith about potential retaliation in March 2023, which had been done, thus duplicating the penalty for the same alleged retaliation.

36. Defendant failed to maintain the confidentiality of the investigation, thereby exposing Professor Smith's protected activity or the details of her complaint to other employees, then falsely alleged another employee (the professor who MW said instructed her to interrupt the class) had filed a complaint against Professor Smith because of Defendant's breach of confidentiality.

37. On June 12, 2023, Professor Smith sent a memorandum addressed to Rica Calhoun (Compliance), Denise Wallace (General Counsel) and Craig Reed (BOT) herein incorporated by reference about the retaliatory actions of the Defendant, and demanded: 1) immediate rescission of the Report, 2) removal of the Report from her file, 3) an immediate investigation of the Code of Conduct violations she initially reported on October 20, 2022 (the date of the incident) against MW, and 4) an investigation into Compliance for its failure to follow its own guidelines, for the reasons herein. Professor Smith never received

a response from the Defendant regarding her memorandum nor any of her demands.

38. On April 30, 2023 and June 13, 2023, Professor Smith supplemented her EEOC complaint with retaliation claims to the EEOC.

39. Professor Smith received a notice of right to sue letter from the EEOC on July 25, 2023.

40. The EPA, 29 U.S.C. § 206 et seq., prohibits employers from paying employees of one sex less than employees of the opposite sex for equal work on jobs requiring equal skill, effort, and responsibility, under similar working conditions.

41. Defendant violated the EPA by paying Professor Smith less than Comparator for performing substantially equal work.

42. After Professor Smith raised concerns about the pay disparity and expressed her intention to exercise her rights under the EPA, Defendant engaged in retaliatory actions against Professor Smith.

43. Defendant's retaliation against Professor Smith includes the adverse employment actions as described above.

44. Defendant's retaliatory actions against Professor Smith were motivated by Plaintiff's exercise of her rights under the EPA, in violation of 29 U.S.C. § 215(a)(3).

45. On October 12, 2023, Defendant notified Professor Smith that she received "a three (3%) percent performance-based increase," which was the highest increase that any employee could receive.

## COUNT I
### DISCRIMINATION IN COMPENSATION
### EQUAL PAY ACT OF 1963, AS INCORPORATED INTO
### THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 206, et seq.

46. The Plaintiff realleges paragraphs 1 through 45.

47. Plaintiff belongs to a protected class; she is female.

8

48. Plaintiff's job functions as a tenured full professor at FAMU have been of equal skill, effort, and responsibility to the job functions of the Comparator and were performed under the same or similar working conditions.

49. During all relevant periods, Plaintiff received wages lower than the Comparator while performing the same or substantially more work than the Comparator.

50. Plaintiff is qualified for and entitled to wages equal to or higher than her Comparator's wages performing the same or substantially more work than the Comparator.

51. Defendant violated the Equal Pay Act (EPA), and Plaintiff is entitled to damages and equitable relief, including attorney's fees and costs.

## COUNT II
## RETALIATION
## EQUAL PAY ACT OF 1963, AS INCORPORATED INTO
## THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 215(a)(3)

52. The Plaintiff realleges paragraphs 1 through 45.

53. Defendant's retaliatory actions against Plaintiff, as alleged herein, constitute a violation of the EPA, 29 U.S.C. § 215(a)(3).

54. The retaliation described herein was based on Plaintiff's exercise of rights protected by law to resist and oppose gender discrimination and harassment and to participate in actions calculated to redress grievances.

55. As a result of Defendant's retaliatory actions in violation of the EPA, Plaintiff has suffered and is entitled to damages and equitable relief, including attorney's fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

a) An order declaring that Defendant has violated the Equal Pay Act, including retaliation provisions;

b) An order removing any negative references to the October 20, 2022 incident from Professor Smith's employment file;

c) An award of unpaid wages and other compensation due to Plaintiff as a result of Defendant's violation of the EPA, including interest;

d) Judgment against Defendant and for Plaintiff awarding compensatory damages on all Counts for the Defendant's violations of law enumerated herein;

e) Judgment against Defendant and for Plaintiff equalizing her salary with her male counterpart, permanently enjoining Defendant from future violations of law enumerated herein and remedying all benefits of which Plaintiff has been unlawfully deprived w enumerated herein;

f) An award of liquidated damages in an amount equal to the unpaid wages and compensation due to Plaintiff;

g) Prejudgment interest;

h) An award of reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b); and

i) Any other relief, including equitable relief, this Court deems just and proper.

**Jury Demand**

Plaintiff demands trial by jury on all issues so triable.

                        Respectfully submitted,

                        */s/ Jennifer Smith*
                        Jennifer Smith
                        Florida Bar No. 964514

                        Law Office of Jennifer Smith
                        13506 Summerport Village Pkwy.
                        Suite 108
                        Windermere, FL 34786
                        407-455-0712
                        407-442-3023 (facsimile)
                        jensmithesq@aol.com