UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JENNIFER SMITH,

    Plaintiff,

                                                    CASE NO: 6:24-cv-00457-PGB-RMN

FLORIDA AGRICULTURAL &
MECHANICAL UNIVERSITY
BOARD OF TRUSTEES,

    Defendant.
_____/

## PLAINTIFF'S OPPOSED MOTION
## FOR ORAL ARGUMENT AND EVIDENTIARY HEARING

    Plaintiff, Jennifer Smith ("Professor Smith"), respectfully moves for oral argument and an evidentiary hearing pursuant to Federal Rule of Civil Procedure 78 and Local Rule 3.01(h) to address the pending motion for preliminary injunction. (Doc. 37) Oral argument is critically necessary to assist this Court in making credibility determinations because the facts are bitterly contested. Professor Smith suggests that a duration of two to four hours should adequately accommodate the discussion for this Motion, with a preference for the hearing to be conducted in person.

1

## LEGAL STANDARD

An evidentiary hearing is not always required prior to the issuance of a preliminary injunction; however, "where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held." *McDonald's Corp. v. Robertson,* 147 F.3d 1301, 1312 (11th Cir. 1998) (citing *All Care Nursing v. Bethesda Memorial Hospital, Inc.,* 887 F.2d 1535, 1538 (11th Cir.1989)). When "conflicting facts place in serious dispute issues central to [a party's] claims" and "much depends upon the accurate presentation of numerous facts, the trial court err[s] in not holding an evidentiary hearing to resolve these hotly contested issues." *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.,* 320 F.3d 1205, 1211 (11th Cir. 2003) (internal quotation marks omitted) (quoting *All Care Nursing,* 887 F.2d at 1539).

## FACTS IN DISPUTE

Professor Smith offers the following non-exhaustive list of critical, bitterly contested facts that support her request for an evidentiary hearing:

1. First, in sworn statements, Defendant has continued to change the rationale for why Professor Smith received a notice of termination. Initially, the rationale was retaliation. (Doc. 37-2) Then, a panel convened by the Defendant of three lawyers found this allegation to be unsubstantiated. (Doc. 37-3) Next, Provost Allyson Watson declared that Professor Smith was terminated "based on her

2

unprofessional and inappropriate behavior towards students as articulated in the Investigative Reports."[1] (Doc. 27-1) No factual allegations were included to even identify what this new allegation even was referencing nor was there ever an issue with more than one student. Now, Provost Watson has suddenly changed her declaration to state that Professor Smith was terminated because of "substantiated finding of retaliation documented in the Investigative Reports." (Doc. 42-3) Provost Watson's conflicting explanations for Professor Smith's termination is further contradicted by a lack of evidence to support even Watson's latest theory for Professor Smith's termination. In Provost Watson's latest declaration, she declares "[g]iven the disruption caused by Ms. Smith's behavior at the College of Law, I declined to take [the panel's] recommendation." (Doc. 42-3) Defendant's December 5, 2023 notice of intent to terminate does not rely on, nor cites evidence of a disruption because there was never such an allegation nor does the January 23, 2024 notice indicate such. (Docs. 37-2, 37-5) Defendant also states in its motion but not in Provost Watson's declarations that Professor Smith was "retaliatory, unprofessional, and inappropriate with at least one student, in addition to engaging in a disruptive 'rivalry' with another law professor" (Doc. 42) – with no facts to support being "unprofessional and inappropriate" with a student or rivalry with a

---

[1] Defendant initially asserted there was an issue with more than one student (Doc. 27-1) then changed to with at least one student (Doc. 42, p. 18), improperly suggesting there were other students, which is not true.

faculty member. The faculty member who Defendant is using to try to sully Professor Smith's reputation has filed a federal complaint against virtually all the law faculty (Doc. 37-13), and none of its contents have been substantiated, it has been dismissed twice thus far, and alleged rivalry with any faculty member was never identified as a reason for Professor Smith's termination. (Doc. 37-13; Docs. 37-2, 37-3, 37-5)

There has never been any allegation of disruption caused by Professor Smith. To the contrary, she has always been rated and evaluated at the highest end of performance and conduct by the law deans and students for twenty years. (Doc. 37-1) Defendant throws out this bare allegation with no supporting factual allegations to try to distinguish the *Assaf v. Univ. of Texas System*, 399 F. Supp. 1245 (S.D. Tex. 1975) case in which the faculty member with impeccable character was reinstated. Defendant has no facts to remotely suggest that Professor Smith's character is not impeccable. Defendant's flip-flopping on the reasons for the notices of termination is because it is clear the rationales for termination are baseless. Accordingly, as explained above, Defendant's latest and conflicting reason for Professor Smith's termination is bitterly contested and this alone requires credibility determinations at a hearing.

2. Defendant continues to assert that Professor Smith was terminated on January 30, 2024 because she stopped being paid – albeit several weeks after January

30, 2024 – the alleged termination date. (Doc. 42-3) Defendant also represents to this Court that any overpayment was an accident because Professor Smith was terminated on January 30, 2024. (Doc. 42-3) In addition, Defendant states that Professor Smith was on the FAMU website after the termination date because of an overload of work of the webmaster – another purported accident. (Doc. 42-3) However, Professor Smith was paid again and most recently on April 10, 2024 after having not been paid since late February. She has not received a COBRA notice as required by law. The Provost's office was sending communications to Professor Smith using only her work email as late as March. Professor Smith used her health insurance and prescription card in March for urgent care. Thus, Professor Smith remains in limbo regarding her employment status.

3. Defendant states that Professor Smith does not state facts that her job and the male comparator's job are equal in terms of skill, effort, and responsibility, but that was already admitted by Defendant in Doc. 1-3, Ex. 4 attached to the Amended Complaint. So, this is another bitterly contested fact.

4. Defendant states that the Amended Declaration of Provost Watson (Doc. 42-3) is to replace her original declaration (Doc. 27-1), but Defendant relies on both conflicting declarations in its response motion (Doc. 42). Accordingly, the representations made in her declarations are bitterly contested issues that justify

calling Provost Watson herself to be examined under oath for a credibility determination.

5. Defendant failed to follow its own Regulations regarding dismissal notice requirements to Professor Smith. (Doc. 37) Defendant was to notify Professor Smith within five days prior to the termination date of January 19, 2024 as stated in the Notice. (Doc. 37-12, Reg. 10.120) Defendant missed this date, then on its own reset the termination date, by changing the contents of the original notice in violation of Regulations. (Doc. 37-12, Reg. 10.120) Then, formally notified her one day before the new termination date of January 30, 2024. Whether Defendant followed its own Regulations is a bitterly contested issue as well.

6. Finally, Defendant states that because Professor Smith's contract ends on May 10, 2024, reinstating her is meaningless and not good public policy. (Doc. 42, Doc. 1-4 p. 9) This position is bitterly contested by Professor Smith because annual employment contracts for tenured professors establish an understanding of renewal – all the faculty will be out of a contract in May 2024 until the annual renewal of contracts for those who are tenured, like Professor Smith, for the fall 2024 school term. This case is about the property and liberty interest created by tenure and the understanding of continued employment affirmed by annual contracts. Defendant continues to treat this case as at will employment and it is so far from that

– tenure is quite different. It has significant employment protections that at will employment does not have. According to FAMU Regulations:

> Tenure in the State University System – A faculty employee who has been granted tenure by the BOT shall have the status of **permanent member of the faculty and be in the continuing employment of the University** until he or she: 1. Resigns; 2. Retires; 3. Is dismissed for just cause under the provision of University regulations or the BOT/UFF Collective Bargaining Agreement; 4. Is discontinued pursuant to the layoff provisions in Regulation 10.113 and BOT/UFF Collective Bargaining Agreement; or 5. Dies.

(Doc. 37-4) (emphasis added) Accordingly, because Professor Smith contests the "just cause" aspect of her termination on grounds that it is retaliation for her protected conduct, whether Professor Smith has a property interest in her employment is a bitterly contested fact that requires a credibility determination to be made at a hearing. A preliminary injunction is not to keep Professor Smith on the payroll, which appears to already be the case, but to maintain her tenure, as well as prevent the loss of reputation and denial of scholarly resources and the other reasons articulated in Professor Smith's Motion (Doc. 37), including allowing her to get back to doing her job. Otherwise, there is clearly irreparable harm and a disservice to the public. It is virtually impossible to defend oneself with ever-changing facts.

WHEREFORE, Professor Smith requests oral argument and an evidentiary hearing on the pending motion for a preliminary injunction.

Dated: April 16, 2024

Respectfully submitted,

/s/ Jennifer Smith
Jennifer Smith
Florida Bar No. 964514 (*pro se*)
Law Office of Jennifer Smith
13506 Summerport Village Pkwy.
Suite 108
Windermere, FL 34786
407-455-0712
407-442-3023 (facsimile)
jensmithesq@aol.com

## LOCAL RULE 3.01(g) CERTIFICATION

I hereby certify that, on April 4, 2024, Professor Smith conferred with Defendant's counsel regarding this motion. Defendant's counsel opposes this relief.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of April, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all registered users.

/s/ Jennifer Smith
Jennifer Smith (*pro se*)
Law Office of Jennifer Smith

8