## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIA
## ORLANDO DIVISION

**JENNIFER SMITH,**

       **Plaintiff,**

**v.**                     **CASE NO: 6:24-cv-00457-PGB-RMN**

**FLORIDA AGRICULTURAL &**
**MECHANICAL UNIVERSITY**
**BOARD OF TRUSTEES,**

       **Defendant.**

_____/

## OPPOSED MOTION TO DISMISS
## FIRST AMENDED COMPLAINT WITH PREJUDICE

Defendant, The Florida Agricultural & Mechanical University Board of Trustees, ("University" or "FAMU") pursuant to FRCP 8(a) and 12(b)(6), by and through its undersigned attorneys, hereby moves to dismiss the First Amended Complaint [Doc. 1-1] with prejudice and states as grounds therefore:

### I.    Relief Requested

The University seeks dismissal of all six counts of the First Amended Complaint with prejudice.

### II.    Basis of the Request

The grounds for dismissal are 1) the First Amended Complaint is implausible because the allegations of irrelevant, and immaterial facts, and speculations are contradicted by the attached exhibits, 2) the complaint is a "shotgun pleading" that

fails to conform to the Federal Rules of Civil Procedure; and 3) the plaintiff fails to state a cause of action for which relief may be granted in each and every count.

### III.   Facts from the First Amended Complaint and its Exhibits

Plaintiff was employed by the University commencing in 2004.  [Doc. 1-1, ¶8]. Plaintiff's previous cases have established that as of 2019, Plaintiff had not suffered pay disparity based on discrimination.  *Smith v. Florida Agricultural & Mechanical University, Board of Trustee*s, 2109 WL 1237725 (N.D. Fla. June 2, 2019); [Doc 17-6, p. 1].

In 2021 the University hired Professor Ewanrinareto "Areto" Imoukhuede. [Doc. 1-1, p. 4, ¶22].  Plaintiff complained about her salary compared to his to the Equal Opportunity Programs Office of the University ("EOP") on June 28, 2022, which resulted in a finding that no discrimination had occurred, and with the Equal Employment Opportunity Commission ("EEOC") in October of 2022.  [Doc. 1-1, p. 5, ¶ 29] [Doc. 1-4 p. 29].

On October 27, 2022, the "Office of Compliance and Ethics (OCE) received a referral via email from the Office of Equal Opportunity Programs (EOP) Director, Latrecha Scott.  College of Law student, [M.W.], reported her concern regarding a negative interaction she had with Professor Smith and believed that Professor Smith violated the University Code of Conduct by her behavior."  [Doc. 1-3, p. 23].

On February 1, 2023, Plaintiff denied the allegations in her interview.  [Doc. 1-3, p. 25].  On March 9, 2023, "Professor Smith filed a complaint through the

University's Compliance and Ethics Hotline, reporting that a student knowingly and intentionally disrupted her class on October 20, 2022." [Doc. 1-3, p. 35].

On June 3, 2023, Rica Calhoun submitted the completed investigative report for both charges, identified as FAMU 2022-11-117, to the president, board of trustees, counsel, and others. [Doc. 1-3, p. 22]. The report was also provided to Plaintiff. [Doc. 1-4, p. 27]. The OEC determined that Plaintiff did not follow up on her text report of October 2022 to Dean Green, and that her March 9, 2023 hotline complaint was lodged "for the purpose of ensuring that [the student] would report that she was the subject of an investigation on her bar application." [Doc. 1-3, pp. 35-36]. In its supplemental opinion, the OEC voiced concern about the "appropriateness and professionalism displayed by Professor Smith," and that "the perceived rivalry between Professors Reyes and Smith, internalized by students, is a distraction and out of step with the values reiterated in University commitments and regulations." [Doc. 1-3, p. 40]. The June 5, 2023 OEC report substantiated the retaliatory motive of the plaintiff. ("[A]n additional finding of retaliation related to Professor Smith's subsequent actions is **SUBSTANTIATED**.") [Emphasis in original] [Doc. 1-3, pp. 22 *et seq.*, 35].

On July 6, 2023, the OCE issued a supplemental report to FAMU 2022-11-117. [Doc. 1-3, p. 38]. The supplemental report indicated that the "Dean of the College of Law should review this supplemental report and take any action deemed appropriate . . ." [Doc. 1-3, p. 41].

Plaintiff's last employment contract term was from August 7, 2023 to May 10, 2024. [Doc. 1-4, p. 9]. The contract provides, in part, "the Employee is subject to the . . . regulations, policies and procedures of the . . . Florida Board of Governors and FAMU, as now existing or hereafter promulgated." *Id.* It also states it "is intended as a complete and final expression of the terms of the Employment Contract between FAMU and the Employee . . ." *Id.*

On December 5, 2023, Allyson Watson, Provost and Vice President for Academic Affairs sent Plaintiff a "Notice of Intent to Dismiss from Employment." [Doc. 1-3, p. 18].

On January 11, 2024, Plaintiff met with a conference panel pursuant to University Regulation 10.120 as provided in the December 5, 2023 letter. [Doc. 1-1, p. 15, ¶81; Doc. 1-3, p. 18].

On January 12, 2024, the conference panel recommended that the "Notice of Intent to Dismiss from Employment" dated December 5, 2023 be rescinded. [Doc. 1-1, p. 21, ¶82].

On January 23, 2024, Allyson Watson, Provost, issued Plaintiff a "Notice of Dismissal of Employment" effective January 30, 2024. [Doc. 1-4, p. 1][Doc. 1-1, p. 17, ¶¶ 90-91].

Plaintiff alleges that she is still a tenured professor in the University's College of Law. [Doc. 1-1, p. 2, ¶ 10].

## MEMORANDUM OF LAW

### I.    Motion to Dismiss Standard

The Middle District recognizes that for a complaint to survive a motion to dismiss for failure to state a claim for which relief can be granted, its allegations must be plausible.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face."  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*APR Energy, LLC v. Pakistan Power Resources, LLC*, 653 F. Supp. 2d 1227, 1231 (M.D. Fla. 2009) (citing *Ashcroft v. Iqbal,* 556 U.S. 662 (2009)).

Additionally, "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern," for purposes of a motion to dismiss. *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009).  "The fact remains that where a plaintiff attaches documents and relies upon the documents to form the basis for a claim or part of a claim, dismissal is appropriate if the document negates the claim." *Thompson v. Illinois Dept. of Professional Regulation*, 300 F.3d 750, 754 (7th Cir. 2002).

Plaintiff's claims are rendered implausible and contradicted by the attachments to the First Amended Complaint.  The "statement of facts must show the plausibility of Plaintiff's claim."  *Ashcroft*, 556 U.S. at 678-79.  Further, Plaintiff's claims are conclusory, lacking in the necessary elements to plead a cause of action.  "[L]abels and

conclusions' are not enough to satisfy the 'plausibility' standard." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Ware v. HUD Properties, LLC*, Case No. 3:20-cv-394-J-39MCR, 2021 WL 11642117, at *5 (M.D. Fla. Jan. 29, 2021).

Rule 8(a) of the Federal Rules requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) provides that a party may defend against the claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

## II.    Summary of Argument

Plaintiff, Jennifer Smith ("Plaintiff" or "Smith"), a former tenured full professor with the FAMU College of Law, brings this, her third action against the University in six counts. Counts I and II claim violation of 29 U.S.C. §§ 206 and 215 (the "Equal Pay Act" or "EPA") and retaliation thereunder. Count III alleges breach of contract. Count IV alleges violation of Plaintiff's First Amendment right to free speech. Count V alleges violation of Plaintiff's procedural due process rights and Count VI seeks an injunction to prevent her termination.

Plaintiff's First Amended Complaint is implausible considering the plaintiff's own exhibits, which contradict her allegations. The First Amended Complaint also includes irrelevant and superfluous material in rambling paragraphs not susceptible of admission nor denial, making it subject to being stricken as an impermissible "shotgun pleading."

Further, Plaintiff has failed to state a cause of action for which relief can be granted in every count of the First Amended Complaint. First, Plaintiff fails to allege

a *prima facie* case for violation of the EPA (Count I) in that she presents no facts whatsoever to support her conclusion that she and her comparator performed the same jobs for dissimilar pay under the same working conditions.

Plaintiff's claims of retaliation under the EPA and the First Amendment (Counts II and IV) similarly fail because Plaintiff has not included allegations to establish that the alleged adverse employment action is causally related to Plaintiff's protected activity.   Nor could she since the complaint against Plaintiff, which ultimately led to her termination, was brought by a student, not the University. Moreover, despite years of continued complaints and multiple lawsuits the University has never retaliated against Plaintiff, who has maintained a nearly constant state of protected activity so that she might claim retaliation at any time.

Even so, the University's reasons for its actions in reviewing the student complaint and terminating the plaintiff are legitimate, truthful, and cannot be shown to be a pretext for retaliation or discrimination.   The University had a duty to investigate an ethics complaint against the plaintiff, which was, in part, substantiated and the University terminated Plaintiff's employment for just cause under University Regulations.

Third, the breach of contract claim (Count III) is unsustainable.   Plaintiff does not allege that the Employment Contract is ambiguous and therefore outside documents cannot be included where the contract itself states it is the complete agreement between the parties.   The Employment Contract also provides that Plaintiff was employed subject to University Regulations.   Plaintiff violated the contract by her

infraction of University Regulations.  After an investigation, determination, notice, and due process, Plaintiff was justly terminated from employment under University Regulations.  The OEC had investigated the charges against Plaintiff and recommended that discipline was in order.  Accordingly, Plaintiff was afforded procedural due process prior to her termination.

Finally, Count VI, which seeks an injunction prohibiting the University from terminating Plaintiff is moot because Plaintiff has not been employed with the University since January 30, 2024.  Further, having twice moved for reinstatement to employment in this case and having twice been denied, the law of the case dictates that Plaintiff is not entitled to injunctive relief.

For all these reasons, and because amendment of the Complaint would be futile, the First Amended Complaint is due to be dismissed with prejudice.

### III.    The First Amended Complaint is Implausible.

The many contradictions between the allegations in the First Amended Complaint compared to the exhibits submitted by Plaintiff herself demonstrate that her claims are not plausible.  First, Plaintiff alleges that she is currently employed.  She amended the complaint on the eve of her last day of employment, January 30, 2024. [Doc. 1-1, p. 1].  Nevertheless, Plaintiff was on notice that she was de facto no longer a tenured professor with the University on that date.  Her termination date was originally set to become effective January 19, 2024, but was extended to January 30, 2024.  Yet, she alleges her continued employment as if it were the case and her termination is only pending.  [Doc 1-1, ¶¶ 10, 23, 24, 137, 142].  "Where the allegations

of a complaint are expressly contradicted by the plain language of an attachment to that complaint, the attachment controls, and the allegations are nullified.[citation omitted]." *Degirmenci v. Sapphire-Fort Lauderdale, LLLP*, 693 F.Supp.2d 1325, 1341 (S.D. Fla. 2010). The First Amended Complaint and particularly Count VI for injunctive relief (see paragraph 137) are not only implausible, the allegations are nullified.

Plaintiff alleges in paragraphs 35, 36k, 36l, and 37 that the **University initiated** an investigation into a "stale" student complaint on January 26, 2023. The exhibits Plaintiff presents show in contrast, that the investigation was **initiated by a student** on October 27, 2022, or one week after the incident occurred (October 20, 2022). [Doc. 1-3, p. 23]. *See also* paragraph 38 of the Amended Complaint wherein Plaintiff alleges "Defendant's **sudden interest** in reviewing MW's complaint . . ." [Emphasis added]. This characterization directly contradicts Plaintiff's own exhibits. The interest was not "sudden," the charge wasn't "stale," and the charge was not initiated by the University – all according to Plaintiff's own exhibits. These allegations go straight to Plaintiff's claim that the investigation was retaliatory, yet the plaintiff's own exhibits demonstrate the contrary. The facts Plaintiff herself presents render the complaint implausible.

Plaintiff complains the University did not take her **one text** about a rude student seriously, and that it was "never investigated." [Doc. 1-1, p. 6; Amended Complaint ¶36c.]. She claims the OEC "deleted" her March 9 charge in paragraph 45. In fact,

Dean Green responded immediately according to Plaintiff herself and the claim **was** investigated in tandem with the student's complaint to the Ethics Committee.  This is all set out in Plaintiff's exhibits, including the disclosure of these facts to Plaintiff at the time.  [Doc. 1-4, p. 32, ¶4][Doc. 1-3, p. 35, ¶4].  The material allegations are completely implausible and contradicted by the exhibits to the First Amended Complaint.

Neither Plaintiff's "complaint" via text nor the hotline report were properly submitted for inquiry under University Regulations, yet they were still investigated. *Id.*  In contrast to Plaintiff, the student put her charge in writing and submitted it to the proper authorities.  Plaintiff manifestly knows how to properly file a charge.  [Doc. 1-1, p. 5 ¶30 ("On June 28, 2022, Professor Smith filed an informal gender equity complaint with Defendant's Equal Opportunity Program")].  Plaintiff's March 9, 2023, hotline call in response to being investigated herself was clearly retaliatory toward the student and unprofessional.  The University's actions were fully justified, again just based on Plaintiff's exhibits.

Plaintiff also complains she was deprived of due process but admits that she received written notice with reasons for her proposed termination and that a conference was both offered and held to provide exactly that – notice and an opportunity to be heard.  She further admits that she **waived this right** when she was offered a second panel review.  [Doc. 1-1, pp. 15-17; Doc 1-1, ¶¶81, 82, 83, 93].

> The "essential requirements of due process" are notice and a pre-termination opportunity to respond.  *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494

(1985).  While some pre-termination hearing is necessary, it need not be elaborate.  *See id.* at 545, 105 S.Ct. at 1495 ("'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action" (citation omitted)).

*Laskar v. Peterson*, 771 F.3d 1291, 1297 (11th Cir. 2014).

Plaintiff's core allegations are rendered implausible and contradicted by Plaintiff's exhibits to the First Amended Complaint.  It must be dismissed.

## IV.    The First Amended Complaint is a Shotgun Pleading.

The First Amended Complaint is a "shotgun pleading" in violation of Federal Rule of Civil Procedure 8(a), directing that a "pleading that states a claim for relief must contain a short and plain statement of the claim showing that the pleader is entitled to relief."  "A 'complainant's failure to link factual allegations to specific counts makes it a quintessential shotgun pleading [which] does not comply with Rule 8(a).'"  [citation omitted].  *Ware v. HUD Properties, LLC*, 2021 WL 11642117, at *8 (M.D. Fla. 2021).  Plaintiff has done precisely that by failing to link the facts to specific counts--incorporating all 97 initial paragraphs into every count.  While this Court has found that this alone typically does not constitute a shotgun pleading, taken together with her implausible allegations and numerous allegations that are not connected to any particular cause of action, Plaintiff's complaint is an impermissible shotgun pleading and should be dismissed. "Thus, Plaintiffs' Complaint is a quintessential shotgun complaint subject to dismissal as 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.' " *See Anderson v. Dist. Bd. of Trustee of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).

Much like the shotgun pleading in *Reyes,* Plaintiff here incorporates numerous irrelevant and extraneous allegations which also subjects a pleading to dismissal on the grounds that it is a shotgun pleading. *Reyes,* 2023 WL 6049174, at *2-3; *Minton v. Ethicon, Inc.*, 2021 WL 1398965, at *1 (N.D. Fla. 2021). These irrelevant factual allegations render the First Amended Complaint difficult to understand and nearly impervious to response. For example, Plaintiff's admission that the 2015 salary study has been addressed in a court of law makes the allegations in paragraphs 16 and 17 extraneous and irrelevant. Plaintiff's allegations about the salary adjustments made in 2016 are further immaterial to the case at hand. [Doc. 1-1, pp. 3-4]. Plaintiff's inclusion of the deposition of Leroy Pernell from a 2015 proceeding [Doc. 1-1, ¶23] and his evaluations of Plaintiff are likewise immaterial to the instant case. [Doc. 1-1, pp. 1-4]. The allegations that faculty were not evaluated for years, even if true, is immaterial and irrelevant to whether Plaintiff was rightly dismissed, retaliated against, or paid equitably. [Doc. 1-1, p. 2, ¶¶11-13]. Likewise, that a "disgruntled" person told Plaintiff about a salary study is irrelevant. The inclusion of anything about the salary study itself is likewise irrelevant and extraneous. [Doc. 1-1, p. 3, ¶¶16. 17].

Plaintiff's clairvoyance as to the motivations of others, her conclusions, and her dashed expectations are likewise irrelevant and peripheral, clouding the pleading and subjecting it to dismissal on the grounds of failure to comply with Rule 8(a). [Doc. 1-1, ¶¶35, 36, 38, 39, 40, 41, 54, 66, 68 *and passim*]. "The vague and irrelevant allegations alone are enough to require repleading." *Minton*, 2021 WL 1398965, at *1. "District courts possess 'inherent authority to *sua sponte* demand repleader of' shotgun

complaints. *Thetford v. Hoover City of Graves*, 619 Fed. App'x. 986, 987 (11th Cir. 2015) (citing *Magluta v. Samples*, 256 F.3d 1282, 1284 & n.3 (11th Cir. 2001)); *Anders v. Carnival Corporation*, Case No. 23-21367-CIV-ALTONAGA/Damian, 2023 WL 4252426, at *1 (S.D. Fla. June 29, 2023).

Moreover, Plaintiff fails to identify her protected activity by incorporating all 97 paragraphs into Count II alleging retaliation and Count IV alleging violation of her First Amendment rights, while those counts are silent.

The First Amended Complaint must be dismissed as a "shotgun pleading."

## V.   Each Count Fails to State a Cause of Action.

### 1.   Count I – Unequal Pay in Violation of the Equal Pay Act

Plaintiff fails to state a cause of action for violation of the Equal Pay Act, 29 U.S.C. § 206 ("EPA"). Her burden is to plead facts that show a prima facie case, and her burden is high. "A plaintiff establishes a *prima facie* case by comparing the jobs held by the female and male employees, and by showing that those jobs are substantially equal with unequal pay." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1533 (11th Cir. 1992). "'The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." *Waters v. Turner, Wood & Smith Ins. Agency, Inc.,* 874 F.2d 797, 799 (11th Cir. 1989); *Jackson v. City of Cape Coral*, Case No: 2:22-cv-408-JES-NPM, 2024 WL 382392, at *4 (M.D. Fla. Feb. 1, 2024).

The plaintiff may not, therefore, simply allege as she has here, that she and her comparator have the same titles. [Doc. 1-1, p. 4, ¶¶22, 23]. "Although job titles [and

job descriptions] are entitled to some weight in this evaluation, the controlling factor under the Equal Pay Act is job content—the actual duties that the respective employees are called upon to perform." *Jackson*, 2024 WL 382392, at *4 (internal citations omitted). "To establish a *prima facie* case under the Equal Pay Act, a plaintiff must prove that the employer paid an employee of the opposite sex more for equal work in an equal position." *Equal Emp't Opportunity Comm'n v. Univ. of Miami*, Case No. 19-23131-Civ-Scola, 2021 WL 4459683, at *7 (S.D. Fla. Sept. 28, 2021); 29 U.S.C. § 206(d)(1). "Whether that employee of the opposite sex—typically called a comparator—performs equal work in an equal position depends on the 'primary duties of each job,' and the inquiry emphasizes 'actual job content' over formal job titles or descriptions." *Edwards v. Fulton Cnty., Ga.*, 509 Fed. App'x. 882, 886 (11th Cir. 2013) (quoting *Arrington v. Cobb Cnty.*, 139 F.3d 865, 876 (11th Cir. 1998)).

Here, Plaintiff does not provide a single primary job duty for her own position, nor does she allege any specifics about her comparator's position. Instead, Plaintiff pleads the bare language of the statute and her own conclusory allegations in paragraphs 22 and 23 that she and her comparator perform the same work under similar conditions. In support she relies on a 2015 deposition in another case which cannot and does not address the current position and responsibilities of Plaintiff vis á vis her comparator. [Doc. 1-3, p. 5]. "Conclusory and 'formulaic recitations of the elements' of an EPA claim is insufficient to state a claim." *Arafat v. School Bd. of Broward Cnty.*, 549 Fed. App'x. 872 (11th Cir. 2103) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

> "The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." *Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 799 (11th Cir. 1989). "The *prima facie* case... focuses solely on the primary duties of each job, not duties that are incidental or insubstantial." [citation omitted] "Although job titles [and job descriptions] are entitled to some weight in this evaluation, 'the controlling factor under the Equal Pay Act is job content' - the actual duties that the respective employees are called upon to perform." [citations omitted]. "[T]he skills and qualifications actually needed to perform the jobs are considered," but not "the skills and qualifications of the individual employees holding those jobs."

*Jackson*, 2024 WL 382392, at *4.

> "She did not plead the facts comparing her skill, effort, and responsibility levels to those younger males who were allegedly paid more than her. Her conclusory and 'formulaic recitation of the elements' of an EPA claim is insufficient to state a claim."

*Arafat*, 549 Fed. App'x. at 875. Accordingly, the Eleventh Circuit held that "the district court properly dismissed *Arafat*'s EPA claim." *Id.*

> Plaintiff has offered only conclusory allegations that Defendant paid her male colleagues more and that this was so because she is a woman. She has not offered evidence to prove the pay disparity at all, which at this stage is fatal as it is one of the two requisite components for a *prima facie* case.

*Fernandez v. Crystal Cruises, LLC*, Case No. 19-CV-22886-LOUISm, 2021 WL 6693757, at *11 (S.D. Fla. Mar. 29, 2021).

Plaintiff here fails in the same manner to plead a *prima facie* case for violation of the Equal Pay Act and Count I must be dismissed.

## 2. Count II – Retaliation in Violation of the Equal Pay Act

It is axiomatic that to establish a *prima facie* case for retaliation under the Equal Pay Act, Plaintiff must establish a causal relation between statutorily protected

conduct and an adverse employment action.  *See Williams v. Motorola, Inc.*, 303 F.3d 1284, 1291 (11th Cir. 2002) (listing elements of EPA retaliation claim: "(1) statutorily protected conduct; (2) adverse employment action; and (3) a causal relation between the action and the protected expression"); *see also Hull v. Bri Sharky's, LLC*, Case No. 5:14–cv–135–RS–CJK, 2014 WL 5772020, at *2 (N.D. Fla. Nov. 5, 2014).  "To meet the causation element, the plaintiff must show that she would not have been fired but for her assertion of her protected rights." *Andreu v. Hewlett–Packard Co.*, Case No. 15–23270–CIV–MORENO/O'SULLIVAN, 2016 WL 1713303, at *8 (S.D. Fla. Apr. 28, 2016).

Plaintiff does not plead that she was investigated or terminated **because of** protected activity.  Rather, she pleads conclusions in paragraphs 77, 95, 96, 105, and 106.  Plaintiff has adduced no evidence, beyond her own self-serving assumptions and conjecture, to otherwise establish the requisite causal connection.  Plaintiff's "guesses or speculation" will not suffice to create a genuine issue of disputed fact.  *King v. Pridmore*, 961 F.3d 1135, 1144 (11th Cir. 2020) (quoting *Lee v. Celotex Corp.*, 764 F.2d 1489, 1491 (11th Cir. 1985)).  Nor is the Court required to draw reasonable inferences in favor of the Plaintiff premised on Plaintiff's own, self-serving conjecture.  *See id.* (citing *Chapman v. Am. Cyanamid Co.*, 861 F.2d 1515, 1518 (11th Cir. 1988).

Lastly, but importantly, to establish causation as to her retaliation claims, Plaintiff must demonstrate that "her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 570 U.S.

338, 362 (2013); *McNely v. Ocala Star-Banner Corp.*, 99 F.3d 1068, 1077 (11th Cir. 1996) (ADA); *Thompson v. Walsh*, No. 3:14cv246/MCR/EMT, 2018 WL 4102842, at *7 (N.D. Fla. July 19, 2018) (first amendment); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (ADEA).

In other words, "a plaintiff must prove that had [she] not [engaged in the protected conduct], [she] would not have been [subject to the allegedly retaliatory acts]." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924 (11th Cir. 2018). Importantly, throughout this entire process, the ultimate burden of persuasion remains on the employee. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134-35 (11th Cir. 2020). Plaintiff has failed to meet this standard, because, as explained in the Plaintiff's exhibits, any actions taken by the University with respect to Plaintiff's employment were the result of Plaintiff's own conduct (or misconduct) and are wholly unrelated to either her sex, or alleged protected activities.

Plaintiff's conclusory assertion that that the investigation was illogical and unwarranted—no doubt an attempt to show pretext—does not save her retaliation claim from dismissal. *Calicchio v. Oasis Outsourcing Group Holdings, L.P.*, 584 F. Supp. 3d 1215 (S.D. Fla. 2021). To establish pretext Plaintiff must also show that the proffered reason is a lie. *Brooks v. Cnty Comm's of Jefferson Cnty, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006). "If the employer offers a legitimate reason, the plaintiff must then establish that the proffered reason was pretextual." *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1314 (11th Cir. 2018). Plaintiff cannot show and does not allege that the documents, the underlying investigation, nor any of the facts included in

documents she presented to this Court are inaccurate.  Thus, she cannot show pretext for the employer's legitimate reasons for the investigation and termination.

Plaintiff's Amended Complaint exhibits supply evidence of the University's legitimate, non-discriminatory reasons for its actions, while her allegations are merely conclusory, requiring inferences instead of stating facts to make her points. "[C]onclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [an employer] has offered...extensive evidence of legitimate, non-discriminatory reasons for its actions." *Jackson*, 2024 WL 382392, at \*7.

Count II for retaliation under the Equal Employment Act must be dismissed.

### 3.  Count III – Breach of Contract

The relevant employment contract is supplied as an exhibit to the First Amended Complaint.  [Doc. 1-4, p. 9].  It reveals on its face that the employee is subject to University Regulations, and that the Employment Contract is the complete contract between the University and the Employee.

> In order to state a claim for breach of contract under Florida law, Plaintiff must allege: (1) a valid contract, (2) a material breach, and (3) damages, as well as Plaintiffs performance of its obligations under the contract or a legal excuse for its nonperformance.

*APR Energy, LLC*, 653 F. Supp. 2d at 1232 (internal citations omitted).

Plaintiff did not perform her obligations under the contract.  In fact, she violated University Regulations and was justly terminated from employment.  She shows via her attachments that she breached the contract herself.

Plaintiff does not allege the Employment Contract is ambiguous, and therefore her reference to other documents in paragraph 111 is improper, needless, and irrelevant. "If a contract provision is clear and unambiguous, a court may not consider extrinsic or parol evidence to change the plain meaning set forth in the contract." *Spring Lake NC, LLC v. Figueroa*, 104 So. 3d 1211, 1214 (Fla. 2d DCA 2012). Plaintiff has alleged no ambiguity and has shown that she breached the contract herself. The First Amended Complaint thereby fails to allege a material breach of the Employment Contract by the University. Count III must be dismissed.

### 4. Count IV – First Amendment Retaliation

"The elements of a First Amendment retaliation claim are (1) speech or activity protected by the First Amendment, (2) an adverse action, and (3) a causal connection between the protected speech or activity and the adverse action." *Warren v. DeSantis*, 631 F. Supp. 3d 1188, 1195 (N.D. Fla. 2022).

> To prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's "retaliatory animus" and the plaintiff's "subsequent injury." It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured— the motive must *cause* the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.

*Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019) (internal citations omitted).

Plaintiff must first show she engaged in protected speech. "To establish a First Amendment retaliation claim, the Court must first determine whether the Plaintiff's speech was protected by the First Amendment—an issue of law which is decided by

the Court. *Moss v. City of Pembroke Pines*, 782 F.3d 613, 617-18 (11th Cir. 2015). That determination is governed by a two-part analysis: (1) "whether Plaintiff's speech was made as a citizen and whether it implicated 'a matter of public concern;'" and (2) "whether the [University's] interest in restricting [the Plaintiff's] speech outweighed [Plaintiff's] wish to be heard." *Id.* (quoting *Carter v. City of Melbourne, Fla.*, 731 F.3d 1161, 1168 (11th Cir. 2013)). The Eleventh Circuit recognizes that "speech that concerns internal administration of the educational system and personal grievances will not receive constitutional protection." [citations omitted]. *Alves v. Board of Regents of the University System of Georgia*, 804 F.3d 1149, 1166 (11th Cir. 2015). Plaintiff's complaints about her salary are not protected speech.

Plaintiff must further show that the adverse employment action was taken **because of the protected activity**. There is no connection here, but Plaintiff's stream of lawsuits and threats of lawsuits over the years have maintained fertile ground for her to claim she is being retaliated against in any circumstance of her choosing. In fact, the University has taken **no** retaliatory action against Plaintiff even after a decade of nearly continuous litigation, and external and internal accusations of discrimination. [Doc. 1-1, p. 2, ¶14; p. 4 ¶¶ 20, 22-27 ; p. 5, ¶29] [Doc. 1-4 p. 29].

Nevertheless, the reasons for Plaintiff's legitimate, non-discriminatory termination are explained within the four corners of the First Amended Complaint and its exhibits. Plaintiff was charged with misconduct by a student, investigated and terminated for just cause in keeping with University Regulations.

Plaintiff has consistently, throughout her employment, exercised her First Amendment rights to free speech without consequence.  It was only when she engaged in behavior toward a student that was "out of step with the values reiterated in University commitments and regulations," that she was referred for discipline and terminated.  She cannot show that there is a causal connection between her exercise of free speech and her investigation or termination.  Count IV must be dismissed.

### 5.  Count V - Violation of Procedural Due Process

Plaintiff attaches documents to the First Amended Complaint showing that she received written notice of the charges against her, an explanation of the evidence, and an opportunity to be heard.  [Doc. 1-3, p. 18]; [Doc. 1-4, p. 1; Doc. 1-1, p. 15, ¶¶ 82, 89].  Thus, Plaintiff admits that she received written notice, that the infraction and evidence were explained and provided to her, and she had an opportunity to present her side of the story.

> [T]he Supreme Court has explained that a "tenured employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" before a state or state agency may terminate an employee.  In other words, the employee is entitled to "some kind" of pre-termination hearing. That hearing is not a mini-trial and "need not definitely resolve the propriety of the discharge.  It should be an initial check against mistaken decisions— essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."

*McKinney v. Pate*, 20 F.3d 1550, 1561 (11th Cir. 1994) (citing to *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985)).  Plaintiff was afforded procedural due process and she admits it.

Additionally, aside from bald assertions that the decision-maker, the Provost

Allyson Watson was biased, no facts are alleged to show bias.  "Typically, courts

require that the challenger meet a threshold test of demonstrating harm or prejudice

resulting from the alleged bias before they will reopen a closed case*." McKinney*, 20

F.3d at 1562.  And, without a demonstration of prejudice, "the challenger's allegations

are discounted." *Id.*  "A demonstration that the decisionmaker was biased, however,

is not tantamount to a demonstration that there has been a denial of procedural due

process." *Id.*  Plaintiff's burden is to show that the University itself held a bias against

her in order to show a deprivation of procedural due process. *Id.* at 1563.  Plaintiff has

alleged nothing to show bias on the part of the Provost or the University.  Count V

must be dismissed.

### 6.  Count VI – Temporary and Permanent Injunctive Relief

At this stage in the case, it is manifest that the plaintiff is no longer employed

with the University.  Plaintiff's allegations in Count VI that "Defendant intends to

terminate Plaintiff," and "Plaintiff will suffer irreparable damage if her employment is

terminated," and "Plaintiff seeks a court order . . . maintaining the status quo. . ." are

clearly moot.  Plaintiff's [Fourth] Motion for Preliminary Injunction admits it, asking

this Court not to preserve the status quo, but rather to "restore the status quo ante –

restoring Professor Smith to her tenured position . . ." [Doc. 37, p. 1].

In addition, having twice moved for preservation or reinstatement of

employment in this case and having twice been denied on the substance of her claims,

the law of the case dictates that Plaintiff is not entitled to injunctive relief in the absence of new facts. [Docs. 1-6, p. 26; Doc. 1-6, p. 77, Doc. 10].

> Under that doctrine, "a decision on an issue of law made at one stage of a proceeding becomes a binding precedent to be followed in successive stages of the same litigation." *Normoyle v. Department of the Air Force,* 65 M.S.P.R. 80, 82 n. 2 (1994), *quoting* 1B James Moore et al., Moore's Federal Practice, ¶ 0.404[1] (2d ed.1993).

*Pawn v. Department of Agriculture*, 90 M.S.P.R. 473, 478 (MSPB,2001).

Count VI must be dismissed.

### 7. Conclusion

The University has met its burden to show the defects in the First Amended Complaint. Those defects are fatal. The First Amended Complaint fails to state any cause of action for which relief can be granted. The pleading is implausible overall considering the plaintiff's exhibits, making it subject to dismissal on those grounds alone. The First Amended Complaint includes extraneous, rambling, conclusory, and irrelevant material making it subject to being stricken as an impermissible "shotgun pleading" by failing to conform to the "short and plain statement of facts" required by the Federal Rules of Civil Procedure. Plaintiff cannot show causation for either of her retaliation claims because the allegations against Plaintiff were initiated by a student, investigated by offices in the University dedicated to that purpose, and a determination was issued to decision-makers with a recommendation for discipline. Plaintiff was terminated for just cause. She was afforded procedural due process in respect for her

tenured status.  The University is entitled to dismissal of the First Amended Complaint in its entirety with prejudice.

WHEREFORE, Defendant, Florida Agricultural & Mechanical University Board of Trustees prays that this Honorable Court will dismiss the First Amended Complaint with prejudice and grant such other relief as it shall deem proper.

### Local Rule 3.01(g) Certification

In accordance with Middle District Local Rule 3.01(g), on May 31, 2024, undersigned counsel for Defendant conferred by telephone with Plaintiff Jennifer Plaintiff regarding the relief requested in this Motion and is authorized to represent to the Court that Plaintiff opposes this Motion.

*/s/ Maria A. Santoro*
**MARIA A. SANTORO**
Florida Bar Number: 0654809
**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004
*Lead Counsel for Defendant*
*Florida A&M University Board of Trustees*

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 31st day of May, 2024, I electronically filed

the foregoing with the Clerk of the Court by using the CM/ECF system which sill send

a notice of electronic filing to all registered users and counsel in this case.

*/s/ Maria A. Santoro*

**MARIA A. SANTORO**
Florida Bar Number: 0654809
Lead Counsel
msantoro@sniffenlaw.com
jlunt@sniffenlaw.com
tward@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004
*Lead Counsel for Defendant Florida A&M*
*University Board of Trustees*
