## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

JENNIFER SMITH,

     Plaintiff,

v.

FLORIDA A&M UNIVERSITY BOARD OF TRUSTEES; ALLYSON WATSON, individually and in her official capacity; D. DENISE WALLACE, individually and in her official capacity; LATONYA BAKER, individually and in her official capacity; LATRECHA SCOTT, individually and in her official capacity; RICA CALHOUN, individually and in her official capacity; GRAY ROBINSON, P.A.; JULIE ZOLTY; and RICHARD E. MITCHELL,

     Defendants.

_____

Case No. 6:24-cv-00457-PGB-RMN

## SECOND AMENDED COMPLAINT

Plaintiff, Jennifer Smith ("Professor Smith"), makes the following allegations against Defendants Florida Agricultural & Mechanical University Board of Trustees ("Defendant FAMU" or "FAMU"), Allyson Watson ("Defendant Watson"), D. Denise Wallace ("Defendant Wallace"), Gray Robinson, P.A. ("Defendant Gray Robinson"), Latrecha Scott ("Defendant Scott"), Rica Calhoun ("Defendant Calhoun"), Julie Zolty ("Defendant Zolty"), and Richard E. Mitchell ("Defendant Mitchell").

## **INTRODUCTION**

Over the past decade, school violence against faculty has emerged as a growing concern, with numerous incidents highlighting the vulnerability of educators. Reports indicate a troubling increase in physical assaults, verbal threats, and acts of intimidation directed at teachers and administrative staff.[1] University professors are not exempted from the increasing number of violent acts, intimidation, harassment or threats that students have displayed in recent years.[2]

Amid these growing concerns, on October 20, 2022, an unprovoked and enraged student, then-unknown to Professor Smith, barged into her ongoing class to demand a seat for the next class. Professor Smith reported the incident with the then-unidentified student to Associate Dean of Students, Reginald Green. Instead of following FAMU Regulations and forwarding the complaint to FAMU's Compliance & Ethics Department

---

[1] Susan D. McMahon et al., *Violence Against Educators and School Personnel: Crisis During COVID* Technical Report, AMERICAN PSYCHOLOGICAL ASSOCIATION (2022), https://www.apa.org/education-career/k12/violence-educators-technical-report.pdf.

[2] Claudia Lampman, Women Faculty at Risk: U.S. Professors Report on their Experiences with Student Incivility, Bullying, Aggression, and Sexual Attention, 5 NASPA J. ABOUT WOMEN IN HIGHER EDUC. 184, 184 (2012) ("In this study of a random sample of 524 professors . . . from 100 colleges and universities across the United States, 91% reported at least one act of student incivility/bullying, 25% experienced at least one sexual behavior from a student, and 1–2% said a student had used or threatened them with violence in the past year."); Colleen Flaherty, *Shattered: A Professor's Murder at the University of Arizona, Apparently by a Former Student,Raises Urgent Concerns About Campus Safety. He Wasn't the First Professor Killed Atwork, Either.*, INSIDE HIGHER ED (Oct. 12, 2022), https://www.insidehighered.com/news/2022/10/13/professors-murder-campus-raises-urgent-safety-questions (detailing several university professors who were killed by students); *see also* Thyrie Bland, FSW Professor Granted Temporary Restraining Order Against Student, NEWS-PRESS (Mar. 2, 2018), https://www.news-press.com/story/news/education/2018/03/02/fsw-professor-granted-temporary-restraining-order-against-student/389244002/; Nadine El-Bawab, UNC Chapel Hill Professor Killed in Office was Shot 7 Times, Medical Examiner Says, ABC NEWS (Oct. 6, 2023), https://abcnews.go.com/US/unc-chapel-hill-professor-killed-office-shot-7/story?id=103780698.

or investigating the complaint pursuant to the College of Law Student Code of Conduct, Associate Dean Green did nothing, including failing to preserve video footage. Nearly 100 days had passed before, and almost two weeks after Professor Smith submitted her response to FAMU's rebuttal to her U.S. Equal Employment Opportunity Commission (EEOC) equal pay lawsuit, FAMU initiated a retaliatory investigation targeting only Professor Smith for the student intrusion. This employment discrimination and civil rights case was initially centered on a retaliatory investigation precipitated by Professor Smith's campaign for equal pay for women at the Florida A&M University College of Law ("FAMU"). Finding the enraged student's version of the class incident completely baseless, FAMU then independently manufactured a claim of retaliation to fabricate cause to terminate Professor Smith. This unlawful termination and blatant retaliation implicates several contractual and previously unpled civil rights issues transforming this case into a much more serious action for judicial intervention.[3]

Professor Smith asserts the following allegations upon information, belief, and investigation of counsel:

## **JURISDICTION AND VENUE**

1.     Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1331 and 1343. Jurisdiction is also based on federal questions under Title VII of the Civil Rights

---

[3] This pleading was updated from prior versions and since the initial complaint was filed in October 2023 based on Defendant's continued actions, intervening administrative hearings, and to ensure accuracy of new facts and circumstances.

Act of 1964, the Equal Pay Act of 1963, the First and Fourteenth Amendments to the U.S. Constitution, and 42. U.S.C. § § 1983, 1985 and 1986.

2.      Venue is proper in this district under 28 U.S.C. § 1441 because Defendant FAMU removed from the Ninth Judicial Circuit Court in and for Orange County, and the Orlando Division of the Middle District of Florida is the "district court of the United States for the district and division embracing the place where such action [wa]s pending." Moreover, the locus of operative facts and many of the witnesses and parties are located or operate in this district consistent with the command of § 1391.

## ADMINISTRATIVE PREREQUISITES

3.      All conditions precedent to bringing this action have occurred.

## PARTIES

4.      Professor Smith is a woman, United States citizen, and resident of Orange County, Florida.

5.      Defendant FAMU is a state university within the Florida state university system headquartered in Tallahassee, Florida. Defendant FAMU operates a law school in Orlando, Florida (the "College of Law").

6.      Defendant Watson is the Provost and Vice President for Academic Affairs at FAMU, and at all relevant times was acting under color of state law.

7.      Defendant Wallace is the General Counsel of FAMU, and at all relevant times was acting under color of state law.

4

8.      Defendant Baker is the Director of Compliance and Chief Privacy Officer for FAMU, and at all relevant times was acting under color of state law.

9.      Defendant Scott is the Director of Equal Opportunity Programs for FAMU, and at all relevant times was acting under color of state law.

10.     Defendant Calhoun is the Chief Compliance & Ethics officer for FAMU, and at all relevant times was acting under color of state law.

11.     Defendants Watson, Wallace, Baker, Scott, and Calhoun are collectively referred to as the "University Employee Defendants."

12.     Defendant Mitchell is of counsel for Gray Robinson and serves as outside counsel to FAMU.

13.     Defendant Zolty is an associate attorney with Gray Robinson and serves as outside counsel to FAMU.

14.     Defendant Gray Robinson is a Florida law firm that serves clients nationally from 15 offices across Florida and Washington, D.C.

15.     Defendants Mitchell, Zolty, and Gray Robinson are collectively referred to as the "Gray Robinson Defendants."

## GENERAL ALLEGATIONS

16.     Professor Smith was employed by FAMU from 2004 up through and including at least April 2024 when she received monies from FAMU, and she had an

exemplary record of service.

17.     In May 2004, Professor Smith started working voluntarily for Defendant FAMU at the COL based on a fulfilled promise by then-Dean Percy Luney that she would be paid in the future for her efforts in establishing the law clinics at the new law school. Her official start date as a law professor was August 8, 2004.

18.     Professor Smith performed the duties of a law professor, which includes teaching, scholarship and service, and she was subject to the direction and control of Defendant FAMU at all times relevant to this litigation.

19.     Defendant FAMU has neither changed the duties and responsibilities of law professors nor the skill or expertise required of law professors from 2004 to date. Professors at the COL perform substantially equal work in terms of skill, effort, and responsibility, under similar working conditions. Former Dean Pernell previously testified that this is the case for all professors at the law school, irrespective of subject matter.  Pernell Deposition, (Ex. 4).

20.     Defendant FAMU does not use subject matter "specialists" to classify law professors. (Ex. 1, p. 3)

21.     Defendant FAMU has neither employed nor maintained any logical or consistent approach in assigning law professors to teach courses.

22.     Professor Smith was a tenured full professor from 2016 until her unlawful, purported termination.

23.     On August 16, 2013, then Dean Pernell, Professor Smith's immediate supervisor, evaluated her as excellent in teaching, scholarship and service for the 2012-13 academic year.

24.     In May 2014 for year 2013-14, then Dean Pernell evaluated Professor Smith as excellent in teaching, scholarship and service for the 2013-14 academic year.

25.     Law faculty were not re-evaluated again for nearly a decade until Professor Smith reported that to BOT board members at a meeting with the faculty at the College of Law.

26.     In 2015 after Professor Smith sued for equal pay, Defendant FAMU recognized there was gender inequity of up to $20k in its law faculty salaries in "*An Analysis of Instructional Faculty Salary Equity in the Florida Agricultural and Mechanical University College of Law*," prepared by the Florida A&M University Office of Institutional Research (August 2015), which found that for tenured full professors:

      a)  Average and median salaries for instructional faculty in the college were computed by gender and rank. As Table 2 shows, for the 2014-15 academic year the average and median salaries for male College of Law instructional faculty exceeded those of female instructional faculty at both the Professor and Associate Professor ranks. The average salary for males holding the rank of Professor exceeded the average for females at the same rank by $17,691. (P. 3)

      b)  The model estimated that on average, when controlling for other factors male faculty in the College of Law at the rank of Professor earned $20,199 more than their female colleagues. (P.

10)

c) Focusing exclusively on College of Law faculty at the Professor rank, the results from Model 2 suggest that in general female faculty at the Professor rank in the FAMU of College earned less than their male counterparts. (P. 13) (Ex. 2)

## **EQUAL PAY ALLEGATIONS**

27.    In 2016, Defendant FAMU informally or formally created a "lockstep" salary structure whereby associate professors were set at a base salary of $120,000 and full professors were set at a base salary of $140,000, subject to nominal increases based on that person's year at the particular rank, tenure status, and years tenured. (Ex. 12)

28.    On August 9, 2021, Defendant FAMU hired Ewanrinareto "Areto" Imoukhuede ("Comparator"), a male professor to the same or similar position as Professor Smith – tenured full professor at the College of Law. His duties are also teaching, scholarship and service.

29.    Professor Smith and Comparator performed substantially equal work in terms of skill, effort, and responsibility, under similar working conditions as tenured law professors at the COL. (Ex. 4)

30.    Despite performing substantially equal work, Defendant FAMU paid Professor Smith nearly $25k less than Comparator for performing the same or similar job duties, and Professor Smith has ten years more legal experience than Comparator.

31.    Comparator's pay at the time he was hired is about $25k greater than the 2016 "lockstep" structure.

32.     The increased pay that Comparator received and receives has not been based on superior skill, education, or experience or any other legitimate factor.

33.     The EPA, 29 U.S.C. § 206 et seq., prohibits employers from paying employees of one sex less than employees of the opposite sex for equal work on jobs requiring equal skill, effort, and responsibility, under similar working conditions.

34.     Defendant FAMU has discriminated against Professor Smith on the basis of sex by paying her a lower wage rate than Comparator for equal work on jobs requiring equal skill, effort and responsibility, performed under similar working conditions, in violation of the Equal Pay Act.

35.     Defendant FAMU violated the EPA by paying Professor Smith less than Comparator for performing substantially equal work.

36.     As a result of Defendant FAMU's unlawful conduct, Professor Smith has suffered lost compensation and other damages, and is entitled to attorney's fees and costs.

## SPECIFIC ALLEGATIONS

37.     On May 9, 2022, Professor Smith emailed the president of FAMU, Dr. Larry Robinson, about the disparity in pay between her and Comparator. Given the history of litigation and the media attention it garnered,[4] resulting FAMU's 2015 salary

---

[4]     Professor    Files    Gender-Discrimination    Suit    Against    FAMU, https://www.tallahassee.com/story/news/local/2014/08/07/professor-files-suit-against-famu-college-of-law/13725423/.

9

Study (Ex. 2),[5] Professor Smith reasonably believed that notifying the FAMU President that women were still underpaid at the law school would invoke swift change.

38.    On June 28, 2022, Professor Smith filed an informal gender equity complaint with Defendant FAMU's Equal Opportunity Program ("EOP")

39.    On September 22, 2022, Defendant FAMU's EOP department sent its investigative report to Professor Smith (2022-FAMU-F-05-005), denying any pay inequities without any rationale for paying Comparator more than Professor Smith. From this point, Defendant FAMU and University Employee Defendants began a campaign of retaliatory acts based on Professor Smith's statutorily protected activity.

40.    On October 18, 2022, Professor Smith filed a Charge of Discrimination with the EEOC under the Equal Pay Act.

41.    October 20, 2022, at precisely 10:30 am, Professor Smith reported a violation of the Code of Conduct to Associate Dean of Students Reginald Green via text message, pertaining to an incident involving an irate and unidentified female student, later identified as Michelle Wanamaker ("MW"), whose is now Michelle Sadiki. Professor Smith regularly reported conduct violations to Green via text message because she chaired the Student Conduct & Disciplinary Committee, and Green was a member of the Committee as Associate Dean of Students.

---

[5] "The study was conducted at the request of the university's Provost, and in response to recently raised concerns about potential salary inequities within the college." (Ex. 2, p. 2).

42.    Professor Smith alleged that MW displayed deliberate, aggressive, and confrontational behavior, specifically described as "so rude" and "aggressively rude," by barging into a class session in which she was not enrolled, fully aware that the classroom was being used by Professor Smith, as evidenced by a crowd of over 40 students gathered in the hallway, respectfully awaiting the conclusion of the ongoing class.

43.    The incident unfolded when MW entered the classroom through the back door and declared that her professor told her that she needed to sit down to get ready for the next class starting at 10:30am.

44.     After being instructed to leave by Professor Smith, MW was then very irate and positioned herself outside the front door of the classroom, awaiting an opportunity to re-confront Professor Smith about Professor Smith using the classroom that Professor Smith had reserved a few weeks earlier for a make-up class. (Ex. 3) Professor Smith had never encountered MW before this occurrence at the law school and had no idea who this unhinged person was.

45.    On November 1, 2022, Professor Smith went to follow up on the October 20, 2022 complaint by visiting Associate Dean Green's office. Professor Smith was told by his assistant, Teresa Pissini, that Associate Dean Green was on vacation, so his assistant emailed Professor Smith acknowledging Professor Smith's visit and said that she would let Associate Dean Green know.

11

46.     Classes ended for the semester 17 days later on November 18, 2022.

47.     Sometime later, Professor Smith learned from another professor, Patricia Broussard, how remorseful and ashamed MW was said to be, specifically because MW did not know that she was clerking for the firm where Professor Smith had been a partner. So on December 18, 2022, Professor Smith sent MW the following email to give MW peace about her employment opportunities:

> Hi. I am the professor who you met accidentally in the hallway several weeks ago (late Oct) when I was doing makeup exams in the classroom on the second floor.  I was a partner with H&K where you will work this summer. I am proud of you and would not do anything to interfere with a student's career. I wish you the best, and if I can ever help you in any way, please reach out.
>
> Best,
>
> Prof. Smith

48.     MW did not respond.

49.     Professor Smith heard nothing else from Associate Dean Green, so she believed Defendant FAMU believed her complaint was not investigation-worthy.

50.     According to Defendant Baker, Associate Dean Green violated FAMU Regulations by failing to send Professor Smith's complaint to FAMU's Compliance Department ("Compliance") to be investigated. (Ex. 5)

51.     Associate Dean Green also failed to follow the Law School's Student Handbook or Faculty Handbook, which directed him to investigate student codes of conduct violations, which he normally did when Professor Smith sent him texts or emails

as chair of the Student Disciplinary & Conduct Committee. (Exs., 9, 10-Handbooks)

52.     To Professor Smith's surprise, and merely 16 days after she submitted her rebuttal to the EEOC concerning Defendant FAMU's position statement on equal pay that admitted Professor Smith was underpaid, Professor Smith learned that Defendant FAMU had begun an investigation of the October 20, 2022 incident MW, but only against Professor Smith.

53.     On January 26, 2023, nearly 100 days after Professor Smith initially reported the MW incident, Defendant FAMU contacted Professor Smith to begin an investigation into the MW incident because of Professor Smith's protected activity seeking equal pay. But even more surprising, Defendant FAMU's investigation made Professor Smith the target, even though Defendant FAMU had assured Professor Smith it would look into the incident based on her complaint by text to Associate Dean Green. Then to Professor Smith's further surprise, Defendant FAMU via Defendant Baker informed Professor Smith on or about January 26, 2023 that the outcome of the investigation could be her termination. On January 27, 2023, Professor Smith first learned that the subject matter of the investigation was MW's complaint against Professor Smith, as well as the severity of MW's allegations and the blatant and obvious falsities contained within them.

54.     Defendant FAMU suddenly revived MW's complaint merely sixteen days after Professor Smith submit her rebuttal to Defendant FAMU's statement to the EEOC

concerning equal pay.

55.     By suddenly reviving the stale complaint, Defendant FAMU failed to request or preserve key surveillance video evidence, delayed requesting the surveillance video for 104 days (from October 20, 2022 to January 31, 2023) to destroy key evidence that would have immediately exonerated Professor Smith, failed to follow its own Code of Conduct and Regulations, failed to investigate Professor Smith's complaint against the student, and intentionally disregarded evidence supporting Professor Smith's allegations of deliberate disruptive conduct by MW. These failures demonstrate the true motivation for the investigation was not the student's reported concern but rather to strike back at Professor Smith for her EEOC activity. Associate Dean Green's email confirms this because, despite the blatant falsities and implausibilities within the student complaint, FAMU nevertheless decided to proceed with an obviously meritless complaint to retaliate against Professor Smith for her protected activity.

56.     Defendant FAMU then carried on a clearly unwarranted investigation from January 26, 2023 until June 5, 2023, ultimately finding all of MW's allegations to be absolutely meritless. FAMU also independently manufactured a finding of retaliation, which was subterfuge to create a false disciplinary record against Professor Smith and to punish her for again seeking equal pay.

57.     MW was the admitted instigator who, on both occasions on the day of the incident, purposefully confronted Professor Smith and interrupted her class, then MW

14

falsely claimed that she was in fear of her safety with over 40 students in the hallway after MW's repeated voluntary and intentional confrontations with Professor Smith, who had no idea who this person was.

58.     On February 15, 2023, another law professor, Maritza Reyes sent an email providing great insight into MW's deliberate disruption of Professor Smith's class on October 20, 2022. In the email, Reyes stated that MW entered Professor Smith's class that day to "remind [Professor Smith] that [Reyes] was about to start class in the classroom where [Professor Smith was] conducting one-on-one sessions with students from [her] civil procedure course. [Professor Smith was] not supposed to be in that classroom where [Reyes] was going to start class in a few minutes. [Professor Smith was] assigned to teach civil procedure in the classroom next door, yet [she] chose to remain in the classroom where [Reyes] was due to start teaching evidence to disrupt [Reyes'] class, which [Professor Smith] did."

59.     It became clear from this email that MW knew Professor Smith was in the classroom; that MW deliberately disrupted [Professor Smith's] class; and that MW was the admitted instigator both times she ambushed Professor Smith on October 20, 2022.

60.     Furthermore, Professor Smith was in her classroom next door to teach civil procedure at 10:30am, and thus could not have disrupted Reyes' class, which started at 10:30am.

61.     Reyes was late to class that day, so she could not have possibly observed

the incident to write such a detailed email. Professor Smith had reserved the particular classroom through all the proper channels at the COL to use on October 20, 2022 until 10:30am. (Ex. 3)

62.     On February 20, 2023, Defendant Scott emailed Professor Smith to inform her that Professor Reyes filed a complaint against Professor Smith and that FAMU EOP was opening an investigation. Not only was that false, but Scott had actually requested Professor Reyes to file a complaint against Professor Smith, which Reyes declined to do, and encouraged Professor Smith to do the same.

63.     On March 9, 2023, Professor Smith re-filed her original complaint she had initially texted to Associate Dean Green on October 20, 2022 to Compliance, but this time Professor Smith filed it via the hotline because Professor Smith was advised that her original complaint was not properly submitted by Associate Dean Green to Compliance per FAMU Regulations.

64.     On March 10, 2023, the Compliance department immediately deleted Professor Smith's resubmission. Defendant Baker then emailed Professor Smith, stating that Compliance's report would include her statement about the October 20, 2022 incident in the ongoing investigation. However, Defendant Baker's email did not address Professor Smith's initial allegations that were made before the student's complaint, which was the main focus of the investigation.

65.     On March 10, 2023, Professor Smith tried to clarify in an email to ensure

Defendant FAMU would be investigating her October 20, 2022 complaint and MW's October 27, 2022 complaint.

66.    To date, Defendant FAMU has not investigated Professor Smith's October 20, 2022 complaint as it is completely ignored in the final reports and in the two notices of termination.

67.    On March 13, 2023, Compliance wrote an email and asked the law school leadership to meet with Professor Smith concerning the March 9, 2023 re-submission of her complaint.

68.    On March 23, 2023, Professor Smith, then-dean Deidre Keller, and Associate Dean Markita Cooper had a short meeting sometime thereafter. During that meeting, Keller expressed her confusion on what Compliance wanted, and Cooper sat quietly as though she knew nothing.

69.    The investigation was conducted with undue and unreasonable delay, and extended over 130 days from January 26, 2023 to June 5, 2023 to cause needless stress to Professor Smith.  All of MW's allegations were found to be meritless.

70.    Following the investigation precipitated by Professor Smith's protected activity, Defendant FAMU then independently manufactured a retaliation finding against Professor Smith to discredit Professor Smith's legitimate complaints against MW, protect Defendant FAMU from potential liability, and retaliate against Professor Smith for her equal pay allegations.

71.     Then, Defendant FAMU recommended the re-imposition of an additional unspecified penalty in its report emailed to Professor Smith on June 5, 2023 ("Report") after Defendant FAMU had already instructed the deans to speak with Professor Smith about potential retaliation in March 2023, which had been done, thus duplicating the penalty for the same alleged retaliation.

72.     Professor Smith did not receive anything tangible or written defining retaliation, and "retaliation" is not defined in any FAMU Regulations. When asked FAMU in litigation discovery of the definition of retaliation, FAMU responded with, "The University uses the ordinary meaning of the term and the letter speaks for itself." (Ex. 13, FAMU Interrogatory Answers May 23, 2024, #13)

73.     On April 12, 2023, Professor Smith signed her next school term's employment contract listing the appointment dates from August 7, 2023 to May 10, 2024. (Ex. 8) However, and because Professor Smith has tenure, the signing of a contract is merely ceremonial as the contract itself incorporates and references FAMU Regulations, including tenure and thus establishing her annual entitlement to a renewed contract.

74.     On April 28, 2023, approximately 90 days after the initiation of the investigation in January 2023 and nearly 180 days after the incident took place, Professor Smith reached out to the Defendant Baker via email to inquire about the progress of the investigation. In response, Defendant Baker stated, "The investigation is still ongoing.

You will be notified once the report has been completed." This delayed investigation of any complaint by Defendant FAMU for nearly 100 days further compounded the frustration and uncertainty Professor Smith experienced throughout this process. The prolonged duration of the investigation, coupled with the lack of timely updates and adequate information of the student allegations, caused significant distress.

75.     On April 30, 2023, Professor Smith supplemented her complaint to the EEOC including Defendant FAMU's new retaliation.

76.     Finally, Compliance emailed the report from the investigation to Professor Smith on June 5, 2023. That is when Professor Smith assumed the investigation ended as per Defendant Baker. However, Defendant FAMU was still secretly dragging the investigation on and keeping its options open to be able to blame Professor Smith with some manufactured misconduct down the road – which is exactly what happened and has prompted revisions to her pleadings.

77.     Defendant FAMU failed to follow its own procedures (Code of Conduct), including FAMU Code of Conduct 1.019 (18b), which states: "Managers/Supervisors are responsible for reporting complaints received to the Office of Compliance and Ethics, either directly or through the FAMU Compliance and Ethics Hotline." Defendant FAMU did not follow this then blamed Professor Smith. Professor Smith reported a complaint to a supervising dean, Associate Dean Green, on October 20, 2022. Pursuant to this regulation, he was responsible for reporting her complaint to Compliance. Instead,

Associate Dean Green told Professor Smith he would investigate her complaint then later told Compliance that he did not take Professor Smith's complaint as a real complaint. Thus, when Professor Smith properly **re-filed** her original October 20, 2022 complaint to the Compliance hotline in March 2023, Defendant FAMU then accused Professor Smith of retaliating against the student for the filing of a first-time complaint in its June 5, 2023 report.

78.     Furthermore, FAMU Regulations conflict with the COL's Student Code of Conduct, which was evidenced by the recommendation of the June 5, 2023 report (p. 14), stating: "Consider if additional processes need to be implemented to address internal complaints to the law school and the transfer of complaints to investigative University offices."

79.     Defendant FAMU failed to maintain the confidentiality of the investigation, thereby exposing Professor Smith's protected activity and the details of her complaint to other employees including Reyes. As further evidence of the breach or complete lack of confidentiality, Defendant FAMU misrepresented that Reyes had filed a complaint against Professor Smith. Defendant Scott was manufacturing a "rivalry" amongst Professors Smith and Reyes to then use down the line for termination, which Defendant FAMU did as explained in more detail below.

80.     On June 12, 2023, Professor Smith sent a memorandum addressed to Defendant Calhoun (Compliance), Defendant Wallace (General Counsel), and Craig

Reed (BOT) and copied to Defendant Waston (Provost) about the retaliatory actions of Defendant FAMU, and demanded: 1) immediate rescission of the Report, 2) removal of the Report from her file, 3) an immediate investigation of the Code of Conduct violations she initially reported on October 20, 2022 (the date of the incident) against MW, and 4) an investigation into Compliance for its failure to follow its own guidelines, for the reasons herein. Professor Smith never received a response from Defendant FAMU or the University Employee Defendants regarding her memorandum nor any of her demands. (Ex. 11)

81.     On June 13, 2023, Professor Smith supplemented her complaint to the EEOC including Defendant FAMU's new retaliation.

82.     Not even one month after supplementing her EEOC complaint, on July 6, 2023, Defendants Baker and Calhoun (Compliance) authored a "secret" supplemental report on the investigation and copied Defendant Scott (EOP), where Professor Smith has filed her informal equal pay complaint in 2022, Defendant Watson, Defendant Wallace and others, but did not send a copy to Professor Smith. Importantly, the secret report maintained only the independently manufactured finding of retaliation without finding any new violations of FAMU policy, though the FAMU departments purported to manufacture others.

83.     Professor Smith assumed that the investigation ended with the June 5, 2023 report from Compliance, but unbeknownst to her, Defendant FAMU and the University

Employee Defendants were secretly engaged in a continual retaliation campaign against Professor Smith.

84.     Professor Smith received a notice of right to sue letter from the EEOC on July 25, 2023.

85.     On October 5, 2023, Professor Smith sent a memorandum to Compliance concerning MW's continued fixation on Professor Smith and with ruining Professor Smith's reputation. Professor Smith clarified that through the memo she "wish[ed] to formally express [her] concern regarding MW's persistent and unsettling behavior towards [Professor Smith]" citing post-March 2023 incidents of MW's fixation with Professor Smith. Professor Smith did not submit said concern through the hotline portal or any other reporting authority.

86.     While Professor Smith's October 5, 2023 memo indicated she was obligated to report MW, Professor Smith neither indicated that she planned to nor that she had already followed through on the actions.

87.     Neither Defendant FAMU nor the University Employee Defendants responded to the October 5 memo.

88.     On October 12, 2023, Defendant FAMU notified Professor Smith that she received "a three (3%) percent performance-based increase," which was the highest increase that any employee could receive.

89.     On October 17, 2023, Professor Smith filed her equal pay and retaliation

complaint in state court, but she did not attempt to serve Defendant FAMU until 2024.

90.    On November 13, 2023, another law professor, Reyes, who had an active lawsuit against Defendant FAMU, notified the Gray Defendants of Professor Smith's complaint in Reyes' federal court filing entitled, "Plaintiff's Response to Defendant's Motion to Dismiss with Prejudice Plaintiff's Second Amended Complaint, Or in the Alternative, Motion to Strike" on page 12.

91.    Defendants then began the process to terminate Professor Smith.

92.    Specifically, on or around November 13, 2023, the Gray Defendants contacted Defendant Wallace and informed her of Professor Smith's unserved lawsuit raising equal pay and constitutional rights violations.

93.    The Gray Defendants did not advise Defendant Wallace not to act in response to the information they had given her. Nor have they attempted to stop or mitigate Defendant Wallace's conduct.

94.    At all relevant times, the Gray Defendants were aware Professor Smith's unserved complaint concerned equal pay, women's rights, and constitutional rights issues.

95.    The Gray Defendants are seasoned lawyers and based on their skill, expertise, and or experience knew or should have known that Defendant Wallace would act or in fact that she planned to act on the information told to her. Accordingly, the Gray Defendants and Defendant Wallace entered a formal or informal agreement to carry out

Professor Smith's termination in violation of federal statutory and constitutional law.

96.    Sometime shortly after learning of Professor Smith's lawsuit, Defendant Wallace met separately or together with Defendants Watson, Scott, Calhoun, and Baker. During those meetings and communication, Defendant Wallace informally or formally spearheaded, encouraged, and commanded Defendant Watson and the remaining University Employee Defendants support Professor Smith's termination.

97.    The University Employee Defendants each complied and independently agreed to carry out Defendant Wallace's plan for Professor Smith's termination.

98.    Specifically, Defendants Baker, Calhoun, and Scott gathered documents and submitted materials in support of Professor Smith's termination.

99.    Defendants Baker, Calhoun, and Scott also compiled and arranged materials to fabricate a rivalry between Professors Smith and Reyes, without realizing Professor Smith had recommended Reyes to FAMU COL for hire in 2009. Scott actually lied to Professor Smith that Reyes had filed a complaint against Professor Smith when that was absolutely false.

100.    Defendant Watson specifically met with, continued to consult, and acted alongside Defendants Baker, Calhoun, and Scott to serve as the cat's paw for Defendant Wallace from November 13, 2023 to date about Professor Smith's termination.

101.    Then, on December 5, 2023, Defendant Watson acted on Defendant Wallace's encouragement, command, or suggestion, and Watson emailed Professor

Smith a notice of intent to terminate her on January 19, 2024 with limited procedures for a hearing/conference on January 11, 2024. (Ex. 6) Defendant FAMU through Defendant Watson emailed this notice to Professor Smith on December 5, 2023 based on an alleged memorandum she wrote on October 5, 2023, describing her continued personal safety concerns with a student who continued to demonstrate unsettling, irregular and suspect behavior toward Professor Smith, even though FAMU Defendant rewarded Professor Smith with the highest salary performance-based salary increase on October 12, 2023. Defendant FAMU's purported reason for terminating Professor Smith is a sham and subterfuge for the real reason – Professor Smith's protected conduct alleged herein.

102.    Defendant FAMU has not terminated any male law professor for similar or more severe violations of FAMU policies, specifically male professors are irregularly investigated but when they are investigated the male professors have been found to have engaged in malfeasance/nonfeasance, including harassing women faculty, female students, and LGBTQIA-identifying students, being inappropriate with female staff, missing numerous classes and attending classes 20-30 minutes late, but no male faculty have been terminated for that conduct.

103.  Spring 2024 classes were set to start on January 8, 2024, so clearly Professor Smith was not expected to teach in the spring semester.

104.    At some point shortly between November 17, 2023 and December 5, 2023, Defendant Wallace met with the Gray Defendants to inform them of her decision to

terminate Professor Smith. The Gray Defendants neither objected nor attempted to prevent said action.

105.    On December 12, 2023, Professor Smith noticed Defendant FAMU for a conference pursuant to Regulation 10.120 (3).

106.    Professor Smith also requested any all evidence against her. Defendant FAMU neither provided any additional documents nor withheld any on the basis of confidentiality or a privilege.

107.    Between December 12, 2023 and January 11, 2024, Defendants Watson consulted Defendant Wallace to discuss Professor Smith's termination and Professor Smith's request for a conference including who to strategically place on that conference panel.

108.    The University Employee Defendants eventually settled on three employees, one of which served on the FAMU DRS board alongside Defendant Watson, with the informal or formal assistance, guidance, command or encouragement of Defendant Wallace.

109.    On January 11, 2024, a conference took place before a three (3) person panel selected by Provost Watson on ZOOM. The panel members were all lawyers: Bryan Smith, J.D., Associate VP for Student Affairs; Andrea Nelson, Esq., School of Business and Industry; and Patricia West, Esq., FAMU Developmental Research School.

110.    At the conclusion of the hearing, Associate Provost Dr. Reginald Perry,

who was over the process, indicated that a report would be produced by close of business

on January 12, 2024.

111.    The panel's report on January 12, 2024 recommended that Defendant

FAMU rescind its intent to terminate and stated the following:

> Pursuant to Florida Agricultural and Mechanical University ("FAMU") Board of Trustees Regulation 10.120, university employee, Jennifer M. Smith, duly requested a conference to hear employee's response to a "Notice of Intent to Dismiss from Employment" letter, dated December 5, 2023, that was tendered to the employee.
>
> FAMU Regulation 10.120 (3)(a) reads as follows, "The purpose of the conference shall be to hear the employee's response to the charges in order to protect the employee from erroneous or arbitrary adverse action; to afford the University an opportunity to reevaluate its position after reviewing the information presented by the employee, and to thereafter make a recommendation to affirm or alter the disciplinary action as may be warranted."
>
> The Panel that was chosen to facilitate the January 11, 2024 conference, convened on behalf of Jennifer M. Smith, consisted of university employees Andrea Nelson, Bryan F. Smith, and Patricia West. The Panel convened to determine whether or not it would make a recommendation to affirm the university's "Notice of Intent to Dismiss from Employment". **After careful and thorough deliberation, the Panel unanimously recommends the "Notice of Intent to Dismiss from Employment" be rescinded as this Panel does not find the employee's "re-filing" of what was believed to be a previously filed complaint to be an act of retaliation.**
>
> In conclusion, the diligent efforts of our panel have now been completed.
>
> (emphasis added)

112.    At some point between the conclusion of the conference on January 11,

2024, Defendant Watson consulted with Defendant Wallace to discuss terminating Professor Smith notwithstanding the conference panel's recommendation. Professor Smith would soon learn, albeit late and in violation of FAMU Regulations, that Provost Watson declined to accept the panel's well-reasoned, unanimous recommendation.

113.   On Thursday, January 18, 2024, Professor Smith emailed Dr. Perry because she had not received any notice from FAMU thus far. According to Regulation 10.120(3): "After the conference is conducted, the employee shall be notified, by the President or President's designee of the University's decision."

114.   According to Regulation 10.120(4): "If the University determines after the conference that it will proceed with the proposed disciplinary action, the employee shall be notified within five workdays prior to the date the action is effective."

115.   According to Regulation 10.120(1), the Defendant FAMU shall give written notice to the employee of the proposed action. According to Regulation 10.120(2): "The notice shall include the following information: (a) The effective date of the University's proposed final action." This date of the proposed final action in the Defendant's written notice was listed as January 19, 2024.

116.   Defendant FAMU missed notifying Professor Smith by January 18, 2024 of its intent to proceed with her termination.

117.   At some point shortly between January 12, 2024 and January 23, 2024, Defendant Wallace met with the Gray Defendants to inform them of the decision to

uphold Professor Smith's termination. The Gray Defendants neither objected nor attempted to prevent said action.

118.   On January 23, 2024 at 4:56 p.m., Professor Smith received an email with notice of Defendant FAMU's intent to terminate her, stating:

> After reviewing all documentation and considering the totality of circumstances related to this matter, the University's decision to dismiss you from employment remains in effect. Pursuant to Florida A&M University Board of Trustees (University) Regulation 10.205, you are hereby notified that your current employment with the University will end at the close of business on Tuesday, January 30, 2024. You will remain on Administrative Leave with Pay until this date. In the interim, please refrain from reporting to work or visiting the area(s) related to your current work assignments unless otherwise notified by this Office. The reason for this employment action has been outlined in the "Notice of Intent to Dismiss from Employment" delivered to you on December 5, 2023. (Ex. 7)

119.   To circumvent missing its notification timeframe by FAMU Regulations, Defendant FAMU admits it changed the effective date of the proposed termination that was in the Notice of Intent to Dismiss from Employment from January 19, 2024 to January 30, 2024.

120.   Defendant FAMU then outlined the procedures that Professor Smith should follow to appeal the decision.

121.   After Defendant FAMU ignored its panel's recommended finding that Professor Smith did not retaliate and the termination notice should be rescinded, there is no reason to believe that she will receive due process in any appeal process. Professor Smith continued with her internal appeals notwithstanding.

122.   On February 28, 2024, Professor Smith emailed her complaint and request for a Step One hearing pursuant to FAMU Regulation 10.206 to Associate Provost Reginald Perry.

123.   Soon after, Defendant Watson consulted Defendant Wallace to discuss Professor Smith's termination and Professor Smith's request for a Step One hearing, including who to strategically select as the Step One Reviewer.

124.   Defendants Wallace and Watson agreed to place Antoneia Roe as the Step One Reviewer to influence and obtain their desired outcome based on Roe's history with General Counsel's office as counsel. Defendants Wallace and Watson therefore instructed Roe to contact Professor Smith via the FAMU email account belonging to Professor Smith that Defendant FAMU had shut down shortly prior.

125.   On March 13, 2024, Professor Smith inquired to Associate Provost Reginald Perry whether Defendant FAMU intended to move forward with a Step One hearing because she had not heard from Defendant FAMU since she submitted her Step One complaint.

126.   At 10:46am on March 13, 2024, Dr. Perry responded to Professor Smith indicating that Defendant FAMU intended to move forward with a Step One hearing.

127.   On many occasions between March 11, 2024 and April 12, 2024, the Gray Defendants reached out to, drafted, and consulted with Defendants Wallace and Watson concerning Professor Smith's termination, the status of any internal appeals, and the

progress of same. Specifically, the Gray Defendants doctored Wallace's and Watson's declarations to mask the firm and attorney's unlawful activity. Furthermore, the Gray Defendants argued inconsistent positions to Defendant Watson's declarations, indicating that Defendant Watson has only served as a puppet for Defendant Wallace and the Gray Defendant's unlawful agreement. Even at this point, not one Gray Defendant attempted to prevent or counsel Defendant Wallace against continuing with the unlawful termination.

128.   Specifically, the inconsistent reasons for Professor Smith's termination are:

a. The initial notice from December 5, 2023 states:

> The reason for this employment action is the **substantiated finding of retaliation** documented in the FAMU Division of Audit and Compliance Investigative Report 2022-11-117, dated June 5, 2023, and Supplemental Report 2022-11-117, dated July 6, 2023, which are attached and incorporated in this Notice of Intent to Dismiss from Employment ("Notice"). Subsequent to the referenced reports, you continued to engage in behavior which you were advised was retaliatory, as evidenced by your **memo dated October 5, 2023**, also attached and incorporated in this Notice. (Ex. 6) (emphasis added)

b. The Notice of Termination dated January 23, 2024, the University's reason for termination was: "After reviewing all documentation and considering the **totality of circumstances** related to this matter, the University's decision to dismiss you from employment remains in effect." This new rationale is inconsistent with the December 5, 2023 reasons, and FAMU Regulations require that any reasons be "specific." (Ex. 7) (emphasis added)

c. However, on March 25, 2024, Provost Watson stated, under penalty of perjury in her initial declaration, that, "My decision to termination (sic) Ms. Smith's employment was based on **her unprofessional and inappropriate behavior towards students as articulated in the**

**Investigative Reports.**" (Ex. 14) (emphasis added)

d.  Then, on March 25, 2024, The Gray Defendants advanced a version of the above reason in a court filing in "Defendant's Response In Opposition To Plaintiff's Motion For Preliminary Injunction And Supporting Memorandum," stating: "**Defendant's supplemental investigation also found that <u>Plaintiff was unprofessional and inappropriate with students</u> regarding the confrontation between Plaintiff and the student from the original report, and that her rivalry with a fellow College of Law professor was being internalized by students and creating a distraction.**" (Ex. 16, p. 11) **Plaintiff is not an educator of 'impeccable character,' rather, she was found to be retaliatory, <u>unprofessional, and inappropriate with students, dragging them into her "rivalry" with another law professor</u>.**" (emphasis added)

e.  After Professor Smith served a Rule 11 sanctions motion to Gray Defendants on the FAMU Defendant because of the untruthful first declaration signed by Provost Watson, on April 11, 2024, Provost Watson signed a new declaration under penalty of perjury, stating that, "My decision to terminate Ms. Smith's employment was based on the **substantiated finding of retaliation documented in the Investigative Reports**." (Ex. 15) (emphasis added)

f.  Next, on April 12, 2024, in "Defendant's Response in Opposition to Plaintiff's Motion for Preliminary Injunction and Supporting Memorandum," Gray Defendants, trying to beef up the original allegations, stated allegations clearly inconsistent with the initial reasons for termination, "**Plaintiff's employment ended because she <u>retaliated against a student</u> for making a written complaint against her**. … **Plaintiff then filed a retaliatory complaint against the student 'for the purpose of ensuring that [the student] would report that she was the subject of an investigation on her bar application**.' Id. This was fully investigated and substantiated by Defendant's Division of Audit and Compliance in Reports 2022-11-17 and 2022-11-117. Id. Defendant's supplemental investigation also found that **Plaintiff was <u>unprofessional and inappropriate with students</u> regarding the confrontation between Plaintiff and the student from the original report, and that her rivalry with a fellow College Law professor was being internalized by students and creating a distraction.**" "Plaintiff is not an educator of 'impeccable character,'

rather, she was found to be retaliatory, **unprofessional, and underline inappropriate with at least one student, in addition to engaging in a disruptive 'rivalry' with another law professor**." (emphasis added)

129.   Defendant FAMU's inconsistent and ever-changing reasons and iterations to Professor Smith's termination demonstrate that it has no lawful reason for its conduct, and she is entitled to damages and attorney's fees and costs, as well as reinstatement of her employment.

130.   On March 13, 2024 at 6:02pm, Antoneia Roe finally emailed Professor Smith's personal email with information concerning the Step One hearing to take place on March 15, 2024. March 15, 2024 was one day later than what is required by FAMU Regulation 10.206.

131.   Professor Smith again requested all documents, but only received the same documents already available in Defendant FAMU's notices for her termination. Specifically, on March 13, 2024, Antoneia Roe sent Professor Smith a dropbox link full of documents, allowing Roe to monitor what Professor Smith opened. Antoneia Roe did not indicate she withheld any documents on the basis of confidentiality or a privilege.

132.   Professor Smith did not have time to research, find, and object to Antoneia Roe's selection as a reviewer until after the Step One hearing that took place on March 15, 2024.

133.   The Step One hearing lasted less than 8 minutes, and Antoneia Roe did not ask a single question because she already knew her assignment from the Defendants was

to uphold Professor Smith's termination.

134.   On March 18, 2024, Professor Smith submitted a draft decision to Antoneia Roe, but that email went unanswered.

135.   Between March 15, 2024 and Antoneia Roe's decision, Defendants Watson, Wallace, Baker, Calhoun, and Scott met, spoke with, or otherwise consulted Antoneia Roe regarding Professor Smith's complaint.

136.   On April 14, 2024, Antoneia Roe emailed Professor Smith a copy of the five-page Step One decision indicating Professor Smith's termination would be upheld.

137.   On April 23, 2024, Professor Smith promptly filed an appeal of the Step One decision and requested a Step Two hearing.

138.   Between April 15, 2024 and May 2024, Defendants Watson consulted Defendant Wallace to discuss Professor Smith's termination and Professor Smith's request for a Step Two hearing, including who to strategically select as the Step Two Reviewer.

139.   Defendants Wallace and Watson agreed to place Dr. Valencia Matthews as the Step Two Reviewer to influence and obtain their desired outcome based on Matthews' history with Defendant Watson on the Dean's Advisory Council and based on the fact that Matthews is now a direct report to Provost Watson. Overturning Professor Smith's termination requires Dean Matthews, among other things, to find that her immediate supervisor, Defendant Watson violated FAMU Regulations.

140.   On May 1, 2024, Reginald Perry notified Professor Smith that Dr. Valencia Matthews would be the Step Two reviewer.

141.   On May 2, 2024, Professor Smith objected to Dr. Matthews's selection because Dr. Matthews is a direct report to the Defendant Watson.

142.   On May 3, 2024, Dr. Perry responded by email indicating that the Provost's Office would consult with the General Counsel: "The Office of the Provost will need to consult with the General Counsel to discuss your request. I will contact you again next week."

143.   On May 7, 2024, U.S. Department of Justice issued Professor Smith a Notice of Right to Sue under Title VII of the Civil Rights Act of 1964.

144.   On May 20, 2024, Dr. Perry emailed Professor Smith: "After further review, it has been determined that the University will move forward with the previously selected reviewer.   Therefore, Dean Matthews will be in contact with you to arrange for your Step Two meeting."

145.   On June 7, 2024, the Step Two hearing was scheduled with Dean Matthews in violation of FAMU Regulation 10.206, which required the Step Two hearing to be scheduled by May 8, 2024. It is scheduled for June 20, 2024 from 2-3pm.

146.   After Professor Smith raised concerns about the pay disparity and expressed her intention to exercise her rights under the EPA, Defendant FAMU engaged in a campaign of retaliatory actions against Professor Smith.

147.   Defendant FAMU's retaliation against Professor Smith includes the adverse employment actions as described above, including the baseless investigation of the October 20, 2022 incident with MW, manufacturing conflicting allegations of misconduct, and ultimately terminating Professor Smith's employment.

148.   Defendant FAMU's retaliatory actions against Professor Smith were motivated by Plaintiff's exercise of her rights under the EPA, in violation of 29 U.S.C. § 215(a)(3) and the other provisions of federal law as indicated below, and is entitled to damages and attorney's fees and costs as well as reinstatement of her tenured position as a law professor.

**COUNT I**
**DISCRIMINATION IN COMPENSATION**
**EQUAL PAY ACT OF 1963, AS INCORPORATED INTO**
**THE FAIR LABOR STANDARDS ACT 29 U.S.C. § 206, <u>et</u> <u>seq</u>.,**
**<u>AGAINST DEFENDANT FAMU</u>**

149.   The Plaintiff realleges paragraphs 1 through 36.

150.   Plaintiff belongs to a protected class; she is female.

151.   Plaintiff's job functions as a tenured full professor at FAMU have been of equal skill, effort, and responsibility to the job functions of the Comparator, also a tenured full professor, and were performed under the same or similar working conditions.

152.   During all relevant periods, Plaintiff received wages lower than the Comparator while performing the same or substantially more work than the Comparator.

36

153.   Plaintiff is qualified for and entitled to wages equal to or higher than her Comparator's wages performing the same or substantially more work than the Comparator.

154.   Defendant FAMU violated the Equal Pay Act (EPA), and Plaintiff is entitled to damages and equitable relief, including attorney's fees and costs, as described below.

<div align="center">

**COUNT II**
**RETALIATION**
**EQUAL PAY ACT OF 1963, AS INCORPORATED INTO**
**THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 215(a)(3),**
**<u>AGAINST DEFENDANT FAMU</u>**

</div>

155.   The Plaintiff realleges all relevant paragraphs including but not limited to 1 through 26 and 37 through 148.

156.   Defendant FAMU's retaliatory actions against Plaintiff, as alleged herein, and by its employees acting under of color of law constitute a violation of the EPA, 29 U.S.C. § 215(a)(3).

157.   The retaliation described herein was based on Plaintiff's exercise of rights protected by law to resist and oppose gender discrimination and harassment and to participate in actions calculated to redress grievances.

158.   Plaintiff's resistance to unlawful activity was both objectively and subjectively reasonable based on the timing of the Defendants actions and the lack of transparency and fairness throughout the process as explained in more detail above.

159.   As a result of Defendant FAMU's retaliatory actions in violation of the EPA, Plaintiff has suffered and is entitled to compensatory and punitive damages.

## COUNT III
## BREACH OF CONTRACT
## AGAINST DEFENDANT FAMU

160.   The Plaintiff realleges all relevant paragraphs including but not limited to 1 through 26, 41-42, 49, 53-58, 69-70, 72-73, 78-79, 85-92, 99,101, 111-120, and 129.

161.   Defendant FAMU operates the law school at 201 FAMU LAW Lane, Orlando FL 32801.

162.   Each employment contract entered between Professor Smith and Defendant FAMU stated some variation of "Non-reappointment, separation or termination of employment for employees outside of the above-referenced categories will occur in accordance with FAMU regulation 10-207 and applicable regulations, policies and procedures of FAMU." Thus, the COL, the Defendant's BOT, and faculty have all agreed to adhere to the terms of the Faculty Handbook, Student Handbook, FAMU Handbook, and FAMU Regulations by way of the individual employment contracts.

163.   Defendant FAMU, though the above noted documents, has made unambiguous promises to Plaintiff including promises regarding tenure, retention of tenured faculty, governance of the COL, commitments to investigate faculty complaints, and termination of tenured faculty.

164.   Plaintiff's employment letter, together with the Faculty Handbook, FAMU

Handbook and FAMU Regulations are what forms Plaintiff's employment contract.

165.   Defendant FAMU has failed to meet its contractual obligations to Plaintiff because Defendant FAMU has allowed its employees to fabricate claim(s) against Professor Smith disguised as just cause and as subterfuge to terminate her employment as a tenured full professor, thereby breaching her employment contract.

166.   As a result of Defendant FAMU's breach of contract, Plaintiff has suffered actual and consequential damages including loss of future wages, lost insurance and retirement benefits, and special damages, including the loss of future academic employment and opportunities.

167.   Plaintiff seeks actual, consequential, and special damages and pre-judgment and post-judgment interest for Defendant FAMU's wrongful breach of Plaintiff's employment contract, thus compensatory and punitive damages.

## COUNT IV
## FIRST AMENDMENT RETALIATION
## AGAINST DEFENDANT FAMU

168.   The Plaintiff realleges all relevant paragraphs including but not limited to 1 through 26 and 52-56, 70, 89 through 148.

169.   By filing her EEOC and state court complaints for equal pay and speaking on issues of public concern, Plaintiff engaged in constitutionally protected activity. Specifically, it is well known that one litigant often serves as the catalyst for change in civil rights litigation.

170.   Following Plaintiff's engagement in the constitutionally protected activity, Defendant FAMU took adverse employment actions against Plaintiff.

171.   These adverse employment actions included baseless investigation of Plaintiff, manufacturing false claims to fire Plaintiff, fabricating their definition of just cause without due process of undefined terms, issuing a notice of termination against Plaintiff, and terminating her.

172.   These adverse employment actions were taken in retaliation for Plaintiff's exercise of her First Amendment rights and her engagement in constitutionally protected activity.

173.   Defendant FAMU's adverse employment actions against Plaintiff, in response to her constitutionally protected activity, constitute unlawful retaliation in violation of the First Amendment to the United States Constitution.

174.   Defendant FAMU could not and would not have made the decision to terminate Professor Smith but for her protected activity as evidenced by its inability to provide a clear reason for the adverse action(s) taken against her.

175.   Plaintiff has suffered damages as a result of Defendant FAMU's retaliatory actions, including but not limited to financial losses, emotional distress, harm to reputation, and other injuries, as well as other compensatory damages and punitive damages.

**COUNT V**
**REQUEST FOR PRELIMINARY AND**
**PERMANENT INJUNCTIVE RELIEF**
**AGAINST DEFENDANT FAMU**

176. The Plaintiff realleges all relevant paragraphs including but not limited to 1 through 148.

177. Defendant FAMU has terminated Plaintiff in violation of her tenure status and because of her pursuit of equal pay.

178. Plaintiff has suffered and will suffer irreparable damage if her employment is terminated as noticed as she will be unable to find any similar employment as a tenured full professor in her area and her professional reputation will be seriously and permanently injured. Furthermore, Plaintiff has already suffered considerably irreparable harm as she has been unable to continue her functions as a legal academician to complete promised law review articles.

179. "In view of the uncertainty in admeasuring damages because of the indefinite duration of the contract, and the importance of the status of Plaintiffs in the milieu of the college teaching profession, it is evident that the remedy of damages at law would not be complete or adequate." *AAUP v. Bloomfield College*, 136 N.J. Super. 442, 448, 346 A.2d 615, 618 (1975); *Zisk v. The Charleston School of Law* (2015)

180. Monetary damages cannot provide sufficient relief or compensation to Plaintiff as the loss of her position as a tenured full professor cannot be valued

monetarily, and loss of tenure will have a significant detrimental impact on her legal and academic career. Moreover, Plaintiff cannot be compensated for lost career advancement at the College of Law.

181.   Plaintiff is likely to prevail on the legal merits of her cause of action as set forth in this complaint.

182.   Plaintiff seeks a court order in the form of preliminary and permanent injunction compelling Defendant FAMU to honor her tenure status and employment contract, thus restoring the status quo until this matter is resolved.

<div align="center">

**COUNT VI**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**AS AMENDED, 42 U.S.C. §2000e et seq.**
**<u>AGAINST DEFENDANT FAMU</u>**

</div>

183.   The Plaintiff realleges all relevant paragraphs including but not limited to 1 through 26 and 101 through 148.

184.   Plaintiff was employed by Defendant FAMU as a law professor from 2004 to 2024.

185.   On January 31, 2024, Defendant FAMU purported to terminate Plaintiff from her tenured law professor position for an alleged violation of FAMU policy.

186.   During the same 2004 to 2024 time period, male law professors working for Defendant FAMU committed similar or more serious violations of FAMU policy, but were either never investigated or not terminated after a finding of having committed

the violation.

187.    Defendant FAMU's stated reason for terminating Plaintiff was pretext for unlawful sex discrimination, as evidenced by many things including: the conflicting reasons Counsel has argued to this Court, Defendant Watson's conflicting two declarations, and the disparate treatment of Plaintiff compared to similarly situated male law professors who were not terminated for similar or more serious violations.

188.    Plaintiff's termination was motivated by her sex and was retaliation for her resistance and opposition to Defendant FAMU's unlawful compensation practices under the Equal Pay Act, which constitutes protected activity under Title VII.

189.    By the conduct described above, Defendant FAMU discriminated against Plaintiff on the basis of her sex and retaliated against her for engaging in protected activity, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., causing her to suffer compensatory and punitive damages.

<div align="center">

**COUNT VII**
**42 U.S. C. § 1985(3) – CONSPIRACY TO INTERFERE**
**WITH CIVIL RIGHTS**
**<u>AGAINST GRAY DEFENDANTS</u>**

</div>

190.    The Plaintiff realleges all relevant paragraphs including but not limited to 1 through 26 and 89 through 148.

191.    The Gray Defendants and University Employee Defendants conspired to deprive Plaintiff of her constitutional rights to due process under the Due Process Clause

of the U.S. Constitution and freedom against retaliation under the First Amendment, her statutory right to freedom from discrimination under the EPA and Title VII, her statutory right to freedom from retaliation for exercising rights under the EPA, by agreeing to terminate Plaintiff's tenured employment in retaliation for her filing a lawsuit against Defendant FAMU citing EPA and constitutional claims as a woman professor.

192.   The purpose of the conspiracy was to deprive Plaintiff indirectly or directly of (1) equal privileges including her due process rights as a woman compared to men who have been accused of similar or more serious violations of FAMU policy and (2) equal protection under law as a woman.

193.   The Gray Defendants' overt acts are detailed above but include their informing Defendant Wallace of Plaintiff's unserved lawsuit alleging EPA violations without any measure to ensure Wallace would not act upon that information. The Gray Defendants actions and inactions effectively established their role in the conspiracy as the advisers or consiglieres of the plan to terminate Plaintiff.

194.   Defendant Wallace acted upon the Gray Defendants' information, and she informally or formally encouraged, suggested, commanded or facilitated Defendant Watson to terminate Plaintiff in light of the learned information about Plaintiff's lawsuit.

195.   As a result of the conspiracy, Plaintiff was wrongfully terminated, suffered irreparable reputational damage, emotional distress, and other losses to her career as a legal academician, including loss of advancement and scholarship opportunities,

compensatory and punitive damages.

**COUNT VIII**
**42 U.S.C. § 1986 – FAILURE TO PREVENT CONSPIRACY**
**AGAINST GRAY DEFENDANTS**

196. The Plaintiff realleges all relevant paragraphs including but not limited to 1 through 26 and 89 through 148.

197. On October 17, 2023, Plaintiff filed a complaint in the state court for equal pay and retaliation, alleging that Defendant FAMU violated her rights under the Equal Pay Act.

198. Plaintiff did not attempt to serve the complaint until 2024.

199. On or around November 13, 2023, Gray Defendants informed Defendant FAMU via Defendant Wallace about the filed but unserved state court complaint.

200. Defendants, having knowledge of the complaint and the potential violation of Plaintiff's rights, conspired to terminate Plaintiff's employment to prevent her from pursuing her equal pay claim.

201. On December 5, 2023, Plaintiff received a notice of intent to terminate her from her position at Defendant FAMU, 22 days after the Gray Defendants learned of Professor Smith's state court complaint filing.

202. Gray Defendants had the power to prevent the wrongful termination but neglected and or refused to do so.

203.   Gray Defendants had knowledge of the conspiracy to violate Plaintiff's civil rights under 42 U.S.C. § 1985.

204.   Gray Defendants had the power to prevent the wrongful termination of Plaintiff but neglected or refused to do so.

205.   As a direct and proximate result of Gray Defendants' neglect, Plaintiff suffered compensatory and punitive damages.

<div align="center">

**COUNT IX**
**SECTION 1983 – CIVIL CONSPIRACY**
**AGAINST THE UNIVERSITY EMPLOYEE DEFENDANTS**

</div>

206.   The Plaintiff realleges all relevant paragraphs including but not limited to 1 through 26 and 37 through 148.

207.   On October 17, 2023, Plaintiff filed a complaint in the state court for equal pay and retaliation, alleging that Defendant FAMU violated her rights under the Equal Pay Act.

208.   Plaintiff did not attempt to serve the complaint until 2024.

209.   On or around November 13, 2023, Gray Defendants informed Defendant about the filed but unserved complaint.

210.   On December 5, 2023, Plaintiff received a notice of termination that she would be terminated from her position at Defendant FAMU, 22 days after the Gray Defendants learned of Professor Smith's state court complaint filing.

211.   University Employee Defendants' actions were taken under color of state law and deprived Plaintiff of her rights, privileges, or immunities secured by the Constitution and laws of the United States, including her right to equal protection and due process under the Fourteenth Amendment.

212.   After Defendant Wallace learned of Plaintiff's lawsuit she regularly and consistently communicated with, encouraged, commanded, suggested and or facilitated Defendants Watson, Baker, Calhoun, and Scott (collectively the University Employee Defendants) to reach an agreement to carry out Plaintiff's termination in retaliation for Smith's lawsuit asserting EPA, first amendment, and procedural due process claims.

213.   In addition to the acts mentioned above, Defendants Baker, Calhoun, and Scott specifically acted in furtherance of this conspiracy when they collected written documents from their respective department files, prepared statements, compiled evidence, manufactured evidence, created false narratives, breached confidentiality, falsely represented the end of the investigation, failed to follow FAMU Regulations and policy, shielded documents under the guise of privilege or confidentiality, met with Defendants Watson and Wallace to support the ultimate decision to terminate Plaintiff, and communicated with reviewers in the process of Plaintiff's internal appeals to influence or otherwise suggest she be terminated.

214.   In addition to the acts mentioned above, Defendant Watson specifically acted in furtherance of this conspiracy by terminating Plaintiff and upholding the

termination after consistently consulting with Defendant Wallace; consulting Defendant Wallace on the predetermination conference panel members and biased Step One and Two reviewers; acting at the instruction of Defendant Watson, involving other FAMU employees and carrying out all other actions mentioned in the above paragraphs.

215.   As a direct and proximate result of the University Employee Defendants' conspiracy, Plaintiff suffered damages including loss of employment, lost wages and benefits, emotional distress, and other compensatory damages as well as punitive damages.

## COUNT X
## DUE PROCESS IN VIOLATION OF THE
## U.S. AND FLORIDA CONSTITUTIONS
## <u>AGAINST DEFENDANT FAMU</u>

216.   The Plaintiff realleges all relevant paragraphs including but not limited to 1 through 26 and 53-61, 66-69, 71-72,78-82, 89, 91 101 through 148.

217.   Plaintiff had a constitutionally protected property interest in her continued employment as a tenured law professor with FAMU.

218.   Defendant FAMU deprived Plaintiff of this property interest by terminating her employment.

219.   In effecting Plaintiff's termination, Defendant FAMU failed to provide Plaintiff with adequate procedural due process protections, including: a) Employing biased and partial internal complaint reviewers who acted as the cat's paw for

Defendants Wallace and Watson, who themselves had knowledge of Plaintiff's pending Equal Pay Act lawsuit, rendering any internal appeal futile and violating Plaintiff's right to an impartial decisionmaker; b) Failing to provide Plaintiff with the definition of "retaliation" used as the basis for her termination, which was vague, arbitrarily applied, and prevented Plaintiff from conforming her conduct, in violation of due process notice requirements; c) Failing to follow its own policies and procedures regarding the timing and appeals process for challenging the termination decision.

220. Defendant FAMU's post-deprivation process was constitutionally inadequate to remedy the prejudicial pre-termination violations described above.

221. As a direct and proximate result of Defendant FAMU's failure to provide adequate procedural due process protections, Plaintiff suffered damages including loss of employment, lost wages and benefits, emotional distress, and other compensatory damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief:

a) An order reinstating Plaintiff to her position as a tenured law professor;

b) An order granting preliminary and permanent injunctive relief;

c) An order declaring that Defendant has violated the Equal Pay Act, including retaliation provisions;

d) An order declaring that Defendant FAMU has violated Title VII.

e)  An order declaring that Defendant FAMU has violated the First Amendment and due process clause of the U.S. Constitution;

f)  An order removing any negative references to the October 20, 2022 incident from Plaintiff's employment file;

g)  An award of unpaid wages and other compensation due to Plaintiff as a result of Defendant's violation of the EPA, including interest;

h)  A declaration that the Gray Defendants' actions violated 42 U.S.C. §§ 1985(3) and 1986 and an award of compensatory damages;

i)  Punitive damages, special damages, actual damages and consequential damages;

j)  Loss of future employment opportunities;

k)  Front pay;

l)  Judgment against Defendants and for Plaintiff awarding compensatory damages on all Counts for the Defendants' violations of law enumerated herein;

m) Judgment equalizing Plaintiff's salary with her male Comparator who was paid more for substantially equal work, and permanently enjoining Defendants from future violations of law enumerated herein and remedying all benefits of which Plaintiff has been unlawfully deprived (such as retirement contributions, insurance etc.) of as enumerated herein;

n) Restoring sick leave and other benefits;

o) Compensatory damages in the amount of the full pay differential between Professor Smith's salary and the Comparator's salary for the period she was underpaid, representing the appropriate compensation for her 10 years' greater experience performing substantially equal work;

p) An award of liquidated damages in an amount equal to the unpaid wages and compensation due to Plaintiff;

q) Prejudgment interest and post-judgment interest;

r) An award of reasonable attorneys' fees and costs pursuant to the statutory provisions referenced in the complaint, *e.g.:* Equal Pay Act, Title VII, § 1983, § 1985, and § 1986.

s) Any other relief, including equitable relief, this Court deems just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Jennifer Smith*
Jennifer Smith
Florida Bar No. 964514
Law Office of Jennifer Smith
13506 Summerport Village Pkwy.Suite 108,
Windermere, FL 34786
407-455-0712, 407-442-3023 (f), jensmithesq@aol.com