UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIA
ORLANDO DIVISION

JENNIFER SMITH,

      Plaintiff,

v.                        CASE NO: 6:24-cv-00457-PGB-RMN

THE FLORIDA AGRICULTURAL &
MECHANICAL UNIVERSITY
BOARD OF TRUSTEES,

      Defendant.
_____/

**DEFENDANT'S RESPONSE TO PLAINTIFF'S AMENDED MOTION FOR AN EXTENSION OF TIME, AND FOR LEAVE TO FILE AN AMENDED COMPLAINT AND ADD PARTIES**

Defendant, The Florida Agricultural & Mechanical University Board of Trustees ("University"), hereby responds to Plaintiff's Amended Motion for an Extension of Time, and for Leave to File an Amended Complaint and Add Parties,("Motion to Amend") [Doc. 72], and respectfully requests this Honorable Court to render an Order denying Plaintiff's futile Motion to Amend. [Doc. 72].

    I.    Facts

The facts below are from the Plaintiff's Second Amended Complaint and exhibits thereto. [Docs. 72-1 through 72-16].

Plaintiff was employed by the University commencing in 2004. [Doc. 1-1, ¶8; Doc. 72-1, ¶16]. This is the plaintiff's third lawsuit against the University falsely alleging violation of the Equal Pay Act. [Doc. 17]. Previous cases have established

that as of 2019, Plaintiff suffered no pay disparity based on discrimination. *Smith v. Florida Agricultural & Mechanical University, Board of Trustee*s, 2019 WL 12317725 (N.D. Fla. June 2, 2019); *Smith v. Fla. A & M University Board of Trustees*, 831 Fed. Appx. 434 (11th Cir. 2020); [Doc. 17-6, p. 1; Doc. 17-7, p. 1].

In 2021 the University hired Professor Ewanrinareto "Areto" Imoukhuede. [Doc. 1-1, p. 4; Doc. 72-1, p. 8, ¶28]. Plaintiff complained about her salary compared to his to the President of the University by letter dated May 9, 2022, and to the Equal Opportunity Programs Office of the University ("EOP") on June 28, 2022, which resulted in a finding that no discrimination had occurred. Plaintiff then filed a charge with the Equal Employment Opportunity Commission ("EEOC") on October 18, 2022. [Doc. 1-1, p. 5, ¶29; Doc. 72-1, ¶¶38-40].

On October 20, 2022, the plaintiff texted Associate Dean Reginald Green that "one of reyes' [sic] students (Hispanic blonde) was so rude . . . aggressive rude." [Doc. 72-7, p. 11; Doc. 72-1 ¶41]. Green affirmed in his interview with the Office of Compliance and Ethics ("OCE") that he "immediately went to room 254 to investigate." By the time he arrived at the classroom, the plaintiff had left. The student had not been named in the plaintiff's text. Green asked the plaintiff for more details. By the time the student was identified, the student had filed a grievance against the plaintiff about the incident. [Doc. 1-3, p. 28; Doc. 72-7, p. 11].

"On October 27, 2022, the Office of Compliance and Ethics (OCE) received a referral via email from the Office of Equal Opportunity Programs (EOP) Director, Latrecha Scott. College of Law student, [M.W.], reported her concern regarding a

negative interaction she had with Professor Smith and believed that Professor Smith violated the University Code of Conduct by her behavior." [Doc. 1-3, p. 23; Doc. 72-7, p. 6]. The OCE investigated and drafted a report. [Doc. 72-7, pp. 14 – 16].

On February 1, 2023, Plaintiff was interviewed and denied the allegations. [Doc. 1-3, p. 25; Doc. 72-7, pp. 7 - 11].

On March 9, 2023, "Professor Smith filed a complaint through the University's Compliance and Ethics Hotline, reporting that a student knowingly and intentionally disrupted her class on October 20, 2022." [Doc. 1-3, p. 35; Doc. 72-7, p. 18].

"On March 10, 2023, OCE sent an email to Professor Smith reiterating that the issue would be addressed in the ongoing case FAMU 2022-11-117." [Doc. 72-7, p. 18].

Thereafter, "OCE became concerned with how Professor Smith responded after she was made aware that [the student] filed a complaint against her." [Doc. 72-7, p. 16]. "It is unreasonable that Professor Smith considered her text message to Associate Dean Green as a formal complaint of a student conduct violation. Professor Smith did not respond to Associate Dean Green's request for further information. Further, Professor Smith indicated in the same statement that she felt the issue was resolved after her December 18, 2022 email." [Doc. 72-7, p. 16]. Plaintiff "continued to send OCE supplemental memoranda restating her position and other concerns regarding the investigation and colleagues." [Doc. 72-7, p. 18]. In fact, Plaintiff submitted five supplemental memoranda. *Id.* The OCE report found Plaintiff had retaliated against the student by filing the March 9, 2023 hotline charge:

> Professor Smith goes on to clarify why it was important that [the student]

know that she was a subject in a complaint:

> "...It is necessary for the student to properly file her Bar application; otherwise, she will be accused of not being truthful about her law school experiences. I knew an investigation was being reviewed, but Ms. Baker informed me that I (not MW) was the subject of the investigation."

Professor Smith's subsequent complaint on March 9, 2023, although she knew that an investigation was being reviewed, memorandum responses, and the timeline of events are concerning.  Professor Smith did not follow up on her text message to Associate Dean Green about [the student] being "aggressive rude" or his request for additional information in October 2022, which contradicts her subsequent assertions that she filed a complaint and was under the impression that it was being handled. Professor Smith also stated that she felt the issue was resolved in December 2022.  Professor Smith filed an additional complaint against [the student] with the Office of Compliance and Ethics after discovering that [the student] filed a complaint against her.

**Based on Professor Smith's statements, she filed this complaint for the purpose of ensuring that [the student] would report that she was the subject of an investigation on her bar application.** Professor Smith's clarifying statement that she filed the complaint would prevent (sic) [the student] from being "accused of not being truthful about her law school experiences." [Emphasis added].

. . .

The additional finding of retaliation due to Professor Smith's subsequent action in filing an additional complaint against [the student] for the purpose of having [the student] report the complaint on her bar application, is **SUBSTANTIATED**.[Emphasis in original]. [Doc. 72-7, pp. 18-19].

"On June 5, 2023, the Office of Compliance and Ethics (OCE) rendered FAMU-2022-11-117 Investigative Report, addressing allegations of employee misconduct regarding Professor Jennifer Smith."  [Doc. 1-3, p. 22; Doc. 72-7, p. 21]. The report was also provided to the plaintiff.  [Doc. 1-4, p. 27; Doc. 72-7, p. 5].

On July 6, 2023, the OCE issued a supplemental report to FAMU 2022-11-117 that evaluated the "appropriateness and professionalism displayed by Professor Smith," and that "the perceived rivalry between Professors Reyes and Smith, internalized by students, is a distraction and out of step with the values reiterated in University commitments and regulations." [Doc. 1-3, p. 38, 40; Doc. 72-7, p. 20, 23]. The OCE indicated that the "Dean of the College of Law should review this supplemental report and take any action deemed appropriate . . ." [Doc. 1-3, p. 41; Doc. 72-7, p. 24].

Plaintiff's last employment contract term was from August 7, 2023, to May 10, 2024. [Doc. 1-4, p. 9; Doc. 72-8, p. 1]. The relevant contract provides, in part, "the Employee is subject to the . . . regulations, policies and procedures of the . . . Florida Board of Governors and FAMU, as now existing or hereafter promulgated," and it "is intended as a complete and final expression of the terms of the Employment Contract between FAMU and the Employee . . ." *Id.*

On December 5, 2023, Allyson Watson, Provost and Vice President for Academic Affairs sent Plaintiff a "Notice of Intent to Dismiss from Employment." [Doc. 1-3, p. 18; Doc. 72-7, p. 1].

On January 11, 2024, Plaintiff met with a conference panel pursuant to University Regulation 10.120 as provided in the letter dated December 5, 2023. [Doc. 1-1, p. 15, ¶81; Doc. 1-3, p. 18; Doc. 72-1, ¶109].

On January 12, 2024, the conference panel recommended that the "Notice of Intent to Dismiss from Employment" dated December 5, 2023, be rescinded. [Doc. 1-

1, p. 21, ¶82; Doc. 72-7, p. 27, ¶111].

On January 23, 2024, Allyson Watson, Provost, issued Plaintiff a "Notice of Dismissal of Employment" making the plaintiff's termination from employment effective January 30, 2024. [Doc. 1-4, p. 1][Doc. 1-1, p. 17, ¶¶ 90-91][Doc. 72-8].

## II.     Memorandum of Law

### A. Standard of Review

The Eleventh Circuit reviews "a district court's denial of a motion to amend for abuse of discretion" and "de novo [for] a decision that a particular amendment to the complaint would be futile." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 (11th Cir. 1999)).

"A motion under Rule 12(b)(6), Federal Rules of Civil Procedure, challenges the legal sufficiency of the complaint. On a Rule 12(b)(6) motion, the complaint's factual allegations are accepted as true and construed most favorably to the plaintiff. [citations omitted]." *Burge v. Ferguson*, 619 F. Supp. 2d 1225, 1232 (M.D. Fla. 2008).

The Motion to Dismiss standard applies to a review of the Second Amended Complaint because the University will show that amendment is futile.

> A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(1). Thus, to survive a motion to dismiss made pursuant to Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. To assess the sufficiency of factual content and the plausibility of a claim, courts draw on their "judicial experience and common sense" in considering: (1) the

> exhibits attached to the complaint; (2) matters that are subject to judicial notice; and (3) documents that are undisputed and central to a plaintiff's claim. *See Iqbal*, 556 U.S. at 678; *Parham v. Seattle Serv. Bureau, Inc.*, 224 F. Supp. 3d 1268, 1271 (M.D. Fla. 2016).
>
> . . .
>
> In sum, courts must (1) ignore conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; (2) accept well-pled factual allegations as true; and (3) view well-pled allegations in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679.

*Aspen American Insurance Company v. Tasal, LLC*, 2021 WL 4935769, at *3 (M.D. Fla. Feb. 5, 2021).

### B. Futility

"Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to summary judgment for the defendant. *See*, *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004)." *Cockrell* at 1310. A District Court may deny leave to amend "where the proffered amendment would be futile." *Said v. Qatar Ministry of Interior*, 2022 WL 3646819, at *3 (M.D. Fla. June 8, 2022).

"One way in which an amendment is futile is if the proposed revised complaint constitutes an impermissible 'shotgun pleading.' *Plate v. Pinellas Cnty.*, 2020 WL 428948, at *5 (M.D. Fla. Jan. 28, 2020) (denying leave to amend because the plaintiff's proposed amended complaint constituted a shotgun pleading)." *Said* at *3. Here, the plaintiff's proposed Second Amended Complaint is a classic "shotgun pleading." Plaintiff offers irrelevant editorializing about school violence in an unnumbered paragraph on page 2, followed by a second unnumbered paragraph and lengthy

footnotes that are immaterial. These two paragraphs are imminently susceptible to a motion to strike. Fed. R. Civ. P. 8 requires "a short and plain statement of the claim," and Rule 10 requires that a "party must state its claims or defenses in numbered paragraphs. . ." Rule 13 allows the court to "strike from a pleading . . . any redundant, immaterial, impertinent or scandalous matter " on its own or by motion.

The plaintiff seeks an irrelevant and de novo review of the underlying decision of the Office of Compliance and Ethics, the foundation for the decision to terminate her, but it would be improper for this court to reweigh the evidence and particulars of the student charge and OCE investigation. *Dusseau v. Metropolitan Dade Cnty. Bd. of Cnty. Com'rs*, 794 So. 2d 1270, 1275 (Fla. 2001). In fact, the province of this Court in respect to the OCE finding at most would be to determine if the underlying decision was supported by "competent substantial evidence." *Id.* Accordingly, amending the pleadings to rehash the particulars of the underlying investigation of the Office of Compliance and Ethics is unwarranted, improper, and futile, yet this issue consumes most of the allegations in the Second Amended Complaint.

The documents which the plaintiff adds as exhibits plainly contradict the Second Amended Complaint in dispositive particulars. For example, the plaintiff alleges in paragraph 63 that she filed the hotline complaint and in paragraph 64 that "the Compliance department immediately deleted Professor Smith's resubmission." Yet, Plaintiff's exhibits disclose that "[o]n March 10, 2023, OCE sent an email to Professor Smith reiterating that the issue would be addressed in the ongoing case FAMU 2022-11-117." [Doc. 72-7, p. 18]. Plaintiff alleges in paragraph 73 that her

employment contract was "merely ceremonial as the contract itself incorporates and references FAMU regulations, including tenure and thus establishing her annual entitlement to a renewed contract." [Doc. 72-1, p.18].  In contrast, the Employment Contract which the plaintiff supplies as Exhibit 9 does not incorporate anything by reference, states that it is the "complete and final expression of the terms" of the agreement between the University and the employee, and states that **the employee** is subject to University regulations.  [Doc. 72-9].

"[W]hen exhibits attached to a complaint 'contradict the general and conclusory allegations of the pleading, the exhibits govern.'" *Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019).  Plaintiff attaches the Provost's letter stating Plaintiff's employment would terminate on January 30, 2024, yet Plaintiff alleges she was employed through April 2024. [Doc. 72.1, p. 5, ¶16 compared to Doc. 72-8 and Doc. 1-1, ¶10].  That the plaintiff was evaluated over ten years ago as "excellent in teaching, scholarship and service" has no bearing on anything relevant to this matter.  It is just as irrelevant as the same allegation in the First Amended Complaint.  [Doc. 72-1, p. 7 compared to Doc. 1-3, p. 5].  Smith's inclusion of the deposition of Leroy Pernell from a 2015 proceeding [Doc. 1-1, ¶23; Doc. 72-1, p. 6 ¶19] and his evaluations of Plaintiff are likewise immaterial to the instant case. [Doc. 1-1, pp. 1-4; Doc. 72-1, p. 7, ¶23].  That faculty were not evaluated for years, even if true, remains immaterial and irrelevant to whether Smith suffered a breach of contract, was denied Constitutional rights, was rightly dismissed, conspired against, retaliated against, or paid inequitably.  [Doc. 1-1, p. 2, ¶¶11-13; Doc. 72-1, p. 7, ¶25].

"A 'complainant's failure to link factual allegations to specific counts makes it a quintessential shotgun pleading [which] does not comply with Rule 8(a).'" [citation omitted]. *Ware v. HUD Properties, LLC*, 2021 WL 11642117, at *8 (M.D. Fla. Jan. 29, 2021). Plaintiff here has likewise failed to link the facts to specific counts, but rather incorporates over a hundred initial paragraphs into Counts II, and V and asks the Court and the University to determine "all relevant paragraphs" in Counts II, III, IV, V, VI, VII, VIII, IX, and X. [Doc. 72-1, ¶¶155, 160, 168, 176, 183, 190, 196, 206, 216]. It "is a quintessential shotgun complaint subject to dismissal as 'it is [still] virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.' *See Anderson v. Dist. Bd. of Trustee of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996)." *Id.*

"A proposed amendment may be denied for futility 'when the complaint as amended would still be properly dismissed." *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010), citing *Cockrell*, supra.

The Second Amended Complaint is futile and the Motion to Amend should be denied on the grounds that it is an impermissible "shotgun pleading."

### C. Count I: "Discrimination in Compensation Equal Pay Act of 1963, as Incorporated into the Fair Labor Standards Act 29 U.S.C., et seq. against Defendant FAMU"

Plaintiff again fails to allege a *prima facie* case for violation of 29 U.S.C. § 206, et seq. ("The Equal Pay Act" or "EPA") in Count I of the Second Amended Complaint. Plaintiff once again presents no facts whatsoever to support her conclusion that she and her comparator performed equal jobs for dissimilar pay under

the same working conditions.  Plaintiff here pleads the conclusory language of the statute and refers to irrelevant documents which cannot and do not support the elements of the claim.  [Doc. 72-1, ¶¶19, 28, 29, 30, 32, 34, and 35].  "Conclusory and 'formulaic recitations of the elements' of an EPA claim are insufficient to state a claim."  *Arafat v. School Bd. of Broward Cnty.*, 549 Fed. App'x. 872 (11th Cir. 2103) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Count I is subject to dismissal on the same grounds the University argued in its Motion to Dismiss the First Amended Complaint. [Doc. 64].  Plaintiff's proposed amendment of the Equal Pay Act claim as is simply futile.

    **D. Count II:**   **"Retaliation Equal Pay Act of 1963, as Incorporated into the Fair Labor Standards Act, 29 U.S.C. §215(a)(3) against Defendant FAMU"**

Plaintiff's claims of retaliation under the EPA fail because Plaintiff does not allege that any alleged adverse employment action was causally related to any protected activity. She does not allege that "but for" her actions she would still be employed.  "To meet the causation element, the plaintiff must show that she would not have been fired but for her assertion of her protected rights*.*" *Andreu v. Hewlett–Packard Co.*, Case No. 15–23270–CIV–MORENO/O'SULLIVAN, 2016 WL 1713303, at *8 (S.D. Fla. Apr. 28, 2016).

Even assuming a *prima facie* case for retaliation were sufficiently pleaded in the proposed Second Amended Complaint (which is not conceded), the University's reasons for its actions investigating the student complaint and terminating the plaintiff remain the same from the First Amended Complaint to the Second.  The University

terminated Plaintiff's employment for just cause under University Regulations. [Doc. 1-3; Doc. 72-8]. "Findings of retaliation . . . will result in disciplinary action up to and including termination. . ." [Doc. 72-7, p. 50]. "The defendant 'need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof.'" [citations omitted]. *Valencia v. Haines City, Fla.*, 2023 WL 1994094, at *3 (M.D. Fla. Feb. 14, 2023).

The plaintiff has presented nothing to meet her burden showing that this proffer is a pretext or a lie. *Id.* Therefore, not only does the *prima facie* case fail, it is dispelled.

**E.  Count III: "Breach of Contract Against Defendant FAMU"**

The Second Amended Complaint does nothing to repair the defects of the First Amended Complaint in respect to the breach of contract claim. Plaintiff does not allege that the Employment Contract she provides with the First and Second Amended Complaints is ambiguous. [Doc. 1-4, p. 9; Doc. 72-9, p. 1]. Therefore, outside documents cannot properly be considered to interpret the plain terms of the Employment Contract. In fact, the contract itself states it is the complete agreement between the parties. *Id.* "The parol evidence rule provides that a written document intended by the parties to be the final embodiment of their agreement may not be contradicted, modified or varied by parol evidence. *See The Florida Bar v. Frederick*, 756 So.2d 79, 84–85 (Fla. 2000)." *LSQ Funding Group, L.C. v. EDS Field Services*, 879 F. Supp. 2d 1320, 1328 (M.D. Fla. 2012).

The Employment Contract provides that the plaintiff was subject to University Regulations. [Doc. 1-4, p. 9; Doc. 72-9, p. 1]. Plaintiff falsely claims that the

Employment Contract "incorporates and references FAMU Regulations." It states **the employee** is "subject to" University regulations. Outside documents are not incorporated by reference. Where the attachments contradict the Complaint, the attachments prevail. *Llauro v. Tony*, 470 F. Supp. 3d 1300 (S.D. Fla. 2020).

The plaintiff also still fails to identify the term of the contract that was allegedly breached by the University. "'It is a basic tenet of contract law that a party can only advance a claim of breach of written contract by identifying and presenting the actual terms of the contract allegedly breached.' *Herssein Law Grp. v. Reed Elsevier, Inc.*, 594 F. App'x 606, 608 (11th Cir. 2015)."

### F. Count IV: "First Amendment Retaliation Against Defendant FAMU"

Plaintiff's complaints about her own salary (which the plaintiff cloaks with vague references to the interests of all women) and filing a lawsuit about her own employment grievances are not protected by the First Amendment. Where a government employee's speech overall shows that it relates to her own job, rather than an issue of public concern, it is not protected. *Boyce v. Andrew*, 510 F.3d 1333, 1343 (11th Cir. 2007). "[W]hile the First Amendment invests public employees with certain rights, it does not empower them to 'constitutionalize the employee grievance.'" [citation omitted]. *Garcetti v. Ceballos*, 547 U.S. 410, 420 (U.S. 2006). Plaintiff's claim in this manner is subject to dismissal and therefore futile.

### G. Count V: "Request for Preliminary and Permanent Injunctive Relief Against Defendant FAMU"

Having twice moved for reinstatement to employment in this case and having

twice been denied, the law of this case dictates that Plaintiff is not entitled to injunctive relief. "[T]he law-of-the-case doctrine bars relitigation of issues that were decided either explicitly or by necessary implication." *This That And The Other Gift And Tobacco, Inc. v. Cobb Cnty., Ga.*, 439 F.3d 1275, 1283 (11th Cir. 2006).

Plaintiff is only entitled to preliminary injunctive relief upon a showing of "a substantial likelihood of success on the merits." *Pittenger v. Gilchristil*, 2022 WL 3161702, at *1 (M.D. Fla. July 21, 2022). Two courts have now identified the plaintiff's potential damages as solely monetary in nature. [Doc. 1-6, p. 77; Doc. 10]. This claim as alleged in the Second Amended Complaint will precipitate another Motion to Dismiss on the same grounds as has been argued.

### H. Count VI: "Title VII of The Civil Rights Act of 1964, As Amended, 42 §2000e et seq. Against Defendant FAMU"

The plaintiff alleges that she was treated differently than men at the College of Law, but she does not allege that they engaged in the same behavior. [Doc. 72-1, p. 25 ¶102]. If the plaintiff cannot name someone outside of her protected class who was actually treated differently under the same circumstances, she has again failed to state a cause of action.

> To allege Title VII bias in the "application of discipline for violation of work rules [a plaintiff] must also show 'either (a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him were more severe than those enforced against the other persons who engaged in similar misconduct.'

*Stephen v. H. Lee Moffitt Cancer Center and Research Institute Lifetime Cancer Screening Center, Inc.*, 259 F. Supp. 3d 1323, 1335 (M.D. Fla. 2017).

Plaintiff cannot show she did not violate "the work rule," because, in fact, it has been established by her own exhibits that she did. [Doc. 72-7]. Moreover, she presents no male who did the same thing and was not investigated. The allegations fail to support the plaintiff's claims and would be subject to a motion to dismiss for failure to state a cause of action under 42 U.S.C. 2000e, *et seq.*

### I. Count VII: "42 U.S.C. §1985(3) - Conspiracy to Interfere with Civil Rights Against Gray Defendants"

Count VII alleging civil conspiracy in violation of 42 U.S.C. §1985 is likewise flawed and is a blatant attempt to disrupt our bedrock attorney-client privilege. First and foremost, it omits any reference to class or race-based discriminatory animus, an essential element which must be alleged in order to sustain the cause of action. *Dean v. Warren*, 12 F.4th 1248, 1255 (11th Cir. 2021) ("§ 1985(3) requires a showing of some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."). "Plaintiff fails to allege any qualifying race or class and further fails to allege Defendants were motivated by a discriminatory animus toward the class." *McBride v. Guzina*, 2022 WL 111230, at *5 (M.D. Fla. Jan. 12, 2022).

The alleged conspiracy among Dr. D. Denise Wallace, and the University's private outside counsel, ("Gray Defendants") fails for other reasons. The Gray Defendants allegedly informed their client, the University, through Dr. Wallace, about an unserved, pending lawsuit against it, later learned of Plaintiff's impending termination and failed to prevent it. [Doc. 72-1, at ¶¶ 193]. The Gray Defendants are attorneys whose alleged conduct plainly fell within the scope of representation of their

client. It is well-established in this circuit that "as long as an attorney's conduct falls within the scope of the representation of his client, such conduct is immune from an allegation of a § 1985 conspiracy." *Chance v. Cook*, 50 F.4th 48, 51 (11th Cir. 2022) (citing *Farese v. Scherer*, 342 F.3d 1223, 1232 (11th Cir. 2003)). Nothing in these allegations alleges any action taken by the Gray Defendants that was improper or in furtherance of a conspiracy to deprive Plaintiff of her constitutional rights, nor is any of this activity outside the course and scope of the Gray Defendants' representation of the University. In fact, if the Gray Defendants *had* interfered with the University's decision to terminate Plaintiff, as Plaintiff suggests they had an obligation to do, that *would have* been a decision outside the scope of their representation, as a decision to terminate employment is a business, not a legal, decision. *Payne v. Seminole Elec. Coop., Inc.*, 2021 WL 1259382 (M.D. Fla. Feb. 2, 2021). The Gray Defendants are consequently immune from suit in respect to the instant action.

### J. Count VIII:  "42 U.S.C. §1986 – Failure to Prevent Conspiracy Against Gray Defendants"

Without an adequate Section 1985 claim, Count VIII also fails. The text of Section 1986 requires the existence of a Section 1985 conspiracy to state a valid claim. *Park v. City of Atlanta*, 120 F.3d 1157, 1159-60 (11th Cir. 1997); *Grappell v. Carvalho*, 847 Fed. Appx. 698, 702 (11th Cir. 2021). Therefore, Plaintiff's failure to state a claim under Section 1985 against the Gray Defendants also eliminates her Section 1986 claim. Plaintiff cannot allege that the Gray Defendants had the ability or authority to prevent her termination. Accordingly, Plaintiff's Section 1986 claim fails, and

Plaintiff's Motion for Leave to Amend should be denied as futile. *Park v. City of Atlanta*, 120 F.3d 1157, 1160 (11th Cir. 1997).

### K. Count IX: "Section 1983 – Civil Conspiracy Against the University Employee Defendants"

Count IX alleging a conspiracy among University employees fails for at least two reasons. The individual defendants are sued in their official and individual capacities. When these individuals are sued in their official capacities, the University is the resulting defendant, and when they are sued as individuals, they are immune from suit. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. [citation omitted]. It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The University cannot conspire with itself, and the University employee defendants are entitled to qualified immunity. *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1261 (11th Cir. 2010).

> Qualified immunity protects a government official performing discretionary functions if the official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

*Burge v. Ferguson*, 619 F. Supp. 2d 1225, 1234 (M.D. Fla. Dec. 16, 2008).

The plaintiff does not allege that these employees acted outside the role and scope of their employment and has not identified a plausible "clearly established constitutional or statutory right." The University has shown that no Constitutional

right was actually infringed. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1305 (11th Cir. 2009).

The count also fails because of the intracorporate conspiracy doctrine. All the named parties are employees of the University and "acts of corporate agents are attributed to the corporation itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy." *Grider* at 1261 (applying the doctrine to a governmental entity). "[T]he university and its officials are considered as constituting a single legal entity which cannot conspire with itself." *Chambliss v. Foote*, 421 F. Supp. 12, 15 (D.C. La. 1976).

### L. Count X: "Due Process in Violation of the U.S. and Florida Constitutions Against Defendant FAMU"

This Count fails for the same reasons that it fails in the First Amended Complaint. The plaintiff was afforded procedural due process, and more or less admits it. [Doc. 72-7]. "The essence of procedural due process is notice and an opportunity to be heard. [citation omitted]. As the rubric's name implies, 'procedural due process' is simply 'a guarantee of fair procedure.' [citation omitted]." *Zisser v. Fla. Bar*, 747 F. Supp. 2d 1303, 1316–17 (M.D. Fla. 2010).

The allegations of the Second Amended Complaint coupled with the exhibits essentially admit that the plaintiff was afforded procedural due process. [Doc. 72-1, ¶¶105 - 111; Doc. 72-7]. Amendment of this claim is futile.

### M. Federal Rule of Civil Procedure 20

The Second Amended Complaint does nothing to address the requirements of Federal Rule 20 governing permissive joinder of parties. "That rule provides, in relevant part, that a plaintiff may join defendants where the plaintiff asserts 'any right to relief ... against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and ... any question of law or fact common to all defendants will arise in the action.' Fed. R. Civ. P. 20(a)(2)." *Honor v. USA Truck, Inc.*, 2020 WL 12175835, at *4 (M.D. Fla. Jan. 7, 2020). Plaintiff says nothing about the comparative liability of all these defendants, whether damages should be assessed, jointly, severally, or otherwise nor does she show she is entitled to relief from the added defendants. *Stenzel v. Equifax Information Services, LLC*, 2020 WL 60156, at *3 (M.D. Fla. Jan. 6, 2020).

**WHEREFORE**, Defendant, Florida Agricultural & Mechanical University Board of Trustees prays that this Honorable Court will deny the "Plaintiff's Amended Motion for an Extension of Time, and for Leave to File an Amended Complaint and Add Parties," and grant such other relief as it shall deem proper.

    */s/ Maria A. Santoro*
**MARIA A. SANTORO**
Florida Bar Number: 0654809
msantoro@sniffenlaw.com
jlunt@sniffenlaw.com
tward@sniffenlaw.com
**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

-and-

Richard E. Mitchell, Esq.
Florida Bar No: 0168092
rick.mitchell@gray-robinson.com
maryann.hamby@gray-robinson.com
Julie M. Zolty, Esq.
Florida Bar No: 1036454
chantal.mccoy@gray-robinson.com
GRAYROBINSON, P.A.
301 East Pine Street, Suite 1400
Post Office Box 3068 (3208-3068)
Orlando, Florida 32801
(407) 843-8880 Telephone
(407) 244-5690 Facsimile
Co-Counsel for Defendant FAMU

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 21st day of June, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all registered users and counsel in this case.

/s/ *Maria A. Santoro*
**MARIA A. SANTORO**
Florida Bar Number: 0654809
**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004
*Lead Counsel for Defendant Florida A&M University Board of Trustees*