UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JENNIFER SMITH,

    Plaintiff,

                                              CASE NO: 6:24-cv-00457-PGB-RMN

FLORIDA AGRICULTURAL &
MECHANICAL UNIVERSITY
BOARD OF TRUSTEES, et al.

    Defendants.
_____/

**PLAINTIFF'S OPPOSED MOTION
FOR ORAL ARGUMENT AND EVIDENTIARY HEARING**

Plaintiff, Jennifer Smith ("Professor Smith"), respectfully moves for oral argument and an evidentiary hearing pursuant to Federal Rule of Civil Procedure 78 and Local Rule 3.01(h) to address the pending motion for preliminary injunction. (Doc. 86) Oral argument is critically necessary to assist this Court in making credibility determinations because the facts are bitterly contested. And, specifically for the Court to hear once and for all from Defendants what their precise reason for Professor Smith's termination. Professor Smith suggests that a duration of two to four hours should adequately accommodate the discussion for this Motion, with a preference for the hearing to be conducted in person.

1

In support of this Motion, Professor Smith states as follows:

1. On July 10, 2024, Professor Smith filed a Motion for Preliminary Injunction seeking reinstatement to her tenured position as a Full Professor at Florida Agricultural & Mechanical University College of Law pending resolution of this litigation.

2. The Motion for Preliminary Injunction raises significant legal and factual issues that warrant oral argument and an evidentiary hearing before this Court.

3. A hearing would allow the Court to fully consider the evidence and arguments supporting Professor Smith's request for injunctive relief, including her likelihood of success on the merits, irreparable harm, balance of equities, and the public interest.

4. Given the time-sensitive nature of the requested relief, with the fall semester set to begin in early August 2024, Professor Smith respectfully requests that the Court set an expedited hearing on the Motion for Preliminary Injunction.

## **LEGAL STANDARD**

An evidentiary hearing is not always required prior to the issuance of a preliminary injunction; however, "where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held." *McDonald's Corp. v. Robertson,* 147 F.3d 1301,

1312 (11th Cir. 1998) (citing *All Care Nursing v. Bethesda Memorial Hospital, Inc.,* 887 F.2d 1535, 1538 (11th Cir.1989)). When "conflicting facts place in serious dispute issues central to [a party's] claims" and "much depends upon the accurate presentation of numerous facts, the trial court err[s] in not holding an evidentiary hearing to resolve these hotly contested issues." *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1211 (11th Cir. 2003) (internal quotation marks omitted) (quoting *All Care Nursing,* 887 F.2d at 1539).

## **FACTS IN DISPUTE**

Professor Smith offers the following non-exhaustive list of critical, bitterly contested facts that support her request for an evidentiary hearing:

1. Defendant FAMU has continued to change the rationale for why Professor Smith received a notice of termination. The rationales are listed below:

    a. "substantiated finding of retaliation" via Provost Watson's Notice of Termination letter dated December 5, 2023 (Doc 84-6);

    b. "totality of circumstances" via Provost Watson's Notice of Termination letter dated January 23, 2024 (Doc. 84-7);

    c. "her unprofessional and inappropriate behavior towards students" via Provost Watson's first declaration (Doc 27-1);

3

    d. unprofessional, and inappropriate with students, dragging them into her "rivalry" with another law professor via Defendant FAMU's counsel's Motion (Doc 27);

    e. finding of retaliation (after a Rule 11 was served) via Provost Watson's amended declaration (Doc 42-3); and

    f. unprofessional, and inappropriate with at least one student, in addition to engaging in a disruptive "rivalry" with another law professor via Defendant FAMU's counsel's Motion (Doc. 42).

2. Defendants' flip-flopping on the reasons for her termination is because it is clear the rationales for termination are baseless, pretextual, and indefensible. This alone ought to be reason enough to grant the preliminary injunction. The rationale for Professor Smith's termination is bitterly contested, and this alone requires credibility determinations to be made at a hearing.

3. Importantly, when asked for the source of the definition of retaliation and how Professor Smith's actions identified in the December 5, 2023 Notice of Termination met that definition, FAMU replied by way of discovery, that "[t]he University uses the ordinary meaning of the term and the letter speaks for itself." (Doc. 84-13) Defendants did not and cannot answer how Professor Smith's actions could have resulted in her termination under Defendant FAMU's undefined term, "retaliation," because her actions do not meet any definition of "retaliation," and her

4

termination was pretext for her relentless pursuit of equal pay. This alone ought to be reason enough to grant the preliminary injunction. At minimum, the rationale for Professor Smith's termination is bitterly contested, and this alone requires credibility determinations at a hearing.

4. Provost Watson's declarations are conflicting as to the reason for Professor Smith's termination, and they also conflict with her Notices of Termination dated December 5, 2023 and January 23, 2024. Accordingly, the representations made in her declarations are bitterly contested issues that justify calling Provost Watson herself to be examined under oath for a credibility determination.

5. Defendant failed to follow its own Regulations regarding dismissal notice requirements to Professor Smith. (Doc. 84, pp. 33-34) Defendant was to notify Professor Smith within five days prior to the termination date of January 19, 2024 as stated in the Notice. Defendant missed this date, then, on its own reset the termination date by changing the contents of the original notice in violation of Regulations. Then, formally notified her one day before the new termination date of January 30, 2024. Whether Defendant FAMU followed its own Regulations is a bitterly contested issue as well.

6. Finally, the yearly signing of the faculty contract was more ceremonial than anything else because Professor Smith's tenure carried the expectation of the

annual contract. (Doc. 84, p. 22) Thus, Defendant FAMU's argument that at all faculty contracts for the past school year ended in May 2024 is not determinative of the breach of contract claim. This position is bitterly contested by Professor Smith because annual employment contracts for tenured professors establish an expectation of renewal – all the faculty will be out of a contract in May 2024 until the annual renewal of contracts for those who are tenured, like Professor Smith, for the fall 2024 school term. This case is about the property and liberty interests created by tenure and the understanding of continued employment affirmed by annual contracts. Defendant continues to treat this case as if "at-will" employment applied, but this case is so far from that – tenure is quite different. Tenure has significant employment protections that "at-will" employment does not have. According to FAMU Regulations:

> Tenure in the State University System – A faculty employee who has been granted tenure by the BOT shall have the status of **permanent member of the faculty and be in the continuing employment of the University** until he or she: 1. Resigns; 2. Retires; 3. Is dismissed for just cause under the provision of University regulations or the BOT/UFF Collective Bargaining Agreement; 4. Is discontinued pursuant to the layoff provisions in Regulation 10.113 and BOT/UFF Collective Bargaining Agreement; or 5. Dies.

(Doc. 86-10) (emphasis added) Accordingly, Professor Smith contests and has offered substantial evidence casting incredible doubt on Defendant FAMU's claim to "just cause." In fact, Professor Smith has offered significant evidence that Defendant FAMU's stated reason is pretext and instead constitutes retaliation for her

6

protected conduct. Thus, whether Professor Smith has a property interest in her employment is a bitterly contested fact that requires a credibility determination to be made at a hearing. The pending motion for preliminary injunction, (Doc. 86), functions not to just keep Professor Smith on the payroll, but to reinstate, preserve and protect her tenure, prevent the further damage to her professional reputation being caused by the denial of scholarly resources, and to accomplish the other reasons articulated in Professor Smith's Motion. (Doc. 86) Those reason include allowing her to get back to doing her job – training the next generation of lawyers to attain representation within the legal profession proportionate to their representation in the general population. *See* S.B. 68, 2000 Leg., Reg. Sess. (Fla. 2000). Otherwise, there is clearly irreparable harm and a disservice to the public. It is virtually impossible to defend oneself with ever-changing facts of why she lost her tenured job in the first place.

7. Interestingly, the allegations that the student and instigator, Michelle Wanamaker Sadiki ("MW") made against Professor Smith were absolutely egregious:

> I am utterly sickened and discouraged by this **violent** encounter within the walls of our law school Jennifer Smith was **threatening** in her **proximity to my body**, in her elevated tone, as well as her insults. She was **so close to my face** that I could feel the warmth of her breath. I felt **assaulted**. She degraded and embarrassed me in front of my colleagues. She **bullied me** and created a **hostile environment** for me at my law school. I have never engaged in a conversation with Jennifer Smith before

7

>today. Her **verbal and physical aggressions** were completely unprovoked. **I do not feel safe** in her presence.   (Doc. 84)(emphasis added)

If Defendants believed these outrageous allegations, they were *obligated* to investigate and take action immediately under state law, federal law and FAMU Regulations.  Associate Dean Cooper stated that she received these allegations on October 25, 2022. (Doc. 84-6, p. 29) Cooper so-concerned about the allegations ("including bullying, creating environment, and 'abusive behavior in direct conflict with 6C3-1.019 University Code of Conduct"), she forwarded the complaint to FAMU Equal Opportunity Programs (EOP), headed by Defendant Latrecha Scott. (Doc. 84-6, p. 29) Cooper stated that EOP advised her not to meet with MW and that Ms. Caesar in EOP would contact MW and assist her in the process. (Doc. 84-6, p. 30) Then, on Wednesday, November 2, 2022, Cooper stated she emailed MW, advising her that she had reached out to EOP and EOP would follow up with MW. (Doc. 84-6, p. 30) Instead, Defendant FAMU, a state educational institution ignored the outrageous, patently false complaint, and did nothing – because no one at FAMU believed the allegations, which ultimately were found to be baseless. In addition, within days of learning of the complaint, Associate Dean Green had been copied on an email from then-Provost Maurice Edington to Defendant Scott for her to "please review and take appropriate action." (84-6, pp. 28-29). Despite Edington's directive and the specific and immediate obligations and procedures that state universities

8

must follow when a student alleges violent behavior by a faculty member, as guided by state laws, federal laws, and university policies, the Defendants did nothing. Thus, the suspicious revival of the stale student complaint by the Defendants nearly 100 days later was in retaliation against Professor Smith, who was then in the throes of responding to the EEOC regarding her equal pay allegations, which are indefensible.

**Conclusion**

A hearing allows both parties to present evidence, including witness testimony, and make legal arguments supporting their positions. This helps the Court make an informed decision based on a more complete factual record. The hearing allows the Court to carefully consider and specify the terms of the injunction, if granted, including its scope and any security required. The evidentiary hearing creates a more complete record, which is important if either party wishes to appeal the decision on the preliminary injunction.

WHEREFORE, Professor Jennifer Smith respectfully requests that this Court: A. Set an expedited hearing on the Motion for Preliminary Injunction; B. Allow the parties to present evidence and arguments at the hearing; and C. Grant such other relief as the Court deems just and proper.

Dated: July 10, 2024

Respectfully submitted,

*/s/ Jennifer Smith*
Jennifer Smith
Florida Bar No. 964514 (*pro se*)
Law Office of Jennifer Smith
13506 Summerport Village Pkwy.
Suite 108
Windermere, FL 34786
407-455-0712
407-442-3023 (facsimile)
jensmithesq@aol.com

## LOCAL RULE 3.01(g) CERTIFICATION

I hereby certify that, on July 10, 2024, Professor Smith conferred with Defendants' counsel regarding this motion. Defendants' counsel opposes this relief.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of July, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all registered users.

*/s/ Jennifer Smith*
Jennifer Smith (*pro se*)
Law Office of Jennifer Smith