## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIA
## ORLANDO DIVISION

**JENNIFER SMITH,**

        **Plaintiff,**

**v.**                    **CASE NO: 6:24-cv-00457-PGB-RMN**

**THE FLORIDA AGRICULTURAL &**
**MECHANICAL UNIVERSITY**
**BOARD OF TRUSTEES,**

        **Defendant.**

_____/

## DEFENDANT'S MOTION FOR PROTECTIVE ORDER

Defendant, The Florida Agricultural & Mechanical University Board of Trustees ("University"), by and through its undersigned counsel, pursuant to Fed. R. Civ. P. 26(c) and 36, requests this Court protect Defendant's rights, quash discovery requests and grant Defendant's objections to Plaintiff's discovery.

First, the matters at issue are far from settled. Plaintiff's latest amended complaint should be stricken as violative of the Rules and Orders of this Court. [Docs. 65-1, 71, 72-1, 81, 84]. Discovery is premature. *Stewart v. Fla. Dept. of Educ. and Voc Rehab Div.*, 2010 WL 3119790 (N.D. Fla. Aug. 5,2010).

Plaintiff propounded 96 Requests for Admission "[p]ursuant to Rule 36 of the Federal Rules of Civil Procedure." [Exhibits A, B, C].

Requests 3, 4, 5, and 6, 11, 40, and 43 seek the admission of central facts in dispute, quoting the very elements of 29 USCA § 206(d)(1). These requests are

"beyond the proper scope of the [Rule 36]. Such requests have consistently been held improper." *Pickens v. Equitable Life Assur. Soc. of U. S.*, 413 F.2d 1390, 1393 (11th Cir. 1969).

Requests 1, 2, and 12 - 14 are vague. The University should not be compelled to speculate. *Cutino v. Untch*, 303 F.R.D. 413, 415 (S.D. Fla. 2014). Where "requests for admissions are vague in that Defendant would be required to guess as to the meaning of certain words," the requests are improper. *Bingham v. Baycare Health System*, 2016 WL 3595772, at *2 (M.D. Fla. Jul. 5, 2016).

Requests 15 - 21, 23 - 25, 34, 37, 71, 94, and 95 require research and analysis of which is unduly burdensome. [Docs. 113-1, 113-2]. *Smith v. Integrated Community Oncology Network, LLC*, 2009 WL 10670606, at *3 (M.D. Fla. Nov. 19, 2009). *See, Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D. Fla. 2007)("the marginal relevance that the potential harm occasioned by discovery would far outweigh the ordinary presumption in favor of broad disclosure").

Request 27 seeks a legal conclusion, improper under Rule 36. *U.S. v. Block 44, Lots 3, 6, Plus West 80 Feet of Lots 2 and 5*, 177 F.R.D. 695, 695 (M.D. Fla. 1997).

Requests 29, 35, and 93 predate 2019 and are therefore res judicata. *Smith v. Fla. A & M University Board of Trustees*, 831 Fed.Appx. 434, 439 (11th Cir. 2020).

Request 73 asks for inadmissible hearsay and is irrelevant.

Requests 74 - 76 bear no relationship to any claim pending at the date propounded. *See, eg., Stephen v. H. Lee Moffitt Cancer Center and Research Institute Lifetime Cancer Screening Center, Inc.*, 259 F. Supp. 3d 1323, 1335 (M.D. Fla. 2017).

Request 78 is moot and irrelevant. [Docs. 22, 60].

Wherefore, the University requests this Court render an Order protecting it from the need to respond to Plaintiff's Requests for Admission numbers 1- 6, 11 - 25, 27, 29, 34, 35, 37, 40, 43, 71, 73 - 76, 78, 93, 94, and 95 on the above grounds.

## LOCAL RULE 3.01(g) CERTIFICATION

We hereby certify that that the movant conferred with the opposing party on July 8, 2024 and July 10, 2024, on the resolution of all or part of the motion, the motion is opposed, and the means by which the conference occurred was by telephone.

/s/ Maria A. Santoro
**MARIA A. SANTORO**
Florida Bar Number: 0654809
msantoro@sniffenlaw.com
jlunt@sniffenlaw.com
tward@sniffenlaw.com
**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

-and-

Richard E. Mitchell, Esq.
Florida Bar No: 0168092
rick.mitchell@gray-robinson.com
maryann.hamby@gray-robinson.com
Julie M. Zolty, Esq.
Florida Bar No: 1036454
chantal.mccoy@gray-robinson.com
GRAYROBINSON, P.A.
301 East Pine Street, Suite 1400
Post Office Box 3068 (3208-3068)
Orlando, Florida 32801
(407) 843-8880 Telephone
(407) 244-5690 Facsimile
Co-Counsel for Defendant FAMU

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 18th day of July, 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all registered users and counsel in this case.

/s/ *Maria A. Santoro*
**MARIA A. SANTORO**
Florida Bar Number: 0654809
**SNIFFEN & SPELLMAN, P.A**.
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004
*Lead Counsel for Defendant Florida A&M University Board of Trustees*

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIA
# ORLANDO DIVISION

**JENNIFER SMITH,**

        **Plaintiff,**

**v.**                                    **CASE NO: 6:24-cv-00457-PGB-RMN**

**THE FLORIDA AGRICULTURAL &**
**MECHANICAL UNIVERSITY**
**BOARD OF TRUSTEES,**

        **Defendant.**
_____/

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

JENNIFER SMITH,

    Plaintiff,

v.                              Case No. 6:24-cv-00457-PGB-RMN

FLORIDA AGRICULTURAL & MECHANICAL
UNIVERSITY BOARD OF TRUSTEES,

    Defendant.

_____/

## **PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION**

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Plaintiff Jennifer Smith ("Professor Smith") requests that Defendant admit or deny the following statements within 30 days of service of this document. If a timeframe is required, the timeframe for the requests is between January 2021 to December 4, 2023, unless otherwise specified.

## **ADMISSIONS**

1.    Admit that Professor Smith and Professor Ewanrinareto "Areto" Imoukhuede (comparator), hold the same title of tenured full professor at the Florida A&M University College of Law ("COL").

2.    Admit that Professor Smith and Professor Areto Imoukhuede are employed in the COL.

3.      Admit that the job responsibilities of Professor Smith require equal skill as those of Professor Areto Imoukhuede.

4.      Admit that the job responsibilities of Professor Smith require equal effort as those of Professor Areto Imoukhuede.

5.      Admit that Professor Smith and Professor Areto Imoukhuede's positions require equal responsibility to fulfil their employment obligation.

6.      Admit that Professor Smith and Professor Areto Imoukhuede work under similar working conditions within the COL.

7.      Admit that Professor Smith has roughly ten years more experience in the field of law than Professor Areto Imoukhuede.

8.      Admit that Professor Smith has more years of experience in academia than Professor Areto Imoukhuede.

9.      Admit that Professor Smith has been employed by COL for a longer period than Professor Areto Imoukhuede.

10.     Admit that Professor Areto Imoukhuede was hired in 2021.

11.     Admit that Professor Smith's annual salary is less than that of Professor Areto Imoukhuede.

12.     Admit that the COL deans have had to address student complaints with Professor Areto Imoukhuede in his Constitutional Law classes for being late.

13.     Admit that the COL deans have had to address student complaints with Professor Areto Imoukhuede in his Constitutional Law classes for being absent.

14.     Admit that the COL deans have had to address student complaints with Professor Areto Imoukhuede in his Constitutional Law classes for requiring students to do presentations to cover the class material.

15.     Admit that the Professor Patricia Broussard has taught Constitutional Law since 2005.

16.     Admit that in 2021, Professors Broussard, Levitt, and Pernell were all still employed full time at the COL.

17.     Admit that Professor Patricia Broussard has taught Constitutional Law longer than Professor Jeremy Levitt.

18.     Admit that Professor Patricia Broussard has taught Constitutional Law longer than Professor LeRoy Pernell.

19.     Admit that Professor Patricia Broussard has taught Constitutional Law longer than Professor Areto Imoukhuede.

20.     Admit that Professor Jeremy Levitt has a salary greater than Professor Patricia Broussard.

21.     Admit that Professor LeRoy Pernell has a salary greater than Professor Patricia Broussard.

22.     Admit that Professor Areto Imoukhuede has a salary greater than Professor Patricia Broussard.

23.     Admit that all the male professors who teach Constititonal Law have higher salaries than Professor Patricia Broussard.

24.     Admit that Professor Jeremy Levitt had a higher salary than Professor Broussard before he began teaching Constititonal Law.

25.     Admit that Professor LeRoy Pernell had a higher salary than Professor Broussard before he began teaching Constititonal Law.

26.     Admit that law faculty salaries are not based on the subject matter of courses taught at the COL.

27.     Admit that the promotion history alone of a faculty member is not a defense to an equal pay claim.

28.     Admit that Defendant has not conducted a formal review of pay equity among faculty members at the COL within the last five years.

29.     Admit that the last COL pay equity study dated 2015 was done by employees of the Defendant.

30.     Admit that the Defendant does not have a formal policy that addresses gender equity in compensation among its faculty members.

31.     Admit that the Defendant has not provided specific training or guidelines to decision-makers at COL regarding adherence to equal pay laws.

32.     Admit that Professor Smith and Professor Areto Imoukhuede both have J.D. degrees as their highest degree.

33.     Admit that Professor Smith contacted the FAMU president, Larry Robinson, about the salary discrepancy between Professor Smith and Professor Areto Imoukhuede in May 2022.

34.     Admit that the Defendant has received formal complaints or inquiries related to gender pay equity issues from female COL faculty members within the last ten years, other than Professor Smith.

35.     Admit that Defendant implemented a salary structure for new COL hires in 2016, consisting of $120,000 base salary for associate professors and $140,000 base salary for full professors.

36.     Admit that Professor Areto Imoukhuede's salary is greater than the salary structure implemented in 2016.

37.     Admit that, except for COL leadership, no female professor hired after 2016 was hired at a salary higher than the salary structure implemented in 2016.

38.     Admit that the Defendant has not provided an explanation to Professor Smith regarding the reasons for her lower salary compared to her male comparator, Professor Areto Imoukhuede.

39.     Admit that the Professor Smith has not been offered any form of compensation adjustment or increase after raising concerns about pay equity with the COL.

40.     Admit that there are no documented instances where Professor Areto Imoukhuede's skills, responsibilities, or job performance significantly exceed those of Professor Smith.

41.     Admit that no factor other than Professor Smith's gender has been documented or can be demonstrated to justify the pay disparity between Professor Smith and Professor Areto Imoukhuede.

42.     Admit that Professor Areto Imoukhuede was not initially on the spring 2023 schedule to teach Constitutional Law but was added to the schedule during the time that Defendant was responding to the EEOC complaint.

43.     Admit that Professor Areto Imoukhuede has not been required to perform tasks or fulfill roles that are significantly different from those required of Professor Smith.

44.     Admit that Defendant became aware of Professor Smith's state court complaint filed in October 2023.

45.     Admit that in November 2023, Defendant became aware of Professor Smith's state court complaint filed in October 2023.

46.      Admit that Defendant sent Professor Smith a notice to terminate on December 5, 2023.

47.     Admit that Defendant's outside counsel notified Defendant in November 2023 that Professor Smith had filed a state court complaint in October 2023.

48.     Admit that Defendant's outside counsel notified Defendant in October 2023 that Professor Smith had filed a state court complaint in October 2023.

49.     Admit that Professor Smith's October 20, 2022 complaint preceded any complaint filed by student Michelle Wanamaker.

50.     Admit that, other than the claim of retaliation from re-filing the complaint, Defendant stated that Professor Smith did not violate any University policy in the July 6, 2023 supplemental report.

51.    Admit that Professor Smith did not take any action against student Michelle Wanamaker other than re-filing Professor Smith's initial complaint dated October 20, 2022 with Compliance.

52.    Admit that Associate Dean Green was required to forward Professor Smith's October 20, 2022 complaint to Compliance.

53.    Admit that Associate Dean Green did not forward Professor Smith's October 20, 2022 complaint to Compliance.

54.    Admit that, on Monday, October 24, 2022, Associate Dean Green went to the COL deans' office to report the October 20, 2022 incident with Michelle Wanamaker, the student.

55.    Admit that Michelle Wanamaker filed a complaint against Professor Smith on October 27, 2022.

56.    Admit that Michelle Wanamaker's October 27, 2022 complaint against Professor Smith was not relayed to Professor Smith until January 2023.

57.    Admit that Compliance made Professor Smith aware on or around February 1, 2023 that Associate Dean Green had not forwarded her complaint to Compliance as he was required to do under FAMU policy.

58.    Admit that Associate Dean Green was required to investigate Professor Smith's October 20, 2022 complaint against Michelle Wanamaker.

59.    Admit that Associate Dean Green did not investigate Professor Smith's October 20, 2022 complaint against Michelle Wanamaker.

60.    Admit that the Defendant took no action with Professor Smith's October 20, 20222 complaint or Michelle Wanamaker's October 27, 2022 complaint until January 2023.

61.    Admit that the first time that Defendant contacted Professor Smith to investigate the October 20, 2022 incident was on January 26, 2023.

62.    Admit that Professor Smith filed her EEOC response to FAMU's rebuttal on January 10, 2023.

63.    Admit that the July 6, 2023 supplemental report's concern about Smith sending/receiving text messages surrounding the October 20, 2022 incident, does not constitute retaliation as defined legally.

64.    Admit that the reason cited by Provost Watson for terminating Professor Smith, specifically the reason related to Professor Smith's drafting of her October 5, 2023 memo sent to Compliance, does not constitute retaliation as defined legally.

65.    Admit that the July 6, 2023 supplemental report's concern about Smith sending/receiving text messages surrounding the October 20, 2022 incident, does not constitute retaliation as defined by FAMU.

66.    Admit that the reason cited by Provost Watson for terminating Professor Smith, specifically the reason related to Professor Smith's drafting of her October 5, 2023 memo sent to Compliance, does not constitute retaliation as defined by FAMU.

67.    Admit that the reason for Professor Smith's termination was Compliance's substantiated finding of retaliation in the December 5, 2023 notice.

68.    Admit the December 5, 2023 notice did not include a finding that Professor Smith engaged in disruptive conduct.

69.    Admit the Supplemental investigative report was never sent to Professor Smith until it was sent as an attachment to the December 5, 2023 Notice to Terminate.

70.    Admit the reason for Professor Smith's termination was Provost Watson's finding that Professor Smith engaged in inappropriate conduct with at least one student by sending/receiving text messages surrounding the October 20, 2022 incident, which Compliance found did not to rise to the level of a policy violation.

71.    Admit that Professor Areto Imoukhuede's salary is not in line with the other professors teaching and specializing in Constitutional Law.

72.    Admit that Professor Areto Imoukhuede does not specialize in Constitutional Law.

73.    Admit that Professor Areto Imoukhuede asked Professor Broussard to teach him First Amendment since he has been teaching at the COL.

74.    Admit that Defendant has never terminated a male professor for alleged retaliation at the COL.

75.    Admit that there have been substantiated complaints against male COL faculty in the last 20 years.

76.    Admit that Defendant has never terminated a male COL professor for substantiated complaints against him.

77.    Admit that Defendant was aware of Professor Smith's lawsuit when it decided to terminate Professor Smith.

78.    Admit that James Vaughan received service of process and forwarded same to the General Counsel's office in February 2024.

79.    Admit that Deidre Keller never reported a faculty rivalry existed at the COL when presenting to the University Board of Trustees.

80.    Admit that Defendant never informed Professor Smith of any alleged rivalry between her and Professor Maritza Reyes.

81.    Admit that Professor Smith recommended Professor Reyes to be hired at the COL when Professor Reyes was interviewing for a job at the COL.

82.    Admit that Defendant paid Professor Smith her salary on April 10, 2024.

83.    Admit that, as of late April 2024, Defendant never sent Professor Smith a COBRA notice for her health care options.

84.    Admit that Defendant included Professor Smith on an updated faculty roster emailed on February 14, 2024.

85.    Admit that Defendant has only ever printed Professor Smith's FAMU COL business cards once since she was hired in 2004 listing "Associate Professor" as her job title until she was promoted to full professor.

86.    Admit that Defendant continued to have Professor Smith listed as a law faculty member on its official website up to March 20, 2024.

87.    Admit that Professor Smith had health insurance through Defendant as late as April 2024.

88.    Admit that the Provost's Office chose the 3-member panel consisting of Bryan Smith, Andrea Nelson, and Patricia West for Professor Smith's Conference on January 11, 2024.

89.    Admit that Allyson Watson and Patricia West served as administrators together for FAMU's DRS in 2021.

90.    Admit that the Provost's Office chose Antoneia Roe to coordinate Professor Smith's STEP ONE hearing.

91.    Admit that, at the time Antoneia Roe was the hearing officer for the STEP ONE hearing for Professor Smith, Antoneia Roe was ineligible to practice law in Florida because her Florida Bar membership had lapsed.

92.    Admit that Antoneia Roe, hearing officer for the STEP ONE hearing for Jennifer Smith, previously worked in the FAMU General Counsel's office.

93.    Admit that in 2004, Professor Smith received a unanimous vote to join the COL faculty in 2004.

94.    Admit that visiting professors at the COL do not get business cards.

95.    Admit that visiting professors are not voted on for tenured, tenure-track, or non-visiting contractual positions until they are considered for joining the COL faculty.

96.    Admit that there is no term or classification for "constitutional law specialist" at the COL.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy has been emailed to opposing

counsel on this 23<u>rd</u> day of April, 2024

*/s/ Jennifer Smith*
Jennifer Smith
Florida Bar No. 964514
Law Office of Jennifer Smith
13506 Summerport Village Pkwy.
Suite 108
Windermere, FL 34786
407-455-0712
407-442-3023 (facsimile)
jensmithesq@aol.com

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIA
## ORLANDO DIVISION

**JENNIFER SMITH,**

      **Plaintiff,**

**v.**                          **CASE NO: 6:24-cv-00457-PGB-RMN**

**THE FLORIDA AGRICULTURAL &**
**MECHANICAL UNIVERSITY**
**BOARD OF TRUSTEES,**

      **Defendant.**

_____/

## EXHIBIT B

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIA
## ORLANDO DIVISION

**JENNIFER SMITH,**

      **Plaintiff,**

**v.**                      **CASE NO.: 6:24-cv-00457-PGB-RMN**

**FLORIDA AGRICULTURAL &**
**MECHANICAL UNIVERSITY**
**BOARD OF TRUSTEES,**

      **Defendant.**
_____/

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## FIRST REQUESTS FOR ADMISSIONS

COMES NOW the Defendant, FLORIDA AGRICULTURAL & MECHANICAL UNIVERSITY BOARD OF TRUSTEES, by and through its undersigned counsel, and pursuant to Rule 36, Fed. R. Civ. P., hereby responds to Plaintiff's First Requests for Production as follows:

### General Objections

**The University objects to all discovery requests and files herewith its Time Sensitive Opposed Short Form Discovery Motion requesting a protective order that this discovery not be answered and seeking a stay of discovery [Doc. 56].**

The University has not yet been served with process, has not waived service of process, and is not subject to the jurisdiction of this Court.  The April 10, 2024, Report and Recommendation ("Report") held that service of process was quashed.  [Doc. 40].  This Court has not yet accepted the Report.

These responses are provided to comply in good faith and preserve all objections to this discovery.

The University continues to contest the jurisdiction of the Court.

The University objects to the Plaintiff referring to herself in many of the requests as "Professor Smith."  Despite any answer herein to the contrary the University does not admit that the plaintiff is employed with the University.

1. Admit that Professor Smith and Professor Ewanrinareto "Areto" Imoukhuede (comparator), hold the same title of tenured full professor at the Florida A&M University College of Law ("COL").

   **RESPONSE:  Denied.  Plaintiff is no longer employed with the FLORIDA AGRICULTURAL & MECHANICAL UNIVERSITY BOARD OF TRUSTEES ("University") in any capacity.  Admit that Professor Imoukhuede is a tenured full professor.**

2. Admit that Professor Smith and Professor Areto Imoukhuede are employed in the COL.

   **RESPONSE:  Denied.  Plaintiff is no longer employed with the University in any capacity.  Admit that Professor Areto Imoukhuede is employed with the University.**

3.   Admit that the job responsibilities of Professor Smith require equal skill

as those of Professor Areto Imoukhuede.

**RESPONSE:  Denied.  Plaintiff is not a professor with this University
and is no longer employed with the University in any capacity.**

4.   Admit that the job responsibilities of Professor Smith require equal effort

as those of Professor Areto Imoukhuede.

**RESPONSE:  Denied.  Plaintiff is not a professor with this University
and is no longer employed with the University in any capacity.**

5.   Admit that Professor Smith and Professor Areto Imoukhuede's positions

require equal responsibility to fulfil their employment obligation.

**RESPONSE:  Denied.  Plaintiff has no employment obligation to the
University since she is no longer employed.**

6.   Admit that Professor Smith and Professor Areto Imoukhuede work under

similar working conditions within the COL.

**RESPONSE:  Denied.  Plaintiff is not a professor with this University
and is no longer employed with the University in any capacity.**

7.   Admit that Professor Smith has roughly ten years more experience in the

field of law than Professor Areto Imoukhuede.

**RESPONSE:  Denied.**

8.   Admit that Professor Smith has more years of experience in academia

than Professor Areto Imoukhuede.

**RESPONSE:  Denied.**

9.   Admit that Professor Smith has been employed by [the] COL for a longer

period than Professor Areto Imoukhuede.

**RESPONSE:  Denied.  Plaintiff was employed from 2004 to January
of 2024, and Professor Areto Imoukhuede was hired in 2021 and
remains employed with the University.**

10.  Admit that Professor Areto Imoukhuede was hired in 2021.

**RESPONSE:  Admitted.**

11.  Admit that Professor Smith's annual salary is less than that of Professor

Areto Imoukhuede.

**RESPONSE:   Objection.   The plaintiff is no longer a professor
employed with the University.  The request is vague and misleading,
and therefore denied.**

12.  Admit that the COL deans have had to address student complaints with

Professor Areto Imoukhuede in his Constitutional Law classes for being

late.

**RESPONSE:  Objection in that the request is vague and misleading
in that "have had to address" is undefined.**

13.  Admit that the COL deans have had to address student complaints with

Professor Areto Imoukhuede in his Constitutional Law classes for being

absent.

**RESPONSE:  Objection in that the request is vague and misleading
in that "have had to address" is undefined.**

14. Admit that the COL deans have had to address student complaints with Professor Areto Imoukhuede in his Constitutional Law classes for requiring students to do presentations to cover the class material.

   **RESPONSE:  Objection in that the request is vague and misleading in that "have had to address" is undefined.**

15. Admit that the Professor Patricia Broussard has taught Constitutional Law since 2005.

   **RESPONSE:  Objection.  The request is not relevant to any party's claim or defense and the burden or expense associated with the research required to respond outweighs its likely benefit.**

16. Admit that in 2021, Professors Broussard, Levitt, and Pernell were all still employed full time at the COL.

   **RESPONSE:  Admitted as to the applicable time frame.**

17. Admit that Professor Patricia Broussard has taught Constitutional Law longer than Professor Jeremy Levitt.

   **RESPONSE:  Objection.  The request is not relevant to any party's claim or defense and the burden or expense associated with the research required to respond outweighs its likely benefit.**

18. Admit that Professor Patricia Broussard has taught Constitutional Law longer than Professor LeRoy Pernell.

   **RESPONSE:  Objection.  The request is not relevant to any party's claim or defense and the burden or expense associated with the research required to respond outweighs its likely benefit.**

19.   Admit that Professor Patricia Broussard has taught Constitutional Law

longer than Professor Areto Imoukhuede.

   **RESPONSE:   Objection.   The request is not relevant to any party's claim or defense and the burden or expense associated with the research required to respond outweighs its likely benefit.**

20.   Admit that Professor Jeremy Levitt has a salary greater than Professor

Patricia Broussard.

   **RESPONSE:   Objection.   The request is not relevant to any party's claim or defense and the burden or expense associated with the research required to respond outweighs its likely benefit.**

21.   Admit that Professor LeRoy Pernell has a salary greater than Professor

Patricia Broussard.

**RESPONSE:   Objection.   The request is not relevant to any party's claim or defense and the burden or expense associated with the research required to respond outweighs its likely benefit.**

**Admitted that Professor LeRoy Pernell when he was dean of the College of Law received a higher salary.**

22.   Admit that Professor Areto Imoukhuede has a salary greater than

Professor Patricia Broussard.

   **RESPONSE:   Admitted as to the University employment of both persons.**

23.   Admit that all the male professors who teach Constititonal Law have

higher salaries than Professor Patricia Broussard.

**RESPONSE: Objection. The request is not relevant to any party's claim or defense and the burden or expense associated with the research required to respond outweighs its likely benefit.**

24.   Admit that Professor Jeremy Levitt had a higher salary than Professor Broussard before he began teaching Constititonal Law.

**RESPONSE: Objection. The request is not relevant to any party's claim or defense and the burden or expense associated with the research required to respond outweighs its likely benefit.**

25.   Admit that Professor LeRoy Pernell had a higher salary than Professor Broussard before he began teaching Constititonal Law.

**RESPONSE: Objection. The request is not relevant to any party's claim or defense and the burden or expense associated with the research required to respond outweighs its likely benefit.**

26.   Admit that law faculty salaries are not based on the subject matter of courses taught at the COL.

**RESPONSE: Admit that the subject matter of courses is not the sole criterion in law faculty salaries.**

27.   Admit that the promotion history alone of a faculty member is not a defense to an equal pay claim.

**RESPONSE: Objection. Requires a legal conclusion, vague and requires speculation to respond.**

28.   Admit that Defendant has not conducted a formal review of pay equity among faculty members at the COL within the last five years.

**RESPONSE: Objection. The request is not relevant to any party's claim or defense and the burden or expense associated with the research required to respond outweighs its likely benefit.**

29. Admit that the last COL pay equity study dated 2015 was done by employees of the Defendant.

   **RESPONSE: Objection. The request is not relevant to any party's claim or defense and the burden or expense associated with the research required to respond outweighs its likely benefit.**

30. Admit that the Defendant does not have a formal policy that addresses gender equity in compensation among its faculty members.

   **RESPONSE: Denied.**

31. Admit that the Defendant has not provided specific training or guidelines to decision-makers at COL regarding adherence to equal pay laws.

   **RESPONSE: Denied.**

32. Admit that Professor Smith and Professor Areto Imoukhuede both have J.D. degrees as their highest degree.

   **RESPONSE: Plaintiff is no longer employed with the University in any capacity. Based on the CVs of Professor Areto Imoukhuede and the Plaintiff, upon hire, each has a J.D. degree as the highest degree.**

33. Admit that Professor Smith contacted the FAMU president, Larry Robinson, about the salary discrepancy between Professor Smith and Professor Areto Imoukhuede in May 2022.

**RESPONSE:  Admitted.**

34.   Admit that the Defendant has received formal complaints or inquiries related to gender pay equity issues from female COL faculty members within the last ten years, other than Professor Smith.

   **RESPONSE:  Objection.  The request is not relevant to any party's claim or defense and the burden or expense associated with the research required to respond outweighs its likely benefit.**

35.   Admit that Defendant implemented a salary structure for new COL hires in 2016, consisting of $120,000 base salary for associate professors and $140,000 base salary for full professors.

   **RESPONSE:  Denied.**

36.   Admit that Professor Areto Imoukhuede's salary is greater than the salary structure implemented in 2016.

   **RESPONSE:  Denied.**

37.   Admit that, except for COL leadership, no female professor hired after 2016 was hired at a salary higher than the salary structure implemented in 2016.

   **RESPONSE:  Denied.**

38.   Admit that the Defendant has not provided an explanation to Professor Smith regarding the reasons for her lower salary compared to her male comparator, Professor Areto Imoukhuede.

**RESPONSE:   Denied.   Plaintiff is referred to the University's response to the University's Position Statement filed in response to Plaintiff's EEOC Charge No. 510-2023-00072 and Investigative Report of the Office of Equal Opportunity Programs for Case No. 2022-FAMU-F-05-005.**

39. Admit that Professor Smith has not been offered any form of compensation adjustment or increase after raising concerns about pay equity with the COL.

    **RESPONSE:  Denied.  Plaintiff received all increases to which she was entitled.**

40. Admit that there are no documented instances where Professor Areto Imoukhuede's skills, responsibilities, or job performance significantly exceed those of Professor Smith.

    **RESPONSE:  Denied.**

41. Admit that no factor other than Professor Smith's gender has been documented or can be demonstrated to justify the pay disparity between Professor Smith and Professor Areto Imoukhuede.

    **RESPONSE:  Denied.**

42. Admit that Professor Areto Imoukhuede was not initially on the spring 2023 schedule to teach Constitutional Law but was added to the schedule during the time that Defendant was responding to the EEOC complaint.

    **RESPONSE:  Unable to respond as phrased and therefore denied.**

43.   Admit that Professor Areto Imoukhuede has not been required to perform tasks or fulfill roles that are significantly different from those required of Professor Smith.

**RESPONSE: Denied.**

44.   Admit that Defendant became aware of Professor Smith's state court complaint filed in October 2023.

**RESPONSE: Objection. Attorney-client privilege. The question is unclear and requires speculation to respond.**

45.   Admit that in November 2023, Defendant became aware of Professor Smith's state court complaint filed in October 2023.

**RESPONSE: Objection. Attorney-client privilege. The question is unclear and requires speculation to respond.**

46.   Admit that Defendant sent Professor Smith a notice to terminate on December 5, 2023.

**RESPONSE:   Admitted that a notice of intent to terminate Plaintiff's employment was sent on December 5, 2023.**

47.   Admit that Defendant's outside counsel notified Defendant in November 2023 that Professor Smith had filed a state court complaint in October 2023.

**RESPONSE:  The University objects to this request as attorney-client privileged.**

48. Admit that Defendant's outside counsel notified Defendant in October 2023 that Professor Smith had filed a state court complaint in October 2023.

   **RESPONSE:  The University objects to this request as attorney-client privileged.**

49. Admit that Professor Smith's October 20, 2022 complaint preceded any complaint filed by student Michelle Wanamaker.

   **RESPONSE:  Objection.  The University as a higher education institution has a duty to protect the confidentiality of student records, codified in the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, including "directory information" to include the identity of the student. In the event of a judicial order directing disclosure of any student information, the student will be notified and have an opportunity to object to the discovery.**

50. Admit that, other than the claim of retaliation from re-filing the complaint, Defendant stated that Professor Smith did not violate any University policy in the July 6, 2023 supplemental report.

   **RESPONSE:  Denied.  The document speaks for itself.**

51. Admit that Professor Smith did not take any action against student Michelle Wanamaker other than re-filing Professor Smith's initial complaint dated October 20, 2022 with Compliance.

   **RESPONSE:  Objection.  The University as a higher education institution has a duty to protect the confidentiality of student records, codified in the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, including "directory information" to include the identity of the student. In the event of a judicial**

**order directing disclosure of any student information, the student will be notified and have an opportunity to object to discovery.**

52.    Admit that Associate Dean Green was required to forward Professor Smith's October 20, 2022 complaint to Compliance.

**RESPONSE: Denied.**

53.    Admit that Associate Dean Green did not forward Professor Smith's October 20, 2022 complaint to Compliance.

**RESPONSE: Denied. Plaintiff did not submit additional information requested and she did not submit a complaint.**

54.    Admit that, on Monday, October 24, 2022, Associate Dean Green went to the COL deans' office to report the October 20, 2022 incident with Michelle Wanamaker, the student.

**RESPONSE: Objection. The University as a higher education institution has a duty to protect the confidentiality of student records, codified in the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, including "directory information" to include the identity of the student. In the event of a judicial order directing disclosure of any student information, the student will be notified and have an opportunity to object to production of records.**

55.    Admit that Michelle Wanamaker filed a complaint against Professor Smith on October 27, 2022.

**RESPONSE: Objection. The University as a higher education institution has a duty to protect the confidentiality of student records, codified in the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, including "directory information" to include the identity of the student. In the event of a judicial**

order directing disclosure of any student information, the student will be notified and have an opportunity to object to production of records.

56. Admit that Michelle Wanamaker's October 27, 2022 complaint against Professor Smith was not relayed to Professor Smith until January 2023.

**RESPONSE: Objection. The University as a higher education institution has a duty to protect the confidentiality of student records, codified in the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, including "directory information" to include the identity of the student. In the event of a judicial order directing disclosure of any student information, the student will be notified and have an opportunity to object to production of records.**

57. Admit that Compliance made Professor Smith aware on or around February 1, 2023 that Associate Dean Green had not forwarded her complaint to Compliance as he was required to do under FAMU policy.

**RESPONSE: Denied.**

58. Admit that Associate Dean Green was required to investigate Professor Smith's October 20, 2022 complaint against Michelle Wanamaker.

**RESPONSE: Denied. The University as a higher education institution has a duty to protect the confidentiality of student records, codified in the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, including "directory information" to include the identity of the student. In the event of a judicial order directing disclosure of any student information, the student will be notified and have an opportunity to object to production of protected information.**

59.     Admit that Associate Dean Green did not investigate Professor Smith's

October 20, 2022 complaint against Michelle Wanamaker.

**RESPONSE: Denied. Plaintiff did not submit a complaint for investigation. The University as a higher education institution has a duty to protect the confidentiality of student records, codified in the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, including "directory information" to include the identity of the student. In the event of a judicial order directing disclosure of any student information, the student will be notified and have an opportunity to object to production of protected information.**

60.     Admit that the Defendant took no action with Professor Smith's

October 20, 2022 complaint or Michelle Wanamaker's October 27,

2022 complaint until January 2023.

**RESPONSE: Denied. Plaintiff did not submit a complaint for investigation. The University as a higher education institution has a duty to protect the confidentiality of student records, codified in the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, including "directory information" to include the identity of the student. In the event of a judicial order directing disclosure of any student information, the student will be notified and have an opportunity to object to production of protected information.**

61.     Admit that the first time that Defendant contacted Professor Smith to

investigate the October 20, 2022 incident was on January 26, 2023.

**RESPONSE: Admitted.**

62.     Admit that Professor Smith filed her EEOC response to FAMU's

rebuttal on January 10, 2023.

**RESPONSE: Objection. Vague and requires speculation to respond as Plaintiff has filed several EEOC charges. The plaintiff is the person with knowledge of when she filed a response with the EEOC and therefore has relevant information responsive to this admission.**

63. Admit that the July 6, 2023 supplemental report's concern about Smith sending/receiving text messages surrounding the October 20, 2022 incident, does not constitute retaliation as defined legally.

   **RESPONSE: Objection. Requires legal conclusion. Vague in that no specific quote from the report is provided, to admit or deny would require speculation, and the request does not provide a definition of "retaliation as defined legally."**

64. Admit that the reason cited by Provost Watson for terminating Professor Smith, specifically the reason related to Professor Smith's drafting of her October 5, 2023 memo sent to Compliance, does not constitute retaliation as defined legally.

   **RESPONSE: Objection. Requires legal conclusion. Vague in that no specific quote from the report is provided, to admit or deny would require speculation, and the request does not provide a definition of "retaliation as defined legally."**

65. Admit that the July 6, 2023 supplemental report's concern about Smith sending/receiving text messages surrounding the October 20, 2022 incident, does not constitute retaliation as defined by FAMU.

   **RESPONSE: Denied.**

66.   Admit that the reason cited by Provost Watson for terminating Professor Smith, specifically the reason related to Professor Smith's drafting of her October 5, 2023 memo sent to Compliance, does not constitute retaliation as defined by FAMU.

**RESPONSE:  Denied.**

67.   Admit that the reason for Professor Smith's termination was Compliance's substantiated finding of retaliation in the December 5, 2023 notice.

**RESPONSE:  Objection, in that the way this request is worded it is unclear and susceptible of more than one meaning.  The University admits that the letter stating Plaintiff would be terminated was dated December 5, 2023, that the letter with attachments was provided to the plaintiff at the time and in this discovery, and that the letter speaks for itself.**

68.   Admit the December 5, 2023 notice did not include a finding that Professor Smith engaged in disruptive conduct.

**RESPONSE:  Objection since the December 5, 2023 letter advising Plaintiff of her pending discharge was not an investigative report and therefore the statement is not susceptible of being admitted nor denied.**

69.   Admit the Supplemental investigative report was never sent to Professor Smith until it was sent as an attachment to the December 5, 2023 Notice to Terminate.

**RESPONSE:  Denied.**

70. Admit the reason for Professor Smith's termination was Provost Watson's finding that Professor Smith engaged in inappropriate conduct with at least one student by sending/receiving text messages surrounding the October 20, 2022 incident, which Compliance found did not to rise to the level of a policy violation.

**RESPONSE: Denied.**

71. Admit that Professor Areto Imoukhuede's salary is not in line with the other professors teaching and specializing in Constitutional Law.

**RESPONSE: Denied.**

72. Admit that Professor Areto Imoukhuede does not specialize in Constitutional Law.

**RESPONSE: Objection. Requires speculation to respond.**

73. Admit that Professor Areto Imoukhuede asked Professor Broussard to teach him First Amendment since he has been teaching at the COL.

**RESPONSE: Objection. The request is not relevant to any party's claim or defense and the burden or expense associated with the research required to respond outweighs its likely benefit.**

74. Admit that Defendant has never terminated a male professor for alleged retaliation at the COL.

**RESPONSE: Objection. The request is not relevant to any party's claim or defense and the burden or expense associated with the research required to respond outweighs its likely benefit.**

75.   Admit that there have been substantiated complaints against male COL

faculty in the last 20 years.

**RESPONSE: Objection. The request is not relevant to any party's claim or defense and the burden or expense associated with the research required to respond outweighs its likely benefit.**

76.   Admit that Defendant has never terminated a male COL professor for

substantiated complaints against him.

**RESPONSE: Objection. The request is not relevant to any party's claim or defense and the burden or expense associated with the research required to respond outweighs its likely benefit.**

77.   Admit that Defendant was aware of Professor Smith's lawsuit when it

decided to terminate Professor Smith.

**RESPONSE:   Objection as the "lawsuit" is not defined and Plaintiff has brought multiple actions against the University.**

78.   Admit that James Vaughan received service of process and forwarded

same to the General Counsel's office in February 2024.

**RESPONSE:  Denied.**

79.   Admit that Deidre Keller never reported a faculty rivalry existed at the

COL when presenting to the University Board of Trustees.

**RESPONSE:   Objection.   The request is vague and requires speculation to respond.**

80.   Admit that Defendant never informed Professor Smith of any alleged

rivalry between her and Professor Maritza Reyes.

**RESPONSE:  Objection.  The request is vague, unlikely to lead to admissible evidence, and requires speculation to respond.**

81. Admit that Professor Smith recommended Professor Reyes to be hired at the COL when Professor Reyes was interviewing for a job at the COL.

    **RESPONSE:  Objection.  The request is not relevant to any party's claim or defense.**

82. Admit that Defendant paid Professor Smith her salary on April 10, 2024.

    **RESPONSE:  Denied.  Plaintiff was paid after termination for unused leave.**

83. Admit that, as of late April 2024, Defendant never sent Professor Smith a COBRA notice for her health care options.

    **RESPONSE:  Objection.  The question is not susceptible to being admitted nor denied since the University is not responsible for COBRA notices.**

84. Admit that Defendant included Professor Smith on an updated faculty roster emailed on February 14, 2024.

    **RESPONSE:  The University denies that Plaintiff was employed beyond January 30, 2024, despite the fact that some administrative details remained to be communicated to all departments in the University.**

85.  Admit that Defendant has only ever printed Professor Smith's FAMU

COL business cards once since she was hired in 2004 listing "Associate

Professor" as her job title until she was promoted to full professor.

**RESPONSE: Objection. The request is not relevant to any party's claim or defense and the burden or expense associated with the research required to respond outweighs its likely benefit.**

86.  Admit that Defendant continued to have Professor Smith listed as a law

faculty member on its official website up to March 20, 2024.

**RESPONSE: Admitted. The University denies that Plaintiff was employed beyond January 30, 2024, despite the fact that some administrative details remained to be communicated to all departments in the University.**

87.  Admit that Professor Smith had health insurance through Defendant as

late as April 2024.

**RESPONSE: Objection. The question is not susceptible to being admitted nor denied since the University is not responsible for health insurance coverage.**

88.  Admit that the Provost's Office chose the 3-member panel consisting

of Bryan Smith, Andrea Nelson, and Patricia West for Professor Smith's

Conference on January 11, 2024.

**RESPONSE: Admitted.**

89.  Admit that Allyson Watson and Patricia West served as administrators

together for FAMU's DRS in 2021.

**RESPONSE:  Objection as irrelevant and not proportional to the needs of the case.**

90.    Admit that the Provost's Office chose Antoneia Roe to coordinate Professor Smith's STEP ONE hearing.

**RESPONSE:  Admitted that Ms. Roe was assigned as the Step One reviewer in response to Plaintiff's complaint pursuant to University Regulation 10.206.**

91.    Admit that, at the time Antoneia Roe was the hearing officer for the STEP ONE hearing for Professor Smith, Antoneia Roe was ineligible to practice law in Florida because her Florida Bar membership had lapsed.

**RESPONSE:  Objection as irrelevant and not proportional to the needs of the case.**

92.    Admit that Antoneia Roe, hearing officer for the STEP ONE hearing for Jennifer Smith, previously worked in the FAMU General Counsel's office.

**RESPONSE:  Objection as irrelevant and not proportional to the needs of the case.**

93.    Admit that in 2004, Professor Smith received a unanimous vote to join the COL faculty in 2004.

**RESPONSE:  Denied.**

94.     Admit that visiting professors at the COL do not get business cards.

**RESPONSE:  Objection as irrelevant and not proportional to the needs of the case.**

95.     Admit that visiting professors are not voted on for tenured, tenure-track, or non-visiting contractual positions until they are considered for joining the COL faculty.

**RESPONSE:  Objection, as irrelevant and not proportional to the needs of the case.**

96.     Admit that there is no term or classification for "constitutional law specialist" at the COL.

**RESPONSE:  Admitted.**

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on this 23rd day of May, 2024, I provided the

foregoing via Electronic Mail to all counsel of record in this case.

*/s/ Maria A. Santoro*
**MARIA A. SANTORO**
Florida Bar Number: 0654809
msantoro@sniffenlaw.com
jlunt@sniffenlaw.com
tward@sniffenlaw.com

**SNIFFEN & SPELLMAN, P.A.**
123 North Monroe Street
Tallahassee, Florida 32301
Telephone: (850) 205-1996
Facsimile: (850) 205-3004

*Counsel for the Board of Trustees,*
*Florida A&M University*

*/s/ Richard E. Mitchell*
**Richard E. Mitchell, Esq.**
Florida Bar No: 0168092
rick.mitchell@gray-robinson.com
maryann.hamby@gray-robinson.com
Julie M. Zolty, Esq.
Florida Bar No: 1036454
chantal.mccoy@gray-robinson.com
GRAYROBINSON, P.A.
301 East Pine Street, Suite 1400
Post Office Box 3068 (3208-3068)
Orlando, Florida 32801
(407) 843-8880 Telephone
(407) 244-5690 Facsimile
*Counsel for Defendant FAMU*

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIA
## ORLANDO DIVISION

**JENNIFER SMITH,**

        **Plaintiff,**

**v.**                           **CASE NO: 6:24-cv-00457-PGB-RMN**

**THE FLORIDA AGRICULTURAL &**
**MECHANICAL UNIVERSITY**
**BOARD OF TRUSTEES,**

        **Defendant.**

_____/

## EXHIBIT C

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIA**
**ORLANDO DIVISION**

**JENNIFER SMITH,**

       **Plaintiff,**

**v.**                                     **CASE NO.: 6:24-cv-00457-PGB-RMN**

**FLORIDA AGRICULTURAL &**
**MECHANICAL UNIVERSITY**
**BOARD OF TRUSTEES,**

       **Defendant.**
_____/

**DEFENDANT'S AMENDED RESPONSE TO PLAINTIFF'S**
**FIRST REQUESTS FOR ADMISSIONS**

COMES NOW the Defendant, FLORIDA AGRICULTURAL & MECHANICAL UNIVERSITY BOARD OF TRUSTEES, by and through its undersigned counsel, and pursuant to Rule 36, Fed. R. Civ. P., hereby files its Amended Response to Plaintiff's First Requests for Admission as follows:

**Introductory Statement**

Plaintiff refers to herself in many of the requests as "Professor Smith." Despite any answer herein to the contrary the University does not admit that the plaintiff is employed with the University.

1.   Admit that Professor Smith and Professor Ewanrinareto "Areto" Imoukhuede (comparator), hold the same title of tenured full professor at the Florida A&M University College of Law ("COL").

**RESPONSE: Denied. Plaintiff is no longer employed with the FLORIDA AGRICULTURAL & MECHANICAL UNIVERSITY BOARD OF TRUSTEES ("University") in any capacity. Admit that Professor Imoukhuede is a full-tenured professor.**

2.   Admit that Professor Smith and Professor Areto Imoukhuede are employed in the COL.

**RESPONSE: Denied. Plaintiff is no longer employed with the University in any capacity. Professor Areto Imoukhuede is employed with the University.**

3.   Admit that the job responsibilities of Professor Smith require equal skill as those of Professor Areto Imoukhuede.

**RESPONSE: Objection. Plaintiff is not a professor with this University and is no longer employed with the University in any capacity.**

**"[A] request for admission as to a central fact in dispute is beyond the proper scope of normal discovery. *Pickens v. Equitable Life Assurance Society*, 413 F.2d 1390 (5th Cir.1969). Although some courts have held that a plaintiff may seek admission on "ultimate facts," this Court concludes that "the plaintiff is not entitled to force the defendants to admit or deny the plaintiff's carefully phrased statements on the crucial issues in the case." *Minnesota Mining & Manufacturing Co. v. Norton Co.*, 36 F.R.D. 1, 3 (N.D.Ohio 1964)."**

**_In re Olympia Holding Corp._, 189 B.R. 846, 853 (Bkrtcy.M.D.Fla.,1995)**

4. Admit that the job responsibilities of Professor Smith require equal effort

as those of Professor Areto Imoukhuede.

**RESPONSE: Objection.  Plaintiff is not a professor with this University and is no longer employed with the University in any capacity. Further the request asks for admission of a fact central to the case which is improper under Fed. R. Civ. P. 36.**

**"[A] request for admission as to a central fact in dispute is beyond the proper scope of normal discovery.** *Pickens v. Equitable Life Assurance Society***, 413 F.2d 1390 (5th Cir.1969). Although some courts have held that a plaintiff may seek admission on "ultimate facts," this Court concludes that "the plaintiff is not entitled to force the defendants to admit or deny the plaintiff's carefully phrased statements on the crucial issues in the case."** *Minnesota Mining & Manufacturing Co. v. Norton Co.***, 36 F.R.D. 1, 3 (N.D.Ohio 1964)."**

*In re Olympia Holding Corp.***, 189 B.R. 846, 853 (Bkrtcy.M.D.Fla.,1995)**

5. Admit that Professor Smith and Professor Areto Imoukhuede's positions

require equal responsibility to fulfil their employment obligation.

**RESPONSE: Objection.  Plaintiff has no employment obligation to the University since she is no longer employed. Further the request asks for admission of a fact central to the case which is improper under Fed. R. Civ. P. 36.**

**"[A] request for admission as to a central fact in dispute is beyond the proper scope of normal discovery.** *Pickens v. Equitable Life Assurance Society***, 413 F.2d 1390 (5th Cir.1969). Although some courts have held that a plaintiff may seek admission on "ultimate facts," this Court concludes that "the plaintiff is not entitled to force the defendants to admit or deny the plaintiff's carefully phrased statements on the crucial issues in the case."** *Minnesota Mining & Manufacturing Co. v. Norton Co.***, 36 F.R.D. 1, 3 (N.D.Ohio 1964)."**

*In re Olympia Holding Corp.*, 189 B.R. 846, 853 (Bkrtcy.M.D.Fla.,1995)

6.   Admit that Professor Smith and Professor Areto Imoukhuede work under

similar working conditions within the COL.

**RESPONSE:   Objection.   Plaintiff is not a professor with this University and is no longer employed with the University in any capacity. Further the request asks for admission of a fact central to the case which is improper under Fed. R. Civ. P. 36.**

**"[A] request for admission as to a central fact in dispute is beyond the proper scope of normal discovery. *Pickens v. Equitable Life Assurance Society*, 413 F.2d 1390 (5th Cir.1969). Although some courts have held that a plaintiff may seek admission on "ultimate facts," this Court concludes that "the plaintiff is not entitled to force the defendants to admit or deny the plaintiff's carefully phrased statements on the crucial issues in the case." *Minnesota Mining & Manufacturing Co. v. Norton Co.*, 36 F.R.D. 1, 3 (N.D.Ohio 1964)."**

*In re Olympia Holding Corp.*, 189 B.R. 846, 853 (Bkrtcy.M.D.Fla.,1995)

7.   Admit that Professor Smith has roughly ten years more experience in the

field of law than Professor Areto Imoukhuede.

**RESPONSE:  Denied.**

8.   Admit that Professor Smith has more years of experience in academia

than Professor Areto Imoukhuede.

**RESPONSE:  Denied.**

9. Admit that Professor Smith has been employed by [the] COL for a longer period than Professor Areto Imoukhuede.

   **RESPONSE:  Admit, Plaintiff was initially employed at Florida A&M University College of Law, in 2004 and dismissed in 2024. Professor Areto Imoukhuede was hired in 2021 and remains employed with the University.**

10. Admit that Professor Areto Imoukhuede was hired in 2021.

    **RESPONSE:  Admitted.**

11. Admit that Professor Smith's annual salary is less than that of Professor Areto Imoukhuede.

    **RESPONSE:  Objection in that the request calls for speculation as to meaning since the plaintiff is no longer employed with the University.  Further the request asks for admission of a fact central to the case which is improper under Fed. R. Civ. P. 36.**

    **"[A] request for admission as to a central fact in dispute is beyond the proper scope of normal discovery. *Pickens v. Equitable Life Assurance Society*, 413 F.2d 1390 (5th Cir.1969). Although some courts have held that a plaintiff may seek admission on "ultimate facts," this Court concludes that "the plaintiff is not entitled to force the defendants to admit or deny the plaintiff's carefully phrased statements on the crucial issues in the case." *Minnesota Mining & Manufacturing Co. v. Norton Co.*, 36 F.R.D. 1, 3 (N.D.Ohio 1964)."**

    ***In re Olympia Holding Corp.*, 189 B.R. 846, 853 (Bkrtcy.M.D.Fla.,1995)**

12. Admit that the COL deans have had to address student complaints with Professor Areto Imoukhuede in his Constitutional Law classes for being late.

**RESPONSE: Objection in that the request is vague and misleading in that "have had to address" is undefined.**

13. Admit that the COL deans have had to address student complaints with Professor Areto Imoukhuede in his Constitutional Law classes for being absent.

   **RESPONSE: Objection in that the request is vague and misleading in that "have had to address" is undefined.**

14. Admit that the COL deans have had to address student complaints with Professor Areto Imoukhuede in his Constitutional Law classes for requiring students to do presentations to cover the class material.

   **RESPONSE: Objection in that the request is vague and misleading in that "have had to address" is undefined.**

15. Admit that the Professor Patricia Broussard has taught Constitutional Law since 2005.

   **RESPONSE: Objection. The request is unlikely to result in relevant admissible evidence and is unduly burdensome, requiring extensive research into every semester's schedule for over twenty years.**

   **The request bears no relationship to any fact at issue in this matter and is unlikely to lead to relevant or admissible evidence, and is unduly burdensome for the University to research for an accurate response.**

16. Admit that in 2021, Professors Broussard, Levitt, and Pernell were all still employed full time at the COL.

   **RESPONSE: Admitted as to the applicable time frame.**

17.    Admit that Professor Patricia Broussard has taught Constitutional Law

longer than Professor Jeremy Levitt.

**RESPONSE: Objection.  The request is unlikely to result in relevant admissible evidence and is unduly burdensome, requiring extensive research into every semester's schedule for over twenty years.**

**The request bears no relationship to any fact at issue in this matter and is unlikely to lead to relevant or admissible evidence, and is unduly burdensome for the University to research for an accurate response.**

18.    Admit that Professor Patricia Broussard has taught Constitutional Law

longer than Professor LeRoy Pernell.

**RESPONSE:  Objection.  The request is unlikely to result in relevant admissible evidence and is unduly burdensome,  requiring extensive research into every semester's schedule for over twenty years.**

**The request bears no relationship to any fact at issue in this matter and is unlikely to lead to relevant or admissible evidence, and is unduly burdensome for the University to research for an accurate response.**

19.    Admit that Professor Patricia Broussard has taught Constitutional Law

longer than Professor Areto Imoukhuede.

**RESPONSE:  Objection.  The request is unlikely to result in relevant admissible evidence and is unduly burdensome, requiring extensive research into every semester's schedule for over twenty years.**

**The request bears no relationship to any fact at issue in this matter and is unlikely to lead to relevant or admissible evidence, and is**

**unduly burdensome for the University to research for an accurate response.**

20. Admit that Professor Jeremy Levitt has a salary greater than Professor

    Patricia Broussard.

    **RESPONSE: Admitted.**

21. Admit that Professor LeRoy Pernell has a salary greater than Professor

    Patricia Broussard.

    **RESPONSE: Admitted that Professor LeRoy Pernell has received a higher salary from the University as he was at times, the dean of the College of Law.**

22. Admit that Professor Areto Imoukhuede has a salary greater than

    Professor Patricia Broussard.

    **RESPONSE: Admitted.**

23. Admit that all the male professors who teach Constititonal (sic) Law

    have higher salaries than Professor Patricia Broussard.

    **RESPONSE: Objection. The request is unlikely to result in admissible evidence and is burdensome,  requiring extensive research into every semester's schedule for over twenty years.**

    **The request bears no relationship to any fact at issue in this matter and is unlikely to lead to relevant or admissible evidence, and is unduly burdensome for the University to research for an accurate response.**

24. Admit that Professor Jeremy Levitt had a higher salary than Professor

    Broussard before he began teaching Constitutional Law.

**RESPONSE: Objection. The request is unlikely to result in admissible evidence, is vague, and is burdensome, requiring extensive research into every semester's schedule for many years.**

**The request bears no relationship to any fact at issue in this matter and is unlikely to lead to relevant or admissible evidence, and is unduly burdensome for the University to research for an accurate response.**

25.   Admit that Professor LeRoy Pernell had a higher salary than Professor

Broussard before he began teaching Constitutional Law.

**RESPONSE: Objection. The request is unlikely to result in admissible evidence, is vague, and is burdensome, requiring extensive research into every semester's schedule for many years.**

**The request bears no relationship to any fact at issue in this matter and is unlikely to lead to relevant or admissible evidence, and is unduly burdensome for the University to research for an accurate response.**

26.   Admit that law faculty salaries are not based on the subject matter of

courses taught at the COL.

**RESPONSE: Admit that the subject matter is not the sole criterion.**

27.   Admit that the promotion history alone of a faculty member is not a

defense to an equal pay claim.

**RESPONSE: Objection. Requires a legal conclusion, vague and requires speculation to respond. Requesting a legal conclusion is improper under Fed. R. Civ. P. 36.**

28.   Admit that Defendant has not conducted a formal review of pay equity

among faculty members at the COL within the last five years.

**RESPONSE:** **Objection.** **The request is vague, overbroad, unrestricted to time and unlikely to result in admissible evidence and is overbroad requiring extensive research to respond.**

**The request bears no relationship to any fact at issue in this matter and is unlikely to lead to relevant or admissible evidence, and is unduly burdensome for the University to research for an accurate response.**

29. Admit that the last COL pay equity study dated 2015 was done by employees of the Defendant.

   **RESPONSE:** **Objection.** **The request is vague, overbroad, unrestricted to time and unlikely to result in admissible evidence and is overbroad requiring extensive research to respond.**

   **The request bears no relationship to any fact at issue in this matter and is unlikely to lead to relevant or admissible evidence, and is unduly burdensome for the University to research for an accurate response.**

30. Admit that the Defendant does not have a formal policy that addresses gender equity in compensation among its faculty members.

   **RESPONSE:  Denied.**

31. Admit that the Defendant has not provided specific training or guidelines to decision-makers at COL regarding adherence to equal pay laws.

   **RESPONSE:  Denied.**

32. Admit that Professor Smith and Professor Areto Imoukhuede both have J.D. degrees as their highest degree.

**RESPONSE: Objection. The request calls for speculation to respond as the plaintiff is no longer a professor with the University. Based on the CVs of Professor Areto Imoukhuede and the plaintiff, upon hire, each has a J.D. degree as the highest degree.**

33.   Admit that Professor Smith contacted the FAMU president, Larry Robinson, about the salary discrepancy between Professor Smith and Professor Areto Imoukhuede in May 2022.

**RESPONSE: Admitted.**

34.   Admit that the Defendant has received formal complaints or inquiries related to gender pay equity issues from female COL faculty members within the last ten years, other than Professor Smith.

**RESPONSE: Objection. The request is unlikely to result in admissible evidence, is vague, overbroad, and unduly burdensome to research and respond.**

**The request bears no relationship to any fact at issue in this matter and is unlikely to lead to relevant or admissible evidence, and is unduly burdensome for the University to research for an accurate response.**

35.   Admit that Defendant implemented a salary structure for new COL hires in 2016, consisting of $120,000 base salary for associate professors and $140,000 base salary for full professors.

**RESPONSE: Denied.**

36.   Admit that Professor Areto Imoukhuede's salary is greater than the salary structure implemented in 2016.

**RESPONSE:  Denied.**

37.   Admit that, except for COL leadership, no female professor hired after 2016 was hired at a salary higher than the salary structure implemented in 2016.

**RESPONSE:  Denied.**

38.   Admit that the Defendant has not provided an explanation to Professor Smith regarding the reasons for her lower salary compared to her male comparator, Professor Areto Imoukhuede.

**RESPONSE:  Denied.  Plaintiff is referred to the University's response to the University's Position Statement filed in response to Plaintiff's EEOC Charge No. 510-2023-00072 and Investigative Report of the Office of Equal Opportunity Programs for Case no. 2022-FAMU-F-05-005.**

39.   Admit that Professor Smith has not been offered any form of compensation adjustment or increase after raising concerns about pay equity with the COL.

**RESPONSE:  Denied.  Plaintiff received all increases to which she was entitled.**

40.   Admit that there are no documented instances where Professor Areto Imoukhuede's skills, responsibilities, or job performance significantly exceed those of Professor Smith.

**RESPONSE:  Denied.**

41.  Admit that no factor other than Professor Smith's gender has been documented or can be demonstrated to justify the pay disparity between Professor Smith and Professor Areto Imoukhuede.

**RESPONSE:  Denied.**

42.  Admit that Professor Areto Imoukhuede was not initially on the spring 2023 schedule to teach Constitutional Law but was added to the schedule during the time that Defendant was responding to the EEOC complaint.

**RESPONSE:  Objection.  The University is unable to respond as phrased and should not be compelled to speculate as to the meaning of the request.**

43.  Admit that Professor Areto Imoukhuede has not been required to perform tasks or fulfill roles that are significantly different from those required of Professor Smith.

**RESPONSE:  Denied.**

44.  Admit that Defendant became aware of Professor Smith's state court complaint filed in October 2023.

**RESPONSE:  Objection.  A response requires breach of the attorney-client privilege and further is unrelated to any matter at issue in this case.  The question is unclear and requires speculation to respond.**

**The request bears no relationship to any fact at issue in this matter and is unlikely to lead to relevant or admissible evidence, and is**

**unduly burdensome for the University to research for an accurate response.**

45.   Admit that in November 2023, Defendant became aware of Professor

Smith's state court complaint filed in October 2023.

**RESPONSE: Objection. Attorney-client privileged. The question is unclear and requires speculation to respond, and the issue was rendered moot by the Court's granting of the University's Motion to Quash Service of Process in Document 60.**

46.   Admit that Defendant sent Professor Smith a notice to terminate on

December 5, 2023.

**RESPONSE:   Admitted that a notice of intent to terminate Plaintiff's employment was sent on December 5, 2023.**

47.   Admit that Defendant's outside counsel notified Defendant in

November 2023 that Professor Smith had filed a state court complaint

in October 2023.

**RESPONSE:  The University objects to this request as attorney-client privileged.**

48.   Admit that Defendant's outside counsel notified Defendant in October

2023 that Professor Smith had filed a state court complaint in October

2023.

**RESPONSE:  The University objects to this request as attorney-client privileged.**

49.   Admit that Professor Smith's October 20, 2022 complaint preceded any

complaint filed by student Michelle Wanamaker.

**RESPONSE:  Denied.  The plaintiff did not file any complaint on October 20, 2022.**

50. Admit that, other than the claim of retaliation from re-filing the complaint, Defendant stated that Professor Smith did not violate any University policy in the July 6, 2023 supplemental report.

    **RESPONSE:  Denied.  The document speaks for itself.**

51. Admit that Professor Smith did not take any action against student Michelle Wanamaker other than re-filing Professor Smith's initial complaint dated October 20, 2022 with Compliance.

    **RESPONSE:  Objection.  The question is vague in that it contains a fallacious premise that the plaintiff 'refiled' a complaint, and seeks admission of a fact central to the case in violation of Fed. R. Civ. P. 36.**

52. Admit that Associate Dean Green was required to forward Professor Smith's October 20, 2022 complaint to Compliance.

    **RESPONSE:  Denied.**

53. Admit that Associate Dean Green did not forward Professor Smith's October 20, 2022 complaint to Compliance.

    **RESPONSE:  Denied.  Plaintiff did not submit a complaint.**

54. Admit that, on Monday, October 24, 2022, Associate Dean Green went to the COL deans' office to report the October 20, 2022 incident with Michelle Wanamaker, the student.

**RESPONSE:  Objection in that the question does not identify any report and is therefore vague**

55. Admit that Michelle Wanamaker filed a complaint against Professor

Smith on October 27, 2022.

**RESPONSE:  Objection.  The University as a higher education institution has a duty to protect the confidentiality of student records, codified in the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, including "directory information" to include the identity of the student. In the event of a judicial order directing disclosure of any student information, the student will be notified and have an opportunity to object to production of records.**

56. Admit that Michelle Wanamaker's October 27, 2022 complaint against

Professor Smith was not relayed to Professor Smith until January 2023.

**RESPONSE:  Objection.  The University as a higher education institution has a duty to protect the confidentiality of student records, codified in the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, including "directory information" to include the identity of the student. In the event of a judicial order directing disclosure of any student information, the student will be notified and have an opportunity to object to production of records.**

57. Admit that Compliance made Professor Smith aware on or around

February 1, 2023 that Associate Dean Green had not forwarded her

complaint to Compliance as he was required to do under FAMU policy.

**RESPONSE:  Objection in that the request requests speculation as to what Associate Dean Green was required to do, and to assume he did or did not comply with policy.**

58.     Admit that Associate Dean Green was required to investigate Professor

Smith's October 20, 2022 complaint against Michelle Wanamaker.

**RESPONSE:  Denied.  The plaintiff did not submit a complaint.**

59.    Admit that Associate Dean Green did not investigate Professor Smith's

October 20, 2022 complaint against Michelle Wanamaker.

**RESPONSE:   Denied.   Plaintiff did not submit a complaint for
investigation.  The University as a higher education institution has
a duty to protect the confidentiality of student records, codified in
the Family Educational Rights and Privacy Act ("FERPA"), 20
U.S.C. § 1232g, including "directory information" to include the
identity of the student.  In the event of a judicial order directing
disclosure of any student information, the student will be notified
and have an opportunity to object to production of protected
information.**

60.     Admit that the Defendant took no action with Professor Smith's

October 20, 2022 complaint or Michelle Wanamaker's October 27,

2022 complaint until January 2023.

**RESPONSE:   Denied.   Plaintiff did not submit a complaint for
investigation.  The University as a higher education institution has
a duty to protect the confidentiality of student records, codified in
the Family Educational Rights and Privacy Act ("FERPA"), 20
U.S.C. § 1232g, including "directory information" to include the
identity of the student.  In the event of a judicial order directing
disclosure of any student information, the student will be notified
and have an opportunity to object to production of protected
information.**

61.     Admit that the first time that Defendant contacted Professor Smith to

investigate the October 20, 2022 incident was on January 26, 2023.

**RESPONSE: Admitted.**

62.    Admit that Professor Smith filed her EEOC response to FAMU's rebuttal on January 10, 2023.

   **RESPONSE:   Objection.   Vague and requires speculation to respond as Plaintiff has filed several EEOC charges.  Plaintiff is no longer a professor and is no longer employed by the University in any capacity.  The plaintiff is the person with knowledge of when she filed a response with the EEOC.**

63.    Admit that the July 6, 2023 supplemental report's concern about Smith sending/receiving text messages surrounding the October 20, 2022 incident, does not constitute retaliation as defined legally.

   **RESPONSE:   Objection.   Requires legal conclusion which is improper under Fed. R Civ. P. 36.  Further, the request is vague in that no specific quote from the report is provided, to admit or deny would require speculation, and the request does not provide a definition of "retaliation as defined legally."  University regulations define retaliation.**

64.    Admit that the reason cited by Provost Watson for terminating Professor Smith, specifically the reason related to Professor Smith's drafting of her October 5, 2023 memo sent to Compliance, does not constitute retaliation as defined legally.

   **RESPONSE:  Objection. Requires legal conclusion.  Vague in that no specific quote from the report is provided, to admit or deny would require speculation, and the request does not provide a definition of "retaliation as defined legally."**

65.    Admit that the July 6, 2023 supplemental report's concern about Smith

sending/receiving text messages surrounding the October 20, 2022

incident, does not constitute retaliation as defined by FAMU.

**RESPONSE: Denied.**

66.    Admit that the reason cited by Provost Watson for terminating Professor

Smith, specifically the reason related to Professor Smith's drafting of

her October 5, 2023 memo sent to Compliance, does not constitute

retaliation as defined by FAMU.

**RESPONSE: Denied.**

67.    Admit that the reason for Professor Smith's termination was

Compliance's substantiated finding of retaliation in the December 5,

2023 notice.

**RESPONSE: Objection, in that the way this request is worded it is
unclear and susceptible of more than one meaning.  The University
admits that the letter stating Plaintiff would be terminated was
dated December 5, 2023, that the letter with attachments was
provided to the plaintiff at the time and in this discovery, and that
the letter speaks for itself.**

68.    Admit the December 5, 2023 notice did not include a finding that

Professor Smith engaged in disruptive conduct.

**RESPONSE: Objection since the December 5, 2023 letter advising
Plaintiff of her pending discharge was not an investigative report
and therefore the statement is not susceptible of being admitted nor
denied.**

69.    Admit the Supplemental investigative report was never sent to Professor Smith until it was sent as an attachment to the December 5, 2023 Notice to Terminate.

    **RESPONSE: Denied.**

70.    Admit the reason for Professor Smith's termination was Provost Watson's finding that Professor Smith engaged in inappropriate conduct with at least one student by sending/receiving text messages surrounding the October 20, 2022 incident, which Compliance found did not to rise to the level of a policy violation.

    **RESPONSE: Denied.**

71.    Admit that Professor Areto Imoukhuede's salary is not in line with the other professors teaching and specializing in Constitutional Law.

    **RESPONSE: Denied.**

72.    Admit that Professor Areto Imoukhuede does not specialize in Constitutional Law.

    **RESPONSE: Objection. Requires speculation to respond.**

73.    Admit that Professor Areto Imoukhuede asked Professor Broussard to teach him First Amendment since he has been teaching at the COL.

    **RESPONSE: The request is vague, calls for hearsay, is unlikely to lead to admissible evidence, requires speculation, and the University is without knowledge, therefore denied. Further, the request is irrelevant to any matter or issue in this case.**

74.   Admit that Defendant has never terminated a male professor for alleged

retaliation at the COL.

**RESPONSE:   Objection.   The request is unlikely to result in admissible evidence and is overbroad requiring extensive research into every personnel file for over twenty years. The request is irrelevant to any matter or issue in this case.**

75.   Admit that there have been substantiated complaints against male COL

faculty in the last 20 years.

**RESPONSE:   Objection.   The University objects to the request since no faculty member is named and research into all faculty and all complaints over twenty years is unduly burdensome, costly, and overbroad in scope.   The request is irrelevant to any matter or issue in this case.**

76.   Admit that Defendant has never terminated a male COL professor for

substantiated complaints against him.

**RESPONSE:   The University objects to the request since no faculty member is named and research into all faculty and all complaints over twenty years is unduly burdensome, costly, and overbroad in scope. The request is irrelevant to any matter or issue in this case.**

77.   Admit that Defendant was aware of Professor Smith's lawsuit when it

decided to terminate Professor Smith.

**RESPONSE:   Objection as the "lawsuit" is not defined  and Plaintiff has brought multiple actions against the University.**

78.   Admit that James Vaughan received service of process and forwarded

same to the General Counsel's office in February 2024.

**RESPONSE:  Denied.**

79.   Admit that Deidre Keller never reported a faculty rivalry existed at the

COL when presenting to the University Board of Trustees.

**RESPONSE:   Objection.   The request is vague and requires speculation to respond. The request is irrelevant to any matter or issue in this case.**

80.   Admit that Defendant never informed Professor Smith of any alleged

rivalry between her and Professor Maritza Reyes.

**RESPONSE: Objection.  The request is vague, unlikely to lead to admissible evidence, and requires speculation to respond. The request is irrelevant to any matter or issue in this case.**

81.   Admit that Professor Smith recommended Professor Reyes to be hired

at the COL when Professor Reyes was interviewing for a job at the

COL.

**RESPONSE:   The University objects to this request as it is irrelevant and unlikely to lead to admissible evidence.**

82.   Admit that Defendant paid Professor Smith her salary on April 10,

2024.

**RESPONSE:  Denied.  Plaintiff was paid after termination for unused leave.**

83.   Admit that, as of late April 2024, Defendant never sent Professor Smith

a COBRA notice for her health care options.

**RESPONSE:  Objection.  The question is not susceptible to being admitted nor denied since the University is not responsible for COBRA notices.**

84.    Admit that Defendant included Professor Smith on an updated faculty

roster emailed on February 14, 2024.

**RESPONSE:  Denied. The University denies that Plaintiff was employed beyond January 30, 2024 despite the fact that some administrative details remained to be communicated to all departments in the University.**

85.    Admit that Defendant has only ever printed Professor Smith's FAMU

COL business cards once since she was hired in 2004 listing "Associate

Professor" as her job title until she was promoted to full professor.

**RESPONSE:  Objection.  Irrelevant.  Not likely to lead to admissible evidence.  Matters prior to 2019 are res judicata and a matter of decision in previous cases.**

86.    Admit that Defendant continued to have Professor Smith listed as a law

faculty member on its official website up to March 20, 2024.

**RESPONSE:  Admitted.  The University denies that Plaintiff was employed beyond January 30, 2024 despite the fact that some administrative details remained to be communicated to all departments in the University.**

87.    Admit that Professor Smith had health insurance through Defendant as

late as April 2024.

**RESPONSE:  Objection.  The question is not susceptible to being admitted nor denied since the University is not responsible for health insurance coverage.**

88.   Admit that the Provost's Office chose the 3-member panel consisting of Bryan Smith, Andrea Nelson, and Patricia West for Professor Smith's Conference on January 11, 2024.

      **RESPONSE: Admitted.**

89.   Admit that Allyson Watson and Patricia West served as administrators together for FAMU's DRS in 2021.

      **RESPONSE:  Objection as irrelevant and not likely to lead to admissible evidence.**

90.   Admit that the Provost's Office chose Antoneia Roe to coordinate Professor Smith's STEP ONE hearing.

      **RESPONSE:  Admitted that Ms. Roe was assigned as the Step One reviewer in response to Plaintiff's complaint pursuant to University Regulation 10.206.**

91.   Admit that, at the time Antoneia Roe was the hearing officer for the STEP ONE hearing for Professor Smith, Antoneia Roe was ineligible to practice law in Florida because her Florida Bar membership had lapsed.

      **RESPONSE:  Objection as irrelevant and unlikely to lead to admissible evidence.**

92.   Admit that Antoneia Roe, hearing officer for the STEP ONE hearing for Jennifer Smith, previously worked in the FAMU General Counsel's office.

**RESPONSE:** **Objection as irrelevant and unlikely to lead to admissible evidence.**

93. Admit that in 2004, Professor Smith received a unanimous vote to join the COL faculty in 2004.

     **RESPONSE: Denied.**

94. Admit that visiting professors at the COL do not get business cards.

     **RESPONSE:** **Objection. Irrelevant and not likely to lead to admissible evidence. Despite diligent inquiry, the University is unable to state categorically that this is true or not true going back to the inception of the College of Law.**

95. Admit that visiting professors are not voted on for tenured, tenure-track, or non-visiting contractual positions until they are considered for joining the COL faculty.

     **RESPONSE:** **Objection. Irrelevant and not likely to lead to admissible evidence.**

96. Admit that there is no term or classification for "constitutional law specialist" at the COL.

     **RESPONSE: Admitted.**


Richard E. Mitchell, Esq.                 /s/ Maria A. Santoro
Florida Bar No: 0168092                   **MARIA A. SANTORO**
                                          Florida Bar Number: 0654809

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 1st day of July, 2024, I provided the

foregoing with all counsel of record in this case.

| | |
|---|---|
| **Richard E. Mitchell, Esq.** | **/s/ Maria A. Santoro** |
| Florida Bar No: 0168092 | **MARIA A. SANTORO** |
| rick.mitchell@gray-robinson.com | Florida Bar Number: 0654809 |
| maryann.hamby@gray-robinson.com | msantoro@sniffenlaw.com |
| Julie M. Zolty, Esq. | jlunt@sniffenlaw.com |
| Florida Bar No: 1036454 | tward@sniffenlaw.com |
| chantal.mccoy@gray-robinson.com | |
| GRAYROBINSON, P.A. | **SNIFFEN & SPELLMAN, P.A.** |
| 301 East Pine Street, Suite 1400 | 123 North Monroe Street |
| Post Office Box 3068 (3208-3068) | Tallahassee, Florida 32301 |
| Orlando, Florida 32801 | Telephone: (850) 205-1996 |
| (407) 843-8880 Telephone | Facsimile: (850) 205-3004 |
| (407) 244-5690 Facsimile | |
| *Counsel for Defendant FAMU* | *Counsel for Florida A&M University Board of Trustees* |