## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**JENNIFER SMITH,**

                **Plaintiff,**

**v.**                                **Case No: 6:24-cv-457-PGB-RMN**

**FLORIDA AGRICULTURAL &**
**MECHANICAL UNIVERSITY**
**BOARD OF TRUSTEES,**
**ALLYSON WATSON, DENISE D.**
**WALLACE, LATONYA BAKER,**
**LATRECHA SCOTT, RICA**
**CALHOUN, GRAY ROBINSON,**
**P.A., JULIE ZOLTY, RICHARD**
**E. MITCHELL and SARAH**
**REINER,**

                **Defendants.**

_____/

## <u>ORDER</u>

This cause is before the Court on the Plaintiff's Motion for Preliminary Injunction, (Doc. 86 (the "**Motion**")), and request for a hearing, (Doc. 87). Defendant Florida Agricultural & Mechanical University ("**FAMU**") Board of Trustees filed a Response in Opposition to the Motion. (Doc. 125). The Court does not require a hearing on the merits, and the Motion is denied upon consideration.

## I.    BACKGROUND

The Plaintiff is a tenured professor employed by the FAMU College of Law. (Doc. 151, ¶¶ 28–29). On October 27, 2022, the Office of Compliance and Ethics ("**OCE**") received a referral via email from the Office of Equal Opportunity

Programs Director, Dr. Latrecha Scott. A law student reported a negative interaction with the Plaintiff and asserted her belief that Professor Smith violated the University Code of Conduct by her behavior. (Doc. 151-6, p. 6). The investigative report includes the student's complaint describing the Plaintiff's allegedly unprofessional and threatening behavior. (*Id.* at pp. 7–8). On November 15, 2022, the student provided five witness statements corroborating her account. (*Id.* at p. 8). Before the student filed her complaint, the Plaintiff notified Associate Dean Reginald Green to report her encounter with the student. (*Id.* at p. 11). The Plaintiff described the student as acting rudely when the Plaintiff would not let her enter the classroom to prepare for an upcoming class. (*Id.*). The Plaintiff's statement of the encounter is outlined in the investigative report. (*Id.* at pp. 11–13).

The OCE expressed concern over the Plaintiff's behavior after she learned about the complaint. (*Id.*). On March 9, 2023, the Plaintiff filed a complaint through the University's Compliance and Ethics Hotline, reporting that a student knowingly and intentionally disrupted her class on October 20, 2022. (*Id.* at p. 18). Concerned that this constituted retaliation against the student, the OCE sent a Notice regarding Non-Retaliation to the Dean of the College of Law reiterating the University prohibition on retaliation. (*Id.*). OCE stated that "[f]iling a complaint for the purpose of making a student 'understand she is also the subject of an investigation' is inappropriate." (*Id.*).

The administration discussed the OCE's position on non-retaliation with the Plaintiff, and, in response, the Plaintiff clarified that she filed the complaint to ensure the student reported the investigation to the bar when applying for admission. (*Id.* at pp. 18–19). The investigation found that Plaintiff retaliated against the student by filing a complaint to force the student to report the complaint on her bar application.[1] (*Id.* at p. 19). On December 5, 2023, the Provost and Vice President for Academic Affairs informed the Plaintiff of the University's intent to dismiss her from employment on January 19, 2024. (*Id.* at p. 1). She was placed on Administrative Leave with pay, pending her termination. (*Id.*).

In 2015, the Plaintiff sued FAMU for equal pay based on gender inequity of up to $20,000 in its law faculty salaries. (Doc. 151, ¶ 27). Plaintiff asserts that on August 9, 2021, Defendant hired a male professor who performed substantially equal work in terms of skill, effort, and responsibility, under similar working conditions as other tenured law professors, but is paid $25,000 more than her. (*Id.* ¶¶ 30–31). On June 28, 2022, Plaintiff filed an informal gender equity complaint with Defendant FAMU's Equal Opportunity Program. (*Id.* ¶ 39). In September 2022, the Equal Opportunity Program denied the existence of pay inequality between her and her male colleague. (*Id.* ¶¶ 40–41). On October 18, 2022, the

---

[1] The Plaintiff noticed Defendant FAMU for a conference which occurred on January 11, 2024. (Doc. 151, ¶¶ 106–10). The next day, the panel's report unanimously recommended the "Notice of Intent to Dismiss from Employment" be rescinded and determined that re-filing "what was believed to be a previously filed complaint" is not an act of retaliation. (*Id.* ¶ 112; Doc. 151-7, p. 3). On January 23, 2024, Defendant FAMU notified Plaintiff that her employment would terminate effective January 30, 2024. (*Id.* at p. 1).

Plaintiff filed a Charge of Discrimination under the Equal Pay Act with the EEOC. (*Id.*). The incident involving the student occurred two days later. Plaintiff contends that Defendant launched the investigation and terminated her employment in retaliation for filing the Equal Pay complaint. (*Id.* ¶¶ 57, 77–78, 82).

On October 17, 2023, Plaintiff filed a Complaint against Defendant FAMU in the Ninth Judicial Circuit in Orange County, Florida. (Doc. 1, ¶ 1). Plaintiff amended the complaint before it was served on Defendant FAMU. (*Id.* ¶ 2). Defendant FAMU removed the matter to the Middle District of Florida, Orlando Division on March 4, 2024. (*Id.* ¶¶ 8–13). Plaintiff filed a Motion for Temporary Restraining Order on March 6, 2024 (Doc. 6), and the motion was denied on March 8, 2024. (Doc. 10). Three days later, the Plaintiff filed a Motion for Preliminary Injunction. (Doc 11). This motion violated Rule 3.01(a) and 6.02(a) of the Middle District of Florida Local Rules, and so the Court struck the motion. (Docs. 11, 34). Plaintiff renewed her motion and then in response to Defendant FAMU's Motion to Dismiss sought, and was granted, leave to file an Amended Complaint. (Docs. 72, 80, 81). The Court denied the Motion for Preliminary Injunction as moot because of the filing of the Second Amended Complaint ("**SAC**"). (Doc. 82).

On July 10, 2024, Plaintiff again renewed the Motion for Preliminary Injunction (Doc. 86), and a week later, Defendant FAMU moved to strike the SAC, because the version Plaintiff filed differed from the version attached to the motion

for leave to amend.[2] (Doc. 112). Two weeks later, the Court granted Defendant's motion to strike. (Doc. 132). Three weeks after Plaintiff sought leave to file the most recent version of the SAC, the Court granted the motion to amend and the operative SAC was filed on August 18, 2024.[3] (Docs. 133, 149).

## II.   LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) (citation omitted). A plaintiff must clearly establish these requirements: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury; (3) that the threatened injury to the plaintiff outweighs the potential harm to the defendant; and (4) that the injunction will not disserve the public interest." *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002) (citing *Suntrust Bank v. Houghton Mifflin Co.*, 268 F.3d 1257, 1265 (11th Cir. 2001)). "Where the facts are bitterly contested and credibility

---

[2]   Defendant FAMU correctly observed that filing an amended complaint that differs from the version attached to Plaintiff's motion for leave to amend amounts to amending the complaint without leave of court. (Doc. 112).

[3]   The Plaintiff complains that she "has sought injunctive relief for months — for a court to seriously consider this — and prays for a ruling before the first week of August 2024," which is when the fall semester begins. (Doc. 86, p. 1). The Plaintiff's suggestion that the Court has not taken her motion "seriously" is misplaced. Any delay occasioned in ruling on Plaintiff's motion is due to counsel's inability to comply with the Local Rules and the Federal Rules of Civil Procedure. The rules matter and are not mere suggestions. Moreover, the Defendant has a right to know which version of the Complaint is operative before responding to a motion for injunctive relief. The SAC was not properly filed until August 16 because of Plaintiff's numerous procedural missteps. Counsel's condescending tone is beneath the dignity expected of practitioners appearing in federal court.

determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312 (11th Cir. 1998).

That said, a showing of irreparable injury is "the sin qua non of injunctive relief." *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (citation omitted). The Eleventh Circuit has cautioned that "even if [a plaintiff] establish[es] a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citation omitted). As the Supreme Court held:

> The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of [an injunction], are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Leigh v. Artis-Naples, Inc.*, No. 2:22-cv-606-JLB-NPM, 2022 WL 18027780, at *16 (M.D. Fla. Dec. 30, 2022) (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)). "An irreparable injury is one that 'cannot be undone through monetary remedies.'" *Id.* at *17 (citation omitted). Moreover, the mere "possibility of irreparable harm" and speculative future injury cannot, by themselves, invoke the "extraordinary remedy" of a preliminary injunction. *Id.* (citation omitted).

## III.   DISCUSSION

### A.   Irreparable Harm

Plaintiff asserts that "[i]rreparable harm has been presumed in employment discrimination cases, such as Title VII." (Doc. 86, p. 5). Plaintiff relies on *Middleton-Keirn v. Stone*, 655 F.2d 609, 612 (5th Cir. 1981).[4] The Court in *Stone* held that where "the employee has exhausted all administrative remedies and has filed suit in the district court . . . irreparable injury is presumed." *Id.* When the Plaintiff filed the instant Motion for Preliminary Injunction, the operative pleading was the First Amended Complaint. (Docs. 1-1, 81, 132). The First Amended Complaint does not include a Title VII claim, and the Plaintiff has not sought leave to amend the Motion for Preliminary Injunction to include the Title VII claim. (Doc. 1-1). Plaintiff concedes in the Motion for Preliminary Injunction that "this case [unlike *Stone*] centers on an EPA claim. (Doc. 86, p. 18). Plaintiff argues that the distinction between a Title VII claim and an EPA claim is "essentially moot," because Plaintiff exhausted administrative remedies under her EPA claim as would be required under Title VII.[5] (*Id.*).

In *Baker v. Buckeye Cellulose, Corp.*, 856 F.2d 167, 169 (11th Cir. 1988), the Eleventh Circuit declared that "[i]n this circuit . . . courts are to presume

---

[4]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[5]   Plaintiff's argument that the holding in *Stone* should extend to an EPA case may be persuasive, but *Stone* is controlling only in a Title VII case.

irreparable harm in Title VII cases." But as the trial court observed in *Leigh v. Artis-Naples, Inc.*, "[l]ater decisions have cast doubt on the degree to which *Baker* is a controlling authority." 2022 WL 18027780, at *17. In *Baker*, the plaintiff moved for preliminary injunction to enjoin alleged retaliatory actions taken by her employer due to her having filed suit. 856 F.2d at 169. In *McDonald's Corp. v. Robertson*, the Court explained that the presumption of irreparable harm applies only when the plaintiff seeks to enjoin actions viewed as retaliatory. 47 F.3d at 1312. Thus, the trial court in *Leigh* reasoned that *Baker* does not apply where there are no ongoing retaliatory actions. *Leigh*, 2022 WL 18027780, at *17. As in *Leigh*, the alleged retaliatory actions have already occurred, because the Plaintiff has been terminated from her position. Therefore, the presumption of irreparable harm outlined in *Baker* is inapplicable here.[6] *Id.*

Since irreparable harm is not presumed, the Court turns to whether the Plaintiff's loss of a tenured position constitutes irreparable harm. In *Van Arsdel v. Texas A&M University*, 628 F.2d 344, 345–46 (5th Cir. 1980), the Court reversed the trial court's order granting a preliminary injunction and reinstating a tenured associate professor who allegedly resigned under duress. The Court held "[s]ince reinstatement after trial, coupled with back pay, would suffice to redress appellee's

---

[6]   Additionally, in *Sambrano v. United Airlines, Inc.*, the Fifth Circuit distinguished the reparability of harm caused by an employer's placing the employee on unpaid leave for violating a vaccination mandate versus an employer forcing an employee to abandon religious convictions or face loss of pay and benefits. No. 21-11159, 2022 WL 486610, at *2 (5th Cir. 2022). In the former employment action, economic harm does not equate to irreparable harm. *Id.* at *9. In the latter, "ongoing coercion of being forced to choose either to contravene their religious convictions or to lose pay indefinitely" constitutes irreparable harm. *Id.*

alleged wrong, we find that the preliminary injunction must be vacated." *Id.* Should she prevail on the merits, the Plaintiff's alleged harm can also be remedied with reinstatement and back pay. While Plaintiff also asserts reputational damage within the academic community and the potential loss of career advancement opportunities, (Doc. 86, p. 22), the alleged harm is entirely speculative. *See Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (noting irreparable harm must "be neither remote nor speculative, but actual and imminent"). Plaintiff does not contend that she has applied for and been denied other equivalent tenured positions based on her termination by Defendant FAMU, and Plaintiff does not proffer any basis for the claim that she was on track for a deanship. The balance of the harms Plaintiff identifies falls within the category of economic harm, which is not irreparable.[7]

---

[7]   In *Assaf v. Univ. of Tex. Sys.*, 399 F. Supp. 1245, 1245–47 (S.D. Tex. 1975), injunctive relief was granted *before* the Plaintiff was terminated, and the court criticized the university's lack of transparency leading up to the hearing. In *Schrank v. Bliss*, 412 F. Supp. 28, 37 (M.D. Fla. 1976), injunctive relief was awarded where the "state-regulated system . . . ensures all future employers are informed of the plaintiff's termination, leading to actual and official stigmatization." The court distinguished the stigma associated with mandatory reporting of the termination to law enforcement agencies to which the plaintiff may apply from the embarrassment of discharge in the presence of co-workers, which the Supreme Court rejected in *Sampson v. Murray*, 415 U.S. 61, 89 (1974), as not irreparable. Plaintiff alleges no such mandatory reporting requirement here. Similarly, in *Blaine v. N. Brevard Cnty. Hosp. Div.*, 312 F. Supp. 3d 1295, 1307 (M.D. Fla. 2018), the court found the employer's action involving the physicians constituted a reportable event to the National Practitioner Data Bank and implicated the plaintiffs' right to practice, which cannot be monetized. The termination of a tenured professor does not implicate counsel's license to practice law and earn a living. Finally, *Keyer v. Civil Serv. Comm'n of the City of N.Y.*, 397 F. Supp. 1362 (E.D.N.Y. 1975), is inapposite. In *Keyer*, the plaintiffs were fired without being notified of the reason, unlike this case.

**B.    The Public Interest**

Reinstatement of the Plaintiff before the resolution of the case on its merits disserves the public interest. The Plaintiff notes that injunctions protecting First Amendment freedoms are always in the public interest. (Doc. 86, p. 24). As a general principle, this is true—but context matters. This case is not only about the Plaintiff's speech in standing up for equal pay; it also involves termination based on a finding that the Plaintiff retaliated against a student. While Plaintiff contests the student's version of the encounter giving rise to the decision to terminate her employment, the student's version—corroborated by five witnesses—led Defendant FAMU to terminate Plaintiff for improper conduct. Forcing Defendant FAMU to reinstate the Plaintiff also forces students enrolled at FAMU to attend classes taught by the Plaintiff. On the record before the Court, the imposition of a mandatory injunction compelling Defendant FAMU to reinstate Plaintiff is contrary to public policy.

**C.    Likelihood of Success on the Merits**

Since irreparable harm is the sin qua non of injunctive relief, the Court will not address the likelihood of success on the merits. "[E]ven if [the plaintiff] establish[es] a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel*, 234 F.3d at 1176. The Court has determined that the Plaintiff's alleged injuries are not irreparable, and so preliminary injunctive relief is denied, regardless of the merits of the asserted claims.

### D.    Motion for Hearing

When the facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held. *McDonald's Corp.*, 147 F.3d at 1312. While the parties contest whether Plaintiff's termination for retaliation was justified and whether Defendant FAMU's decision to fire Plaintiff is pretextual and retaliation for filing an Equal Pay claim, there is no disagreement over the harm Plaintiff alleges she sustained from her termination. Since whether those harms are irreparable does not require credibility determinations or the resolution of contested facts, an evidentiary hearing is unwarranted.

## IV.   CONCLUSION

For these reasons, Plaintiff's Motion for Preliminary Injunction (Doc. 86) and Motion for Oral Argument and Evidentiary Hearing (Doc. 87) are **DENIED**.

**DONE AND ORDERED** in Orlando, Florida on August 30, 2024.

PAUL G. BYRON
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties