UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JENNIFER SMITH,

    Plaintiff,

                                                                          CASE NO: 6:24-cv-00457-PGB-RMN

FLORIDA AGRICULTURAL &
MECHANICAL UNIVERSITY
BOARD OF TRUSTEES, et al.

    Defendants.
_____/

## PLAINTIFF'S MOTION FOR RECUSAL

Plaintiff Jennifer Smith ("Professor Smith") hereby moves this Court for the recusal of U.S. District Judge Paul G. Byron from further proceedings in this case pursuant to 28 U.S.C. § 455(a). As an initial matter, Professor Smith apologizes in advance for what the Court will likely find to be distasteful prose. However, Professor Smith files this motion with the upmost respect and to enforce her right to ensure the continued appearance of and actual fairness and impartiality of these proceedings, which is of paramount importance to all parties involved and to the justice system as a whole.

## Introduction

Strong women are frequently mislabeled as condescending (Doc. 164, p. 5), showcasing societal prejudices against assertive and confident women that still persist.[1] If a woman confidently expresses her beliefs, asserts herself, or assumes control, her actions may be mistaken for arrogance or a lack of empathy, instead of being recognized as effective leadership and decisiveness. This misconception is frequently rooted in ingrained gender stereotypes that assume women should be silent and submissive, instead of assertive and straightforward. This often leads these women to navigate a complex social landscape where their strengths are used against them, despite being qualities that make them effective leaders and role models.

Professor Smith had a Herculean task before her, when she found herself with no other choice but to file a writ of mandamus against this Court. This was a remarkable move, one filled with the danger of compromising the judge's neutrality in her situation. However, despite being aware of the potential consequences, Professor Smith's dedication to justice and her unwillingness to be silenced or denied timely justice motivated her to take this brave action, as she felt compelled to challenge what she perceived as an unfair situation. By doing this, she showed the

---

[1] Olga Khazan, "'Pushy' is Used to Describe Women Twice as Often as Men," THE ATLANTIC, https://www.theatlantic.com/business/archive/2014/05/pushy-is-used-to-describe-women-twice-as-often-as-men/371291/ (May 23, 2014)( "An analysis by a Georgia State University linguist shows who gets called 'pushy,' 'brusque,' 'stubborn,' and 'condescending.'").

intricate and frequently misinterpreted power that resilient women must utilize when encountering systemic obstacles. Yet, according to the Court's standard, she seems to have failed the challenge of filing a writ of mandamus without simultaneously displeasing the Court.

During her lifetime, and like many other women, Professor Smith has confronted the widespread obstacles of gender inequality directly, realizing that this battle is not suitable for the weak-hearted or those content with the current state of affairs. This fight is anything but simple and seldom pretty. Despite facing numerous challenges and setbacks, Professor Smith has remained unwavering in her conviction that the struggle is worthwhile and worth every bit of energy expended. Like her mother and sister, Professor Smith has worked hard to dismantle obstacles, smash through barriers, and establish environments where women can succeed on par with men. Despite the difficult journey and slow advancement, she understands that each step taken is a triumph for those who have been oppressed and silenced. It is a fight that she will continue, with all the fierceness and determination it demands…and it is a good thing she enjoys litigation. Nevertheless, as she continues to advocate for this cause, she hopes the justice system – the Court – will provide an impartial forum rather than perpetuate the very resistance that led her to seek judicial intervention in the first place.

Understandably, the Court appears to be troubled by her submission of the petition for mandamus. Filing a writ of mandamus is not something any party enjoys, as judges may and often react unfavorably to it. These filings may be seen as questioning the court's authority or ability, causing frustration that is easy to understand. Nevertheless, in this scenario, the purpose of pursuing a writ of mandamus was not to diminish the Court's power or question authority, but to protect her legal rights and to guarantee that justice is served in a just and lawful manner. Deciding to pursue a writ of mandamus showed the seriousness of the issues involved and the absence of alternative solutions. Professor Smith had no choice as the Court delayed ruling on the preliminary injunction for over three months. This recusal request is submitted out of respect for the Court, while acknowledging that filing for a writ of mandamus most certainly compromised the Court's ability to be impartial.

## Argument

In support of this motion and with all due respect, Professor Smith states as follows:

1. 28 U.S.C. § 455(a) requires that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

2. The standard for recusal under § 455(a) is "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on

which recusal was sought would entertain a significant doubt about the judge's impartiality." *United States v. Patti*, 337 F.3d 1317, 1321 (11th Cir. 2003) (internal quotation marks omitted); *Christo v. Padgett,* 223 F.3d 1324, 1333 (11th Cir. 2000), *cert. denied,* 531 U.S. 1191, 121 S.Ct. 1190, 149 L.Ed.2d 106 (2001); *Walker v. Dismas Charities, Inc.*, No. 22-13847 (11th Cir. Nov. 14, 2023).

3. In general, "bias sufficient to disqualify a judge must stem from extrajudicial sources" unless a "judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party." *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1329 (11th Cir. 2002) (internal quotation marks omitted); *Liteky v. United States*, 510 U.S. 540 (1994).

4. In this case, while Judge Byron's remarks stem from the current judicial proceedings, the remarks in question however demonstrate such pervasive bias and prejudice that they constitute bias against the Professor Smith. Judge Byron has demonstrated a pattern of hostility toward Professor Smith in multiple court orders, creating an appearance of bias that would cause any reasonable person, lay person or lawyer, to question the judge's impartiality.

5. Specifically, the Court has used inflammatory adjectives and fussbudget phrases consistently in its orders,[2] thereby demonstrating a difficulty, in

---

[2] *Compare* (Doc. 10 ("She cannot access her professional e-mail or Defendant's personnel database, cannot teach, and is currently not even permitted to **step foot** on Defendant's premises.")); with (Doc. 132) ("Moreover, Plaintiff may not skirt the applicable law in the name

5

fact, an inability, of the judge to put "his previous views and findings aside." *See Chudasama*, 123 F.3d at 1373 ("the strong language employed in both the compel order and the sanctions order suggest that the district judge may have trouble putting aside his previous views"). Additionally, even though Professor Smith declared that she took the teaching job at a significant pay cut (Doc. 86-1), the district judge has chided Professor Smith as being avaricious, (Doc. 10 ("Plaintiff essentially seeks to require Defendant to keep her on its payroll until such time as this litigation is concluded despite the fact that she is already unable to perform the primary functions of her job.")), and he mockingly cited her background of 30 years as a lawyer as a basis for her not being considered *pro se* after Professor Smith pointed out that the district court's own rules support that the show cause order was unfairly issued*, see* (Doc. 53 ("Given Plaintiff's 'three decades of experience' in the legal field, that rationale clearly does not apply in the case at bar.")). *See United States v. Torkington*, 874 F.2d 1441, 1447 (11th Cir. 1989) ("For example, the judge stated at various times

---

of "efficiency." At this stage, it should be abundantly clear to Plaintiff that asking for the Court's forgiveness rather than its permission rarely results in efficiency, and often results in just the opposite.")); (Doc. 60 ("hopelessly distinguishable . . . scant evidence")); (Doc. 80 ("indefinite extension . . . indeterminate period . . . obsolete")); (Doc. 10 ("Plaintiff essentially seeks to require Defendant to keep her on its payroll until such time as this litigation is concluded despite the fact that she is already unable to perform the primary functions of her job.") (Doc. 53 ("However, the Court will not entertain the fiction that Plaintiff should be treated like a novice litigant or that Plaintiff lacks the knowledge and experience necessary to coordinate simple meetings between herself and defense counsel.")); and Doc. 60 ("to the left of the point").

6

that he felt the taxpayer had little interest in this type of suit, that this prosecution was "silly," and that it was a waste of the taxpayers' money.").

6. All of the above was affirmed most recently in the Court's order dated August 30, 2024 (Doc. 164). The Court slights Professor Smith in its statement: "Any delay occasioned in ruling on Plaintiff's motion is due to counsel's inability to comply with the Local Rules and the Federal Rules of Civil Procedure. . . . The SAC was not properly filed until August 16 because of Plaintiff's numerous procedural missteps." That statement is inaccurate, untenable, and directly contradicted by the Court's own orders. Indeed, Professor Smith has navigated the Court's delays and unusual rulings, as well as advised the Court and Defendant FAMU on the proper workings of FRCP and Local Rules. For example:

    a) On March 29, 2024, the Court struck Plaintiff's preliminary injunction because she "incorporated by reference" certain arguments from a prior motion; which the Local Rules permitted when she filed the injunction on March 11, 2024. The Local Rules did not contain an express prohibition against incorporation at that time, the prohibition was added in the Local Rules that became effective on April 1, 2024, after Professor Smith filed her motion. Local Rule 3.01(f). (Docs. 11, 34). Thus, by the time Professor Smith refiled her motion she had to comply with a completely new set of Local Rules.

7

  b) Then on April 1, 2024, Professor Smith re-filed her preliminary injunction. (Doc. 37), which ultimately sat for over three months before being stricken as moot after allowing Professor Smith to amend her complaint – exactly what Professor Smith was trying to avoid in her motion to amend the complaint. (Doc. 54). Sitting on a preliminary-injunction motion for too long is an effective denial. *In re Fort Worth Chamber of Com.,* 100 F.4th 528, 533 (5th Cir. 2024), (citing *e.g.,* Clarke v. CFTC, 74 F.4th 627, 635 (5th Cir. 2023) (three months); *McCoy v. La. State Bd. of Educ.*, 332 F.2d 915, 916–17 (5th Cir. 1964) (four months).

  c) On May 6, 2024, the Court ordered Plaintiff to show cause as to why "Plaintiff has failed to comply with the Court's Order of April 15, 2024 directing Plaintiff to 'contact opposing counsel and the mediator to reserve a conference date and [to] file a Notice with the Court within 14 days of this Order advising of the date.' (Doc. 45, p. 3). Such notice was never filed with the Court. Therefore, it is ORDERED that Plaintiff shall SHOW CAUSE and file a response to said Order within fourteen (14) days from the date of this Order. Failure to comply with this Order may result in dismissal of the case without further notice or other appropriate sanctions." (Doc. 50). Professor Smith pointed out to the Court that "the wording in the Court's Case Management and Scheduling Order (Doc. 45), coupled with Local Rule

4.03(d), shifted the responsibility to defense counsel." (Doc. 51). The Court withdrew the show cause order but not before imputing fault on Plaintiff, who had no fault at all. (Doc. 53; *see* paragraph 5 above).

  d) On May 20, 2024, Professor Smith filed a time-sensitive motion for leave to file an amended complaint, and noting: "Further, there is a preliminary injunction pending, which Plaintiff does not want to moot by amending the complaint. A ruling is requested before May 31, 2024." (Doc. 54). Professor Smith also cited persuasive authority for her position. *Compare American Airlines, Inc. v. Spada*, No. 1:23-cv-21844-CMA (S.D. Fla. Nov. 18, 2023) *with Chianne D. et al. v. Weida*, No. 3:23-cv-985-MMH-LLL (M.D. Fla. Jan. 23, 2024). The Court was silent until well after the date for amending the complaint had passed, forcing Professor Smith to be creative in navigating the silence of chambers by attaching the proposed amended complaint to an updated Notice of Conferral before the deadline had passed. (*see, e.g.* Docs. 54, 65).

  e) On July 3, 2024, forty-four days after filing a motion to amend, the Court allowed Professor Smith to amend her complaint. (Docs. 54, 80). Because so much time had passed since the Professor Smith filed her proposed amended complaint (Doc. 72) and the Court allowing her to file an amended complaint (Doc. 80), Professor Smith filed an updated complaint (Docs. 81,

84). The Court struck the updated complaint on July 24, 2024 – even though it was the complaint cited in her third motion for preliminary injunction. (Doc. 132) Professor Smith then had to duplicate her motion and file yet another amended motion to amend the complaint. (Doc. 133). Yet, even this Court has permitted a plaintiff to make changes to a proposed pleading previously submitted as an attachment to a motion for leave to amend. *See e.g., Nunez v. Terminal Getaway Spa Orlando JV LLC*, No. 6:21-CV-1705-PGB-LHP, ECF Nos. 24, 24-1, 28 (M.D. Fla. Mar. 15, 2022).

  f) On August 12, 2024, Professor Smith filed a petition for writ of mandamus because the case had become chaotic – no justice was being dispensed. Clearly, the Court was exhibiting bias toward the Plaintiff, multiplying her work, seeking yet another way to strike her preliminary injunction instead of ruling on it.

  g) Now, forty days later, the same amended complaint (Doc. 84) was now on the record as the operative complaint in the case (Doc. 151).[3] But, the writ of mandamus unfortunately put the Court at war against the Plaintiff.

  h) Now again, the Court engaged in unjust behavior by stating: "When the Plaintiff filed the instant Motion for Preliminary Injunction, the

---

[3] "The Court hereby adopts 84 Corrected Second Amended Complaint as the operative complaint in this case. Signed by Judge Paul G. Byron on 7/10/2024."

operative pleading was the First Amended Complaint. (Docs. 1-1, 81, 132). The First Amended Complaint does not include a Title VII claim, and the Plaintiff has not sought leave to amend the Motion for Preliminary Injunction to include the Title VII claim." (Doc. 164). How the Court even arrives at that conclusion is unjust and disingenuous, but it was the only way the Court could think to eliminate Plaintiff's irreparable harm because "[i]rreparable harm has been presumed in employment discrimination cases, such as Title VII." *Middleton-Keirn v. Stone*, 655 F.2d 609, 612 (5th Cir. 1981). Plaintiffs ought not have to out-strategize the Court for justice. This is clearly reversible error, and simply sophomoric and absurd – unjust as the preliminary injunction was clearly filed when the CSAC was operative (Docs. 85, 86, 151). It is well established by the Eleventh Circuit that an amended complaint, "supersedes the former pleading; 'the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary'." *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V Olympia Voyager*, 463 F.3d 1210, 1215 (11th Cir. 2006). Thus, it was error to assess the preliminary injunction motion against the First Amended Complaint. The 5th Circuit has held that filing an amended complaint does not automatically moot a pending motion if the amended complaint contains the same claims or defects as the original complaint. Rather, "[i]f some of the defects raised in

11

the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading." *Rountree v. Dyson*, 892 F.3d 681, 683-84 (5th Cir. 2018) (alterations in original); *American Airlines, Inc. v. Spada*, No. 1:23-cv-21844-CMA (S.D. Fla. Nov. 18, 2023) with *Chianne D. et al. v. Weida*, No. 3:23-cv-985-MMH-LLL (M.D. Fla. Jan. 23, 2024); 6 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1476 (3d ed. updated Apr. 2018). This approach promotes judicial efficiency by avoiding unnecessary re-filing of motions when the core issues remain the same. Thus, the irreparable harm assessment is unsupported by the record, and this is a clear indication that the Court's ability to remain impartial is compromised.

    i)    Moreover, the Court not only misrepresented the facts of the case, but did so in a manner that appears intentional, manufacturing its own justification for Professor Smith's termination, independent of FAMU's actions. The Court asserted: "While Plaintiff contests the student's version of the encounter leading to her termination, the student's account—corroborated by five witnesses—resulted in FAMU's decision to terminate Plaintiff for improper conduct." This statement is patently false and unsupported by the record. In reality, it is undisputed by the Parties that the student encounter was **not** the reason for Professor Smith's termination. After a lengthy

12

investigation, Defendant FAMU in fact determined both the **student's** and the **witnesses' accounts** were deemed **meritless** and **implausible**. Rather, Defendant FAMU claims it was retaliation separate and divorced from the student encounter that was the reason for Professor Smith's termination (Doc. 151, ¶129). Not the student encounter that this Court somehow conjured from thin air.[4] However, when pressed to define how Professor Smith's actions met FAMU's criteria for retaliation, FAMU failed to provide a definition and could not articulate how her actions constituted retaliation. These facts are undisputed. The Court's assertions appear entirely fabricated, potentially as a punishment in response to Professor Smith's filing of a writ of mandamus. (Doc. 86-6 at p. 19, noting that the allegations from the student (MW) and the five witnesses were **UNSUBSTANTIATED**). The only substantiated claim related to alleged retaliation by Professor Smith for re-filing her initial complaint, which was ultimately deemed meritless by FAMU's own panel of lawyers. (Doc. 86-4). Additionally, the Court erroneously claimed that the students involved would still be present at the College of Law, despite the fact that the encounter occurred nearly two years ago and the students have graduated from the law school. Therefore, the public interest assessment is

---

[4] Professor Smith is deeply concerned by how the Court could reach such a blatantly unsupported and contrived conclusion, as it seems to intentionally distort the court record and misrepresent the undisputed facts of the case.

unsupported by the record, and this is another clear indication that the Court's ability to remain impartial is compromised. Weirdly, the Court ignored the myriad reasons Defendant FAMU has given for Professor Smith's termination (Doc. 151¶ 129), and added its own.[5] If the Court was uncertain about the facts, it would have been appropriate to hold a hearing as Professor Smith had requested.

7. The Court's partiality is evident in its order (Doc. 164) overlooking Defendant FAMU's rule-violating filings,[6] while simultaneously seizing upon minor issues in Professor Smith's filings in an apparent attempt to damage her stellar reputation as evidenced by her student and dean evaluations. (Doc. 86-1).

8. Judges, too, have their own obligations of professionalism. Canon 3A(3) states: "A judge should be patient, dignified, respectful, and courteous to litigants, jurors, witnesses, lawyers, and others with whom the judge deals in an official capacity." The consistent attacks on Professor Smith and the Court's refusal to consider Professor Smith a *pro se* party, as the law of this Circuit requires, cements

---

[5] Defendant FAMU started concocting yet another reason in the discovery hearing on 8-13-24 (p. 47 transcript).

[6] *See, e.g.,* (Doc. 71) ("The Court finds that Defendant's initial refusal to confer regarding the Motion to Amend violates the spirit, if not the letter, of the Local Rules and the Case Management and Scheduling Order"); (Doc. 79) ("ENDORSED ORDER denying without prejudice Defendant's 76 Motion for Protective Order. The Motion fails to comply with the 8 Standing Order on Discovery Motions."); (Doc. 124) ("ENDORSED ORDER striking Defendant's 123 Notice Advising Court of Conflict, which the Court construes as a Notice of Unavailability. The Court does not permit filing notices of unavailability unless required by rule or law.").

at least the appearance of, but certainly actual, disrespect, discourteous, and a lack of patience and dignity to Professor Smith.

9. Judge Byron's judicial philosophy is admirable on paper, but that must translate to the Courtroom as well.[7]

10. These comments by the Court go beyond mere adverse rulings and demonstrate personal animus toward Plaintiff, and *pro se* parties, which results in an appearance of bias.

11. While adverse rulings alone do not generally warrant recusal, the tone and language used in these orders suggest a level of hostility that would cause any reasonable observer to question whether the judge can rule impartially in this case. Moreover, the Court took bold measures to circumvent justice, going so far as to very clearly manipulate undisputed facts for the sake of removing a pending motion

---

[7] In written responses to members of the Senate Judiciary Committee, Judge Byron defined his judicial philosophy as: "I believe a judge must respect the rule of law and be cognizant of the court's limited role in our constitutional democracy. I further believe that a judge must be patient, considerate to the parties and litigants, demonstrate thoughtfulness, diligence, intellectual honesty and a firm commitment to the principle of stare decisis. If I am confirmed, my judicial philosophy will be to decide only those cases and controversies properly before me and to base my decisions upon binding precedent of the United States Supreme Court and the Eleventh Circuit Court of Appeals. If confirmed, I would strive to emulate these traits, and I would avoid any action which could convey even the appearance that all parties and their counsel are not receiving equal and impartial consideration from the court." http://www.webcitation.org/query?url=http%3A%2F%2Fwww.judiciary.senate.gov%2Fimo%2Fmedia%2Fdoc%2F04-01-14%2520QFRs%2520Byron.pdf&date=2014-05-08.

from the Court's report and in stark contradiction to the Court's prior Order counseling thoroughness.[8]

**WHEREFORE,** Plaintiff Professor Jennifer Smith prays that the Honorable Paul G. Byron recuse himself from further proceedings in this case and that the case be reassigned to a different judge.

Dated: September 3, 2024

Respectfully submitted,

*/s/ Jennifer Smith*
Jennifer Smith
Florida Bar No. 964514 (*pro se*)
Law Office of Jennifer Smith
13506 Summerport Village Pkwy., Suite 108
Windermere, FL 34786
407-455-0712; 407-442-3023 (f)
jensmithesq@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of September 2024, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all registered users.

*/s/ Jennifer Smith (pro se)*

---

[8] The Court indicated it would address Plaintiff's third motion for preliminary injunction after the CSAC was filed but still addressed that motion against the FAC. *See* Doc.149 ("the Court strives to act with efficiency in resolving the issues before it. . .The Court notes that, following Plaintiff's filing of her amended pleadings pursuant to the instant Order, her motion for preliminary injunction will be ruled upon in due course, with the proviso that the Court has other important matters pending that will have been ready for review long before that motion.").

16